JAMES G. TOUHEY, JR.
Director, Torts Branch
PHILIP D. MACWILLIAMS
Trial Attorney
D.C. Bar No. 482883
THEODORE W. ATKINSON
Trial Attorney
D.C. Bar No. 458963
E-mail: phil.macwilliams@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4285

Attorneys for the United States of America

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| C.M., on her own behalf and on behalf of her minor child, B.M.; L.G., on her own behalf and on behalf of her minor child, B.G.; M.R., on her own behalf and on behalf of her minor child, J.R.; O.A. on her own behalf and on behalf of her minor child, L.A.; and V.C., on her own behalf and on behalf of her minor child, G.A., <br><br> Plaintiffs, <br><br> v. <br><br> United States of America, <br><br> Defendant. | Case no. 2:19-CV-05217-SRB <br><br> **MOTION AND MEMORANDUM IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION TO DISMISS** |
| --- | --- |

Defendant United States of America respectfully moves this Court to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. The grounds for this motion are set forth in the below memorandum in support.

## INTRODUCTION

Plaintiffs – five adult female aliens suing on behalf of themselves and their respective alien children – bring this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671-2680, seeking damages from the United States based on the separation of "each

Plaintiff mother from her child when they were detained at various immigration centers in Arizona."  Compl. ¶ 5.  Plaintiffs assert state-law claims for intentional infliction of emotional distress and negligence arising out of such separations.

This action must be dismissed for lack of subject matter jurisdiction because Plaintiffs' claims are barred by the due care and discretionary function exceptions to the FTCA, 28 U.S.C. § 2680(a), and Plaintiffs have failed to allege claims for which there is a private person analog or for which a private person could be held liable under applicable state law.  28 U.S.C. § 1346(b)(1).

## **BACKGROUND**

Plaintiffs crossed into the United States with their children between ports of entry in Arizona in May 2018.  Compl. ¶¶ 71, 119, 171, 236, 305.  Apprehensions of Plaintiffs and their children by U.S. Customs and Border Protection ("CBP"), a component of the U.S. Department of Homeland Security ("DHS"), occurred during a time when DHS had been directed by the President of the United States to end "catch and release" practices, and for DHS to exercise its Federal statutory authority to detain aliens during the pendency of their immigration proceedings.  Compl. ¶ 24.  Further, such apprehensions occurred following the Attorney General's direction to Federal prosecutors to adopt a "zero-tolerance" policy for immigration offenses referred for prosecution under 8 U.S.C. § 1325(a) as well as other immigration statutes. Compl. ¶¶ 5, 26, 71, 119, 171, 236, 305.

Upon their unlawful entry into the United States between ports of entry, Plaintiffs were amenable to prosecution under 8 U.S.C. § 1325(a).  Plaintiffs and their minor children were separated by CBP, with Plaintiffs subsequently detained by U.S. Immigration and Customs Enforcement ("ICE"), another component of DHS, in secure adult detention facilities, and their minor children, rendered unaccompanied due to Plaintiffs being amenable to criminal

prosecution, placed in the care and custody of the Office of Refugee Resettlement ("ORR"), a component of the U.S. Department of Health and Human Services ("HHS").   Compl. ¶¶ 47-48, 100, 152, 211, 282, 355.  After being separated for approximately two months, Plaintiffs and their children were re-unified and released.[1]

## LEGAL FRAMEWORK

### I.      Relevant Immigration Statutory and Regulatory Framework

Under the Immigration and Nationality Act ("INA"), any alien present in the United States without being admitted or paroled is inadmissible and subject to removal from the United States.  *See* 8 U.S.C. § 1182(a)(6)(A)(i).  Individuals in DHS custody subject to immigration proceedings under the INA also may be amenable to criminal prosecution, either for criminal immigration violations – *e.g.*, 8 U.S.C. § 1324 (alien smuggling), § 1325 (unlawful entry), and § 1326 (unlawful reentry after removal) – or for other criminal violations.  Those immigration statutes authorize DHS to refer individuals to the Department of Justice ("DOJ") for prosecution.

In this action, each Plaintiff was deemed an applicant for admission under 8 U.S.C. § 1225(a)(1).  *See* 8 U.S.C. § 1225(a)(1) (defining as "applicant for admission" an alien who "arrives in the United States" or is "present in the United States" but "has not been admitted."); Compl. ¶¶ 70-71, 119-121, 171-172, 235-236, 304-305.  As such, Plaintiffs and their children were required to "be inspected by immigration officers[.]" 8 U.S.C. § 1225(a)(3).  Under § 1225(b)(1), aliens who are inadmissible for lack of documentation or for fraud or misrepresentation under 8 U.S.C. §§1182(a)(6)(C) or (a)(7) are subject to removal "without further hearing or review."  8 U.S.C. § 1225(b)(1)(A)(i) (referred to as "expedited removal").  Aliens covered by 8 U.S.C. § 1225(b)(2) include all applicants for admission other than those

---

[1] Plaintiffs' Complaint contains allegations specific to each Plaintiff.  For purposes of this motion, a summary of those allegations is not necessary.  For purposes of this motion only, the United States assumes the truth of Plaintiffs' factual allegations.

processed for expedited removal pursuant to § 1225(b)(1).  Congress has mandated the detention of certain inadmissible applicants for admission pending removal proceedings and removal, *see* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) and 8 U.S.C. § 1225(b)(2)(A); *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018) (§ 1225 detention provisions "mandate detention of applicants for admission until certain [removal] proceedings have concluded.").  Such individuals may be released only if they are granted parole under narrowly prescribed circumstances.  8 U.S.C. § 1182(d)(5); 8 C.F.R. §§ 235.3(b)(2)(iii) and 235.3(b)(4)(ii) (parole permitted if required to meet a "medical emergency or is necessary for a legitimate law enforcement objective" for aliens subject to expedited removal); *W.S.R. v. Sessions*, 318 F. Supp. 3d 1116, 1133 (N.D. Ill. 2018).  In addition to 8 U.S.C. § 1225(b), the detention of aliens is statutorily authorized pursuant to 8 U.S.C. § 1226, which states that "[o]n a warrant issued by the [Secretary of DHS], an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).

## II.   Legal Framework for the Immigration Custody and Release of Minor Aliens

The immigration custody and release of alien minors is governed by two statutory provisions, 6 U.S.C. § 279 and 8 U.S.C. § 1232, and the *Flores* Settlement Agreement.  *See D.B. v. Cardall*, 826 F.3d 721, 731 (4th Cir. 2016).[2]

In 2002, Congress enacted the Homeland Security Act ("HSA"), which created the Department of Homeland Security and transferred to DHS responsibility for immigration enforcement and transferred to ORR the responsibility for "the care and placement of unaccompanied alien children who are in Federal custody by reason of their immigration status." 6 U.S.C. § 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1) ("the care and custody of

---

[2] The *Flores* Settlement Agreement may be found at *Flores v. Sessions*, No. 85-cv-4544 (C.D. Cal. Feb. 2, 2015) (ECF No. 101).  DHS has promulgated regulations to implement the relevant terms of the Agreement, and those regulations are currently the subject of litigation in *Flores*.  Such regulations, however, were not in effect at the time the events in this lawsuit.

all unaccompanied alien children, including responsibility for their detention, where appropriate, shall be the responsibility of" ORR.  The term "placement" means "the placement of an unaccompanied alien child in either a detention facility or an alternative to such a facility."  6 U.S.C. § 279(g)(1).

The term "unaccompanied alien child" is defined as a child who: (1) "has no lawful immigration status in the United States"; (2) "has not attained 18 years of age"; and (3) "with respect to whom . . .  there is no parent or legal guardian in the United States [or] no parent or legal guardian in the United States is available to provide care and physical custody."  6 U.S.C. § 279(g)(2).  Under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), "[e]xcept in the case of exceptional circumstances, any department or agency . . . shall transfer the custody of such child to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien child."  8 U.S.C. § 1232(b)(3).  ORR must place unaccompanied alien children "in the least restrictive setting that is in the best interest of the child."  8 U.S.C. 1232(c)(2)(A).  However, ORR "shall not release such children upon their own recognizance."  6 U.S.C. § 279(2)(B).  ORR may place children in a secure facility, but only if it determines that the child poses a danger to herself or others, or has been charged with a criminal offense.  8 U.S.C. § 1232(c)(2)(A).

In addition to the TVPRA, the *Flores* Settlement Agreement governs the care and custody of alien minors.  The *Flores* Settlement Agreement "sets out nationwide policy for the detention, release, and treatment of minors in the custody of the INS."  *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) (citing *Flores* Settlement Agreement ¶ 9); *see also Bunikyte v. Chertoff*, 2007 WL 1074070, *2 (W.D. Tex. Apr. 9, 2007) ("[I]t appears that *Flores* is the only binding legal standard directly applicable to the detention of minor aliens by the United States

government.").  The Ninth Circuit has held that the *Flores* Settlement Agreement applies to both accompanied and unaccompanied minors.  *Flores*, 828 F.3d at 905.

Pursuant to the *Flores* Settlement Agreement, "[w]ithin five days of arrest, [DHS] must transfer the minor to a non-secure, licensed facility; but 'in the event of an emergency or influx of minors into the United States,' [DHS] need only make the transfer as expeditiously as possible.'" *Flores*, 828 F.3d at 902-03 (quoting *Flores* Agreement ¶ 12).[3]  The *Flores* Settlement Agreement "does not address the potentially complex issues involving the housing of family units and the scope of parental rights for adults apprehended with their children[,]" and it "does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'"  *Id.* at 906; *see also United States v. Dominguez-Portillo*, 2018 WL 315759, *9 (W.D. Tex. Jan. 5, 2018) ("The *Flores* Settlement does not provide that parents are entitled to care for their children if they were simultaneously arrested by immigration authorities[.]").

Moreover, the *Flores* Settlement Agreement does not address or provide any rights to adult detainees, including rights of release.  *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759 at *14-15 ("nor does [the *Flores* Settlement Agreement] express a preference for releasing parents charged with criminal offenses."); *Bunikyte*, 2007 WL 1074070 at *16 ("The *Flores* settlement, however, does not provide any particular rights or remedies for adult detainees. . . . [It] deals with the rights of minor aliens in detention, not with the rights of detained parents.").  "The fact that the Settlement grants [alien minors] a right to preferential release to a parent over others does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice."  *Flores*, 828 F.3d at 908; *Bunikyte*, 2007 WL 1074070 at *16 ("Though family unification is a stated goal of both the

---

[3] DHS's regulations provide additional protections to minors by requiring that they must be detained "in the least restrictive setting appropriate to the juvenile's age and special needs . . . ." 6 C.F.R. § 115.14(a).

*Flores* Settlement and U.S. immigration policy generally, nothing in the settlement agreement expresses a preference for releasing parents who have violated immigration laws.").

### III.   Executive Branch Directives Regarding Immigration Enforcement

During the time period relevant to Plaintiffs' lawsuit, there were several executive branch directives relating to the enforcement of Federal immigration laws.  In January 2017, Executive Order No. 13767 ("EO 13767") directed Federal agencies to comply with Federal statutes and regulations regarding the detention of aliens pending criminal and removal proceedings. Specifically, EO 13767 stated that "[i]t is the policy of the executive branch to . . . detain individuals apprehended on suspicion of violating Federal or State law, including Federal immigration law, pending further proceedings regarding those violations[.]"  EO 13767 § 2(b), 82 Fed. Reg. 8793 (Jan. 30, 2017).  Further, EO 13767 directed that DHS "shall immediately take all appropriate actions to ensure the detention of aliens apprehended for violations of immigration law pending the outcome of their removal proceedings or their removal from the country to the extent permitted by law."  *Id*. § 6.  EO 13767 further declared that "[i]t is the policy of the executive branch to end the abuse of parole and asylum provisions currently used to prevent the lawful removal of removable aliens[,]" *id*. § 11, and directed that DHS "shall take appropriate action to ensure that parole authority under section 212 of the INA (8 U.S.C. § 1182(d)(5)) is exercised only on a case-by-case basis in accordance with the plain language of the statute, and in all circumstances only when an individual demonstrates urgent humanitarian reasons or a significant public benefit derived from such parole."  *Id*. § 11(d).

On April 11, 2017, DOJ issued guidance to all Federal prosecutors regarding a renewed commitment to criminal immigration enforcement, and directed that Federal law enforcement prioritize the prosecution of several immigration offenses, including illegal entry under 8 U.S.C. § 1325.  *See* U.S. Department of Justice, *Memorandum on Renewed Commitment to Criminal*

*Immigration Enforcement* (April 11, 2017), available at https://www.justice.gov/opa/press-release/file/956841/download.

On April 6, 2018, a Presidential Memorandum was issued entitled "Ending 'Catch and Release' at the Border of the United States and Directing Other Enhancements to Immigration Enforcement." 83 Fed. Reg. 16179 (Apr. 13, 2018). This Presidential Memorandum noted that EO 13767 had "directed the Secretary of Homeland Security to issue policy guidance regarding the appropriate and consistent use of detention authority under the Immigration and Nationality Act (INA), including termination of the practice known as 'catch and release,' whereby aliens are released in the United States shortly after their apprehension for violations of our immigration laws." The Presidential Memorandum also directed the Secretary of Homeland Security to submit a report, in coordination with other executive branch officials, "detailing all measures their respective departments have pursued or are pursuing to expeditiously end 'catch and release' practices." *Id.*

On April 6, 2018, to address an increase in unauthorized individuals crossing the Southwest border into the United States, the Attorney General issued a "Memorandum for Federal Prosecutors along the Southwest Border." U.S. Department of Justice, *News Release: Attorney General Announces Zero-Tolerance Policy for Criminal Illegal Entry* (April 6, 2018), DOJ 18-417, 2018 WL 1666622 (hereinafter referred to as "Zero Tolerance Memorandum"). The Attorney General's memorandum directed Federal prosecutors along the Southwest border to immediately accept for prosecution, to the extent practicable, all § 1325(a) offenses referred for prosecution.

Consistent with EO 13767, the April 2018 Presidential Memorandum, and the Attorney General's Zero Tolerance Memorandum, DHS referred for prosecution to the Department of Justice adult aliens – including those traveling with children – who unlawfully entered the United

States on the Southwest border in violation of § 1325 or other criminal immigration statutory provisions.  Compl. ¶¶ 34-48.  Plaintiffs' alien minor children were transferred to ORR.  *Id.*

## ARGUMENT

I.      **Plaintiffs' Claims Are Barred By the FTCA's Due Care and Discretionary Function Exceptions**

### A.  Overview of the Due Care and Discretionary Function Exceptions

The United States is immune from liability absent its consent, and the terms of that consent define a court's jurisdiction to entertain a suit against the United States.  *See United States v. Mitchell*, 445 U.S. 535, 538 (1980).  Absent a specific waiver, sovereign immunity bars the suit for lack of subject matter jurisdiction.  *See FDIC v. Meyer*, 510 U.S. 471, 475-76 (1994).  The terms of the United States' consent to be sued as delineated in the FTCA define the parameters of a federal court's jurisdiction to entertain such suits.  *See United States v. Orleans*, 425 U.S. 807, 814 (1976) ("[T]he United States can be sued only to the extent that it has waived its immunity[.]").  The FTCA is a limited waiver of sovereign immunity that authorizes suits against the United States for:

> money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

The FTCA's waiver of sovereign immunity is subject to several exceptions set forth in 28 U.S.C. § 2680.  These exceptions "are designed to protect certain important governmental functions and prerogatives from disruption."  *Molzof v. United States*, 502 U.S. 301, 311 (1992); *see also Richards v. United States*, 369 U.S. 1, 13 n.28 (1962).

Foremost among these exceptions are those in section 2680(a), which provides that the waiver of sovereign immunity set forth at 28 U.S.C. § 1346(b)(1) shall not apply to:

> Any claim [1] based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or [2] based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a) (bracketed numerals added).

The first part of section 2680(a) sometimes is referred to as the FTCA's "due care exception," and the second part often is referred to as the "discretionary function exception."  As the legislative history of section 2680(a) states:

> The bill is not intended to authorize a suit for damages to test the validity of or provide a remedy on account of such discretionary acts even though negligently performed and involving an abuse of discretion.  Nor is it desirable or intended that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort.

H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10.

The due care exception "bars tests by tort action of the legality of statutes and regulations."  *Dalehite v. United States*, 346 U.S. 15, 33 (1953).  "Where government employees act pursuant to and in furtherance of regulations, resulting harm is not compensable under the act[.]"  *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957) (citations omitted); *Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970) (claim arising out of "the enforcement of 'rules and regulations'" barred by due care exception).  The due care exception was created because the "Tort Claims Act did not contemplate that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort.  Nor did it contemplate a remedy for damages sustained by reason of the application of invalid laws or regulations." *Dupree*, 247 F.2d at 824 (citation and internal quotation marks omitted); *see also Dalehite*, 346 U.S. at 42 ("[T]he [agency's] regulations, for instance, could not be

10

attacked by claimants under the Act by virtue of the first phrase of s 2680(a).”); *Powell v. United States*, 233 F.2d 851, 855 (10th Cir. 1956) (due care exception barred claims based upon “acts of the agents and representatives of the Government . . .  performed under and in furtherance of the regulation . . . even though the regulation may be irregular or ineffective”).  Thus, the FTCA precludes a claim based upon the actions of employees carrying out a statutory or regulatory scheme.

Regarding the discretionary function exception, the Supreme Court has enunciated a two-prong test for determining whether a claim is barred by the discretionary function exception. First, courts must determine whether the act “involv[es] an element of judgment or choice.” *United States v. Gaubert*, 499 U.S. 315, 322 (1991).  Pursuant to this first prong, courts look to whether “a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow[.]”  *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).   To survive a motion to dismiss, the plaintiff must identify a statute, regulation or policy that is both specific and mandatory, as well as conduct that violates said statute, regulation, or policy.  *See Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009) (citation omitted).

Second, if the conduct does involve judgment or choice, courts then look to “whether that judgment is of the kind that the discretionary function exception was designed to shield.” *Gaubert*, 499 U.S. at 322-23 (quoting *Berkovitz*, 486 U.S. at 536). “The basis for the discretionary function exception was Congress’ desire to ‘prevent judicial “second-guessing”’ of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.”  *Berkovitz*, 486 U.S. at 536-537 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984)).  Thus, the exception protects “governmental actions and decisions based on considerations of public policy.”  *Gaubert*, 499 U.S. at 323 (citation and

internal quotation marks).  It is immaterial whether various policy considerations actually were considered, because "[t]he focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis."  *Gaubert*, 499 U.S. at 325; *see also Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000) ("Notably, to be protected from suit, the challenged decision 'need not actually be grounded in policy considerations' so long as it is, 'by its nature, susceptible to a policy analysis.'") (quoting *Miller v. United States*, 163 F.3d 591, 593 (9th Cir. 1998)); *Kennewick Irr. Dist. v. United States*, 880 F.2d 1018, 1028 (9th Cir. 1989) (the Government need not "prove that it considered these factors and made a conscious decision on the basis of them").  Furthermore, "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion."  *Gaubert*, 499 U.S. at 324; *Nurse*, 226 F.3d at 1001.  Also, the discretionary function exception applies even if the government's conduct was negligent or an abuse of discretion. *Gaubert*, 499 U.S. at 323.

**B.  The Due Care and Discretionary Function Exceptions Bar Plaintiffs' Claims**

According to Plaintiffs, the Federal government wrongfully "separated each Plaintiff mother from her child while they were detained at various immigration holding centers in Arizona."  Compl. ¶ 5.  Plaintiffs acknowledge, however, that their separations from their minor children stemmed from the executive branch's enforcement of Federal criminal immigration laws.  *See* Compl. ¶¶ 26, 47-48.

Plaintiffs, who entered the United States between ports of entry and thus were amenable to prosecution, *see* Compl. ¶¶ 70-71, 119-121, 171-172, 235-236, 304-305, appropriately do not contest any criminal referrals or charging decisions pursuant to 8 U.S.C. § 1325 or ensuing

criminal custody, because prioritizing enforcement of Federal law and subsequent prosecutorial decisions are classic discretionary functions shielded by the FTCA's discretionary function exception and prosecutorial immunity.[4]   Nor do they challenge their immigration detentions pending their removal proceedings.   *See Ms. L v. ICE*, 302 F. Supp. 3d 1149, 1159 n.3 (C.D. Cal. 2019);[5] *see also W.S.R. v. Sessions*, 318 F. Supp. 3d 1116, 1133 (N.D. Ill. 2018) (noting there is no authority for "the proposition that the substantive due process to family integrity dictates release of the parents (as distinct from reunification).").  Rather, Plaintiffs' claims are based on the separations of Plaintiffs from their minor children because the former were amenable to criminal prosecution pursuant to the execution Federal immigration statutes.  Strict enforcement of the Nation's immigration laws in accordance with Federal statutes renders minor aliens unaccompanied when their parents are unavailable "to provide care and physical custody." 6 U.S.C. § 279(g)(2); 8 U.S.C. § 1232(b)(3).  Thus, because the separations stemmed from the government's execution of its Federal statutory authorities, Plaintiffs' claims are barred by the due care exception.

---

[4] *See Mejia-Mejia v. ICE*, Case No. 18-1445, 2019 WL 4707150, *5 (D.D.C. Sept. 26, 2019) (zero tolerance policy "amounts to exercise of the prosecutorial discretion that Congress and the Constitution confer on the Attorney General"); *see also United States v. Armstrong*, 517 U.S. 456, 464 (1996) ("The Attorney General and United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws."); *General Dynamics Corp. v. United States*, 139 F.3d 1280, 1283 (9th Cir. 1998); *Smith v. United States*, 375 F.2d 243, 247-48 (5th Cir.), *cert. denied*, 389 U.S. 841 (1967).

[5] Plaintiffs assert that they are members of the class that brought suit in *Ms. L v. ICE*. Compl. ¶ 62.  In *Ms. L*, the plaintiffs challenged the government's separation of alien parents and their minor children when both are held in immigration detention and when there has been no showing that the parent is unfit or poses a danger to the child.  *Ms. L*, 302 F. Supp. 3d at 1162. They did not challenge the government's initial separation of parent and child when the parent is arrested for violating the Nation's criminal laws.  *Id.*  Nor did the plaintiffs challenge the decision to detain adult aliens while in removal proceedings for the "sound reasons" that the law calls for mandatory detention with the discretion for parole in strictly limited circumstances.  *Ms. L*, 302 F. Supp. 3d at 1159 n.3.  Rather, the plaintiffs sought re-unification while the parent is in immigration custody.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Particularly instructive is *Welch v. United States*, 409 F.3d 646 (4th Cir. 2005), in which the Fourth Circuit held that the due care exception barred the plaintiff's wrongful detention claim.  The plaintiff, a lawful permanent resident, was detained pursuant to the mandate of 8 U.S.C. § 1226(c)(1)(B).  *Id*. at 649.[6]  An immigration judge then ordered the plaintiff deported to Panama pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), and the plaintiff continued to be detained pursuant to 8 U.S.C. § 1226(c) pending a final removal determination.  *Id*. at 649-50.  While in detention, the plaintiff filed a petition for writ of habeas corpus, which was granted on the ground that his detention under § 1226(c) without a bail hearing violated his Fifth Amendment Due Process rights.  *Id*. at 650.  The plaintiff then filed a claim under the FTCA for false imprisonment, which the district court dismissed as barred by the due care exception.  The Fourth Circuit affirmed the district court's dismissal, holding that the plaintiff's detention pending removal was mandatory under the relevant statute and the government exercised due care in following the statute's prescription.  According to the Fourth Circuit, the due care exception shielded the government's execution of its duties under the statutory scheme, and the fact that plaintiff's detention was later determined to be unconstitutional did not render the due care exception inapplicable.  *Id*. at 652-53.

Moreover, even if the alien minors had not been determined to be "unaccompanied" by virtue of their mothers being amenable to prosecution, the families still would have been separated because Plaintiffs were detained during the pendency of their removal proceedings.  As discussed above, *see* Legal Framework, Section II, compliance with the *Flores* Settlement Agreement precluded detention of alien minors in adult detention facilities, and thus necessitated

---

[6] Pursuant to 8 U.S.C. § 1226(c)(1)(B), the "Attorney General shall take into custody any alien who . . . is deportable by reason of having committed an offense covered in section . . . 1227(a)(2)(C) of this title."

the minors' release to relatives, friends, or placement in foster care.[7]  The court in *Bunikyte*

observed that to comply with the *Flores* Settlement Agreement, ICE must "releas[e] the children

to adult relatives not in custody, adult friends designated by their parents, or even state-operated

foster care[.]".  *Bunikyte*, 2007 WL 1074070 at *16.  Accordingly, under any of the options

described in *Bunikyte,* separation of parent and child occurs.

      Plaintiffs also cannot avoid the due care exception by arguing that the government

somehow could have exercised discretion at some point to avoid the challenged separations.  For

the due care exception to apply, the government need only be authorized by statute or regulation

to take the course of action that caused the harm.  In *Borquez v. United States*, 773 F.2d 1050

(9th Cir. 1985), two plaintiffs drowned and one was injured as they attempted to walk across a

diversion dam.  The plaintiffs alleged that the government was negligent in its maintenance of

the dam.  However, responsibility for the care and maintenance of the dam was transferred to a

water-users' association pursuant to a Federal statute, which provided that:

> Whenever any legally organized water-users' association or irrigation district
> shall so request, the Secretary of the Interior is *authorized, in his discretion*, to
> transfer to such water-users' association or irrigation district the care, operation,
> and maintenance of all or any part of the project works, subject to such rules and
> regulations as he may prescribe.

43 U.S.C. § 499 (emphasis added).  The Ninth Circuit held the due care exception barred any

claim based on the Federal government's decision to transfer such maintenance responsibility,

---

[7]  The district court in *Ms. L* recognized that another option to address the influx of arriving aliens with children – family detention facilities – was "limited."  *Ms. L.*, 310 F. Supp. 3d at 1139.  According to the district court in *Ms. L*, "[g]overnment counsel represented to the Court that the "total capacity in [family] residential centers" was "less than 2,700."  *Id*. at 1139. Even if there was sufficient capacity at family detention facilities, detention of family units still would need to comply with the *Flores* Settlement Agreement.  Although the Flores Settlement Agreement is currently the subject of litigation, neither the Agreement itself nor judicial decisions interpreting it during the time relevant to this case permitted extended detention of minors, either accompanied or unaccompanied.

1   because such decision was authorized by Federal statute.  *Borquez*, 773 F.2d. at 1053.[8]  Thus, as

2   relevant to the instant suit, even if Federal statutes arguably gave the government the ability to

3   exercise discretion that could have avoided Plaintiffs' harms, the due care exception nevertheless

4   applies.  In any event, EO 13767 expressly instructed DHS to exercise its statutory authority to

5   detain aliens during the pendency of their immigration proceedings.

6          Nor can Plaintiffs avoid the due care exception by arguing that the government erred in

7   interpreting Federal law to determine the minor aliens to be "unaccompanied minor children."  6

8   U.S.C. § 279(g)(2); 8 U.S.C. § 1232(b)(1).  The Ninth Circuit has stated unequivocally that a

9   challenge to an agency's interpretation of a statute as "arbitrary or contrary to law may not be

10  tested in an action under the FTCA.  The legislative history of the FTCA makes it clear that

11  Congress did not intend that 'the constitutionality of legislation, or the legality of a rule or

12  regulation should be tested through the medium of a damage suit for tort.'"  *Baie v. Sec'y of*

13  *Defense*, 784 F.2d 1375, 1376-77 (9th Cir.), *cert. denied*, 479 U.S. 823 (1986) (citing H.R. Rep.

14  No. 1287, 79th Cong., 1st Sess., 6 (1945)).  Thus, in this Circuit, any claims under the FTCA that

15  necessarily turn on a plaintiff's challenge to the manner in which an agency interpreted a Federal

16  statute are categorically barred by 28 U.S.C. § 2680(a).

17         Even in Circuits where courts permit an inquiry into whether an agency exercised "due

18  care" in its interpretation of the statute or regulation at issue, the due care exception still applies

19  when at the time of such interpretation there existed no controlling legal authority clearly

20  precluding that particular interpretation.  *See Nwozuzu v. United States*, 712 Fed. App'x 31, 33

21  (2d Cir. 2017) (because of "legal uncertainty" at the time, the Government's interpretation of the

_____

      [8] *Accord Doe v. DiGenova*, 779 F.2d 74, 88 n.26 (D.C. Cir. 1985) (actions authorized by
regulations protected by due care exception); *Powell v. United States*, 233 F.2d 851, 855 (10th
Cir. 1956) (actions taken pursuant to and in furtherance of regulations protected by the due care
exception).

derivative citizenship statute at section 321(a) of the INA as requiring lawful permanent resident ("LPR") status protected by the due care exception); *Doe v. Stephens*, 851 F.2d 1457, 1462 (D.C. Cir. 1988 (decision by VA to follow regulations that had invalidated by statute protected by due care exception, because the agency could not be faulted for its "failure to predict the precise statutory interpretation that led [a court] to reject the agency's" understanding of that statute).  At the time of the challenged separations in this action, there was no authority clearly contrary to alien minors whose parents were amenable to criminal prosecution being unaccompanied alien children.  Rather, precedent in this context permits a broad interpretation of what it means for a parent to be unavailable to "provide care and physical custody."  *See D.B.*, 826 F.3d at 734 (court of appeals upheld determination that minor was "unaccompanied alien child" and transfer to ORR custody notwithstanding that minor actually lived with mother in their family home, because mother's lack of fitness precluded her from being able to "provide what is necessary for the child's health, welfare, maintenance, and protection" and thus was not "available"); *accord Dominguez-Portillo*, 2018 WL 315759 at *6 (addressing the issue of parental rights while an adult alien is detained and noting "the lack of clearly established parental rights in these circumstances and under case law.").[9]

Finally, Plaintiffs allege that during their approximately two-month separations, "the government provided only limited information to each mother about her child's whereabouts and well-being and afforded only minimal opportunities for each mother and child to communicate[.]"  Compl. ¶ 5; *see also* Compl. ¶ 58.  However, the due care exception's bar of

---

[9] Notably, even though the district court in *Ms. L* found there to be a likelihood that the separation of families while adult aliens were in immigration detention violated the plaintiffs' substantive Due Process rights, the court acknowledged that one of the children was rendered unaccompanied as a result of her mother being placed in immigration detention.  *Ms. L*, 310 F. Supp. 3d at 1138.

Plaintiffs' claims based upon the physical separations of alien parents and children likewise bars any other claims that are inextricably tied to such physical separations, including Plaintiffs' challenges to limited communications between and about family members while the adult aliens were in secure detention facilities.  *See Sloan v. H.U.D.*, 236 F.3d 756, 762 (D.C. Cir. 2001) (claims that are "inextricably tied" or "inextricably linked" to the conduct protected by section 2680(a) are also barred).  This is so because the harms from the allegedly lacking communications are a direct consequence of the physical separations.  *See Moore v. Valder*, 65 F.3d 189, 196-97 (D.C. Cir. 1995) (claims not "sufficiently separable" from those protected by § 2680(a) are also barred); *Johnson v. U.S. Dep't of Interior*, 949 F.2d 332, 339 (10th Cir. 1991) (claims that cannot be considered apart from each other are both barred); *Ostera v. United States*, 769 F.2d 716, 718 (11th Cir. 1985) (same).  Moreover, any challenge to the frequency of communications between and about separated family members is barred by the discretionary function exception.  Plaintiffs have identified no mandatory directives prescribing in specific terms the regularity with which detained alien adults must be permitted to communicate with their children.  Further, claims relating to the conditions of one's detention in a secure facility are in essence a challenge to discretionary, policy-based decision-making regarding conditions of confinement that is shielded by the discretionary function exception.  *See Antonelli v. Crow*, No. 08–261, 2012 WL 4215024, *3 (E.D. Ky. Sept. 19, 2012) (citing cases in which myriad conditions of confinement claims barred by the discretionary function exception).

Further, Plaintiffs allege that the government failed to adequately track alien minors who were separated from their parents because the computer tracking systems within DHS were inadequately designed or did not sufficiently interface with other systems.  *See* Compl. ¶¶ 54, 64-67.  Because Plaintiffs do not allege that these alleged deficiencies caused their separations or

hindered their reunifications, such alleged tracking failures are of no moment.[10]  In any event, an agency's decisions regarding the design and maintenance of its computer systems and databases is a policy-based discretionary function involving, among other things, considerations of how to "allocate resources among various objectives." *Cruz v. United States*, 684 F. Supp. 2d 217, 224 (D.P.R. 2010) (dismissing claim that VA negligently designed and maintained inadequate computer systems and safeguards).  As such, any challenge by Plaintiffs to the government's allegedly deficient tracking systems is barred by the discretionary function exception.  *See also Campos v. United States*, 888 F.3d 724, 733 (5th Cir. 2018) (deficiencies in computer database system that failed to reveal immigration status protected by discretionary function exception); *Smith v. United States*, Case No. 2:11–cv–00616, 2014 WL 4638918, *4 (S.D. Ohio Sept. 16, 2014) (design of computer system involved balancing user needs with limited resources and thus was shielded by exception).

## II.  No Private Person Analog Exists for the Enforcement of Federal Immigration Law or the Conditions of Confinement of Detainees

FTCA jurisdiction exists only if a plaintiff alleges "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1); 28 U.S.C. § 2674 (FTCA allows for tort recovery against United States only "in the same manner and to the same extent as a private individual under like circumstances.").  The provision is known as the "private analog" requirement.  Because only the Federal government has the authority to enforce the Nation's

---

[10] Notably, four of the five Plaintiffs were reunified with their children within the thirty-day period ordered by the court in *Ms. L.  See* Compl. ¶¶ 105, 156, 213-218, 360.  Although Plaintiff O.A. was not reunified until sometime later with L.A., L.A. was living with a family member.  Compl. ¶ 264.

immigration laws and applicable state law does not impose liability on private persons for failing to enforce Federal law, no private analog exists here.

The FTCA "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA [even] in the performance of activities which private persons do not perform." *United States v. Olson*, 546 U.S. 43, 46 (2005) (internal quotation marks omitted).  It does not waive sovereign immunity for claims against the United States based on governmental "action of the type that private persons could not engage in and hence could not be liable for under local law." *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) (internal quotation marks omitted); *Liranzo v. United States*, 690 F.3d 78, 86 (2d Cir. 2012).

Only the Federal government is in the position, and has the authority, to enforce the Nation's immigration laws.  As discussed *supra*, Plaintiffs' alleged harms stem from the Federal government's decision to enforce the Nation's immigration laws.  Such enforcement resulted in referrals for criminal prosecution and the immigration detention of alien adults during removal proceedings, thereby rendering the alien minors "unaccompanied alien children" which, by operation of law, resulted the separation of the adults and their children.  The United States has not waived its sovereign immunity for such decisions to enforce Federal law because such decisions have no private person counterpart.  *See Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 537 (1st Cir.1997) (holding that claimed failure of Secretary of Transportation and Federal Aviation Administration to take enforcement action was not conduct for which private individual could be held liable, and thus did not give rise to a FTCA action); *see also Elgamal v. United States*, 2015 WL 13648070 at *5 (D. Ariz. July 8, 2015) (recognizing that "immigration matters" are "an inherently governmental function"), *aff'd by Elgamal v. Bernacke*, 714 Fed. App'x 741 (9th Cir. 2018).

1

2

Furthermore, even if considered separately from the executive branch's decision to enforce Federal law, any determination that Plaintiffs' minor children were rendered "unaccompanied alien children" because their parents were amenable to criminal prosecution or subsequently subject to immigration detention in secure adult detention facilities and thus not "available to provide care and physical custody" also is non-cognizable under the FTCA.  Any such determination is an immigration-related function exclusively vested in the Federal government for which there is no private person analog.

3

4

5

6

7

8

9

The Second Circuit's opinion in *Akutowicz v. United States*, 859 F.2d 1122, 1125-26 (2d Cir. 1988), is particularly instructive.  *Akutowicz* involved a citizen who challenged the Department of State's wrongful revocation of his U.S. citizenship.  *Id.* at 1124.  The Department of State initiated a five-year investigation into whether Akutowicz had expatriated himself under the provisions of § 349(a)(1) of the INA, 8 U.S.C. § 1481(a)(1) (1982).  *Id.* at 1123.  The Department of State determined that he did, and therefore revoked his U.S. citizenship.  *Id.*  Akutowicz appealed the revocation, and the Department's Board of Appellate Review reversed the Department's decision and reinstated Akutowicz's citizenship.  *Id.* at 1124.  Akutowicz then filed suit under the FTCA alleging, *inter alia*, that the State Department negligently deprived him of his citizenship.  *Id.*

10

11

12

13

14

15

16

17

18

19

20

Applying the familiar standard that "for liability to arise under the FTCA, a plaintiff's cause of action must be 'comparable' to a 'cause of action against a private citizen' recognized in the jurisdiction where the tort occurred," *id*. at 1125 (quoting *Chen v. United States*, 854 F.2d 622 (2d Cir.1988)), the Second Circuit held that no such private person analogy existed.  In particular, the Court held that:

21

22

23

24

25

26

27

28

> [A]s to certain governmental functions, the United States cannot be held liable, for no private analog exists. [Q]uasi-legislative or quasi-adjudicative action by an agency of the federal government is action of the type that private persons could not engage in and hence could not be liable for under local law.

21

*Id.* (quoting *C.P. Chemical Co. v. United States*, 810 F.2d 34, 37-38 (2d Cir.1987) (citations and internal quotation marks omitted); *see also Jayvee Brand v. United States*, 721 F.2d 385, 390 (D.C. Cir.1983).  That the State Department allegedly erred in its interpretation and application of the pertinent provisions of the INA was of no moment.  The Second Circuit held that "the withdrawal of a person's citizenship constitutes a quasi-adjudicative action for which no private analog exists." *Id.* at 1126.  Accordingly, it affirmed the dismissal of the FTCA action for lack of subject matter jurisdiction.

The Ninth Circuit likewise has held that there is no private person analog to the Federal government's administration and enforcement of the Nation's immigration laws.   In *Bhuiyan v. United States*, 2017 WL 2837023 (D.N.Mar.I. June 30, 2017), the plaintiff, a citizen of Bangladesh residing in a U.S. territory, brought suit under the FTCA alleging that the Federal government improperly classified his immigration status, resulting in the plaintiff being placed in removal proceedings.  Relying on *Akutowicz*, the district court dismissed the FTCA claims on the ground that there is no private person analog for the alleged duty of the government to accurately administer Federal immigration benefits.  *Id.* at *4.  The Ninth Circuit affirmed the dismissal of the action, holding that "there is, as a general matter, no private analogue to governmental withdrawal of immigration benefits."  *Bhuiyan v. United States*, 772 Fed. App'x 564, 565 (9th Cir. 2019); *see also Elgamal*, 714 Fed. Appx. at 742 ("[B]ecause no private person could be sued for anything sufficiently analogous to the negligent denial of an immigration status adjustment application, that claim must be dismissed as well.").[11]

---

[11]   *See also Figueroa v. United States*, 139 F.Supp.2d 138, 142 (E.D.N.Y.2010) (dismissing FTCA claim for negligent issuance of passport for lack of a private analog); *Mazur v. United States*, 957 F. Supp. 1041, 1042–43 (N.D.Ill.1997) (in matters relating to the naturalization of aliens, "only the United States has the power to act," and, "[a]ccordingly . . . there is no private analog under state law"); *accord Appleton v. United States*, 180 F. Supp. 2d 177, 185 (D.D.C. 2002) ("Reviewing applications for the purpose of determining whether the

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Moreover, a private person analog for Plaintiffs' claims is lacking because "[p]rivate persons cannot establish facilities to detain other persons – only the government can, either on its own or through a governmental contractor." *McGowan v. United States*, 825 F.3d 118, 127(2d Cir. 2016). Notably, Plaintiffs do not contest the lawfulness of their immigration detention; rather they claim that family members should have been detained together. In other words, Plaintiffs challenge *where* and *with whom* they were detained. There can be no private person analog, though, for claims challenging where or with whom one's immigration detention occurs because such decisions regarding the location and terms of detention cannot be performed by private persons. *See McGowan*, 825 F.3d at 126-127 (wrongful confinement claim for Federal prisoner who moved from halfway house to a Special Housing Unit in a detention facility was not cognizable under the FTCA because decisions relating to location and conditions of detention cannot be made by private persons).

**III.     Plaintiffs Have Not Stated An Actionable Claim Under Arizona Law**

Plaintiffs contend that the acts or omissions giving rise to their claims occurred in Arizona, and thus Arizona law applies to this action pursuant to 28 U.S.C. § 1346(b)(1). Compl. ¶¶ 5, 10. Under Arizona law, a person has not suffered a legally cognizable injury when that person is lawfully incarcerated and the alleged harm flows solely from the incarceration. *Muscat by Berman v. Creative Innervisions LLC*, 244 Ariz. 194, 199 (2017).

In *Muscat*, the plaintiff, whose mental disabilities included a severe lack of impulse control, was on probation for inappropriately touching a minor. The plaintiff was living in a group home that was responsible for his supervision. Left unattended at an event, the plaintiff followed a minor into a restroom. The plaintiff was charged with attempted kidnapping and

---

applicant is authorized to import ammunition is exclusively a governmental function governed by federal regulations administered by BATF without any private counterpart.").

attempted molestation, pleaded guilty, and was sentenced to several years in prison.  He brought

a negligence claim against the company responsible for his supervision, alleging that its

negligent supervision failed to prevent him from committing the crimes which resulted in his

incarceration.  He claimed to suffer harm including mental and emotional anguish and anxiety as

a result of the incarceration.  *Id*. at 196-97, 198.  The court held that while the company had a

duty under Arizona law to supervise him, the plaintiff did not suffer a legally cognizable injury

because he experienced no injury distinct from the consequences of his lawful incarceration.  *Id*.

at 198.  The court explained, "[n]o properly-convicted criminal has a legally protected interest in

being free from the inherent consequences of the resulting sentence[,]" and "recognizing the

legal consequences of a ward's criminal conduct as a legally cognizable injury would distort the

long-established public policy of personal accountability for criminal behavior."  *Id*. at 198-99.

 *Muscat* bears directly on Plaintiffs' claims in this action.  Plaintiffs crossed into the

United States in criminal violation of Federal immigration law, and, consequently, were

amenable to criminal prosecution and also subject to immigration detention.  As a direct

consequence, their minor children were separated from Plaintiffs pursuant to the dictates of

Federal statutes.  Plaintiffs allege that the separations themselves caused their harms.  Compl. ¶¶

1, 2, 26, 27.  Because the alleged harms were a direct consequence of the lawful detention of

Plaintiffs, no legally cognizable injury under Arizona law exists.

## CONCLUSION

 For the foregoing reasons, this action must be dismissed for lack of subject matter

jurisdiction.

Dated: December 23, 2019     Respectfully Submitted,


         JAMES G. TOUHEY, JR.
         Director, Torts Branch

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*s/Phil MacWilliams*
PHILIP D. MACWILLIAMS
Trial Attorney
D.C. Bar No. 482883
THEODORE W. ATKINSON
Trial Attorney
D.C. Bar No. 458963
E-mail: phil.macwilliams@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4285

Attorneys for the United States of America

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

**Diana E. Reiter**
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019
**David B. Rosenbaum**
OSBORN MALEDON, P.A.
2929 North Central Avenue
21st Floor
Phoenix, AZ 85012-2793

*s/Phil MacWilliams*
PHILIP D. MACWILLIAMS
Attorney for United States of America