David B. Rosenbaum, 009819
Emma J. Cone-Roddy, 034285
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
(602) 640-9000
drosenbaum@omlaw.com
econe-roddy@omlaw.com

*(Additional Counsel for Plaintiffs Listed on the Following Page)*

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

C.M., on her own behalf and on behalf of her minor child, B.M.; L.G., on her own behalf and on behalf of her minor child, B.G.; M.R., on her own behalf and on behalf of her minor child, J.R.; O.A., on her own behalf and on behalf of her minor child, L.A.; and V.C., on her own behalf and on behalf of her minor child, G.A.,

            Plaintiffs,

v.

United States of America,

            Defendant.

No. 2:19-cv-05217-SRB

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

(Oral Argument Requested)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Diana Reiter*
Erik Walsh*
Lucy McMillan*
Kathryn Campbell**
Kaitlyn Schaeffer*
Arnold & Porter Kaye Scholer LLP
250 West 55th Street |
New York, New York 10019-9710
212-836-8000
diana.reiter@arnoldporter.com
erik.walsh@arnoldporter.com
lucy.mcmillan@arnoldporter.com
katie.campbell@arnoldporter.com
kaitlyn.schaeffer@arnoldporter.com

R. Stanton Jones*
Daniel F. Jacobson*
Emily Reeder*
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
202-942-5000
stanton.jones@arnoldporter.com
daniel.jacobson@arnoldporter.com
emily.reeder@arnoldporter.com

Jonathan H. Feinberg*
Kairys, Rudovsky, Messing, Feinberg
  & Lin LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
215-925-4400
jfeinberg@krlawphila.com

Mark Fleming*
Katherine Melloy Goettel*
National Immigrant Justice Center
224 S. Michigan Ave., Suite 600
Chicago, IL 60604
312-660-1370
mfleming@heartlandalliance.org
kgoettel@heartlandalliance.org

Trina Realmuto*
Emma Winger*
American Immigration Council
1318 Beacon Street, Suite 18
Brookline, MA 02446
857-305-3600
trealmuto@immcouncil.org
ewinger@immcouncil.org

Mary Kenney*
Claudia Valenzuela*
American Immigration Council
1331 G Street NW, Suite 200
Washington, DC 20005
202-507-7512
202-742-5619
mkenney@immcouncil.org
cvalenzuela@immcouncil.org

*Admitted pro hac vice
**Pro hac vice application forthcoming

## **Table of Contents**

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................. 2

STANDARD OF REVIEW ................................................................................. 5

ARGUMENT ...................................................................................................... 5

    I.      The Due Care Exception Does Not Apply Here ..................................... 5

           A.     The Due Care Exception Applies Only Where a Statute or Regulation Mandated the Official's Course of Conduct and the Official Exercised "Due Care" .......................................... 6

           B.     No Statute or Regulation Mandated the Family Separations Here ............................................................................. 7

                  1.     No Statute or Regulation Mandates Family Separation When a Parent Is Merely "Amenable to Prosecution" ........................................................................ 8

                  2.     No Statute or Regulation Mandated Separation When the Government Detained Plaintiffs Pending Removal Proceedings ...................................................... 10

                  3.     Defendant's Arguments Are Contrary to Its Actions and Would Virtually Eliminate FTCA Claims in the Immigration Context ................................. 12

           C.     Even if a Statute or Regulation Had Mandated the Separations, Defendant Does Not Establish that the Government Exercised "Due Care" ............................................. 13

    II.     The Discretionary Function Exception Does Not Apply Here .............. 14

    III.    Plaintiffs' Tort Claims Satisfy the Broad Private Analog Inquiry ........ 17

    IV.    Plaintiffs State Claims for Intentional Infliction of Emotional Distress and Negligence Under Arizona Law ....................................... 20

CONCLUSION ................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Akutowicz v. United States*,
   859 F.2d 1122 (2d Cir. 1988) ................................................................. 20

*Appleton v. United States*,
   180 F. Supp. 2d 177 (D.D.C. 2002) ....................................................... 20

*Avalos-Palma v. United States*,
   2014 WL 3524758 (D.N.J. July 16, 2014) ............................................. 18

*Baie v. Sec'y of Defense*,
   784 F.2d 1375 (9th Cir. 1986) ................................................................... 9

*Bhuiyan v. United States*,
   2017 WL 2837023 (D.N. Mar. I. June 30, 2017) .................................... 20

*Borquez v. United States*,
   773 F.2d 1050 (9th Cir. 1985) ................................................................. 12

*Broadbent by Broadbent v. Broadbent*,
   907 P.2d 43 (Ariz. 1995) ......................................................................... 19

*Buchanan v. United States*,
   915 F.2d 969 (5th Cir. 1990) ............................................................. 6, 11

*Bunikyte v. Chertoff*,
   2007 WL 1074070 (W.D. Tex. Apr. 9, 2007) ............................... 9, 10, 11

*Chen v. United States*,
   854 F.2d 622 (2d Cir. 1988) .................................................................... 19

*Dalehite v. United States*,
   346 U.S. 15 (1953) .............................................................................. 9, 12

*Dupree v. United States*,
   247 F.2d 819 (3d Cir. 1957) ...................................................................... 9

*Elgamal v. United States*,
   2015 WL 13648070 (D. Ariz. July 8, 2015) ........................................... 20

*Fazaga v. Fed. Bureau of Investigation*,
   916 F.3d 1202 (9th Cir. 2019) ................................................................. 15

*Ferguson v. United States*,
2016 WL 4793180 (S.D. Cal. Sept. 14, 2016) ......................................................... 6

*Figueroa v. United States*,
739 F. Supp. 2d 138 (E.D.N.Y. 2010).................................................................... 20

*Firebaugh Canal Water Dist. v. United States*,
712 F.3d 1296 (9th Cir. 2013)................................................................................ 17

*Flores v. Lynch*,
212 F. Supp. 3d 907 (C.D. Cal. 2015).................................................................... 11

*Flores v. Sessions*,
2018 WL 4945000 (C.D. Cal. July 9, 2018) .......................................................... 10

*Flores v. Sessions*,
No. 85-cv-4544 (C.D. Cal. Feb. 2, 2015)....................................................... 7, 10, 11

*Galvin v. Hay*,
374 F.3d 739 (9th Cir. 2004) ................................................................................. 15

*Garcia-Feliciano v. United States*,
2014 WL 1653143 (D.P.R. Apr. 23, 2014) ......................................................... 7, 12

*Gonzalez v. United States*,
2013 WL 942363 (C.D. Cal. Mar. 11, 2013) ........................................... 6, 7, 11, 13

*Hatahley v. United States*,
351 U.S. 173 (1956) ............................................................................................. 13

*Hill v. Safford Unified Sch. Dist.*,
952 P.2d 754 (Ariz. Ct. App. 1997) ...................................................................... 19

*Hydrogen Tech. Corp. v. United States*,
831 F.2d 1155 (1st Cir. 1987) .......................................................................... 13, 14

*Indian Towing Co. v. United States*,
350 U.S. 61 (1955) ............................................................................................... 17

*Jacinto-Castanon de Nolasco v. U.S. Immigration & Customs Enf't*,
319 F. Supp. 3d 491 (D.D.C. 2018) ................................................................. 8, 9, 16

*Kwai Fun Wong v. Beebe*,
2006 WL 977746 (D. Or. Apr. 10, 2006).................................................................. 6

*Liranzo v. United States*,
690 F.3d 78 (2d Cir. 2012) ........................................................................ 18, 19, 20

*Loumiet v. United States*,
   828 F.3d 935 (D.C. Cir. 2016) ................................................................. 15

*Lyttle v. United States*,
   867 F. Supp. 2d 1256 (M.D. Ga. 2012) .................................................... 13

*Martinez v. United States*,
   2018 WL 3359562 (D. Ariz. July 10, 2018) ............................................ 19

*Mazur v. United States*,
   957 F. Supp. 1041 (N.D. Ill. 1997) ........................................................... 20

*McGowan v. United States*,
   825 F.3d 118 (2d Cir. 2016) ...................................................................... 20

*Moher v. United States*,
   875 F. Supp. 2d 739 (W.D. Mich. 2012) ................................................. 14

*Ms. L. v. Immigration and Customs Enf't*,
   310 F. Supp. 3d 1133 (S.D. Cal. 2018) ................................... 5, 10, 15, 16

*Muscat by Berman v. Creative Innerversions LLC*,
   418 P.3d 967 (Ariz. Ct. App. 2014) ......................................................... 21

*Nurse v. United States*,
   226 F.3d 996 (9th Cir. 2000) ............................................................. 15, 16

*Pankratz v. Willis*,
   744 P.2d 1182 (Ariz. Ct. App. 1987) ....................................................... 18

*Prescott v. United States*,
   973 F.2d 696 (9th Cir. 1992) ................................................................ 6, 13

*Rodriguez v. City of Phoenix*,
   2007 WL 411832 (D. Ariz. Feb. 5, 2007) ............................................... 18

*Ruiz v. United States*,
   2014 WL 4662241 (E.D.N.Y. Sept. 18, 2014) ................................... 16, 17

*Sanders v. Alger*,
   394 P.3d 1083 (Ariz. 2017) ....................................................................... 19

*Sea Air Shuttle Corp. v. United States*,
   112 F.3d 532 (1st Cir. 1997) .................................................................... 19

*Stewart v. United States*,
   486 F. Supp. 178 (C.D. Ill. 1980) ............................................................ 13

*Tekle v. United States*,
    511 F.3d 839 (9th Cir. 2007) ...................................................................... 18

*Troxel v. Granville*,
    530 U.S. 57 (2000) ........................................................................................ 16

*United States v. Gaubert*,
    499 U.S. 315 (1991) ...................................................................................... 15

*United States v. Muniz*,
    374 U.S. 150 (1963) ...................................................................................... 17

*United States v. Olson*,
    546 U.S. 43 (2005) ........................................................................................ 17

*W.S.R. v. Sessions*,
    318 F. Supp. 3d 1116 (N.D. Ill. 2018) ....................................................... 16

*Watson v. United States*,
    179 F. Supp. 3d 251 (E.D.N.Y. 2016) ................................................... 7, 13

*Welch v. United States*,
    409 F.3d 646 (4th Cir. 2005) ............................................................ *passim*

*Wolfe v. Strankman*,
    392 F.3d 358 (9th Cir. 2004) ......................................................................... 5

*Xue Lu v. Powell*,
    621 F.3d 944 (9th Cir. 2010) ....................................................................... 18

## Statutes

6 U.S.C. § 279 ....................................................................................................... 8

8 U.S.C. § 1182 ................................................................................................... 12

8 U.S.C. § 1226 ..................................................................................................... 9

8 U.S.C. § 1232 ..................................................................................................... 8

28 U.S.C. § 2674 ................................................................................................. 17

28 U.S.C. § 2680 .............................................................................................. 5, 6

43 U.S.C. § 499 ................................................................................................... 12

1

## **Other Authorities**

2

8 C.F.R. § 235.3 .................................................................................... 12

3

Fed. R. Civ. P. 12(b)(1) ......................................................................... 5

4

H. REP. NO. 109-79 (2006) ................................................................... 9

5

*Memorandum for Fed. Prosecutors Along the Southwest Border*, DEP'T

6
    OF JUSTICE (Apr. 6, 2018) .......................................................... 3

7

Restatement (Second) of Torts § 700 (1977) ...................................... 18

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

To advance its immigration policy objectives, the government intentionally inflicted severe emotional trauma on children and parents by forcibly separating them for extended periods after they crossed the border. Plaintiffs are five mothers and their young children who fell victim to the government's family separation policy. The government traumatized Plaintiffs by separating them for months, failing to provide them with information about each other's whereabouts, failing to facilitate adequate communication between mothers and children, and failing to implement any tracking system to ensure that families could be reunited. The Federal Tort Claims Act ("FTCA") provides individuals a right to compensation where the United States government commits tortious acts that cause harm, and Plaintiffs have a right to compensation for the extraordinary harms they suffered.

Defendant does not dispute that Plaintiffs properly plead that the government intentionally inflicted emotional trauma on Plaintiffs, or that the family separation policy generally, and in its application to Plaintiffs, violated the U.S. Constitution. Instead, Defendant argues that the FTCA's "due care exception" bars this action. But the due care exception applies only where a "statute or regulation" mandates a specific course of action that a federal officer must follow. That is not the case here. No statute or regulation mandated the separation of Plaintiffs. Indeed, Defendant fails to explain why family separation purportedly was required by law in the spring of 2018, but was not required by law before or after. Nor does Defendant explain why Plaintiffs were ultimately reunited and released from detention if the law required that they be separated, or how President Trump could end family separation by issuing an Executive Order. Defendant also fails to address statements by government officials emphasizing that the government separated families not because the law required it, but as a policy to deter other immigrants from entering the United States. Family separation was never a legal *mandate*. It was a cruel and unconstitutional policy *choice* that the administration adopted and then scaled back when the public outcry

1  grew too loud. The due care exception also does not apply because the government

2  did not exercise due care in implementing family separation. Government agents

3  forcibly ripped Plaintiff children from their mothers' arms, laughed at the mothers,

4  and failed to give the mothers information about their children.

5      Defendant's remaining arguments that the discretionary function exception and

6  private analog doctrine bar Plaintiffs' claims, and that Plaintiffs fail to state a claim

7  under Arizona law, rest on mischaracterizations of the law and facts. The motion to

8  dismiss should be denied.

9                                  **BACKGROUND**

10     Curbing the number of people seeking asylum has been a central focus of the

11  current administration's immigration policy. Compl. ¶ 21. In March 2017,

12  Department of Homeland Security ("DHS") officials announced that DHS was

13  considering a policy of separating parents and children who cross the border illegally,

14  to deter families from migrating to the United States. *Id.* ¶ 28. In July 2017, the

15  government began separating families in a pilot program in U.S. Customs and Border

16  Protection's ("CBP") El Paso Sector. *Id.* ¶ 22. In December 2017, after the pilot

17  program ended, Department of Justice ("DOJ") and DHS officials exchanged a memo

18  titled "Policy Options to Respond to Border Surge of Illegal Immigration." *Id.* ¶ 23.

19  Two of the policy options were titled: "Increased Prosecution of Family Unit Parents"

20  and "Separate Family Units." *Id.* Under the prosecution policy, "parents would be

21  prosecuted for illegal entry . . . and the minors present with them would be placed in

22  [U.S. Department of Health and Human Services ("HHS")] custody as

23  [unaccompanied alien children]." *Id.* Similarly, the separation policy would call for an

24  announcement that adults would be placed in detention while children would be

25  placed in HHS custody. *Id.* The memo asserted that "the increase in prosecutions

26  would be reported by media and it would have substantial deterrent effect." *Id.*

27     On April 6, 2018, President Trump issued a memo titled "Ending 'Catch and

28  Release' at the Border of the United States and Directing Other Enhancements to

                                       - 2 -

Immigration Enforcement," directing various government agencies to submit a report detailing measures to end "'catch and release' practices." *Id.* ¶ 24. "Catch and Release" refers to prior administrations' practice of allowing asylum-seekers, like Plaintiffs, to live in the community, rather than be held in custody, while awaiting immigration hearings. *Id.* ¶ 25. This practice is in accord with immigration law. *Id.*

Also on April 6, 2018, then Attorney General Jeff Sessions issued a memo directing U.S. Attorneys along the Southwest Border "to the extent practicable, and in consultation with [DHS]—to adopt immediately a zero-tolerance policy," which would "supersede any existing policies" and which called for the prosecution of all persons who crossed the U.S. border between ports of entry. *Memorandum for Fed. Prosecutors Along the Southwest Border*, DEP'T OF JUSTICE (Apr. 6, 2018). To further its goal of deterrence, the government began separating families regardless of whether the parents were criminally prosecuted. Compl. ¶ 34. None of the Plaintiffs were ever charged with any crime. *Id.*

High-level officials admitted that family separation was a "new policy" designed to deter future asylum-seekers. *Id.* ¶ 31. When asked about the separation policy, John Kelly, President Trump's then Chief of Staff, responded that "a big name of the game is deterrence. . . . It . . . would be a tough deterrent." *Id.* Steven Wagner, Assistant Secretary of HHS, told reporters: "We expect that the *new policy* will result in a deterrence effect, we certainly hope that parents stop bringing their kids on this dangerous journey and entering the country illegally." *Id*. (emphasis added). Although internal and external sources warned that family separation would cause severe emotional harm to children and parents, the administration forged ahead because traumatizing migrant families was the very point. *Id.* ¶¶ 27-28.

In May 2018, federal officers forcibly separated each Plaintiff mother from her child while they were detained at immigration holding centers in Arizona. *Id.* ¶¶ 5, 70-71, 76-83, 127-31, 183-90, 239-49, 312-27. The children ranged in age from five

1    to twelve, and were separated from their mothers for two-and-a-half to four months.

2    *Id.* ¶¶ 11-15, 70, 105-06, 119, 156, 171, 218, 235, 287-88, 304, 359-61.

3         The manner in which immigration officers separated Plaintiffs was cruel and

4    inhumane. An immigration officer laughed and said "Happy Mother's Day" upon

5    telling Plaintiff C.M. that the government would be taking her five-year-old son, B.M.

6    *Id.* ¶¶ 71-72. Several days later, officers pried B.M away from his mother as he

7    grabbed at her clothes. *Id.* ¶¶ 36-46; 76-83. Plaintiff L.G. watched immigration

8    officers yank a boy from his mother's arms before officers forced her to hand over her

9    seven-year-old daughter and sobbed as they led her daughter away. *Id.* ¶¶ 127-32.

10   Immigration officers told Plaintiff M.R. and other mothers that officers would take

11   their children and the mothers would not know where to find them, before ordering

12   M.R.'s twelve-year-old son, J.R., to leave the cell so that he could bathe. *Id.* ¶¶ 182-

13   90. J.R. never returned; instead, M.R. watched through a window as immigration

14   officers led him away. *Id.* ¶ 190-91. Immigration officers told Plaintiff O.A. she

15   would be separated from her five-year-old daughter, L.A., shortly after they arrived at

16   the immigration detention center. *Id.* ¶¶ 239-42. O.A. begged the officers not to

17   separate them to no avail: the next morning immigration officers forcibly pulled a

18   sobbing L.A. away from her mother and took her away. *Id.* ¶¶ 244-49. Plaintiff V.C.

19   was forced to bathe her six-year-old son, G.A., while immigration officers mocked

20   crying parents and children. *Id.* ¶¶ 314-17. As officers separated families, V.C. tried

21   to comfort her son but she could barely speak through her tears. *Id.* ¶¶ 319-23. V.C.

22   watched as officers led G.A away and out of her sight. *Id.* ¶¶ 326-27. The government

23   transferred four of the children to shelters thousands of miles away in New York. *Id.*

24   ¶¶ 99, 193, 281, 324.

25         Throughout the separations, the government provided only limited information

26   to each mother about her child's whereabouts and well-being, and afforded only

27   minimal opportunities for each mother and child to communicate, sometimes at the

28   mothers' expense. *Id.* ¶¶ 84, 87, 91, 133, 136, 142, 145-51, 183, 195-202, 207, 250,

257-58, 261, 328, 348, 351, 358. The government exacerbated the trauma by failing to take even basic steps to record which children belonged with which parents, delaying reunification. *Id.* ¶¶ 53-58, 63-67. All Plaintiffs suffered, and continue to suffer, substantial trauma. *Id.* ¶¶ 109-18, 161-70, 223-34, 292-303, 365-86.

After widespread public condemnation of the family separation policy, President Trump signed an Executive Order on June 20, 2018 purporting to end it. *Id.* ¶ 59. The Order said it was the "policy of this Administration to maintain family unity, including by detaining alien families together where appropriate and consistent with law and available resources." *Id.* ¶ 60. On June 26, a court issued an injunction in *Ms. L. v. Immigration and Customs Enforcement*, 310 F. Supp 3d 1133 (S.D. Cal. 2018), finding a likelihood that the separations were unconstitutional and requiring reunification of all families (with exceptions not relevant here). Plaintiffs were reunited and released from detention prior to the completion of their immigration proceedings. Compl. ¶¶ 11-15, 108, 160, 222, 291, 364.

On February 11, 2019, Plaintiffs submitted administrative claims to DHS and HHS, which were deemed denied when the government did not respond within six months. *Id.* ¶ 9.

## STANDARD OF REVIEW

The government moves to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Where, as here, defendant makes a facial attack on jurisdiction, the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in plaintiffs' favor. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (citations omitted).

## ARGUMENT

### I.   The Due Care Exception Does Not Apply Here

Defendant contends that Plaintiffs' claims are barred by the FTCA's "due care exception" ("DCE") set forth in 28 U.S.C. § 2680(a), because the harms caused by the government's forced separations purportedly "stemmed from the government's

execution of its Federal statutory authorities" concerning criminal and immigration law. Dkt. 18 at 2, 13. Defendant's position is incorrect for multiple reasons.

### A. The Due Care Exception Applies Only Where a Statute or Regulation Mandated the Official's Course of Conduct and the Official Exercised "Due Care"

The DCE bars claims "based upon an act or omission of an employee of the Government, exercising due care, in the execution of a *statute or regulation*, whether or not such *statute or regulation* be valid." 28 U.S.C. § 2680(a) (emphases added). The government bears the burden to prove this exception applies. *See Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992) ("We thus hold explicitly that the United States bears the burden of proving the applicability of one of the exceptions to the FTCA's general waiver of immunity.").

Courts in this Circuit apply a two-part test set forth in *Welch v. United States*, 409 F.3d 646, 652 (4th Cir. 2005), to determine whether the DCE applies. *See, e.g.*, *Ferguson v. United States*, 2016 WL 4793180, at *7 (S.D. Cal. Sept. 14, 2016); *Kwai Fun Wong v. Beebe*, 2006 WL 977746, at *7-8 (D. Or. Apr. 10, 2006). First, the government must show that the "*statute or regulation* in question *specifically pr[e]scribes* a course of action for an officer to follow." *Welch*, 409 F.3d at 652; *see also Gonzalez v. United States*, 2013 WL 942363, at *3-4 (C.D. Cal. Mar. 11, 2013) (DCE applies where a statute "require[s] a mandatory course of action"). In other words, the exception applies only when the official was "executing the *mandates* of" a statute or regulation. *Welch*, 409 F.3d at 651-52 (emphasis added); *see also Buchanan v. United States*, 915 F.2d 969, 970-71 (5th Cir. 1990) (DCE applies only to "actions mandated by statute or regulation"). Second, if a statute or regulation mandated an official's course of action, the government must show that the official "exercised due care in following the dictates of th[e] statute or regulation." *Welch*, 409 F.3d at 653; *see also Buchanan*, 915 F.2d at 970-71.

Here, Defendant fails to identify any statute or regulation that mandated the separation of Plaintiffs upon their entry into the United States. This failure is fatal to

- 6 -

the government's defense. *See, e.g.*, *Gonzalez*, 2013 WL 942363, at *3-4 ("Because Plaintiff's detention was not the result of a statutorily prescribed course of action," his claims were not barred by the DCE.); *Watson v. United States*, 179 F. Supp. 3d 251, 270-71 (E.D.N.Y. 2016) (concluding the DCE, which "applies to situations where a statute or regulation *requires* an action to be taken," was inapplicable because the statutes the government cited did not *mandate* the conduct at issue—detention of plaintiff), *aff'd in part, rev'd in part on other grounds*, 865 F.3d 123 (2d Cir. 2017). Although Defendant cites *Welch*, Dkt. 18 at 14, it ignores this requirement.

Moreover, officials did not exercise "due care" in carrying out the separations. Indeed, Defendant does not even address this factor. Accordingly, the DCE does not bar Plaintiffs' claims.

### B.   No Statute or Regulation Mandated the Family Separations Here

The government separated Plaintiffs pursuant to its *policy* to inflict emotional distress upon Plaintiffs and other migrants with the goal of deterring others from seeking asylum in the United States. Compl. ¶¶ 1-2, 23, 28(c), 31-33. The DCE does not apply where a policy, rather than a statute or regulation, mandated the conduct at issue. *Garcia-Feliciano v. United States*, 2014 WL 1653143, at *4 n.8 (D.P.R. Apr. 23, 2014) (citing *Welch*, 409 F.3d at 652) (DCE "would not apply here . . . because a policy—not a statute or regulation—pr[e]scribed the deputy's conduct").

Defendant contends that Plaintiffs' separations were mandated because (1) Plaintiff mothers were "amenable to prosecution," even though they were never criminally prosecuted, Dkt. 18 at 12-14; and (2) the *Flores* Agreement mandated separation "because [Plaintiff mothers] were detained during the pendency of their removal proceedings." *Id.* at 14-15. Neither argument has merit. Further, Defendant's arguments that separation was mandatory are belied by the President's purported termination of the family separation policy and Plaintiffs' reunification and release.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1.    No Statute or Regulation Mandates Family Separation When a Parent Is Merely "Amenable to Prosecution"

Defendant asserts that Plaintiff children were "unaccompanied minors" because their mothers were "amenable to prosecution" and therefore unable "to provide care and physical custody." Dkt. 18 at 5, 13 (citing 6 U.S.C. § 279(g)(2); 8 U.S.C. § 1232(b)(3)). But Plaintiffs were separated upon arrival in the United States, not as a result of any criminal prosecution. Indeed, Plaintiff mothers were never even charged. Compl. ¶ 34.

Defendant thus contends that Plaintiff mothers were "unable to provide care and physical custody" to their children—requiring the government to take their children away—not because they were *actually* charged with a crime, but merely because it was *possible* the mothers *could have been* charged with a misdemeanor immigration offense. That is an alarming and incorrect proposition.

Indeed, there is nothing in the statutes Defendant cites—or any other authority—to support its suggestion that being "amenable to prosecution" makes a parent "unavailable" thus rendering her child "unaccompanied," and thereby requiring the government to take the child away.[1] To the contrary, court decisions interpreting "unaccompanied alien child" defeat Defendant's argument. In *Jacinto-Castanon de Nolasco v. U.S. Immigration & Customs Enforcement*, 319 F. Supp. 3d 491, 495 n.2 (D.D.C. 2018), plaintiff was separated from her children and pled guilty to a misdemeanor charge of illegal entry. The court concluded that, even though the plaintiff mother was prosecuted (unlike Plaintiffs), her children were "not true

---

[1] Neither of the statutes Defendant cites provides that a parent who is "amenable to prosecution" is "unavailable" thus rendering her child "unaccompanied." Dkt. 18 at 13. The Homeland Security Act of 2002 defines the term "unaccompanied alien child" ("UAC") as including a child "with respect to whom—(i) there is no parent or legal guardian in the United States; or (ii) no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g). The Trafficking Victims Protection Reauthorization Act ("TVPRA"), which governs transfer of UACs to the care of the Office of Refugee Resettlement ("ORR"), uses the same definition. 8 U.S.C. § 1232(g).

unaccompanied minors within the meaning of the [TVPRA]." *Id.* In other words, the government could not designate the children unaccompanied minors simply because it forcibly separated them from their mother.[2] *Id.* at 500.

Similarly, in *Bunikyte v. Chertoff*, which Defendant cites, *see* Dkt. 18 at 14-15, the court observed that a Congressional committee had rejected the definition of "unaccompanied" that Defendant advances here: "Children who are apprehended by DHS while in the company of their parents are not in fact 'unaccompanied' and if their welfare is not at issue, they should not be placed in ORR custody." 2007 WL 1074070, *1-2 (W.D. Tex. Apr. 9, 2007) (citing H. REP. NO. 109-79, at 38 (2006)).[3]

*Welch*—on which Defendant relies, *see* Dkt. 18 at 14—is an entirely different case. There, the plaintiff contended that the United States was liable under the FTCA because his immigration detention under 8 U.S.C. § 1226(c)(1) constituted false imprisonment. 409 F.3d at 649. The Fourth Circuit held that the DCE barred the plaintiff's claims because, unlike Plaintiffs here, a federal *statute* mandated the very action he challenged—his immigration-related detention. Here, no federal *statute* mandated separating Plaintiff mothers from their children.

---

[2] The court also rejected the government's argument that because the plaintiff mother was "in lawful immigration custody" she was "unavailable to provide care and physical custody" for purposes of the TVPRA. *Id.*

[3] Defendant's citation to *Baie v. Sec'y of Defense*, 784 F.2d 1375 (9th Cir. 1986), for the proposition that a "challenge to an agency's interpretation of a statute as 'arbitrary or contrary to law may not be tested'" in an FTCA action, Dkt. 18 at 16, is misplaced. *Baie* did not even address the DCE. *Baie*, 784 F.2d at 1376-77 (the *discretionary function exception* barred a claim based on an agency's interpretation that an implant was excluded as a "prosthetic device" under a statute). And, Defendant's contention that Plaintiffs' case "turns on" the government's interpretation of "unaccompanied minor children" is contrary to Plaintiffs' allegations that the separations stemmed from a policy to intentionally inflict harm on families so as to deter future asylum seekers. *See* Compl. ¶¶ 21-31. Nor do *Dalehite v. United States*, 346 U.S. 15 (1953), or *Dupree v. United States*, 247 F.2d 819 (3d Cir. 1957), support Defendant's argument. Dkt. 18 at 10. Plaintiffs are not challenging "the legality of statutes or regulations" here; indeed, there is no statute or regulation mandating family separation.

1

2

**2.      No Statute or Regulation Mandated Separation When the Government Detained Plaintiffs Pending Removal Proceedings**

3      Next, Defendant argues that the separations were independently mandatory

4   under the Settlement Agreement in *Flores v. Sessions*, No. 85-cv-4544 (C.D. Cal.

5   Feb. 2, 2015) (Dkt. No. 101) (the "*Flores* Agreement"), because Plaintiff mothers

6   "were detained during the pendency of their removal proceedings." Dkt. 18 at 14.

7   Specifically, Defendant asserts that the *Flores* Agreement "precluded the detention of

8   alien minors in adult detention facilities" and "thus necessitated" these separations. *Id.*

9   at 14-15. This argument fails for several reasons.

10      First, the *Flores* Agreement is designed to protect the best interests of children,

11   *see Flores v. Sessions*, 2018 WL 4945000, at *5 (C.D. Cal. July 9, 2018), and it

12   promotes family *unification*. *See Bunikyte*, 2007 WL 1074070, at *16. Defendant's

13   use of *Flores* to justify intentionally harming children turns *Flores* on its head.

14      Second, the *Flores* Agreement is not a statute or a regulation, *see* Dkt. 18 at 4

15   n.2, and, even if it were, Defendant is wrong to suggest that the Agreement

16   "necessitated" family separation. Dkt. 18 at 14-15. Parents may "affirmatively waive

17   their children's rights to prompt release and placement in state-licensed facilities" as

18   Defendant has conceded in other litigation. *Flores*, 2018 WL 4945000, at *4; *Ms. L.*,

19   3:18-cv-000428, Joint Motion Regarding Scope of the Court's Preliminary Injunction

20   (S.D. Cal. July 13, 2018) (Dkt. 105) (agreeing parents can waive children's *Flores*

21   rights to be placed in the "least restrictive setting" in order to remain in custody with

22   their parents). And, as Defendant acknowledges, the *Flores* Agreement—far from

23   mandating separation—permits family detention if it complies with the Agreement's

24   requirements. *See* Dkt. 18 at 15 n.7; *Bunikyte*, 2007 WL 1074070, at *3.

25      Defendant incorrectly relies on *Bunikyte* for its position that "separation of

26   parent and child occurs" because, under the *Flores* Agreement, Immigration and

27   Customs Enforcement ("ICE") "must" release the child from detention. Dkt. 18 at 15.

28   *Bunikyte* does not say that. There, plaintiff children were detained with their parents

- 10 -

in a family detention center and were seeking release, with their parents, because the conditions in the detention center did not comply with *Flores*. *Bunikyte,* 2007 WL 1074070 at *16. In analyzing ICE's options for complying with *Flores*, the court made clear that the children's release from the family detention center—which would have resulted in separation from their parents because the parents would continue to be detained—was "*not* mandated by the *Flores* Settlement language." *Id.* Indeed, the court observed that separating children from their parents and placing them in shelters would *not* be in the "best interests" of the children. *Id.* (emphasis added). *Bunikyte* also found that although "[t]he Settlement expresses a policy preference for the release of minors where possible," such preference "makes no sense when the minor's parents are detained with the child," as "separating the minor Plaintiffs from their parents . . . would be traumatizing and detrimental to them." *Id.* at *3.

Third, immigration officers did not separate Plaintiffs because of the *Flores* Agreement.  Rather, officers separated Plaintiffs pursuant to the family separation policy within a few days of their arrival in the United States, Compl. ¶¶ 70-83, 119-31, 171-90, 235-49, 304-27, well before any of the release or detention provisions of the *Flores* Agreement were implicated. *Flores v. Lynch*, 212 F. Supp. 3d 907, 912-14 (C.D. Cal. 2015), *aff'd in relevant part,* 828 F.3d 898 (9th Cir. 2016) (interpreting the *Flores* Agreement to permit accompanied minors to be held in a family detention center for at least 20 days).

Lastly, Defendant erroneously contends that "[f]or the due care exception to apply, the government need only be authorized by statute or regulation to take the course of action that caused that harm." Dkt. 18 at 15. No court has ever interpreted the DCE to bar FTCA claims whenever officials' conduct was merely "authorized" by stature or regulation. To the contrary, district courts in this Circuit and other courts of appeals have held that the DCE applies only where a statute or regulation "mandated"—*i.e.*, "specifically pr[e]scribed"—the conduct at issue. *See Welch*, 409 F.3d at 652; *Buchanan*, 915 F.2d at 970-71; *Gonzalez*, 2013 WL 942363, at *3-4.

Defendant's reliance on *Borquez v. United States*, 773 F.2d 1050 (9th Cir. 1985), is misplaced. There, the government transferred the maintenance and operation of a dam to a corporation, which was explicitly authorized by statute. *Id*. at 1051-52 (citing 43 U.S.C. § 499). Plaintiffs later brought FTCA claims alleging negligent maintenance and operation of the dam. Because the government's transfer was explicitly authorized by statute (and there was no evidence the transfer was made without due care), a claim challenging the government's failure to maintain the dam "represent[ed] a challenge to the statutory authority of the government to transfer full care, operation and maintenance." *Id.* at 1052. The Ninth Circuit found in favor of the government because the due care exception "bars 'tests by tort action of the legality of statutes and regulations.'" *Id*. (citing *Dalehite*, 346 U.S. at 33). Here, there is no statute expressly authorizing family separation, nor are Plaintiffs challenging the legality of any statute or regulation. *See supra* at n.3.[4]

### 3. Defendant's Arguments Are Contrary to Its Actions and Would Virtually Eliminate FTCA Claims in the Immigration Context

Defendant's assertion that family separation was mandatory also is belied by President Trump's Executive Order purporting to end the family separation policy. *See* Compl. ¶¶ 59-60. If family separation were mandated by statute or regulation then the government presently would be violating the law it claims it must follow. Similarly, the fact that Plaintiffs were eventually transferred to family detention centers, reunited, and released from detention while their immigration proceedings remained pending confirms that no law mandates family separation. *See, e.g.*, *id*. ¶¶ 103-08.[5]

---

[4] To the extent Defendant's DCE argument is based on purported mandates in an Executive Order, Presidential memo, or DOJ memo, *see* Dkt. 18 at 8-9, the DCE does not apply where such documents, and not a statute or regulation, direct the government's course of conduct. *See Garcia-Feliciano*, 2014 WL 1653143, at *4 n.8.
[5] Any notion that separation was mandated by statute or regulation also is inconsistent with DHS's authority to release on parole an individual subject to expedited removal. *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. §§ 235.3(b)(2)(iii), (b)(4)(ii).

If Defendant were correct that the DCE applies whenever the tortious conduct "stemmed from the government's execution of its Federal statutory authorities" concerning criminal and immigration law, Dkt. 18 at 2, 13, virtually any immigration-related FTCA claim would fail, as all of the government's immigration-related activities at least arguably "stem[] from" the government's execution of its statutory authority. Yet, courts have found the DCE inapplicable to FTCA claims arising from the conduct of immigration officers. *See Gonzalez*, 2013 WL 942363, at *4; *Watson*, 179 F. Supp. 3d at 270-71; *Lyttle v. United States*, 867 F. Supp. 2d 1256, 1299-1300 (M.D. Ga. 2012).[6]

## C. Even if a Statute or Regulation Had Mandated the Separations, Defendant Does Not Establish that the Government Exercised "Due Care"

Even if a statute or regulation mandated the separations (and none did), the DCE would not bar Plaintiffs' claims because the government failed to exercise "due care" in "following the dictates of" such mandate. *Welch*, 409 F.3d at 652. When considering whether federal officers acted with due care, "[t]he relevant question is one of reasonableness." *Hydrogen Tech. Corp. v. United States*, 831 F.2d 1155, 1161 (1st Cir. 1987); *see also Hatahley v. United States*, 351 U.S. 173, 181 (1956) ("'Due care' implies at least some minimal concern for the rights of others."). Despite having the burden of proving the DCE applies, *Prescott*, 973 F.2d at 702, Defendant does not even address whether the government exercised due care. In light of Plaintiffs' allegations, any effort to do so would be futile.

The family separation policy reflects an inherent lack of due care. Deliberately traumatizing children and their parents to achieve a policy goal of deterrence is

---

[6] Plaintiffs are not challenging the government's *authority* to execute federal criminal and immigration statutes. Instead, Plaintiffs are challenging the *manner* in which the government executed that authority. *See Stewart v. United States*, 486 F. Supp. 178, 182 (C.D. Ill. 1980) (DCE did not apply where plaintiff was "not attacking the [statute] which authorized the Government to dispose of excess stockpiled asbestos" but rather plaintiff was "attacking the manner in which the sale was made").

1   unavoidably careless. It is not something a "reasonable law enforcement agency

2   [would] have done under [any] circumstances[.]" *Hydrogen Tech. Corp.*, 831 F.2d at

3   1161.

4         What's more, the Complaint is replete with allegations that the government

5   failed to act reasonably or with "minimal concern for the rights of others" in

6   implementing its family separation policy as to Plaintiffs. CBP officers physically

7   ripped two Plaintiff children from their mothers' arms, they mocked and laughed at

8   Plaintiff mothers when the mothers begged the officers not to take their children, and

9   they refused to give Plaintiff mothers information about where their children were

10  being taken at the time of separation. *See, e.g.*, Compl. ¶¶ 72, 83-84, 133, 190, 249-

11  50, 316, 328. For weeks or months, the government failed to give Plaintiff mothers

12  and children any information about each other's whereabouts or well-being, or about

13  when, or if, they would see each other again. *See, e.g.*, *id.* ¶¶ 109, 162, 224, 293, 366.

14  When Plaintiffs finally communicated with each other, officers limited the frequency

15  and length of their communications. *See id.* ¶¶ 87, 148, 151, 154, 197, 200. The

16  government failed to record basic information about Plaintiffs, which prolonged their

17  separation and hampered their ability to communicate. *See id.* ¶¶ 53-59, 153.

18        Because the government did not act reasonably or show a minimal degree of

19  concern for Plaintiffs, the DCE does not apply. At the very least, there is a question of

20  fact as to whether the government failed to exercise due care. *See, e.g.*, *Moher v.*

21  *United States*, 875 F. Supp. 2d 739, 764 (W.D. Mich. 2012) (denying motion to

22  dismiss FTCA claims because factual issue existed as to whether use of force against

23  plaintiff was reasonable).

24  **II.   The Discretionary Function Exception Does Not Apply Here**

25        Plaintiffs allege that Defendant inflicted emotional distress and acted

26  negligently by failing "to record which children belonged with which parents" and

27  providing only limited communication between and information about family

28  members. Compl. ¶¶ 5, 53. Defendant responds that this conduct is protected by the

discretionary function exception ("DFE"), which bars claims based on governmental actions that (1) involve an element of judgment or choice, and (2) involve public policy considerations. Dkt. 18 at 11, 18-19; *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991) (citations omitted).[7] The DFE, however, is inapplicable here because the government does not have the "discretion" to violate the Constitution. *See Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000) ("In general, governmental conduct cannot be discretionary if it violates a legal mandate."); *Fazaga v. Fed. Bureau of Investigation*, 916 F.3d 1202, 1250-51 (9th Cir. 2019) ("[T]he Constitution can limit the discretion of federal officials such that the FTCA's [DFE] will not apply.") (quoting *Galvin v. Hay*, 374 F.3d 739, 758 (9th Cir. 2004)); *Loumiet v. United States*, 828 F.3d 935, 943 (D.C. Cir. 2016) ("We hold that the FTCA's discretionary-function exception does not provide a blanket immunity against tortious conduct that a plaintiff plausibly alleges also flouts a constitutional prescription.").[8]

Plaintiffs allege that the government's "failure to track the children and promptly reunite the families once they were separated violated the constitutional right to family integrity of the persons subject to the policy, including Plaintiffs." Compl. ¶ 68. Indeed, the *Ms. L.* court concluded that the government's tracking failures violated class members' due process rights[9]:

> [T]he government has no system in place to keep track of, provide effective communications with, and promptly produce alien children. The unfortunate reality is that under the present system migrant children are not accounted for with the same efficiency and accuracy as *property*. Certainly, that cannot satisfy the requirements of due process.

---

[7] Defendant also argues that these tortious acts are "inextricably tied" to Plaintiffs' claims based on the initial separations, and therefore are protected by the DCE. Dkt. 18 at 17-18. These acts are not protected by the DCE for the same reasons the separations do not fall within the DCE—they were not mandated by statute or regulation. And, none of the cases Defendant cites for this point address the DCE.

[8] Plaintiffs also allege that the government was negligent in carrying out the separations, *see* Compl. ¶¶ 390-93, but Defendant does not challenge that claim on DFE grounds.

[9] Plaintiffs were members of the *Ms. L* class. Compl. ¶ 62.

- 15 -

Compl. ¶ 57 (quoting *Ms. L.*, 310 F. Supp. 3d at 1144).[10]

The government's misconduct in failing to facilitate communication between families or provide information about each other's whereabouts also violates Plaintiffs' constitutional right to family integrity. *See Jacinto-Castanon de Nolasco*, 319 F. Supp. 3d at 501; *Ms. L.*, 310 F. Supp. 3d at 1145-46; *see generally Troxel v. Granville*, 530 U.S. 57, 65-66 (2000). Thus, because Plaintiffs have plausibly alleged that the communication and tracking failures violated their constitutional rights, the DFE does not apply. *See Nurse*, 226 F.3d at 1002.[11]

Moreover, the government's decisions to limit information, communications, and tracking do not involve the type of policy-based decision-making shielded by the DFE. In *Ruiz v. United States*, 2014 WL 4662241 (E.D.N.Y. Sept. 18, 2014), a father brought intentional infliction of emotional distress ("IIED") and negligence claims arising from CBP's detention of his four-year-old daughter, a U.S. citizen. The court rejected the government's DFE defense, reasoning that CBP officers' "treatment of" the child during her detention "cannot be said to be susceptible to policy analysis." *Id.* at *8. The court could not "discern how deciding to wait fourteen hours before contacting [the child's] parents and to only provide the child with a cookie and a soda over twenty hours could constitute a considered judgment grounded in social, economic, or political policies." *Id.* Rather, CBP's "actions appear more plausibly to

---

[10] Defendant claims the tracking deficiencies did not "hinder[] [Plaintiffs'] reunifications," noting that four Plaintiff families were reunified within the 30-day period ordered in *Ms. L.* Dkt. 18 at 18-19 & n.10. But the harm from the tracking failures manifested well before the reunification date ordered in *Ms. L.*, which was more than two months after the separations here, including by hampering communication between Plaintiff mothers and their children. *See* Compl. ¶¶ 67, 69, 84, 136, 195, 255, 257, 348.

[11] For the same reason, the DFE does not bar Plaintiffs' claims based on the initial separations. In cases considering the constitutionality of the family separation policy, courts have found that plaintiffs were likely to succeed on their claims that separation violated the plaintiffs' due process rights. *See, e.g.*, *Ms. L.*, 310 F. Supp. 3d at 1142-46; *W.S.R. v. Sessions*, 318 F. Supp. 3d 1116, 1124-26 (N.D. Ill. 2018); *Jacinto-Castanon de Nolasco*, 319 F. Supp. 3d at 499-500.

1  be the result of negligence or laziness," and did not "warrant the application of the
2  [DFE]." *Id.* Likewise, the government's failures here "do not involve considerations
3  of public policy." *Id.*

4  **III.    Plaintiffs' Tort Claims Satisfy the Broad Private Analog Inquiry**

5          Defendant erroneously contends that it cannot be liable under the FTCA for
6  IIED or negligence because there is no state tort analog. According to Defendant,
7  "only the Federal government has the authority to enforce the Nation's immigration
8  laws and applicable state law does not impose liability on private persons for failing
9  to enforce Federal law." Dkt. 18 at 19-20. But the Supreme Court has made clear that
10 the private analog doctrine, which provides that the United States is liable "in the
11 same manner and to the same extent as a private individual under like circumstances,"
12 28 U.S.C. § 2674, must be interpreted broadly. *See Indian Towing Co. v. United*
13 *States*, 350 U.S. 61 (1955). The FTCA's requirement that a claim address "*like*
14 circumstances" does not mean "under the *same* circumstances," *id.* at 64 (emphasis
15 added); rather, courts must look "further afield" to find analogous torts relating to the
16 government activity at issue. *United States v. Olson*, 546 U.S. 43, 46 (2005); *see also*
17 *Firebaugh Canal Water Dist. v. United States*, 712 F.3d 1296, 1303 (9th Cir. 2013)
18 (private analog need not be "exactly on point;" it need only be "appropriate"). Here,
19 Plaintiffs have pled facts to support Arizona tort claims that apply in circumstances
20 sufficiently similar to the claims at issue.

21         It is settled law that the United States can be liable for activities over which the
22 federal government has exclusive authority. *See Indian Towing*, 350 U.S. at 69-70
23 (United States could be liable for Coast Guard's failure to maintain a lighthouse
24 despite the government's exclusive authority over such operations); *see also United*
25 *States v. Muniz*, 374 U.S. 150, 159-62, 165-66 (1963) (even though confinement of
26 inmates was uniquely governmental function, negligence actions allowed to proceed);
27 *Tekle v. United States*, 511 F.3d 839, 852 (9th Cir. 2007) ("Even if the conduct entails

28

1    uniquely governmental functions, the court is to examine the liability of private

2    persons in analogous situations.").

3        In the immigration context, courts allow FTCA claims to proceed even though

4    actions of immigration officers are uniquely governmental. In *Xue Lu v. Powell*, 621

5    F.3d 944, 947-50 (9th Cir. 2010), the Ninth Circuit rejected the government's private

6    analog defense and allowed the plaintiffs' IIED claim where an asylum officer

7    conditioned outcomes in the plaintiffs' immigration proceedings on satisfaction of

8    demands for money and sexual favors. *Xue Lu* thus forecloses Defendant's theory that

9    immigration enforcement lacks a private analog. *See also Liranzo v. United States*,

10   690 F.3d 78, 80-81, 94-95 (2d Cir. 2012) (false arrest and imprisonment claims viable

11   where government erroneously detained plaintiff in immigration custody, finding

12   private analog in state tort law allowing claims against private individuals for

13   detention without "legal privilege to do so"); *Avalos-Palma v. United States*, 2014

14   WL 3524758, at *12 (D.N.J. July 16, 2014) (private analog doctrine did not bar

15   claims arising from wrongful deportation).

16       Here, Plaintiffs allege that their injuries arise from the government's forcible

17   removal of their children from their care, as well as its subsequent communication and

18   tracking failures. *See, e.g.*, Compl. ¶¶ 1, 58, 387-88, 391-92. Arizona courts have held

19   private persons liable in tort under analogous circumstances. In *Pankratz v. Willis*, the

20   court upheld a verdict in favor of plaintiff father who asserted an IIED claim against

21   his former in-laws for removing his child from his care. 744 P.2d 1182, 1189 (Ariz.

22   Ct. App. 1987). Arizona courts have also recognized Section 700 of the Restatement

23   of Torts as providing a cause of action to a parent entitled to the custody of a minor

24   child against private parties who remove the child from the parent's care without

25   consent. Restatement (Second) of Torts § 700 (1977); *see Pankratz*, 744 P.2d at 1189,

26   n.6; *see also Rodriguez v. City of Phoenix*, 2007 WL 411832 (D. Ariz. Feb. 5,

27   2007), *aff'd*, 300 F. App'x 514 (9th Cir. 2008). Courts have also allowed IIED claims

28   under the FTCA to proceed in circumstances involving non-consensual family

separation. *See, e.g.*, *Martinez v. United States*, 2018 WL 3359562, at *11-12 (D. Ariz. July 10, 2018) (recognizing viability of plaintiffs' IIED claim where CBP's interrogation of the father included "threaten[ing] to separate his family" and "ensur[ing] that [he] watched the agents transport his family to another location").[12]

Arizona law also recognizes that private persons owe a duty of care when acting in a supervisory capacity analogous to the government's supervision of Plaintiffs here. *See, e.g.*, *Sanders v. Alger*, 394 P.3d 1083, 1086 (Ariz. 2017) (a caregiver owes a duty of reasonable care to their patients); *Broadbent by Broadbent v. Broadbent*, 907 P.2d 43, 50 (Ariz. 1995) (parents owe a duty of care to their children); *Hill v. Safford Unified Sch. Dist.*, 952 P.2d 754, 756 (Ariz. Ct. App. 1997) (schools have a duty not to subject students to risk of harm). Given these recognized responsibilities under Arizona law, the government had a duty to avoid negligently harming Plaintiffs while in government custody. Its failure to do so gives rise to a negligence claim under the FTCA.

The authorities Defendant cites, *see* Dkt. 18 at 20-21, stand for the uncontroversial proposition that the FTCA's immunity waiver does not extend to causes of action based solely on the government's violation of federal regulations. *See Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 537-38 (1st Cir. 1997) (conduct at issue "wholly concern[ed] the [Federal Aviation Administration's] alleged failure to perform its regulatory functions" under federal statutes); *Chen v. United States*, 854 F.2d 622, 626-27 (2d Cir. 1988) (dismissing FTCA claim predicated on government's failure to abide by its own procurement regulations).[13] Plaintiffs' claims are not based on an alleged failure to follow federal regulations.

---

[12] While there is no explicit discussion of the private analog issue in *Martinez*, a court lacks subject matter jurisdiction over an FTCA claim unless the claim satisfies the private analog test. *See Liranzo*, 690 F.3d at 84-85, 93. Because courts must consider subject matter jurisdiction even when the issue is not raised, the *Martinez* court's ruling suggests it found the IIED claim to be an appropriate private analog.

[13] Nor does *McGowan v. United States*, 825 F.3d 118 (2d Cir. 2016), support the contention that there is no private analog here because only governments can establish

- 19 -

Defendant's cases holding that there is no private analog for "quasi-adjudicative actions," Dkt. 18 at 21-22, are also inapplicable. Defendant relies primarily on *Akutowicz v. United States*, 859 F.2d 1122 (2d Cir. 1988). *Id.* In *Liranzo*, the Second Circuit rejected the application of *Akutowicz* to an immigration-related false arrest claim: "But in *Akutowicz*, there was no detention. The only action complained of was the removal of plaintiff's citizenship. Citizenship is a legal status, which only the federal government is capable of altering. A private individual cannot . . . cause injury to another's citizenship. But a private person is of course capable of falsely arresting another." *Liranzo*, 690 F.3d at 96. Likewise, Arizona tort law provides that a private person may be liable for the harms Plaintiffs allege. *See supra* at 18-19.[14]

## IV.   Plaintiffs State Claims for Intentional Infliction of Emotional Distress and Negligence Under Arizona Law

Defendant does not challenge the sufficiency of Plaintiffs' allegations with respect to any element of their IIED and negligence claims under Arizona law. Defendant nevertheless contends that Plaintiffs have not stated a claim because Plaintiffs' harms arise solely from the consequences of their detention. *See* Dkt. 18 at 23-24.  Defendant relies on a case in which the plaintiff sued the group home where

---

detention facilities. Dkt. 18 at 23. That case involved "wrongful confinement"—a claim for prisoners subjected to punitive segregation—and the court merely held that there is no private analog to such a claim. *Id.* at 126.

[14] Defendant's remaining cases are inapposite because they also involve quasi-adjudicative actions, which—unlike the government's actions here—private persons cannot engage in. *See Bhuiyan v. United States*, 2017 WL 2837023, at *4 (D.N. Mar. I. June 30, 2017) (negligent approval of I-360 application), *aff'd*, 772 F. App'x 564 (9th Cir. 2019); *Elgamal v. United States*, 2015 WL 13648070, at *2 (D. Ariz. July 8, 2015) (negligent denial of plaintiff's I-485 adjustment motion), *aff'd sub nom. Elgamal v. Bernacke*, 714 F. App'x 741 (9th Cir. 2018); *Figueroa v. United States*, 739 F. Supp. 2d 138, 142 (E.D.N.Y. 2010) (negligent processing of passport); *Appleton v. United States*, 180 F. Supp. 2d 177, 185 (D.D.C. 2002) (negligent processing of ammunition import applications). The court in *Mazur v. United States* declined to address the private analog argument because it found the plaintiff's action to be time-barred. 957 F. Supp. 1041, 1043 (N.D. Ill. 1997).

1    he resided for leaving him unsupervised, which allegedly led to him committing

2    crimes that resulted in incarceration. *Muscat by Berman v. Creative Innerversions*

3    *LLC*, 418 P.3d 967, 969 (Ariz. Ct. App. 2014). The plaintiff claimed the home's

4    failure to prevent him from committing his crimes caused him to suffer "loss of

5    freedom" and "loss of participation in life's activities." *Id.* at 971.

6         *Muscat* is inapposite, even setting aside that Plaintiffs were not criminally

7    charged and incarcerated. *See* Compl. ¶ 34. The *Muscat* court found that the plaintiff's

8    alleged injuries were not "distinct from the consequences of his prison sentence," and

9    "no properly-convicted criminal has a legally protected interest in being free from the

10   inherent consequences of the resulting sentence." *Muscat*, 418 P.3d at 971. Here, the

11   government's forcible separation of Plaintiffs and its communication and tracking

12   failures are not "inherent consequences" of Plaintiffs' detention.

## CONCLUSION

14        For the foregoing reasons, the Court should deny Defendant's motion.

16        RESPECTFULLY SUBMITTED this 6th day of February, 2020.

17                                          /s/ *David B. Rosenbaum*
                                            David B. Rosenbaum
18                                          OSBORN MALEDON, P.A.
                                            2929 North Central Avenue,
19                                          21st Floor
                                            Phoenix, Arizona 85012-2793

- 21 -

| | | |
|---|---|---|
| 1 | Diana Reiter* | Jonathan H. Feinberg* |
| 2 | Erik Walsh* | Kairys, Rudovsky, Messing, Feinberg |
| | Lucy McMillan* | & Lin LLP |
| 3 | Kathryn Campbell** | The Cast Iron Building |
| 4 | Kaitlyn Schaeffer* | 718 Arch Street, Suite 501 South |
| | Arnold & Porter Kaye Scholer LLP | Philadelphia, PA 19106 |
| 5 | 250 West 55th Street | New York, New | 215-925-4400 |
| | York 10019-9710 | jfeinberg@krlawphila.com |
| 6 | 212-836-8000 | |
| 7 | diana.reiter@arnoldporter.com | Mark Fleming* |
| | erik.walsh@arnoldporter.com | Katherine Melloy Goettel* |
| 8 | lucy.mcmillan@arnoldporter.com | National Immigrant Justice Center |
| | katie.campbell@arnoldporter.com | 224 S. Michigan Ave., Suite 600 |
| 9 | kaitlyn.schaeffer@arnoldporter.com | Chicago, IL 60604 |
| 10 | | 312-660-1370 |
| 11 | R. Stanton Jones* | mfleming@heartlandalliance.org |
| | Daniel F. Jacobson* | kgoettel@heartlandalliance.org |
| 12 | Emily Reeder* | |
| | Arnold & Porter Kaye Scholer LLP | Trina Realmuto* |
| 13 | 601 Massachusetts Avenue, NW | Emma Winger* |
| 14 | Washington, DC 20001 | American Immigration Council |
| | 202-942-5000 | 1318 Beacon Street, Suite 18 |
| 15 | stanton.jones@arnoldporter.com | Brookline, MA 02446 |
| | daniel.jacobson@arnoldporter.com | 857-305-3600 |
| 16 | emily.reeder@arnoldporter.com | trealmuto@immcouncil.org |
| 17 | | ewinger@immcouncil.org |
| 18 | | Mary Kenney* |
| 19 | | Claudia Valenzuela* |
| | | American Immigration Council |
| 20 | | 1331 G Street NW, Suite 200 |
| 21 | | Washington, DC 20005 |
| | | 202-507-7512 |
| 22 | | 202-742-5619 |
| 23 | | mkenney@immcouncil.org |
| | | cvalenzuela@immcouncil.org |
| 24 | | *Attorneys for Plaintiffs* |
| 25 | * Admitted pro hac vice | |
| | ** Pro hac vice application forthcoming | |
| 26 | | |
| 27 | | |
| 28 | | |