JAMES G. TOUHEY, JR.
Director, Torts Branch
PHILIP D. MACWILLIAMS
Trial Attorney
D.C. Bar No. 482883
THEODORE W. ATKINSON
Trial Attorney
D.C. Bar No. 458963
E-mail: phil.macwilliams@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4285

Attorneys for the United States of America

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| C.M., on her own behalf and on behalf of her minor child, B.M.; L.G., on her own behalf and on behalf of her minor child, B.G.; M.R., on her own behalf and on behalf of her minor child, J.R.; O.A. on her own behalf and on behalf of her minor child, L.A.; and V.C., on her own behalf and on behalf of her minor child, G.A., <br><br> Plaintiffs, <br><br> v. <br><br> United States of America, <br><br> Defendant. | Case no. 2:19-CV-05217-SRB <br><br> **REPLY IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION TO DISMISS** |

On December 23, 2019, Defendant United States of America filed a motion to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Dkt. # 18 ("MTD"). On February 6, 2020, Plaintiffs filed an opposition to the motion to dismiss. Dkt. # 19 ("Opp."). In response to Plaintiffs' opposition and in further support of the United States' motion to dismiss, the United States submits this reply.

# ARGUMENT IN REPLY

## I.  Plaintiffs' Claims Are Barred by the FTCA's Due Care and Discretionary Function Exceptions

It is undisputed that each of the Plaintiffs illegally entered the United States between ports of entry. *See* Compl. ¶¶ 70-71, 119-121, 171-172, 235-236, 304-305. Their unlawful entries occurred during a period when all such criminal acts were to be referred by the Department of Homeland Security ("DHS") to the Department of Justice ("DOJ") for prosecution under 8 U.S.C. § 1325(a), amongst other criminal immigration statutes, and federal prosecutors had been directed to accept for prosecution all § 1325(a) offenses to the extent practicable. MTD at 8; Opp. at 3. Moreover, Executive Order No. 13767 had directed federal agencies to strictly comply with federal statutes and regulations regarding the detention of aliens pending criminal prosecution for illegal entry and removal proceedings. MTD at 7-9; Opp. at 3.

Plaintiffs claim that the government wrongfully separated them from their children following their illegal entries, and inappropriately failed to reunite parent and child while Plaintiffs were detained during their removal proceedings. In its opening brief, the United States demonstrated that the due care and discretionary function exceptions of the Federal Tort Claims Act ("FTCA") bar Plaintiffs' claims. Plaintiffs' opposition advances no persuasive arguments to the contrary.

### A. The separations of Plaintiffs and their children stemmed from the government's enforcement of federal immigration statutes.

Plaintiffs do not challenge the government's criminal referrals or charging decisions. Nor do Plaintiffs challenge their immigration detentions pending their removal proceedings. Rather, they argue that the due care exception is inapplicable because no federal statute or regulation "mandated the separation of families upon their entry into the United States." Opp. at

6-7.[1]  But this argument fundamentally misunderstands the exception.  The due care exception inquiry turns on whether government employees *acted* pursuant to, or in furtherance of, the authority afforded by statute, not, as Plaintiffs insist, whether a statute mandated their *alleged harm*s.  *See Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957) ("Where government employees act pursuant to and in furtherance of regulations, *resulting harm* is not compensable under the act[.]") (emphasis added; citations omitted).  The government acted pursuant to its authority under 8 U.S.C. § 1325(a) to refer Plaintiffs for prosecution based on their unlawful entries and transferred Plaintiffs' children to HHS custody pursuant to the TVPRA, 8 U.S.C. § 1232(b)(3), once they were determined to be unaccompanied alien children ("UACs").  Accordingly, the due care exception bars Plaintiffs' suit.

Plaintiffs' reliance on *Welch v. United States*, 409 F.3d 646 (4th Cir. 2005), is unavailing.  As established in the United States' opening brief, *Borquez v. United States*, 773 F.2d 1050 (9th Cir. 1985), not *Welch*, is the controlling precedent in the Ninth Circuit.[2]  Under *Borquez*, for the due care exception to apply, the government need only be *authorized* by statute or regulation to take the course of action that caused the alleged harm.  MTD at 15-16.  Thus, even if the government could have exercised discretion not to refer Plaintiffs for prosecution or to release them from immigration detention, the due care exception nevertheless applies.  That is so because the government was *authorized* by federal statutes to refer Plaintiffs for prosecution for illegal entry and to detain Plaintiffs during the pendency of their removal proceedings.  MTD at 3-4. Once the government exercises such statutory authority, alien adults and children must be

---

[1] *See also id.* at 9 ("no federal *statute* mandated separating Plaintiff mothers from their children") (emphasis in original); *id.* at 12 ("there is no statute expressly authorizing family separation").

[2] Plaintiffs cite only two unpublished district court cases in support of their assertion that "[c]ourts in this Circuit apply a two-part test set forth in *Welch*[] to determine whether the DCE applies."  Opp at 6.  Neither of these unpublished decisions cited *Borquez*, let alone demonstrated that their analysis could be reconciled with *Borquez*.

separated because the government may not hold children in secure adult detention facilities. MTD at 6, 14-15. Notably, Plaintiffs concede in their opposition that they "are not challenging the government's *authority* to execute federal criminal and immigrations statutes." Opp. at 13, n.6 (emphasis in original). This candid concession dooms Plaintiffs' lawsuit.

Moreover, even if *Welch*'s two-part test were the law in this Circuit, the due care exception still would bar Plaintiffs' claims. Under *Welch*, the due care exception applies when "the statute or regulation in question specifically pr[e]scribes a course of action for an officer to follow[,]" and, "the officer exercised due care in following the dictates of that statute or regulation." *Welch*, 409, F.3d at 652. As relevant to Plaintiffs' claims, execution of the TVPRA, 8 U.S.C. § 1232(b)(3), required DHS to transfer Plaintiffs' children to HHS custody once they were determined to be UACs, 6 U.S.C. § 279(g). MTD at 5, 13. Plaintiffs do not dispute that transfer of their children pursuant to the TVPRA caused the physical separations. Accordingly, the separations were a direct result of the government following the dictates of 8 U.S.C. § 1232(b)(3).

Implicitly recognizing that their argument for avoiding the due care exception is foreclosed, Plaintiffs challenge the government's classification of Plaintiffs' children as UACs. Opp. at 8. Ninth Circuit precedent is clear, however, that a plaintiff cannot mount a challenge under the FTCA to the manner in which an agency interpreted a federal statute. MTD at 16 (citing *Baie v. Sec'y of Def.*, 784 F.2d 1375, 1376-77 (9th Cir. 1986), *cert. denied*, 479 U.S. 823 (1986)). Plaintiffs claim—in a footnote—that *Baie* is irrelevant because it did not involve the due care exception. Opp. at 9 n.3. Plaintiffs read *Baie* too narrowly. The issue presented in *Baie* was whether the plaintiff could challenge under the FTCA an agency's interpretation of a federal statute. *Baie*, 784 F.2d at 1376. Relying on the legislative history relating to the due care exception, the Ninth Circuit stated unequivocally that "Congress did not intend that 'the

4

constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort.'" *Id*. at 1376-77 (citing H.R. Rep. No. 1287, 79th Cong., 1st Sess., 6 (1945); *see also* Hearings on H.R. 5373 and H.R. 6463 Before the House Committee on the Judiciary, 77th Cong., 2d Sess., 28, 33 (1942)). Accordingly, the Court of Appeals held that the agency's "interpretation of the statute is a plainly discretionary administrative act the 'nature and quality' of which Congress intended to shield from liability under the FTCA." *Id*. at 1377. Thus, any claims under the FTCA that necessarily turn on a plaintiff's challenge to the manner in which the government interpreted a federal statute are barred.

Further, at the time of the government's interpretation of the Homeland Security Act ("HSA"), there was no controlling legal authority clearly precluding the children's classifications as UACs. MTD at 16-17. Plaintiffs cite a single district court case, which was decided months *after* the separations at issue, Opp. at 8 (citing *Nolasco v. ICE*, 319 F. Supp. 3d 491, 495 (D.D.C. 2018)), and comments made in a House Appropriations Committee report, *id*. at 9 (citing H.R. No. 109-79, at 39 (2006)), which was related to a later appropriations bill considered by Congress years after the passage of the HSA, the statute which defines the term UAC. *See Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011) (no weight afforded to a later Congress' interpretation of statute). Plaintiffs do not, however, identify any controlling legal authority that at the relevant time precluded an alien minor's classification as a UAC when a parent was to be referred for prosecution as a result of illegal entry into the United States and transferred to federal criminal custody, and federal prosecutors were directed to prioritize the prosecution of all § 1325(a) offenses. Rather, case law at that time supported a broad interpretation of UAC. MTD at 17 (citing, *e.g*., *D.B. v. Cardall*, 826 F.3d 721, 734) (4th Cir. 2016)).

With respect to the second part of the *Welch* test, Plaintiffs argue that "officials did not exercise due care in carrying out the separations." Opp. at 7; *see also* Opp. at 13-14. A failure to

exercise due care occurs only if government officials "carried out their responsibilities in an inappropriate manner, or in any way deviated from the statute's requirements." *Welch*, 409 F.3d at 652. There was no failure of due care here. Plaintiffs do not allege that DHS deviated from the statutory dictates of the TVPRA in transferring custody of the alien minors to HHS. And merely following a statute or regulation that is later determined to be invalid as applied itself cannot constitute a lack of due care. Nor can Plaintiffs avoid the due care exception by alleging that CBP officers were insensitive to their circumstances. Opp. at 14. The conduct that Plaintiffs' claims are based upon—the separations of Plaintiffs and their children—resulted from the government's enforcement of federal statutes.[3] Even if government employees were unsympathetic in executing their statutory duties, as Plaintiffs allege, the due care exception still applies.

**B. The government's compliance with the *Flores* Settlement Agreement inescapably entails family separations when adult aliens are securely detained.**

Plaintiffs claim that the government cannot invoke the due care exception based on Executive Orders or the *Flores* Settlement Agreement because they are not statutes or regulations. Opp. at 7, 10-12. First, as enacted the due care exception subsumed the protection afforded by earlier tort claim bills that precluded challenges to the effects of Executive Orders. *See United States v. Muniz*, 374 U.S. 150, 155-56, n.9 (1963). Thus, actions taken pursuant to the dictates of an Executive Order are shielded by the due care exception. *See, e.g. Youngstown Sheet & Tube Co. v. Sawyer*, 103 F. Supp. 569, 577 (D.D.C.), *aff'd* 343 U.S. 579 (1953). The Executive Orders and other executive branch directives cited in the United States' opening brief, *see* MTD at 7-9, instructed federal agencies (*i.e.*, DHS and DOJ) to strictly enforce federal

---

[3] Plaintiffs also allege that certain children were "physically ripped" from their mothers' arms. Opp. at 14. But Plaintiffs have not asserted causes of action for assault or battery. Accordingly, the allegations suggest that Plaintiffs and their children physically resisted the government's lawful instructions, thus necessitating use of some physical force.

6

immigration statutes, including referral of adult aliens for prosecution for criminal illegal entry and detention of adult aliens pending removal proceedings. It was this faithful execution of federal statutes that resulted in the challenged family separations.

Plaintiffs also characterize the *Flores* Settlement Agreement as distinct from federal law. But the HSA, passed by Congress in 2002, expressly preserved all agreements currently in place, including the *Flores* Settlement Agreement. *See Flores v. Sessions*, 862 F.3d 863, 870-71 (9th Cir. 2017) (holding that the HSA preserved the *Flores* Settlement Agreement and partially codified it) (citing 6 U.S.C. § 552). Moreover, the *Flores* Settlement Agreement is not, as Plaintiffs suggest, a mere "policy." Instead, the *Flores* Settlement Agreement imposes "binding" legal requirements governing the treatment of alien minors. *Flores*, 862 F.3d at 869; *United States v. Dominguez-Portillo*, No. 17-4409, 2018 WL 315759, *9 (W.D. Tex. Jan. 5, 2018); *Bunikyte v. Chertoff*, No. 07-164, 2007 WL 1074070, *8 (W.D. Tex. Apr. 9, 2007) (*Flores* Settlement Agreement is "in essence, a Court-approved contract binding on ICE and DHS"); *id*. ("[i]t is also a court order directing the parties to comply with its terms.").

Further, contrary to Plaintiffs' argument, the United States does not contend that the initial separations of Plaintiffs and their children "were independently mandatory" under the *Flores* Settlement Agreement. Opp. at 10. Rather, as explained in the United States' opening brief, MTD at 6-7, 14-15, so long as Plaintiffs were to be held in secure adult detention facilities (*i.e*., rather than being released), reunification of parent and child was impermissible, regardless of whether a child was classified as "unaccompanied" or "accompanied." That is so because the *Flores* Settlement Agreement provides for the release of alien children from government custody only to certain adults, and that list does not include parents who are in secure adult detention because releasing a child to an adult in such detention would not be a release from custody.

MTD at 6-7, 14-15.[4]  Thus, upon strict enforcement of federal statutes to detain adult aliens in secure adult detention facilities pending removal proceedings, family separations would have been occasioned by Plaintiffs' secure detention instead of release.

Finally, Plaintiffs assert that the separations were not "necessitated" by the *Flores* Settlement Agreement because alien parents may "affirmatively waive their child's right to prompt release and placement in state licensed facilities."  Opp. at 10-11 (citing *Flores v. Sessions*, No. 85-4544, 2018 WL 4945000, *5 (C.D. Cal. July 9, 2018).  This argument is unfounded and the cases Plaintiffs cite are inapposite.  In *Flores v. Sessions*, decided *after* the separations at issue here, the district court simply held that those adult aliens who were subject to *Ms. L*'s re-unification order could choose to be re-united with their children, or decline to be re-united and "stand on their children's *Flores* Agreement rights."  *Flores*, 2018 WL 4945000, at *4.  *Flores v. Sessions*, however, did not hold that alien children could be reunited with their parents while the latter are detained in secure adult detention facilities.  Plaintiffs' reliance on *Bunikyte* also is unavailing.  MTD at 6.  The district court in *Bunikyte* stated that the *Flores* Settlement Agreement's preference for release of a child to her parent "makes no sense" when the child already is housed with a parent in a family residential center.  *Bunikyte*, 2007 WL 1074070, *3.  But a family residential center, on the one hand, and a secure adult detention facility, on the other, are materially different.  *See Bunikyte*, 2007 WL 1074070 at *3-4.  Indeed, while a parent on behalf of his or her child may exercise that child's rights under the *Flores* Settlement Agreement to remain in a family residential center with a parent, the terms of the

---

[4] Paragraph 14 of the *Flores* Settlement Agreement lists to whom a minor can be released "from [DHS] custody."  Further, Paragraph 21 of the *Flores* Settlement Agreement governs when minors can be held in secure detention. Minors not described in paragraph 21 may not be held in a secure detention facility for any period of time.  Plaintiffs do not allege that the circumstances allowing for the secure detention of minors pursuant to paragraph 21 of the *Flores* Settlement Agreement are present here.  Moreover, minors subject to secure detention pursuant to paragraph 21 are not held in secure *adult* detention facilities.

*Flores* Settlement Agreement prohibit placement of a minor in a secure adult detention facility. *Id*. at *4. Thus, because Plaintiffs were held in secure adult detention facilities, the *Flores* Settlement Agreement prohibited reunification of parent and child there.[5]

### C. The alleged motivation of government officials is irrelevant to application of the due care exception.

Plaintiffs claim that government officials intended for family separations to deter illegal entry into the United States. Opp. at 1, 7, 13. But whether it was known, or even intended, that the government's strict enforcement of federal immigration statutes would result in family separations and deter unlawful entry is immaterial to the due care exception. Plaintiffs cite no authority holding that the alleged motivations behind the decision to strictly enforce federal statutes are relevant to the due care exception. Indeed, considering any alleged motivations when deciding whether the due care exception applies is all the more inappropriate given that the "Take Care Clause" of the Constitution places a duty on the Executive Branch to faithfully execute the laws of the United States. *See* U.S. Const. art II, § 3 ("[The President] shall take Care that the Laws be faithfully executed[.]"). Furthermore, with respect to the second part of section 2680(a), the discretionary function exception, courts consistently have held that the subjective intent of government officials in carrying out their duties is irrelevant to determining whether the exception applies. *See Gaubert v. United States*, 499 U.S. 315, 325 (1991) ("focus of the inquiry is not on the agent's subjective intent"); *Gonzalez v. United States*, 814 F.3d 1022, 1027 (9th Cir. 2016) (same). Plaintiffs provide no reason why such an inquiry should be

---

[5] Given the limited capacity at family residential centers, detaining all families together at such facilities during the pendency of removal proceedings was not possible. *See* MTD at 15 n.7 (citing *Ms. L. v. ICE*, 310 F. Supp. 3d 1133, 1139 (S.D. Cal. 2018)). Accordingly, it is notable that while Plaintiffs make brief reference in their opposition to family residential centers, they do not argue that keeping Plaintiffs and their children detained together in such facilities would have prevented the separations.

9

permitted with respect to the due care exception in the first part of section 2680(a), but foreclosed with respect to the discretionary function exception in the second part.

Plaintiffs next argue that the due care exception is inapplicable because prior administrations did not strictly enforce federal immigration statutes. *See* Opp. at 1. But the government's faithful execution of federal statutes or regulations is shielded by the due care exception, irrespective of whether it resulted from a shift in executive branch priorities.

### D. The government's enforcement decisions following Plaintiffs' separations have no bearing on the due care exception.

Plaintiffs argue that the executive order "purporting to end the family separation policy," Opp. at 12, and the eventual transfer of Plaintiffs and their children to family residential centers and then release, demonstrate that "no law mandates family separation." *Id*; *see also id*. at 1. Plaintiffs further assert that "[i]f family separation were mandated by statute or regulation then the government would be violating the law it claims it must follow." *Id*. at 12.

The Executive Order referenced by Plaintiffs did not purport to end enforcement of federal criminal immigration statutes. EO 13841, 83 Fed. Reg. 29, 435 (June 20, 2018). Rather, it instructed DHS to keep families together "where appropriate" and "subject to the availability of appropriations." EO 13841 § 1 (noting that it is the policy of the Administration to "detain alien families together where appropriate and consistent with law and available resources."); *id* at § 2 (DHS "shall, to the extent permitted by law and subject to the availability of appropriations, maintain custody of alien families during the pendency of any criminal improper entry or immigration proceedings involving their members."). EO 13841 did not direct DHS or DOJ to cease enforcement of federal criminal illegal entry statutes which had occasioned the family separations.

Further, Plaintiffs' reunifications with their children were ordered by a federal district court. *See Ms. L.*, 310 F. Supp. 3d at 1149-50. The district court's order, however, did not

rewrite history or alter the reasons why the separations occurred in the first instance—that is, the executive branch's strict enforcement of federal immigration statutes—or somehow otherwise render the due care exception inapplicable.

### E. Plaintiffs' challenge to alleged lack of communications and tracking systems are barred by the due care and the discretionary function exceptions.

Plaintiffs' challenges to the alleged lack of communications regarding the whereabouts of their children, the government's purported failure to facilitate more communications between parent and child, and the government's alleged tracking deficiencies are inextricably tied to the physical separations of Plaintiffs and their children. Accordingly, as established in the United States' opening brief, *see* MTD at 18, those claims also are barred by the due care exception. Plaintiffs fail to address this argument in their opposition.

Plaintiffs next assert that the government's alleged failures to facilitate family communications and properly track children violated their Constitutional right to family integrity. Opp. at 15. Plaintiffs cannot, however, circumvent the discretionary function exception simply by labeling governmental conduct as unconstitutional. Plaintiffs alleged in their Complaint that such communications and tracking failures were a result of governmental negligence—*i.e.*, disorganization and failure to plan properly for the consequences of strict enforcement of federal immigration laws. Compl. ¶¶ 4, 53. Negligence does not violate the Constitution. *Campbell v. Chaves*, 402 F. Supp. 2d 1101, 1102 (D. Ariz. 2005) (citing *Daniels v. Williams*, 474 U.S. 327, 331–32 (1986)).

In reliance on the inapposite case of *Ruiz v. United States*, No. 13-1241, 2014 WL 4662241 (E.D.N.Y. Sept. 18, 2014), Plaintiffs argue that even if discretionary, governmental decision-making regarding communications between Plaintiffs and their children is not the type of policy-based conduct the exception was designed to shield. Opp. at 16-17. In *Ruiz*, a young

11

female U.S. citizen was temporarily detained at the airport following her return from Guatemala because her adult traveling companion was inadmissible. Fourteen hours passed before CBP officers contacted the young girl's parents. In considering the second prong of the discretionary function exception test, the district court found that the United States had not articulated a policy basis for the agency employees' failure to facilitate communication between the detained girl and her parents, and the court itself could not discern one. *Id.* Here, however, government decision-making regarding when, with what frequency, and the means to afford communications between adult aliens in criminal custody or secure immigration detention and their separated children is susceptible to policy analysis in that it could involve balancing various policy considerations, including accessibility and cost of communications, staffing and resource allocation at the secured detention facilities as well as the children's various placement sites, and parents and children's respective responses to communications.

### II.     No Private Person Analog Exists for the Enforcement of Federal Immigration Law or the Conditions of Confinement of Detainees

Subject matter jurisdiction exists under the FTCA only if a plaintiff alleges "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); 28 U.S.C. § 2674 (FTCA allows for tort recovery against United States only "in the same manner and to the same extent as a private individual under like circumstances."). Contrary to Plaintiffs' assertion, the United States did not argue that "it cannot be liable under the FTCA for IIED or negligence because there is no state tort analog," Opp. at 17. Rather, the United States demonstrated in its opening brief that it has not waived its sovereign immunity for decisions to enforce federal immigration statutes because such decisions have no analogous private counterpart. Only the federal government is in the position, and has the authority, to enforce the nation's immigration laws. MTD at 19-21.

12

Plaintiffs reliance on *Xue Lu v. Powell*, 621 F.3d 944 (9th Cir. 2010), is unavailing. Opp. at 18. In *Lu*, two female asylum seekers brought claims under the FTCA based upon an asylum officer's solicitation of bribes and sexual favors in exchange for granting their asylum applications. Whether there was a private person analog to the government's enforcement of federal immigration law was not at issue in *Lu*. *Lu* presented the issue of whether the officer's criminal conduct was within the scope of his employment and whether the United States, as his employer, could be held liable for his actions. *Id*. at 948. Plaintiffs' reliance on *Liranzo v. United States*, 690 F.3d 78 (2d Cir. 2012), is similarly misplaced. *Liranzo* did not hold that there was a private person analog to the government's enforcement of federal immigration statutes. As Plaintiffs observed, *Liranzo* involved false arrest and imprisonment claims.[6] It is undisputed here that Plaintiffs were lawfully detained pursuant to federal immigration statutes. Finally, Plaintiffs inaptly cite to Arizona cases arising out of the alleged removal of children from a parent's custody without the parent's consent. Opp at 18 (citing *Pankratz v. Willis*, 744 P.2d 1182 (Ariz. Ct. App. 1987); *Rodrquez v City of Phoenix*, No. 05-2092, 2007 WL 411832 (D. Ariz. Feb. 5, 2007)). Yet none of these cases stand for the proposition that the government's enforcement of federal law has a private counterpart.[7]

There also is no private counterpart to the federal government's determination of an alien's immigration status. Plaintiffs argue that the cases cited by the United States, MTD at 21-22, are distinguishable because they involve quasi-adjudicative governmental actions related to a

---

[6] Plaintiffs also erroneously rely on *Avalos-Palma v. United States*, No. 13-5481, 2014 WL 3524758 (D.N.J. July 16, 2014). In that case, the district court found that plaintiffs' "wrongful deportation" claim – which the plaintiff analogized to a false arrest and false imprisonment claim – lacked a private person analog. *Id*. at 11.

[7] Nor is there any merit to Plaintiffs' reliance on *Martinez v. United States*, No 18-00955, 2018 WL 3359562 (D. Ariz. July 10, 2018). Opp. at 19. Indeed, Plaintiffs concede that *Martinez* did not involve the question of whether a private person analogy exists, let alone whether such an analogy exists for alleged harms resulting from the enforcement of Federal law.

13

plaintiff's immigration status. Opp. at 20 n.14. Regardless of whether the governmental action in determining that Plaintiffs' children were UACs, thus requiring transfer to HHS pursuant to the TVPRA, was judicial, legislative, or executive in character, Plaintiffs have failed to identify functions performed by private persons that are even remotely analogous to the federal government's determination of an alien child's immigration status.

Finally, Plaintiffs fail to refute the United States' argument that they essentially challenge *where* and *with whom* they were detained. Plaintiffs cannot identify a private person analog for claims challenging where or with whom one's immigration detention occurs because decisions regarding the location and terms of detention cannot be performed by private persons. MTD at 23 (discussing *McGowan v. United States*, 825 F.3d 118 (2d Cir. 2016)).

### III.  Plaintiffs Have Not Stated An Actionable Claim Under Arizona Law

The United States demonstrated in its opening brief that under Arizona law a person has not suffered a legally cognizable injury when that person is lawfully incarcerated and their alleged harm flows solely from the incarceration. MTD at 23-24 (citing *Muscat by Berman v. Creative Innervisions LLC*, 244 Ariz. 194, 199 (2017)). Plaintiffs claim that the separations were not an "inherent consequence" of their detention. Opp. at 21. But Plaintiffs do not dispute that they illegally entered the United States in violation of a federal statute, and that they were securely detained following their unlawful entry pending removal proceedings. Therefore, consistent with *Muscat's* reasoning, Plaintiffs' alleged harms flowed from their criminal acts (*i.e.*, illegal entries), and they have not suffered a legally cognizable injury under Arizona law.

Lastly, Plaintiffs claim that *Muscat* is inapposite because they were not "criminally charged and incarcerated." Opp. at 21. Plaintiffs do not explain, though, why the reasoning of *Muscat* is not applicable to their criminal conduct, which they do not contest.

14

## **CONCLUSION**

For the foregoing reasons and those stated in the United States' opening brief, the United States' motion to dismiss should be granted and this action dismissed for lack of subject matter jurisdiction.

Dated: March 9, 2020                          Respectfully Submitted,


                                          JAMES G. TOUHEY, JR.
                                        Director, Torts Branch

                                        *s/Phil MacWilliams*
                                        PHILIP D. MACWILLIAMS
                                        Trial Attorney
                                        D.C. Bar No. 482883
                                        THEODORE W. ATKINSON
                                        Trial Attorney
                                        D.C. Bar No. 458963
                                        E-mail: phil.macwilliams@usdoj.gov
                                        U.S. Department of Justice
                                        Civil Division, Torts Branch
                                        Benjamin Franklin Station, P.O. Box 888
                                        Washington, DC 20044
                                        Telephone: (202) 616-4285

                                        Attorneys for the United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on March 9, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

**Diana E. Reiter**
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019
**David B. Rosenbaum**
OSBORN MALEDON, P.A.
2929 North Central Avenue
21st Floor
Phoenix, AZ 85012-2793

*s/Phil MacWilliams*
PHILIP D. MACWILLIAMS
Attorney for United States of America