JAMES G. TOUHEY, JR.
Director, Torts Branch
PHILIP D. MACWILLIAMS
Trial Attorney
D.C. Bar No. 482883
THEODORE W. ATKINSON
Trial Attorney
D.C. Bar No. 458963
E-mail: phil.macwilliams@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4285

Attorneys for the United States of America

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| C.M., on her own behalf and on behalf of her minor child, B.M.; L.G., on her own behalf and on behalf of her minor child, B.G.; M.R., on her own behalf and on behalf of her minor child, J.R.; O.A. on her own behalf and on behalf of her minor child, L.A.; and V.C., on her own behalf and on behalf of her minor child, G.A., | Case no. 2:19-CV-05217-SRB  **MOTION FOR CERTIFICATION OF THIS COURT'S ORDER DATED MARCH 30, 2020 (ECF No. 31) PURSUANT TO 28 U.S.C. § 1292(b)** |
| Plaintiffs, | |
| v. | |
| United States of America, | |
| Defendant. | |

Defendant United States of America moves this Court to certify its Order dated

March 30, 2020 (ECF No. 31), for interlocutory appeal.  The grounds for this motion are

set forth in the below memorandum in support.[1]

---

[1] Counsel for the United States conferred with counsel for Plaintiffs, who do not consent to the relief sought herein.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### INTRODUCTION

Because of this Court's thorough familiarity with the factual allegations and the relevant statutory background, that information is not recounted fully herein.[2]  Briefly, Plaintiffs – five adult female aliens suing on behalf of themselves and their respective alien children – illegally crossed the border between ports of entry into the United States in Arizona with their children in May 2018.  They did so at a time when the Department of Homeland Security ("DHS") had been directed by the President of the United States to exercise its federal statutory authority to detain aliens during the pendency of their immigration proceedings, and after the Attorney General had directed federal prosecutors to adopt a "zero-tolerance" policy for immigration offenses referred for prosecution under 8 U.S.C. § 1325(a) as well as other criminal immigration statutes.   Plaintiffs were amenable to prosecution under 8 U.S.C. § 1325(a) and were detained pending decisions regarding criminal prosecutions.  Plaintiffs subsequently were detained by U.S. Immigration and Customs Enforcement ("ICE") in secure adult detention facilities pending decisions regarding criminal prosecution and pending removal proceedings.  As a result, Plaintiffs' minor children were determined to be "unaccompanied alien children" ("UACs") pursuant to 6 U.S.C. § 279(g)(2), and were placed in the care and custody of the Office of Refugee Resettlement ("ORR"), a component of the U.S. Department of Health and Human Services ("HHS") pursuant to the Trafficking Victims Protection

---

[2] The United States' motion to dismiss fully sets forth the background and legal framework.  ECF No. 18 ("MTD") at 2-9.

Reauthorization Act of 2008 ("TVPRA"), 8 U.S.C. § 1232(b)(3).  After being separated for approximately two months, the mothers and children were reunified and released.

Plaintiffs brought this action under the Federal Tort Claims Act ("FTCA") asserting state-law claims for intentional infliction of emotional distress ("IIED") and negligence arising out of the separation of each mother from her child.  ECF No. 1 ("Compl.").  The United States filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), asserting a lack of subject matter jurisdiction because Plaintiffs' claims are barred by the FTCA's due care and discretionary function exceptions, 28 U.S.C. § 2680(a), and Plaintiffs failed to allege claims for which a private person could be held liable under applicable state law.  28 U.S.C. §§ 1346(b)(1), 2674.  ECF No. 18.  Plaintiffs filed an opposition to the motion to dismiss, ECF No. 19 ("Opp."), and the United States filed a reply.  ECF No. 25 ("Reply").  On March 30, 2020, the district court denied the United States' motion to dismiss.  ECF No. 31 ("Order").

The court held that the due care exception was inapplicable because "[t]he United States cites no statute or regulation mandating the separation of Plaintiffs upon their entry into the country," and "[i]t cites no statute or regulation requiring the detention of individuals who are 'amenable to prosecution' in facilities different from those who are not 'amenable to prosecution.'"  Order at 5-6.  Moreover, the court determined that "family separation was established by executive policy – not by a statute or regulation – which is not covered by the due care exception."  Order at 5-6.  Finally, the court stated that "the United States fails to explain how a parent who is merely 'amenable' to

prosecution – but has not been charged with a crime – is, for that reason, unavailable to care for her child." *Id.* at 6 n.4.

The court also found that the discretionary function exception was inapplicable because Plaintiffs plausibly alleged the family separations violated their substantive due process rights under the Constitution. Order at 7 (citing *Ms. L. v. U.S. Immigration and Customs Enf't,* 310 F. Supp. 3d 1133, 1144–46 (S.D. Cal. 2018)). Regarding the government's failure to keep Plaintiffs apprised of the whereabouts of their children, its failure to facilitate more communications between parent and child, and the government's tracking capabilities, the district court declined to separately address whether claims based upon these allegations are barred by the exception. *Id.* at 7.[3]

The United States respectfully submits that the court's Order should be certified for interlocutory appeal because it involves "controlling question[s] of law as to which there is substantial ground for difference of opinion," and resolving these questions on an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). While the court of appeals "may address any issue fairly included within the certified order because it is the order that is appealable, and not the controlling question identified by the district court[,]" *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063

---

[3] The district court also held that "Plaintiffs have demonstrated a private analogue in like circumstances." Order at 4. The court did not address the United States' argument that Plaintiffs have not stated an actionable claim under Arizona law because their harms were a direct consequence of their illegal entry and subsequent lawful detention. MTD at 23-24 (citing *Muscat by Berman v. Creative Innervisions LLC*, 244 Ariz. 194, 199 (2017)); Reply at 14.

1   (9th Cir. 2004), the United States requests this court identify only the following questions

2   in its certification order:

3       (1) Whether the FTCA's due care exception bars Plaintiffs' claims; and

4       (2) Whether the FTCA's discretionary function exception bars Plaintiffs' claims.

5

6   **ARGUMENT**

7       Under 28 U.S.C. § 1292(b), interlocutory review of an otherwise non-appealable

8   order is available when the district court certifies that the order "involves a controlling

9   question of law as to which there is substantial ground for difference of opinion and that

10  an immediate appeal from the order may materially advance the ultimate termination of

11  the litigation."  If the district court agrees to certify the order, the court of appeals may, in

12  its discretion, allow an interlocutory appeal of an otherwise unappealable order.  This is a

13  paradigmatic case suitable for interlocutory review.  The United States asserted threshold

14  jurisdictional defenses that raise pure questions of law.  If one of the defenses were

15  accepted, it would bring a complete resolution to this litigation and advance the ultimate

16  termination of other actions arising out of similar separations.

17  **I.  The Order Involves Controlling Questions of Law**

18      When the FTCA's due care or discretionary function exceptions apply, the United

19  States has not waived sovereign immunity and the court lacks subject matter jurisdiction

20  over the claims.  *See GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1173 (9th Cir.

21  2002) (citations omitted).  Whether Plaintiffs' claims are barred by these exceptions are

22  controlling questions of law that are dispositive in this suit.  *See Omni MedSci, Inc. v.*

23  *Apple Inc*., 2020 WL 759514, *1 (N.D. Cal. Feb. 14, 2020) ("Standing and subject-matter

jurisdiction are controlling issues of law."); *In re Nat'l Found. for Housing*, 2011 WL 320979, \*4 (C.D. Cal Jan. 27, 2011) ("[S]ubject matter jurisdiction is a controlling issue of law.").

## II.  There is Substantial Ground for Difference of Opinion

"A substantial ground for difference of opinion exists where *reasonable jurists might disagree* on an issue's resolution."  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (emphasis added).  "Stated another way, when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent."  *Id.*; *Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) ("Courts traditionally will find that a substantial ground for difference of opinion exists where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.") (citation and internal quotation marks omitted).  The Supreme Court has explained that "district courts should not hesitate to certify an interlocutory appeal" when a decision "involves a new legal question or is of special consequence."  *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009).

As discussed below, contradictory precedent already exists with respect to application of the due care and discretionary function exceptions.  The Ninth Circuit has not addressed what is required to trigger the due care exception.  Moreover, the courts of appeals disagree regarding whether and when the discretionary function exception can

apply to discretionary conduct that violates the Constitution.  Relatedly, this action involves the consequential legal question of whether a constitutional right to family integrity in the context of immigration detention was "clearly established" and whether there was a specific constitutional prohibition of family separations in such context. Thus, substantial ground for difference of opinion exists as to the controlling questions of law.

### A.  The Due Care Exception

The Ninth Circuit has not addressed the level of statutory specificity required to trigger the due care exception, and it is by no means clear that it would adopt the Fourth Circuit's standard set forth in *Welch v. United States*, 409 F.3d 646 (4th Cir. 2005).[4]  The Ninth Circuit in *Borquez v. United States*, 773 F.2d 1050 (9th Cir. 1987), did not articulate a standard, but found that the due care exception barred a suit where a statute authorized – but did not require – the government to transfer responsibility for a dam to a private corporation.  *Borquez*, 773 F.2d. at 1053.  Decisions from other circuits are also arguably inconsistent with a standard that would require the government to identify a specific, mandatory duty before the due care exception can apply.  *See Hydrogen Tech. Corp. v. United States*, 831 F.2d 1155, 1163 (1st Cir. 1987), *cert. denied,* 486 U.S. 1022 (1988) (citing 28 U.S.C. § 533, which authorizes the Attorney General to appoint officials "to detect and prosecute crimes against the United States"); *Porter v. United*

---

[4] Under that standard, a court will first "determine whether the statute or regulation in question specifically proscribes a course of action for an officer to follow." *Id.* at 652.  Second, "if a specific action is mandated," the court will "inquire as to whether the officer exercised due care in following the dictates of that statute or regulation."  *Id.*

*States*, 473 F.2d 1329, 1332 (5th Cir. 1973) (holding that due care exception applied absent any proof or allegation that damage to documents was due to negligence rather than the result of agents of FBI carrying out their appointed functions).  And notably the text of the due care exception itself suggests that the *Welch* standard is too demanding: section 2680(a) refers to conduct "in the execution of a statute or regulation," not conduct "required by a statute or regulation."

This court distinguished *Borquez* because the statute at issue therein "explicitly and specifically authorized" the agency to transfer responsibility for the dam, but here there is no statute "explicitly authorizing the government to detain parents and children in separate facilities before it has charged either with a crime."  Order at 5.  However, reasonable minds could differ as to whether that is the relevant inquiry here.  The Ninth Circuit could conclude that the relevant inquiry is whether federal statute authorized the referral of Plaintiffs for criminal prosecution and authorized the transfer of their children to HHS custody.  Under this inquiry, the government acted pursuant to its statutory authority in 8 U.S.C. § 1325(a) to refer Plaintiffs for prosecution and pursuant to the statutory requirement in 8 U.S.C. § 1232(b)(3) to transfer their children to HHS once the minors were determined to be UACs.  One could find that under that inquiry, this case fits within the Ninth Circuit's holding in *Borquez*.

Additionally, the Ninth Circuit has construed 8 U.S.C. § 1231(g) as expressly authorizing the Attorney General to decide in which facilities to detain aliens.  8 U.S.C. § 1231(g)(1) ("[t]he Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."); *Cmtte. of Cent. Am.*

*Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986) ("Congress has placed the responsibility of determining where aliens are detained within the discretion of the Attorney General."). Thus, section 1231(g) confers authority on the Attorney General to detain adults in secure adult facilities, which necessarily results in the separation of family units given the prohibition on detaining children in such facilities. MTD at 5-6; Reply at 7-8. Like the Secretary of the Interior in *Borquez*, who was "explicitly and specifically authorized" to decide whether to transfer responsibility to a particular water users' association, the Attorney General is "explicitly and specifically authorized" to decide in which detention facilities to place aliens. The Ninth Circuit might reasonably conclude that the due care exception bars challenges to the government's decisions regarding placement of aliens pending removal or decision on removal, including the decision to detain parents and their children in separate facilities.

Finally, even if the Ninth Circuit were to adopt the test set forth in *Welch*, it may reasonably conclude the challenged action here meets that test. Pursuant to the *Welch* test, the court found the due care exception inapplicable because "the United States cites no statute or regulation mandating the separation of Plaintiffs upon their entry into the country," Order at 5, and "no statute or regulation requiring the detention of individuals who are 'amenable to prosecution' in facilities different from those who are not 'amenable to prosecution.'" *Id.* at 6. But at least one Circuit has recognized the due care exception turns on whether the challenged government action was taken pursuant to a statute or regulation, not whether the particular *harm* was mandated. *See Dupree v. United States,* 247 F.2d 819, 824 (3d Cir. 1957) ("Where government employees act

pursuant to and in furtherance of regulations, *resulting harm* is not compensable under the act[.]") (emphasis added) (citations omitted).  Moreover, execution of the TVPRA did *require* DHS to transfer Plaintiffs' children to HHS custody once they were determined to be UACs, 6 U.S.C. § 279(g).  8 U.S.C. § 1232(b)(3).  The court questioned "how a parent who is merely 'amenable' to prosecution – but has not been charged with a crime – is, for that reason, unavailable to care for her child."  Order at 6, n.4.  However, at the time of the separations, the government reasonably determined that parents who are detained in a secure facility pursuant to federal immigration law or in anticipation of prosecution are not "available to provide care and physical custody" over their children.  The Ninth Circuit may well agree with this determination or, at the very least, that an agency's interpretation of a federal statute cannot be challenged in the context of a section 2680(a) defense.  *See Baie v. Sec'y of Defense*, 784 F.2d 1375, 1376-77 (9th Cir.), cert. denied, 479 U.S. 823 (1986) (the agency's "interpretation of the statute is a plainly discretionary administrative act the 'nature and quality' of which Congress intended to shield from liability under the FTCA.").

## B.  The Discretionary Function Exception

Decisions regarding whether and where to detain aliens during the pendency of their removal proceedings undoubtedly involves the broad exercise of discretion.  *Supra*, citing 8 U.S.C. § 1231(g)(1); *Cmtte. of Cent. Am.* Refugees,795 F.2d at 1440.  Likewise, decisions regarding where to house alien minors is committed to HHS's discretion.  8 U.S.C. § 1232(c)(2)(A) (ORR must place unaccompanied alien children "in the least restrictive setting that is in the best interest of the child.").  Thus, insofar as the court held

that the separation of Plaintiffs from their children resulted not from the execution of federal statutes but from the exercise of discretion regarding the placement of aliens pending their removal proceedings, the Ninth Circuit could reasonably conclude that such discretion is shielded by the discretionary function exception.

The court held that Plaintiffs plausibly alleged that the separations violated their constitutional rights and thus were not shielded by the discretionary function exception. Order at 7 (citing *Nurse v. United States*, 226 F.3d 996 (9th Cir. 2000)).  However, Ninth Circuit precedent does not foreclose application of the discretionary function exception here, and reasonable minds could differ on the question of whether and when a constitutional violation precludes application of the discretionary function exception.

The Ninth Circuit has held that "the Constitution *can* limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply."  *Nurse*, 226 F.3d at 1002 n.2 (emphasis added).[5]  But the Ninth Circuit has expressly left open the question whether a constitutional command must, like the dictate of a statute or regulation, be clearly established and specifically prescribe (or proscribe) a course of action:

> In reaching this conclusion, we do not make any decision regarding the level of specificity with which a constitutional proscription must be articulated in order to remove the discretion of a federal actor.  We hold only that the Constitution can limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply.

---

[5] At least one Circuit has held that discretionary conduct alleged to be unconstitutional nevertheless may fall within the discretionary function exception.  *See Linder v. United States*, 937 F.3d 1087, 1091 (7th Cir. 2019), *petition for certiorari pending*, S. Ct. No. 19-1082.

*Id.*; *see also Fazaga v. Fed. Bureau of Investigation*, 916 F.3d 1202, 1251 (9th Cir. 2019) ("[I]f the district court instead determines that Defendants did violate a *nondiscretionary federal constitutional . . . directive*, the FTCA claims may be able to proceed to that degree.") (emphasis added).[6]

It is significant that Plaintiffs alleged a substantive due process violation, which turns on whether the particular conduct at issue "shocks the conscience," a standard "which is not subject to a rigid list of established elements." *Ms. L.,* 310 F. Supp. 3d at 1142-43 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)). "On the contrary, an investigation into substantive due process involves an appraisal of the totality of the circumstances rather than a formalistic examination of fixed elements[.]" *Id.* (quoting *Armstrong v. Squadrito*, 152 F.3d 564, 570 (7th Cir. 1998)). Thus, reasonable minds could differ as to the level of specificity required of a constitutional provision to preclude application of the discretionary function exception, and whether the right to substantive due process contained in the Fifth Amendment provides the requisite level of specificity.[7]

Furthermore, the Ninth Circuit could reasonably hold that only a "clearly established" constitutional directive that removes all choice as to a course of conduct could render the discretionary function exception inapplicable. The Supreme Court has

---

[6] *See also Garza v. United States*, 161 F. App'x 341, 343 (5th Cir. 2005) (holding that the Eighth Amendment's prohibition against cruel and unusual punishment did not define a course of action "specific enough to render the discretionary function exception inapplicable").

[7] Furthermore, the Ninth Circuit has yet to address whether the discretionary function exception applies to alleged violations of the Fifth Amendment's substantive due process rights, as neither *Nurse* nor *Fazaga* involved allegations of such violations.

12

long recognized that conduct may be discretionary even if it is later determined to have violated the Constitution.  The common law doctrine of official immunity thus applies to the exercise of "discretionary functions" even when conduct violates the Constitution, as long as the constitutional right was not defined sufficiently so that the official should have known the act was prohibited.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."); *Castro v. United States,* 560 F.3d 381, 394 (5th Cir. 2009) (Smith, J., dissenting) (it would "turn[] *Bivens* on its head" to conclude that "the United States may be liable for conduct even where its officers cannot be"), 608 F.3d 266 (5th Cir. 2010) (en banc) (panel opinion vacated and district court decision affirmed), *cert denied*, 562 U.S. 1168 (2011).  Whether the United States can apply a "qualified immunity"-like approach to the discretionary function exception has yet to be squarely addressed and decided by the courts of appeals.  *See, e.g., Loumiet v. United States*, 828 F.3d 935, 946 (D.C. Cir. 2016) ("[L]eav[ing] for another day the question whether the FTCA immunizes exercises of policy discretion in violation of constitutional constraints that are not already clear.").

Under that standard, the Ninth Circuit could reasonably find that, at the time of the relevant conduct, it was not "clearly established" that parents had a constitutional right to remain with their children in immigration detention.  Indeed, prior to the separations at issue here, the Fourth Circuit held that no such constitutional right exists.  *See Reyna as next friend of J.F.G. v Hott*, 921 F.3d 204, 210-11 (4th Cir. 2019) (rejecting challenge by

two aliens who were arrested and detained under 8 U.S.C. § 1226(a) pending removal, holding that decisions regarding the right to family integrity "hardly support the asserted right to be detained in the same state as one's children, the right to be visited by children while in detention, or a general right to 'family unity' in the context of detention.").  And one district court observed that such right was not "clearly established."  *See United States v. Dominguez-Portillo*, 2018 WL 315759, *6 (W.D. Tex. Jan. 5, 2018) (addressing parental rights of detained adult alien and noting "lack of clearly established parental rights in these circumstances and under case law.").

## III.  Immediate Appeal Will Materially Advance the Ultimate Termination of Litigation

"[N]either § 1292(b)'s literal text nor controlling precedent requires that interlocutory appeal have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation."  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (emphasis added).  These controlling questions of law also are at issue in *A.P.F. v. United States*, No. 2:20-cv-00065, and may govern resolution of pending administrative claims arising out of the family separations if suits are brought on those claims.[8]  Thus, a ruling in the United States' favor on interlocutory appeal would significantly advance the termination of those other claims as well.  *See In re Cement*

---

[8] The *A.P.F.* plaintiffs' motion to transfer their lawsuit pursuant to Local Rule 42.1 was granted on April 14, 2020.  ECF No. 35.  In the transfer order, this court stated that "arguments made by the United States for lack of subject matter jurisdiction are substantially identical to the arguments made in [*C.M.*]," and "both cases involve substantially the same questions of law and would entail substantial duplication of labor if heard by different judges.  Both cases also involve the enforcement of the same policy of family separation by federal employees in Arizona in May 2018."  *Id.* at 2. Furthermore, there are over four hundred (400) pending administrative claims arising out of the family separations, and many more still may be presented.

*Antitrust*, 673 F.2d 1020, 1026 (9th Cir.1982) (en banc) (section 1292(b) certification to

be used when "allowing an interlocutory appeal would avoid protracted and expensive

litigation."); 16 Charles Alan Wright et al., Fed. Prac. and Proc. § 3931 (3d ed. 2008) (the

court should weigh, among other things, "[t]he difficulty and general importance of the

question presented" and "the significance of the gains from reversal.").

<u>**CONCLUSION**</u>

For the foregoing reasons, this court should certify its Order dated March 30, 2020

(ECF No. 31), for interlocutory appeal.


Dated: May 29, 2020                              Respectfully Submitted,


                                                 JAMES G. TOUHEY, JR.
                                                 Director, Torts Branch

                                                 *s/Phil MacWilliams*
                                                 PHILIP D. MACWILLIAMS
                                                 Trial Attorney
                                                 D.C. Bar No. 482883
                                                 THEODORE W. ATKINSON
                                                 Trial Attorney
                                                 D.C. Bar No. 458963
                                                 E-mail: phil.macwilliams@usdoj.gov
                                                 U.S. Department of Justice
                                                 Civil Division, Torts Branch
                                                 Benjamin Franklin Station, P.O. Box 888
                                                 Washington, DC 20044
                                                 Telephone: (202) 616-4285

                                                 Attorneys for the United States of America

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I hereby certify that on May 29, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

**Diana E. Reiter**
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019
**David B. Rosenbaum**
OSBORN MALEDON, P.A.
2929 North Central Avenue
21st Floor
Phoenix, AZ 85012-2793

*s/Phil MacWilliams*
PHILIP D. MACWILLIAMS
Attorney for United States of America