1            UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF ARIZONA

3              _____

4
C.M. et al.,                    )
5                               )  No. CV-19-05217-PHX-SRB
          Plaintiff,            )
6                               )
          vs.                   )     Phoenix, Arizona
7                               )      June 18, 2020
United States of America,       )       10:32 a.m.
8                               )
          Defendants.           )
9  _____ )

10

11        BEFORE:  THE HONORABLE SUSAN R. BOLTON, JUDGE

12

13          REPORTER'S TRANSCRIPT OF PROCEEDINGS

14          TELEPHONIC SCHEDULING CONFERENCE

15

16

17

18

19

20
Official Court Reporter:
21 Hilda E. Lopez, RMR, FCRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
22 401 West Washington Street, Spc 30
Phoenix, Arizona 85003-2151
23 (602) 322-7256

24 Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

25

1                     **P R O C E E D I N G S**

2    **APPEARANCES:**
     For the Plaintiff:
3        ARNOLD & PORTER KAYE SCHOLER, LLP
         By: Diana Reiter, Esq.
4            Emily Anne Reeder, Esq.
             Erik Walsh, Esq.
5            Harry Fidler, Esq.
             250 W. 55th Street
6            New York, NY 10019

7    For the Plaintiff:
         OSBORN MALEDON, P.A.
8        By:  Emma Jane Cone-Roddy, Esq.
         P.O. Box 36379
9        Phoenix, AZ 85067

10   For the Plaintiff:
         KAIRYS RUDOVSKY MESSING FEINBERG & LINN, LLP
11       By: Jonathan Howard Feinberg, Esq.
         718 Arch Street, Suite 501
12       Philadelphia, PA 19106

13   For the Defendant:
         United States Department of Justice
14       Torts Branch Civil Division
         By:  Philip Davis MacWilliams Esq.
15       P.O. Box 888
         Ben Franklin Station
16       Washington, D.C. 20044

17

18

19

20

21

22

23

24

25

1                    **P R O C E E D I N G S**

2

3          COURTROOM DEPUTY:  Civil case 19-5217, C.M. and others

4    versus United States of America.  Time set for telephonic

5    scheduling conference.  Counsel, please announce your presence

6    for the record.

7          MR. MACWILLIAMS:  I'm sorry.  This is Phil MacWilliams

8    on behalf of Defendant United States.

9          MS. REITER:  This is Diana Reiter from Arnold & Porter

10   for plaintiff.

11         MR. FEINBERG:  Your Honor, Jonathan Feinberg for

12   plaintiffs.

13         MS. CONE-RODDY:  Emma Cone-Roddy for plaintiffs.

14         MR. WALSH:  This is Erik Walsh from Arnold & Porter

15   for plaintiffs.

16         MR. FIDLER:  Harry Fidler from Arnold & Porter for

17   plaintiffs.

18         MS. REEDER:  This is Emily Reeder from Arnold & Porter

19   for plaintiffs.

20         THE COURT:  Good morning.  This is the time for our

21   case management conference.  I have reviewed the joint case

22   management report and I want to discuss some items with you.

23   We have quite a number of counsel on the phone for the

24   plaintiffs.  One of you will speak, not more than one of you in

25   terms of answering any of my questions or discussing any of the

1    scheduling items.  We don't have that problem on the defense

2    side.  Thank goodness there's only one of the two named counsel

3    on the phone.

4          So who will be speaking on behalf of plaintiffs during

5    this scheduling conference?

6          MR. FEINBERG:  Your Honor, this is Jonathan Feinberg.

7    I would be happy to address most issues.  There are one or two

8    when they come up when I ask the Court's permission to defer to

9    Ms. Reiter.

10          THE COURT:  Okay.  That sounds fair.  So the first

11    thing that I wanted to ask is about initial disclosures.  In

12    the joint case management report, which was filed on 6-11, it

13    indicated that the disclosure deadline was 6-12.  So were

14    disclosures made by both sides, Mr. Feinberg?

15          MR. FEINBERG:  That's one issue for the plaintiffs,

16    and I will defer to Ms. Reiter to cover.

17          THE COURT:  No, it's a yes or no.

18          MR. FEINBERG:  Oh, sorry, yes.  The answer is yes.

19          THE COURT:  Okay.  I figured that that one didn't

20    require a lot of discussion.  So plaintiff has made disclosures

21    as required by the Mandatory Initial Discovery Pilot project.

22          Mr. MacWilliams, did the Government make disclosures

23    as well?

24          MR. MACWILLIAMS:  Yes, Your Honor.

25          THE COURT:  So may I mark this as already exchanged,

1    Mr. Feinberg?

2              MR. FEINBERG:  Yes, Your Honor, with the caveat that

3    we had some discussions about compliance with the Government.

4    I would be happy to discuss those at a later time if you wish.

5              THE COURT:  Yes, we're going to be talking about

6    issues related to disclosure and discovery and what I can order

7    today and what my anticipation is for the future on disclosure

8    and discovery.

9              Next, I set a deadline for joining parties, amending

10   pleadings, or filing supplemental pleadings, and I say that

11   it's a deadline to do that.  It's actually a deadline for

12   filing a motion to do any of those things.  This is a

13   plaintiff's item.  I can set a deadline for you, Mr. Feinberg.

14   If you think there's a possibility that there may be any type

15   of a motion to amend, or I can indicate that there will be no

16   motions to amend filed.  What is your preference?

17             MR. FEINBERG:  Your Honor, I don't see any motion to

18   amend.  We can complete with these deadlines.

19             THE COURT:  Okay.  Perfect.  So no motions.  Okay.

20             The next item that I have on my order concerns the

21   discovery limitations that are set out in the federal rules,

22   and we're going to have some discussion about the number of

23   depositions, but the one thing that everyone can agreed to is

24   the depositions will be limited to seven hours of -- one day of

25   seven hours as provided in the federal rules.  I don't recall

1    that I saw any discussion about the numbers of interrogatories.

2    Was the discussion, Mr. Feinberg, an agreement that 25

3    interrogatories is enough?  I have it, by the way, as each

4    side, not each party, and I know that's another distinction

5    that's being made with respect to depositions.

6         MR. FEINBERG:  Your Honor, at this point I think that

7    is enough.  We may need to go back with the discussion about

8    the responses to the Mandatory Initial Discovery, and I want to

9    say in direct response to your question, which was not a topic

10   of discussion, and I certainly don't want to speak for the

11   Government on this, but I believe that we would be in agreement

12   due to the tenor of our previous conversations that 25 will be

13   sufficient.

14        THE COURT:  Do you agree, Mr. MacWilliams, that we can

15   stick with no more than 25 interrogatories per side?

16        MR. MACWILLIAMS:  Yes, Your Honor.

17        THE COURT:  Okay.  Now, I agree that this is a case

18   where the limitation on the number of depositions is likely

19   insufficient.  I also have a practice of limiting the number of

20   individual requests for production of documents that can be

21   propounded by either side.  And let me be clear about what that

22   means.  You could send one Request for Production of Documents

23   that had 25 categories in it, or you could send 25 requests for

24   production of documents that only requested one category of

25   documents or some combination thereof.  So when I say I am

1  limiting the number of Request for Production of Documents, I

2  don't mean that you can send out multiple requests containing

3  many, many categories of documents that -- the categories of

4  documents can only add up to 25.

5       I don't know if that's sufficient in this case.

6  What's really addressed here are depositions.  I believe that

7  at this moment in time, without a significant disclosure, I'm

8  assuming, without a significant disclosure of documents where a

9  response to requests for production of documents, that trying

10 to come up with a specific number of depositions is premature.

11 What I think needs to be done in this case is that the parties

12 actually attempt to jointly develop a discovery plan.

13      And for example, there's a suggestion that the

14 plaintiff, each plaintiff needs to depose several government

15 employees about the same things.  I don't know at this point in

16 time, and I don't know if the plaintiff even knows at this

17 point in time, if some of those government employees that have

18 information about individual plaintiffs or individual minor

19 children and what actually happened are the same people, and I

20 don't know if the person who arrested or detained one of our

21 plaintiffs might also have been the same person that detained

22 one of our other plaintiffs.  I don't know that the five

23 children were all in different places.  I have just a very

24 vague recollection that some of them might have been in the

25 same place and, therefore, it might be the same person that has

information about more than one of the minor children, and so I

think that rather than saying:  Yes, indeed, plaintiff, you get

40 depositions and defendant you get the same number, that this

case should proceed with, which is not an unusual way to

proceed, it should proceed with document discovery and

disclosure of witnesses who, in accordance with the

requirements of both Rule 26 and the MIDP, that will give you

the names and the information that those witnesses have, at

least a summary of the information they have that's relevant to

the case, and that would then follow with depositions.

Does that seem like a reasonable way that this case

would proceed, Mr. Feinberg?

MR. FEINBERG:  Yes, Judge, and if I could just ask one

question, I assume that from Your Honor's description that you

would issue an order requiring some additional reporting by the

parties to the Court after meeting and conferring?

THE COURT:  Exactly.  That you would meet and confer

and hopefully agree on, well, hopefully on everything, but

that's probably not likely, but we would come down to just the

areas of disagreement in your discovery plan.

You know, as an example, you know, the Government

says, and I probably agree on first blush the Government says:

Gee, if you want to depose any current or former cabinet-level

government officials, advisors to the President or the

President, there should be certain requirements that are

1   different than simply noticing a deposition.  You know, I agree

2   about that, but I have no idea, and I'm not even sure that at

3   this moment plaintiff's counsel has any idea whether you would

4   seek to discovery from some of the people that fall into those

5   categories because if you haven't seen the documents yet, you

6   don't know who the authors are of the documents or who

7   implemented the policy or who gave the direction for the

8   policy.

9           So, you know, that's kind of why I think that document

10  discovery is important to proceed, and whatever you can't agree

11  on after you can make a case for why you need the additional

12  discovery, whether it's document discovery that the Government

13  is withholding on the basis of some claimed privilege or

14  whether it's deposition discovery that's based on the need, a

15  numerical limit that the Government thinks isn't justified by

16  the needs of the case, or it's based on the specific identity

17  of a member of the, a high-ranking member of the executive

18  branch of Government, I think that's the point where I would

19  step in and try to resolve, not try to, I would resolve it, but

20  I think right today it just doesn't make any sense for me other

21  than to tell you, yes, indeed, this is a case where the

22  limitations on discovery are insufficient and where my

23  suggestion of 25 requests for production of documents may be

24  insufficient.  It doesn't really take us to where we need to go

25  in this case, and I would expect there to be significant

1   cooperation between plaintiff's counsel and the Government's

2   counsel to try to reach some reasonable agreement on a

3   discovery plan.

4          So maybe this is the moment, Mr. Feinberg, when you

5   can tell me why you think the Government's disclosures were

6   just deficient?

7          MR. FEINBERG:  Thank you, Your Honor.  And first, I

8   appreciate to give an explanation.  With regard to the

9   disclosure, on that issue with Your Honor's permission I'd like

10  to defer to Ms. Reiter.

11         THE COURT:  Go ahead.

12         MS. REITER:  This is Diana Reiter.  We have concerns

13  about the Government's MIDP responses which we've shared with

14  the Government in a letter and during a meet and confer.  For

15  example, the Government has identified only eight government

16  officials or believed to have discoverable information.  The

17  Government did advise us today that it will supplement its

18  responses on June 29th following the meet and confer and letter

19  that we sent to them, and so we hope to avoid having to raise

20  these issues with the Court and plan to review the Government's

21  supplement at the end of the month and make every effort to

22  resolve our issues, but as I noted, we believe that the

23  responses are insufficient and I am happy to answer any

24  questions Your Honor has.

25         THE COURT:  So Mr. MacWilliams, are you also

1    representing the Government in the other case that I've

2    transferred in?

3              MR. MACWILLIAMS:  Yes, Your Honor, the APS case.

4              THE COURT:  Yes.  So I can understand given the

5    bureaucracy of the Federal government that it might be, it

6    might take more time than it might in a regular civil case to

7    come up with the required MIDP information, but, and I'm not

8    prejudging 'cause I haven't read the current Motion to Dismiss

9    except to note large parts of it that are identical to the

10   Motion to Dismiss that I already ruled on in this case.  It

11   seems to me that the Government is going to have to make a

12   rather monumental effort to gather information that's going to

13   be the same information to a great extent for both cases, and

14   that I would expect that that effort would be significantly

15   underway.

16             As it relates to the specific things that happened to

17   these five plaintiffs and their minor children; that is, you

18   know, who on -- who in the, at the Arizona Border Patrol office

19   made a decision, you know, who knows about where each, you

20   know, why things happened to these plaintiffs.  They may not be

21   individual to the case, but the case, you know, we know from

22   what the Government is telling us that it wasn't the border

23   patrol in Arizona that just decided to do this; that it was

24   done pursuant to a policy or a directive of people above them,

25   above the border patrol office in Arizona, and the Government

1   should be making a sincere effort to identify who those people

2   are and to disclose that information.

3          I mean, from what Ms. Reiter said, did you really only

4   disclose eight witnesses?

5          MR. MACWILLIAMS:  Not quite, Your Honor, and I'll

6   first start off by saying that the way you're sort of

7   describing the case is exactly how we see it.  I mean, you

8   know, when you talk about the universe of potential relevant

9   documents, we put them into two categories, like you said,

10  yeah, just these plaintiffs and their experience at the border

11  and then, you know, subsequently while they were in detention

12  and the kids were in OR custody, and, you know, yeah, we made

13  significant effort in identifying those documents and getting

14  them ready for production.

15         And then to Your Honor's point you have sort of the

16  bigger picture policy-type document, and you're right, this

17  kind of ties into the difficulties of this case and we are

18  trying as best we can be able to get that discovery done once

19  so that it applies to all the cases that may be coming through,

20  this one, the APS, and potentially others.  So I agree that is

21  what we are trying to do.

22         As far as the eight disclosures or the names, so that

23  doesn't include -- those are strictly at the high-level policy

24  side of things.  The more individual type of individual claims

25  of the plaintiffs, you know, at the border and the OR custody,

1   we're definitely going to supplement those.  We alerted

2   plaintiffs to the documents they were in, but they asked us to

3   disclose them and we agreed to do it, so that's on its way.

4          You know, on the policy side of things, I do

5   anticipate adding to that supplemental list as discovery goes

6   on and as our inquiries go on, but, you know, this case is

7   about the policies made at the highest levels of government.

8   It wasn't the border patrol agent who made the decision; it

9   wasn't anything at the regional level.  The allegations are it

10  was a high-level decision, and that's who we have been focusing

11  on, and that's who we disclosed.  That's not to say that that's

12  the next layer down of, you know, chief of staff and deputies

13  won't be added to the list.  We will if they were involved in

14  these discussions and of policy formulations, but adding to the

15  problem it is -- government bureaucracy, of course, plays in,

16  but a lot of these people are gone, and you know, to really get

17  to the heart of the matter and figure out whose role is what,

18  if any, it involves ESI, and we are in discussions with

19  plaintiffs about that, custodians and things like that, and

20  once we're able to make agreements on that and get those

21  searches done, I think then we will really be on our way and we

22  will be able to start producing but, there might be privilege

23  issues, of course, but then we will be able to start producing

24  not only documents to the Government but from my point of view

25  learning much more about the case where I can make those sort

1   of disclosures that plaintiffs are expecting.

2           THE COURT:  But I heard what you said, and one of the

3   things that I want to remind you of is that there are claims

4   for damages here.  Not just -- it's not just the high-level

5   policy.  It's not just why its happened.  It's the claim for

6   personal injury damages that both the mothers and the minor

7   children have alleged, and those things are very localized to

8   the facilities where they were held, both the mothers and the

9   minor children, and I think that it's imperative that the

10  Government make sure that you immediately, if not sooner, find

11  out who those individual people are because those are people

12  who could easily, you know, if it's one of these contract

13  children's place, I will call it places, I don't want to use

14  anything pejorative, you know, they probably have a high

15  turnover of employees, and I don't want to be down the road,

16  you know, a year from now and you say, well, we know they were

17  at this contract location, but that employee, we can't figure

18  out who, we don't know who the people were anymore who did the

19  things that the plaintiffs claim caused the emotional distress.

20          So I think that, you know, the idea that today the

21  only names that you have disclosed are names of policymakers or

22  people that implemented policies, and I am sure that these are

23  important things to both sides in this case, but from my

24  perspective the case involves a claim under the Federal Tort

25  Claims Act for damages and finding out who the people are that

1   have personal knowledge about the circumstances of the mothers

2   and the children during the time that they are separated is to

3   me very important.  Now, I don't know if the bigger issues in

4   this case that don't involve these specific people are all that

5   important to the plaintiff's counsel.  I understand from the

6   Government's perspective you have this case, you have the other

7   case, I don't even know if there is cases from other

8   jurisdictions, and they all do relate to these bigger issues of

9   policy, but I don't want to forget that we're actually talking

10  about a Federal Tort Claims Act claim for damages for ten

11  people, and that, and I think you have to focus efforts on

12  that, that the documents that are in Washington D.C. or

13  wherever these policies remain, they are not disappearing any

14  time soon.  They will still be there.  Any claims that you have

15  for privilege, they will still be there.  The high-level

16  people, their names will already -- always be known because

17  they are going to be on these documents, but it's the local

18  people, whether it's the local people at the border patrol,

19  whether it's the local people at the adult detention center or

20  whether it's local people at the facility where the children

21  were during the period of separation, I think the government

22  needs to focus on that immediately so that that information is

23  available and isn't hard to find in the future or people hard

24  to find in the future.

25          So Mr. MacWilliams.

1        MR. MACWILLIAMS:  Yes, Your Honor, and I do agree with

2   what you're saying.  When I first started speaking I maybe

3   glossed over it too much cause I was trying to get to the

4   policy side of things quickly, but I agree with what you're

5   saying, and I want to make sure you understand that these, what

6   you're referring as the local documents dealing with these

7   particular plaintiffs, yes, that's part of the case.  We have

8   identified them.  We have gathered them.  They are being

9   prepared for production.  And to your point and to counsel's

10  earlier points about supplementing, those are the names I was

11  referring to is we were going to supplement our disclosures.

12  Instead of just waiting until we get the documents, we are

13  going to actually go through that and provide the names as part

14  of our supplement, so I agree with what you're saying and

15  that's what we're doing.

16        THE COURT:  And when are you going to supplement?

17        MR. MACWILLIAMS:  Okay.  I told the plaintiffs by

18  Monday June 29th.  The reason being is I'm lead counsel on the

19  case and I am going to be out of the office next week.  That's

20  why I was hoping for a few extra, about a week or so, and I

21  hope that's okay.  I haven't heard back from plaintiffs yet,

22  but I hope that's okay with them.

23        THE COURT:  Well, that sounds really reasonable to me.

24  So I'm going to show the Mandatory Initial Discovery Pilot

25  project disclosures are already exchanged.  The defendant will

1    be filing a supplementing disclosure no later than Monday

2    June 29th.

3           On the discovery limitations, I am going to indicate

4    the one day, seven hours for depositions and the limitations on

5    25 interrogatories including subparts, but I'm going to order

6    that the parties prepare a discovery plan that discusses the

7    numbers of requests for production of documents and not the

8    number, but a specific plan.  Maybe not identifying the names

9    at this point, but a description of the people who need to be

10   deposed.  Some may be names.  Some may be, you know, the person

11   who provided something to these children at the place where

12   they were living during the separation period.  And then to

13   identify in that plan areas of disagreement so that then we

14   could have a conference about only the things that you're in

15   disagreement on as opposed to today trying to pick a number

16   that we know is greater than ten, but may be well short of 40.

17          So let me ask -- oh, here's something else that I

18   highlighted.  The idea that we're going to have motion practice

19   concerning protective order, can somebody elaborate on what

20   that's going to be about?

21          MS. REITER:  Yes, Your Honor.  This is Diana Reiter.

22   Again, if I may.

23          THE COURT:  Go ahead.

24          MS. REITER:  Me and the Government have been working

25   in good faith to reach an agreement on a protective order and

1    we made quite good progress over the last couple of weeks.

2    There is one sticking point which may ultimately have to raise

3    with the Court, I am happy to outline if Your Honor would like,

4    but we are still doing our best to work out, and we have not

5    completed our discussions with the Government.  Before raising

6    it with Your Honor, we want to take one more run on trying to

7    reach agreement on the issue.

8         THE COURT:  Okay.  I don't want to know what the area

9    of disagreement is.  I just want to say that in the past

10   20 years I have never had to have motion practice concerning a

11   protective orders entry.  We might have had motion practice

12   concerning whether a particular document that was produced in a

13   different -- in a category was over, was more confidential than

14   it really should have been, but in terms of reaching the

15   protective order, I've signed hundreds of them and they've all

16   been on a stipulation.  So I anticipate that it should be

17   something that you and the Government can agree on.

18        I understand that you're still in negotiations on ESI

19   and I would expect that negotiation and that agreement on the

20   form of production of electronically-stored information would

21   be included within your discovery plan.

22        MS. REITER:  Yes, Your Honor.  This is Diana Reiter.

23   We have reached an agreement in principle on the ESI protocol

24   and we don't anticipate any issues and we will include that in

25   our discovery plan.

1          THE COURT:  There's an indication here that the

2     parties agree that an order pursuant to Rule 502 of the Rules

3     of Evidence should be entered.  I don't need an update.  Again,

4     if you have an agreement, that should be submitted with a

5     stipulation and proposed order.

6          MR. MACWILLIAMS:  Understood, Your Honor.

7          THE COURT:  I think that even in the absence of a

8     discovery plan that I should go forward and set the deadlines

9     for the close of discovery expert disclosure and alike 'cause I

10    don't want to leave this open-ended with you.  I want you to

11    know that you've got these deadlines that are out there.  I

12    mean, they are generous deadlines.  One of them, the fact

13    discovery is a year away and the expert disclosures are more

14    than a year away, but I think that we should go ahead and have

15    those here so that the idea is that you'll come up with this

16    discovery plan and that will include new and extended deadlines

17    for these items.

18          So I am going to order that the close of discovery and

19    the final supplementation of MIDP responses for June 11th.  I

20    wanted to ask you a question about the way that you phrased the

21    expert disclosures as affirmative rebuttal and supplemental.

22    Is this a case where the defense would have affirmative expert

23    disclosures, Mr. MacWilliams?

24          MR. MACWILLIAMS:  Your Honor, I can't answer that for

25    sure, but it's certainly possible.  If it does, it's relating

1    to damages, you know.

2           THE COURT:  Wouldn't they be responsive?

3           MR. MACWILLIAMS:  I think it's probably more likely,

4    but I just don't want to rule out the possibility of having

5    experts, affirmative experts.

6           THE COURT:  I'm not ruling out the possibility.  I'm

7    just going to change it to plaintiff, defendant and rebuttal

8    because that doesn't preclude an affirmative one.  Usually we

9    do the affirmative and responses in a situation where it's

10   known that the defendant has a burden of going forward that

11   might require expert testimony.  So this doesn't preclude

12   affirmative testimony because then the plaintiff has rebuttal.

13   So I'm going to say that plaintiffs must provide expert

14   disclosure by August 13th, the defendants by September 24th,

15   and rebuttal disclosures, if any, by October 22nd of 2021 with

16   expert depositions completed by December 23, 2021.

17          The parties have agreed that you will have good faith

18   settlement talks no later than June 21st -- I'm sorry -- 12,

19   2021.  The deadline for dispositive motions January 29, 20 --

20   oh, my gosh -- 22.  And this is a Federal Tort Claims Act case

21   which means that it is not a case that can be tried to the

22   jury.  It will be a bench trial.  In light of that, I am not

23   going to follow my usual practice, which is to set a firm trial

24   date because with a bench trial, as soon as dispositive motions

25   are resolved, I could quickly confer with counsel and set a

1    trial date based on all of our calendars.  So I'm going to stop

2    my order at the dispositive motion deadline for this case

3    rather than attempt to set a firm trial date.

4           What else, if anything, Mr. Feinberg, did you want to

5    raise with the Court today?

6           MR. FEINBERG:  Your Honor, the only issue at issue,

7    Your Honor, to issue an order requiring submission of a

8    discovery plan --

9           THE REPORTER:  I can't hear.

10          MR. FEINBERG:  -- issue an order requiring submission

11   of a discovery plan.  Will there be a deadline for that

12   submission at some point early in the discovery period?

13          THE COURT:  Yes.  Yes.  I want to give you a deadline,

14   but I want to consult with you on it.  What would you think is

15   reasonable, 45, 45 days?

16          MR. FEINBERG:  I think that in order to have a true

17   evaluation of the necessary document requests and depositions,

18   we will need to see the Government's ESI --

19          THE REPORTER:  Need to see?

20          THE COURT:  I'm sorry, I have to interrupt you.

21   You're voice is getting garbled.  It's the telephone, not you,

22   and the court reporter is having a hard time understanding you.

23   Did you say that you have to first see the Government's ESI?

24          MR. FEINBERG:  Yes, that's what I said, Your Honor, in

25   order to have a better feel for the number of depositions that

1    we would need to be taken, and the topic areas to cover, I

2    think it will be necessary for us to have a better

3    understanding of scope of information that will be produced.

4           THE COURT:  Did you get any ESI with your -- with the

5    Government's June 12th disclosures?

6           MR. FEINBERG:  No, we did not.

7           THE COURT:  You got no documents at all?

8           MR. FEINBERG:  That's correct.

9           THE COURT:  Oh, Mr. MacWilliams, is your supplement

10   for next week going to have documents?

11          MR. MACWILLIAMS:  Well, yes, Your Honor, I want to,

12   again, get back to the two categories of documents here.  We

13   have documents -- we disclosed the documents, a lot of these

14   the plaintiffs already have, but correct me if I am wrong here,

15   but my understanding as far as, we are disclosing ESI on our

16   disclosures, I believe there is a 30-day period in which to

17   produce it, and the vast majority of what we disclosed is ESI,

18   so that, you know, that's why we are where we are as far as the

19   document production.

20          THE COURT:  So when do you expect to disclose

21   documents?

22          MR. MACWILLIAMS:  Well, our plan was to make our

23   production no later than July 12th.

24          THE COURT:  Well, then why don't I set a 60-day

25   deadline for the discovery plan.  Does that sound reasonable to

1    you, Mr. Feinberg, or is that too long?

2         MR. FEINBERG:  No, that's acceptable, Your Honor.

3         THE COURT:  Okay.  Mr. MacWilliams, is that reasonable

4    for you?

5         MR. MACWILLIAMS:  Yes, Your Honor.

6         THE COURT:  Okay.  And I expect the discovery plan to

7    have an agreement on Request for Production of Documents and an

8    agreement as far as it can go on who is going to be deposed

9    either by name or description.  Okay.

10        Mr. MacWilliams, did you have anything else that you

11   wanted to raise?

12        MR. MACWILLIAMS:  No, Your Honor.

13        THE COURT:  Okay.  I'll try to come up with an order

14   that incorporates the things that we have discussed today as

15   well as the deadlines that we've set in accordance with your

16   agreements.

17        Thank you all very much.

18        MS. REITER:  Thank you.

19        MR. FEINBERG:  Thank you.

20        MR. MACWILLIAMS:  Thank you.

21

22

23

24

25

1

2

3

4

5

6                    **C E R T I F I C A T E**

7

8          I, HILDA E. LOPEZ, do hereby certify that I am duly

9   appointed and qualified to act as Official Court Reporter for

10  the United States District Court for the District of Arizona.

11         I FURTHER CERTIFY that the foregoing pages constitute

12  a full, true, and accurate transcript of all of that portion of

13  the proceedings contained herein, had in the above-entitled

14  cause on the date specified therein, and that said transcript

15  was prepared under my direction and control.

16         DATED at Phoenix, Arizona, this 8th day of July,

17  2020.

18

19

20                         s/Hilda E. Lopez_____

21                         HILDA E. LOPEZ, RMR, FCRR

22

23

24

25

UNITED STATES DISTRICT COURT