IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| C.M., on her own behalf and on behalf of her minor child, B.M.; L.G., on her own behalf and on behalf of her minor child, B.G.; M.R., on her own behalf and on behalf of her minor child, J.R.; O.A., on her own behalf and on behalf of her minor child, L.A.; and V.C., on her own behalf and on behalf of her minor child, G.A., <br><br> Plaintiffs, <br><br> v. <br><br> United States of America, <br><br> Defendant. | No. CV-19-05217-PHX-SRB <br><br> **JOINT STATUS REPORT** |
| A.P.F. on his own behalf and on behalf of his minor child, O.B.; J.V.S. on his own behalf and on behalf of his minor child, H.Y.; J.D.G. on his own behalf and on behalf of his minor child, M.G.; H.P.M. on his own behalf and on behalf of his minor child, A.D.; M.C.L. on his own behalf and on behalf of his minor child, A.J.; and R.Z.G. on his own behalf and on behalf of his minor child, B.P., <br><br> Plaintiffs, <br><br> v. <br><br> United States of America, <br><br> Defendant. | No. CV-20-00065-PHX-SRB |

In accordance with the Court's direction during the status conference on December 3, 2020, and the Court's orders regarding the same (*C.M.* ECF No. 75; *A.P.F.* ECF No. 67), the parties submit this Joint Status Report to detail the status of ESI discovery.

### Plaintiffs' Position

As set forth in detail in Plaintiffs' Response to Defendant's Status Reports, *C.M.* ECF No. 73; *A.P.F.* ECF No. 65, Plaintiffs propose the schedule below for production of electronically stored information ("ESI") pursuant to the Mandatory Initial Discovery Pilot Project ("MIDPP").

<u>Substantial Completion of the Collection and Processing of ESI</u>

Defendant states below that the "vast majority" of ESI has been collected, and therefore there is no need for the Court to set a deadline for collecting and processing ESI. In order to prevent further delays, however, Plaintiffs believe such a deadline is necessary. Defendant has represented to Plaintiffs that it is still processing the data collected from U.S. Customs and Border Protection ("CBP"), after which Defendant will be able to upload the data to its review platform.[1] Plaintiffs propose that the Court order substantial completion of the collection and processing of ESI by **December 14, 2020**.

<u>Department of Justice Production and Privilege Log</u>

The parties agree that Defendant shall produce relevant, non-privileged documents collected from the Department of Justice ("DOJ"), excluding documents containing or reflecting communications with the White House, by **December 31, 2020.**

As to the category of documents containing or reflecting communications with the White House, Defendant raised the issue of delaying the production of DOJ

---

[1] Defendant also represented that it has not collected documents from one of the supplemental ICE policy-level custodians ordered in *A.P.F.*, and as of this filing had not responded to a question about whether search terms have been run through documents from the other two supplemental ICE policy-level custodians. *A.P.F.* ECF Nos. 56, 60.

1  documents containing or reflecting White House communications for the first time
2  during the Status Conference with the Court on December 3, 2020. On December 7,
3  2020, the parties held a meet and confer during which Plaintiffs asked for additional
4  information concerning the White House communications. Defendant's counsel
5  stated that documents containing or reflecting White House communications were
6  being reviewed for and would be withheld on the basis of "privilege," but otherwise
7  refused to answer Plaintiffs' questions about how many documents were provided to
8  the White House for review and what portion of the total DOJ collection involved
9  communications with the White House. Defendant's counsel also could not provide
10 an estimate as to when the White House review will be completed.

11       Less than two hours before the deadline for this Status Report, Defendant
12 provided Plaintiffs with its revised position, which asserts, for the first time, that it
13 will not provide a privilege log for any documents "containing or reflecting
14 communications with the White House." The presidential communications privilege
15 "protects 'communications directly involving and documents actually viewed by the
16 President,' as well as documents 'solicited and received' by the President or his
17 'immediate White House advisors [with] . . . broad and significant responsibility for
18 investigating and formulating the advice to be given to the President.'" *Karnoski v.*
19 *Trump*, 926 F.3d 1180, 1203 (9th Cir. 2019) (citation omitted). Defendant has not
20 represented that the documents at issue involve communications directly involving the
21 President or his immediate White House advisors. Because Defendant has provided
22 no information whatsoever about the documents at issue, it is not clear whether they
23 fall within the category of documents protected by the presidential communications
24 privilege. Accordingly, it is Plaintiffs' position that Defendant should provide
25 Plaintiff and the Court with additional information about these documents, such as
26 who within the White House, or at least, what level government official, was involved
27 in the communications.
28

Moreover, Plaintiffs have made the requisite "preliminary showing of need" for documents reflecting communications between DOJ and the White House concerning the motivation for and development of the family separation policy. *Id.* at 1205 (citation omitted). That evidence is "directly relevant to the issues that are expected to be central to the trial," *id.* -- a central issue in the case is whether, as Plaintiffs assert, the administration developed and implemented the family separation policy with the goal of intentionally inflicting emotional distress on immigrant families to deter other asylum seekers from entering the United States. Communications between DOJ and the White House are likely to provide critical evidence on that issue. Moreover, the evidence sought "is not available with due diligence elsewhere," *id.*, because public reporting indicates that the White House played a central role in devising and developing the family separation policy and documents reflecting the White House's intent behind the policy are not otherwise available. Because Plaintiffs did not have adequate time to respond to Defendant's argument and case citations, however, Plaintiffs reserve the right to submit further briefing on this issue.

Substantial Completion of Production of Plaintiff-Specific ESI

Plaintiff-specific ESI consists of those documents containing Plaintiffs' names or "alien" numbers collected from custodians who interacted with Plaintiffs. Defendant has informed Plaintiffs that there are approximately 11,800 remaining Plaintiff-specific documents to be reviewed and produced in the *C.M.* case. In the *A.P.F.* case, Defendant states below that 13,237 Plaintiff-specific documents were collected from HHS and CBP, with the documents from three agreed-upon ICE custodians remaining to be collected. Plaintiffs propose that Defendant substantially complete production of all relevant, non-privileged Plaintiff-specific ESI by **December 31, 2020**. While Defendant proposes a deadline of January 31, 2021,

Defendant has provided no reasonable explanation as to why it cannot produce this limited quantity of documents by December 31, 2020, in accordance with the existing deadline imposed by the Court.  *C.M.* ECF No. 61 at 5; *A.P.F.* ECF No. 56 at 4.

<u>Completion of the TAR Validation Process</u>

The Technology Assisted Review ("TAR") process agreed to by the parties is intended to reduce Defendant's burden, while ensuring that the most relevant documents are produced to Plaintiffs expeditiously.  It is thus inappropriate for Defendant to use the TAR process as a reason to further delay its production of ESI.

Defendant's assertion that a timeframe for the completion of the TAR training phase is "indeterminable" is unreasonable. Moreover, Defendant fails to provide the Court with a proposed completion date for performing validation tests under the TAR process, and instead provides only a proposed *start* date, which does not ensure that the process will be completed in a timely manner. This is a critical distinction as the validation process will need to be completed before review of the vast majority of ESI can occur, and therefore before Defendant can produce the bulk of ESI at issue in these cases.

Despite Defendant's assertions to the contrary, the TAR training phase and validation process can be completed within weeks, as long as Defendant commits appropriate resources to the process. *See Rabin v. PriceWaterHouseCoopers LLP*, Case No. 160cv002276-JST, 2017 WL 4876780, at *2 (N.D. Cal. Aug. 8, 2017) (finding a lack of "persuasive evidence that the development of the TAR models will take months, rather than weeks."). There is nothing inherent in the "technology-assisted" processing, scoring, and validation of the ESI that requires a particular, and lengthy, amount of time to be set aside. As with a standard review, it is the actual review of documents that takes time, and the TAR validation process only requires Defendant to review ESI for responsiveness (rather than for privilege or

confidentiality, which Defendant has acknowledged are the more time-consuming tasks). *See id.* (finding that "the TAR process requires attorney review of a few thousand documents," and that "with appropriate resources devoted to this matter, there is no reason why that task cannot be completed within the next few weeks.")[2]

In order to ensure that ESI production begins in a timely manner, Plaintiffs propose that Defendant complete the TAR validation process by **December 31, 2020**. Failing to set a deadline for completing the TAR validation process sufficiently in advance of the deadline for substantial completion of ESI production increases the likelihood that Defendant will be unable to meet—and will seek further extension of—any revised deadline for substantial completion of ESI production ordered by the Court.

Substantial Completion of ESI Production Pursuant to the MIDPP

Defendant proposes a deadline of April 30, 2021 for substantial completion of ESI production, "to the extent such a date can be estimated at this point." Defendant's proposal is not meaningfully different than the indefinite extension Defendant sought in its Status Reports and at the Status Conference on December 3, 2020. For the reasons set forth in detail in Plaintiffs' Response to Defendant's Status Report, *C.M.* ECF No. 73; *A.P.F.* ECF No. 65, and explained by Plaintiffs at the Status Conference, Plaintiffs' position is that an indefinite extension—including an estimated target date like that proposed by Defendant—is not appropriate. Moreover,

---

[2] Defendant's request to extend the deadline for completion of the TAR validation process based on the potential for "technical (or other) issues or unanticipated volumes" to arise, *see infra* n. 7 (citing *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637, 2018 WL 1146371, *4 (N.D. Ill. Jan. 3, 2018)), is inappropriate. Defendant assumes that problems will arise when there is no indication to date that will be the case. Defendant can seek an extension if such issues arise. *See Rabin*, 2017 WL 4876780, at *2 ("Defendant also suggests that validating the models' results may reveal a flaw that necessitates additional work. But the Court will not set a lengthy schedule based on the possibility of future problems that have yet to arise.").

Plaintiffs believe that an extension of the substantial completion deadline until April 30, 2021 is unreasonable given that the parties agreed to search terms and custodians in August 2020 and the parties' use of TAR should reduce the volume of documents Defendant must review. Accordingly, Plaintiffs propose that the Court order that ESI production pursuant to MIDPP be substantially completed by **February 12, 2021**.[3] Plaintiffs further propose that, in the meantime, and starting immediately, Defendant make regular rolling productions of ESI.

Status Reports

Plaintiffs propose that the parties file an Interim Joint Status Report with the Court by **January 6, 2021** that includes the total number of documents collected; the number of documents reviewed for responsiveness; the number of documents marked as responsive; the number of documents produced to date; and the anticipated date, size, and custodians for Defendant's next production.

Plaintiffs propose that the parties file a Second Interim Joint Status Report with the Court by **February 1, 2021** that includes the number of documents collected since the last status report, if any; the number of documents reviewed for responsiveness since the last status report; the number of documents marked responsive since the last status report; the number of documents produced since the last status report; and the anticipated date, size, custodians for Defendant's next production.

**Defendant's Position**

---

[3] In *Al Otro Lado*, where the government estimated that "there may be as many as one million documents that Defendant will need to review" using TAR, the court set deadlines for complete production within approximately 10 weeks of the court's order, and a deadline for production from five priority custodians within 30 days. *Al Otro Lado v. Wolf*, No. 3:17-cv-02366-BAS-KSC (S.D. Cal. Sept. 9, 2019), ECF No. 288, at 1-2; Joint Motion on Plaintiffs' Request to Compel Government's Timely Production of Documents at 25, *Al Otro Lado v. Wolf*, No. 3:17-cv-02366-BAS-KSC (S.D. Cal. Aug. 30, 2019), ECF No. 284.

7

For the reasons stated in the United States' status reports (*C.M.* ECF 69; *A.P.F.* ECF 61) and during the conference held on December 3, 2020, an extension of the deadline to produce substantially all ESI is necessary. The United States' proposed schedule is below.

As noted in the parties' filings, the United States informed Plaintiffs in October 2020 that the volume of ESI resulting from the searches developed pursuant to the Mandatory Initial Discovery Pilot Program ("MIDPP") is overly burdensome and disproportional to the needs of the case, and that the searches should be revised to reduce the volume. (*C.M.* ECF 73 at 3; *A.P.F.* ECF 65 at 3). The revisions Plaintiffs eventually agreed to did not result in a significant reduction of the volume of ESI. The United States continued to state that the volume of ESI should be reduced. *Id.*

Plaintiffs proposed that the United States use Technology Assisted Review (TAR) for the review of ESI, *id.*[4], which the United States has agreed to do. In particular, the United States will use Continuous Active Learning (CAL) to assist with a responsiveness review. However, the transition to and use of TAR is a significant undertaking at substantial expense to the government. Further, as explained below, the deadlines proposed by Plaintiffs are unrealistic and do not properly take into account the complexities of transitioning to and using TAR, nor the extent to which the completion of certain phases of the TAR process to be used here is a data-driven process that involves variables beyond the ability of the users to control.

Regarding the collection of ESI, the collection of non-email ESI for some custodians is still underway. However, the vast majority of ESI for the TAR review has been collected by the agencies, and it is expected that additional ESI still to be collected can be integrated into the TAR process while it is underway. Thus, there is

---

[4] The ESI to be reviewed with TAR does not include the Plaintiff-specific ESI referenced above.

8

no need for the court to set a deadline for the substantial completion for the collection of ESI.

By **December 31, 2020**, the United States will produce all relevant, non-privileged ESI collected from the Department of Justice custodians, excluding any documents containing or reflecting communications with the White House. As for the latter, the further review of such documents for executive privileges is an issue to be addressed separately, with briefing as necessary. Plaintiffs' insistence that the review of and creation of a privilege log for such documents should be completed by December 31, 2020 fails to appreciate the unique nature of such documents. It is well-recognized that such documents are afforded special treatment and courts are to ensure that plaintiffs have demonstrated a heightened need for discovery of such documents before the invocation of such privileges. *Karnaski v. Trump*, 926 F.3d 1180, 1205 (9th Cir. 2019) (citing *Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367, 388-89 (2004)), *Dairyland Power Co-op v. United States.*, 79 Fed. Cl. 659, 662 (2007); *see also United States v. McGraw-Hill Companies, Inc.*, 2014 WL 8662657, at *8 (C.D. Cal. Sept. 25, 2014) ("courts must ensure that the invocation of executive privilege is the last resort" and ordered a "methodical approach" to discovery whereby privilege logs were not to be provided until after all other discovery was completed).[5]

By **January 31, 2021**, the United States will produce substantially all relevant, non-privileged Plaintiff-specific ESI, with productions to occur at least bi-weekly (every two weeks). This additional time is necessary given the volume of documents

---

[5] The United States' position that any attempt at discovery of such documents would require the showing of a heightened need was made clear at the outset of discovery. *See* Case Management Report (*C.M.* ECF 42 at 10; *A.P.F.* ECF 41 at 17).

9

resulting from these searches,[6] and so that the government can devote sufficient resources to the training phase of the TAR process (discussed *infra*), which overlaps with the time period for the review and production of the Plaintiff-specific ESI.

For the remainder of the ESI to be reviewed with TAR, there is a multi-step process to be followed, including a training phase and document review phase. Generally, during the training phase, subject matter experts (SMEs) (*i.e.*, attorney reviewers) code documents for responsiveness, and the active learning system presents the SMEs with additional documents to code for responsiveness. It is through this process that the active learning system is trained to rank documents according to their likelihood of being responsive. The training phase can be determined to be complete once certain tests are performed to validate the active learning process. When the training phase is complete, the human review phase commences for responsiveness, confidentiality, and privilege. Until the training phase is complete, it cannot be known how many documents ultimately are to be reviewed during the latter human review phase. Moreover, the precise timeframe it will take for the TAR training phase to be complete is indeterminable at this point, as it is a data-driven process. Simply put, the TAR training phase does not, as Plaintiffs suggest, involve merely inputting a sample set of documents to train the system; it

---

[6] For the *C.M.* plaintiffs, the Plaintiff-specific ESI searches resulted in the following number of documents for review: (1) 2,333 documents from Health and Human Services (HHS); (2) 6,457 documents from Immigration and Custom Enforcement (ICE); and (3) 5,311 documents from Customs and Border Protection (CBP). The relevant documents from the HHS ESI have been produced.

For the *A.P.F.* plaintiffs the Plaintiff-specific ESI searches resulted in the following number of documents for review: (1) 1,478 documents from HHS; and (2) 11,759 documents from CBP. The collection process for the Plaintiff-specific ESI from ICE is still underway.

also includes a review of documents by SMEs until stabilization of the active learning system has been achieved.[7]

Thus, specific deadlines for certain phases of the TAR process to be complete are speculative at this point. Given the volume of documents to be included in the TAR process – which is expected to be approximately 1,000,000 documents – the United States' best estimate of when the system may indicate stabilization and thus an appropriate time to perform validation tests of the active learning model is **January 15, 2021**.

Because of the inherent uncertainty regarding the time it will take for the training phase of the TAR process to be completed, the United States proposes providing a status report to the Court every two weeks regarding the progress of the training phase until it is complete. The status reports would include the number of documents reviewed by SMEs during this phase.

Once the training phase of TAR is complete and the human review phase commences, the United States will produce on a rolling basis, occurring at least bi-weekly (every two weeks), relevant, non-privileged ESI. The United States proposes providing a status report to the Court every four weeks during the review phase. Such status reports would include the progress of the review and the volume of productions.

Because of the uncertainties explained above regarding the time necessary for the training phase and the volume of documents to be part of the review phase, a reasonable timeframe for the production of substantially all ESI is speculative at this

---

[7] Plaintiffs' reliance on *Rabin v. PriceWaterHouseCoopers LLP*, Case No. 160cv002276-JST, 2017 WL 4876780, at *2 (N.D. Cal. Aug. 8, 2017) is thus misplaced. The number of documents to be reviewed to train the system is not a pre-determined amount, and cannot be assumed to be a few thousand, but continues until the system indicates that it has sufficiently learned from that review. Moreover, as courts have acknowledged, the review of a high-volume of ESI, especially through the use of TAR, could involve "technical (or other) issues or unanticipated volumes" that interfere with the ability to comply with set deadlines. *See, e.g, In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637, 2018 WL 1146371, *4 (N.D. Ill. Jan. 3, 2018).

point.  To the extent such a date can be estimated at this point, the United States proposes a deadline to produce substantially all such ESI by **April 30, 2021**.

Dated: December 9, 2020
Respectfully submitted,

| | |
|---|---|
| */s/ Diana E. Reiter* | */s/ Phil D. MacWilliams* |
| Diana E. Reiter* | Philip D. MacWilliams |
| Erik Walsh* | Theodore W. Atkinson |
| Lucy McMillan* | U.S. Department of Justice |
| Harry K. Fidler* | Civil Division, Torts Branch |
| Kaitlyn Schaeffer* | Benjamin Franklin Station |
| Arnold & Porter Kaye Scholer LLP | P.O. Box 888 |
| 250 West 55th Street | Washington, D.C. 20044 |
| New York, New York 10019-9710 | 202-616-4285 |
| 212-836-8000 | phil.macwilliams@usdoj.gov |
| diana.reiter@arnoldporter.com | theodore.atkinson@usdoj.gov |
| erik.walsh@arnoldporter.com | |
| lucy.mcmillan@arnoldporter.com | *Attorneys for Defendant* |
| harry.fidler@arnoldporter.com | |
| kaitlyn.schaeffer@arnoldporter.com | |

*Attorneys for Plaintiffs*
*Additional counsel for Plaintiffs*
*listed on following pages*

| | | |
|---|---|---|
|1| R. Stanton Jones* | Jonathan H. Feinberg* |
|2| Daniel F. Jacobson* | Kairys, Rudovsky, Messing, Feinberg |
| | Emily Reeder-Ricchetti* | & Lin LLP |

R. Stanton Jones*
Daniel F. Jacobson*
Emily Reeder-Ricchetti*
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
202-942-5000
stanton.jones@arnoldporter.com
daniel.jacobson@arnoldporter.com
emily.reeder-ricchetti@arnoldporter.com

Trina Realmuto*
Mary Kenney*
National Immigration Litigation Alliance
10 Griggs Terrace
Brookline, MA 02446
617-819-4447
trina@immigrationlitigation.org
mary@immigrationlitigation.org

David B. Rosenbaum
Emma J. Cone-Roddy
Osborn Maledon, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, AZ 85012-2793
602-640-9000
drosenbaum@omlaw.com
econe-roddy@omlaw.com

*Attorneys for Plaintiffs C.M. et al.*
*\* Admitted pro hac vice*

Jonathan H. Feinberg*
Kairys, Rudovsky, Messing, Feinberg
  & Lin LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
215-925-4400
jfeinberg@krlawphila.com

Mark Fleming*
National Immigrant Justice Center
224 S. Michigan Ave., Suite 600
Chicago, IL 60604
312-660-1370
mfleming@heartlandalliance.org

Claudia Valenzuela*
Katherine Melloy Goettel*
Emma Winger*
American Immigration Council
1331 G Street NW, Suite 200
Washington, DC 20005
202-507-7512
202-742-5619
cvalenzuela@immcouncil.org
kgoettel@immcouncil.org
ewinger@immcouncil.org

13

| | |
|---|---|
| Keith Beauchamp (012434)<br>Shelley Tolman (030945)<br>COPPERSMITH BROCKELMAN PLC<br>2800 N. Central Avenue, Suite 1900<br>Telephone: (602) 381-5493<br>Phoenix, AZ 85004<br>kbeauchamp@cblawyers.com<br>stolman@cblawyers.com<br><br>Norma Ventura*<br>Gillian Gillers*<br>James Knoepp*<br>SOUTHERN POVERTY LAW CENTER<br>P.O. Box 1287<br>Decatur, GA 30031<br>Telephone: (404) 521-6700<br>norma.ventura@splcenter.org<br>gillian.gillers@splcenter.org<br>jim.knoepp@splcenter.org<br><br>Matthew J. Schlesinger*<br>Jason A. Carey*<br>Terra White Fulham*<br>COVINGTON & BURLING LLP<br>One City Center, 850 Tenth Street, NW<br>Washington, DC 20001-4956<br>Telephone: (202) 662-5581<br>mschlesinger@cov.com<br>jcarey@cov.com<br>tfulham@cov.com<br><br>*Attorneys for Plaintiffs A.P.F. et al.*<br>*\* Admitted pro hac vice* | Paul R. Chavez*<br>SOUTHERN POVERTY LAW CENTER<br>P.O. Box 370037<br>Miami, FL 33137<br>Telephone: (786) 347-2056<br>paul.chavez@splcenter.org<br><br>Swati R. Prakash*<br>COVINGTON & BURLING LLP<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018-1405<br>Telephone: (212) 841-1174<br>sprakash@cov.com<br><br>Jessica R. Hanson*<br>COVINGTON & BURLING LLP<br>1999 Avenue of the Stars, Suite 3500<br>Los Angeles, CA 90067-4643<br>Telephone: (424) 332-4800<br>jhanson@cov.com |