David B. Rosenbaum, 009819
Emma J. Cone-Roddy, 034285
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
(602) 640-9000
drosenbaum@omlaw.com
econe-roddy@omlaw.com
*Counsel for C.M. Plaintiffs*

*(Additional Counsel for Plaintiffs Listed on the Signature Page)*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| C.M., on her own behalf and on behalf of her minor child, B.M.; L.G.; on her own behalf and on behalf of her minor child, B.G.; M.R., on her own behalf and on behalf of her minor child, J.R.; O.A., on her own behalf and on behalf of her minor child, L.A.; and V.C., on her own behalf and on behalf of her minor child, G.A., | No. 2:19-cv-05217-SRB **MOTION AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DISCOVERY WITHHELD BY THE GOVERNMENT BASED ON IMPROPER PRIVILEGE ASSERTIONS** (Oral Argument Requested) |
| Plaintiffs, | |
| v. | |
| United States of America, | |
| Defendant. | |
| A.P.F., on his own behalf and on behalf of his minor child, O.B.; and J.V.S., on his own behalf and on behalf of his minor child, H.Y., | No. 2:20-cv-00065-SRB |
| Plaintiffs, | |
| v. | |
| United States of America, | |
| Defendant. | |

## INTRODUCTION

The government has withheld or redacted tens of thousands of pages of discoverable information based on improper or inadequate assertions of the deliberative process, presidential communications, attorney-client, and work product privileges.  The redactions are often so sweeping that many produced materials are essentially blank pieces of paper with Bates numbers.  As to the government's assertion of the deliberative process privilege, this privilege is inapplicable here because the government's intent and misconduct are central to Plaintiffs' claims.  The government also has not properly invoked the privilege and, even if it were applicable and properly invoked, Plaintiffs would overcome the privilege because their need for the information outweighs the government's interest in non-disclosure.  As to the presidential communications privilege, the government has not properly asserted the privilege and, based on the limited information in the privilege log, is withholding numerous discoverable communications based on an overbroad interpretation of the privilege.  Similarly, the government has not established the required elements of the attorney-client and work product privileges and, based on what can be gleaned from the privilege logs and redactions, has taken an overbroad view of their application.

Plaintiffs respectfully request that the Court order the production of all documents improperly withheld or redacted on these grounds, the remediation of the deficiencies in the government's privilege assertions, and any other remedy the Court deems appropriate, such as *in camera* review of the documents at issue.

## BACKGROUND

On December 31, 2020 and January 15, 2021, the government produced 3,234 documents from U.S. Department of Justice ("DOJ") custodians pursuant to this District's Mandatory Initial Discovery Pilot ("MIDP") program.  The government, however, asserted that about two-thirds of these documents (2,253 in total) were subject to the deliberative process, presidential communications, work product, and/or attorney-client privileges, and

extensively redacted substantive information from these documents.[1]  *See* Ex. 1, Dec. 31, 2020 Priv. Log Excerpts; Ex. 2, Jan. 15, 2021 Priv. Log Excerpts.[2]

On January 29, and February 19, 2021, Plaintiffs sent the government letters detailing deficiencies in the government's privilege assertions with respect to these two productions.[3]  The parties met and conferred about these issues on February 26 and March 10, 2021, but were unable to reach a resolution.  At a March 11, 2021 hearing, this Court granted Plaintiffs' request to file a motion to compel.  (Case No. 2:19-cv-05217, Dkt. No. 89; Case No. 20-cv-00065, Dkt. No. 85).

## STANDARD OF REVIEW

"A party may move under Rule 37 of the Federal Rules of Civil Procedure for an order compelling disclosure or discovery."  *Ocean Garden Prod. Inc. v. Blessings Inc.*, 2020 WL 4284383, at *2 (D. Ariz. July 27, 2020) (citing Fed. R. Civ. P. 37(a)(1)).  When a party withholds discoverable information as privileged, the party "has the burden of establishing the existence and applicability of each of the privileges asserted in all respects."  *Unites States v. Hardrives, Inc.*, 1991 WL 12008395, at *2 (D. Ariz. Feb. 4, 1991) (citing *Dole v. Milonas*, 889 F.2d 885, 889 (9th Cir. 1989)).  "The burden to sustain a claim of privilege is heavy because privileges are 'not lightly created nor expansively

---

[1] In connection with its December 31 and January 15 productions, the government provided corresponding privilege logs.  Of the 2,253 documents on the logs, the government claimed that 1,134 were subject solely to the deliberative process privilege, 76 were subject solely to the presidential communications privilege, five were subject solely to attorney-client or work product privileges, and 1,038 were subject to *multiple* privileges, including attorney-client, work product, presidential communications, and/or deliberative process.  The government asserts the deliberative process and presidential communications privileges as to the vast majority of the 1,038 documents purportedly subject to multiple privileges.

[2] To avoid inundating the Court with voluminous privilege logs, Plaintiffs have annexed as exhibits excerpts of the privilege logs at issue.  These excerpts contain all of the entries that Plaintiffs cite in this memorandum.  Upon request, Plaintiffs will provide the Court with complete copies of the relevant privilege logs.

[3] Plaintiffs also have identified similar deficiencies in the government's privilege assertions in connection with other productions.  Plaintiffs reserve their right to raise these deficiencies following the Court's resolution of the instant disputes.

1  construed, for they are in derogation of the search for the truth.'" *Diamond Resorts U.S.*

2  *Collection Dev., LLC v. Reed Hein & Assocs.*, 2020 WL 6487660, at *3 (D. Nev. Nov. 4,

3  2020) (quoting *United States v. Nixon*, 418 U.S. 683, 710 (1974)); *see also Briggs v. Adel*,

4  2020 WL 4003123, at *2 (D. Ariz. July 15, 2020) (discussing the "heavy burden of the

5  party opposing discovery") (internal quotations omitted).

6  **ARGUMENT**

7  **I.  The Government Has Improperly Withheld and Redacted Documents Based**

8     **on the Deliberative Process Privilege**

9     **A.  The Privilege Is Unavailable in these Cases Because the Government's**

         **Intent Is at Issue**

10

11         The government has withheld extensive amounts of discoverable information based

12  on a privilege that does not apply to this litigation because the government's intent,

13  misconduct, and decisionmaking process are central to Plaintiffs' claims and the

14  government's defenses.  "[T]he deliberative process privilege shields from disclosure

15  'documents reflecting advisory opinions, recommendations and deliberations comprising

16  part of a process by which governmental decisions and policies are formulated[.]'" *U.S.*

17  *Fish & Wildlife Serv. v. Sierra Club, Inc.*, 2021 WL 816352, at *4 (U.S. Mar. 4, 2021)

18  (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)).  "The privilege is

19  rooted in 'the obvious realization that officials will not communicate candidly among

20  themselves if each remark is a potential item of discovery and front page news.'" *Id.*

21  (quoting *Dep't of Interior v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1, 8–9, (2001)).

22         The privilege, however, "was fashioned in cases where the governmental

23  decisionmaking process is collateral to the plaintiff's suit." *In re Subpoena Duces Tecum*

24  *Served on Office of Comptroller of Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998), *on*

25  *reh'g in part*, 156 F.3d 1279 (D.C. Cir. 1998).  "If the plaintiff's cause of action is directed

26  at the government's intent, . . . it makes no sense to permit the government to use the

27  privilege as a shield." *Id.*  Likewise, when "governmental officials' deliberations" are at

28  issue, "the privilege is a nonsequitur." *Id.* ("The central purpose of the privilege is to foster

government decisionmaking by protecting it from the chill of potential disclosure.  If Congress creates a cause of action that deliberatively exposes government decisionmaking to the light, the privilege's raison d'être evaporates.").  The privilege is equally inapplicable where "there is reason to believe that the documents sought may shed light on government misconduct."  *Jones v. Hernandez*, 2017 WL 3020930, at *5 (S.D. Cal. July 14, 2017).

The intent and deliberations of government officials responsible for devising immigration deterrence policies are central to Plaintiffs' case, which alleges that officials sought to traumatize families by separating parents from their children and exacerbated the trauma by failing to track separated children and delaying parents' ability to locate and communicate with them.  (Case No. 2:19-cv-05217, Compl. (Dkt. No. 1) ¶¶ 1, 2, 4, 23, 27–28, 56–57, 68–69; Case. No. 20-cv-00065, Am. Compl. (Dkt. No. 34) ¶¶ 9, 11, 13-21, 50–79, 486–90, 497–510).  The information that Plaintiffs seek will shed light on government misconduct to the extent that officials sought to unlawfully inflict emotional distress on immigrant families or were reckless or negligent in carrying out the separations.

Given the nature of Plaintiffs' negligence and intentional infliction of emotional distress claims, "it makes no sense to permit the government to use the [deliberative process] privilege as a shield."  *See In re Subpoena*, 145 F.3d at 1424.  The government must therefore produce all information withheld based on this privilege.  *See Jones*, 2017 WL 3020930, at *3 (noting that the privilege is inapplicable where "documents . . . may shed light on government misconduct" or "the agency's decision-making process is itself at issue"); *L.H. v. Schwarzenegger*, 2007 WL 2009807, at *4 n.7 (E.D. Cal. July 6, 2007) ("Where the agency's deliberative process is at issue, the deliberative process privilege does not apply.") (citing *In re Subpoena,* 145 F.3d at 1424); *see also Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 135 (D.D.C. 2005) ("[W]hen there is reason to believe that government misconduct has occurred, the deliberative process privilege disappears."); *Alexander v. FBI*, 186 F.R.D. 154, 164–65 (D.D.C. 1999) (privilege inapplicable where withheld documents "shed[] light on government misconduct and provide[d] a basis to believe that government misconduct occurred"); *Tax Reform Research*

*Grp. v. IRS*, 419 F. Supp. 415, 426 (D.D.C. 1976) (privilege inapplicable where withheld documents "discuss[ed] the possibility of using a government agency to deliberately harass an opposition political party").

### B.      Numerous Deficiencies Undermine the Government's Invocation of the Privilege

Even if the deliberative process privilege were available, the government has not shown, as it must, that the privilege's basic elements are satisfied.[4]  "For the deliberative process privilege to apply, the material must be 'predecisional' and 'deliberative.'" *Karnoski v. Trump*, 926 F.3d 1180, 1204 (9th Cir. 2019) (quoting *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997)).  As to the "predecisional" requirement, the relevant agency must "identify a specific decision to which the document is predecisional." *Maricopa Audubon Soc. v. U.S. Forest Serv.*, 108 F.3d 1089, 1094 (9th Cir. 1997).  Here, the government has failed to identify any specific decisions that would support a conclusion that the withheld and redacted documents are predecisional.  *See, e.g.*, Ex. 1, Dec. 31, 2020 Priv. Log Excerpts, at CD-US-00011192 ("DOJ Power Point presentation concerning statistics on Southwest Border Prosecution Projections for Zero Tolerance policy"), CD-US-00011689 ("Internal Memo on South Texas Border Apprehensions from USA explaining legal and factual conditions in that area").

As to the "deliberative" requirement, courts "focus on 'the effect of the materials' release'—namely, whether disclosure of the materials 'would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.'"  *Maricopa*, 108 F.3d at

---

[4] Moreover, the privilege "must be invoked by an agency head, or his delegate, having control over the requested document, after having personally reviewed the documents for which the privilege is asserted." *Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir. 1988); *see also Unknown Parties v. Johnson*, 2016 WL 8199308, at *5 (D. Ariz. July 21, 2016) (explaining purpose of requirement).  Because an agency head has not asserted the privilege here, the government's invocation of the privilege is invalid.  *See Mayfield v. Cty. of Los Angeles*, 2020 WL 2510649, at *1 (C.D. Cal. Mar. 20, 2020) ("prima facie burden of . . . invoking the privilege" not met without "sworn declaration" from agency head).

1   1094–95 (quoting *Assembly of State of California v. U.S. Dep't of Commerce.*, 968 F.2d

2   916, 921 (9th Cir. 1992)).  Where, as here, protective orders (Case No. 2:19-cv-05217, Dkt.

3   No. 58; Case No. 20-cv-00065, Dkt. No. 45) ("Protective Orders") would prevent public

4   disclosure, courts are less likely to uphold a claim of privilege.  *See, e.g.*, *Al Otro Lado,*

5   *Inc. v. Wolf*, 2020 WL 6449152, at *5 (S.D. Cal. Nov. 2, 2020) ("The deliberative process

6   privilege is designed to allow agencies to freely explore possibilities . . . without fear of

7   *public* scrutiny. . . .  [T]he Protective Order will sufficiently protect [defendants']

8   interests.") (internal quotations omitted); *Rodriguez v. City of Fontana*, 2017 WL 4676261,

9   at *4 (C.D. Cal. Oct. 17, 2017) (privilege inapplicable where "an appropriate protective

10  order" would ensure confidentiality); *In re McKesson Governmental Entities Average*

11  *Wholesale Price Litig.*, 264 F.R.D. 595, 602 (N.D. Cal. 2009) (privilege inapplicable where

12  government "failed to explain why a protective order . . . would not eliminate any harm").

13          Moreover, "the privilege protects opinions and deliberations, but generally not

14  'facts and evidence.'"  *Novoa v. GEO Grp., Inc.*, 2020 WL 6694317, at *6 (C.D. Cal. Oct.

15  8, 2020) (quoting *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984)).

16  "[I]f the government can segregate and disclose non-privileged factual information within

17  a document, it must.'"  *Karnoski*, 926 F.3d at 1204 (quoting *Loving v. Dep't of Defense*,

18  550 F.3d 32 (D.C. Cir. 2008)).  The government has the "burden to establish that 'all

19  reasonably segregable portions of a document have been segregated and disclosed.'"

20  *Scalia v. Int'l Longshore & Warehouse Union*, 336 F.R.D. 603, 614 (N.D. Cal. 2020)

21  (quoting *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008)).

22          The government's sweeping redactions here demonstrate that it has made no effort

23  to segregate factual and deliberative information.  To illustrate, several reports related to

24  border security issues are redacted in their entirety.  *See, e.g.*, Ex. 3, CD-US-00013311

25  ("Draft of Report on Securing the Southern Border"); Ex. 4, CD-US-00010918

26  ("Combatting The Southwest Border Crisis"); Ex. 5, CD-US-00010828 ("Increasing

27

28

Prosecutions of Immigration Violations").[5]    All of these documents almost certainly contain factual information that should have been left unredacted.[6]    Similarly, the government's own descriptions suggest that many other documents contain factual information.  *See, e.g.*, Ex. 1, Dec. 31, 2020 Priv. Log Excerpts, at CD-US-00007072 (email containing "criminal immigration charges by district for October 2017"); CD-US-00007931 (email containing "statistics for number of cases" and information about "IJ resource availability"); CD-US-00011192 ("DOJ Power Point presentation concerning statistics on Southwest Border Prosecution Projections for Zero Tolerance policy"); CD-US-00011689 ("Internal Memo on South Texas Border Apprehensions from USA explaining legal and *factual* conditions in that area") (emphasis added).

Finally, the government has improperly asserted the deliberative process privilege with respect to numerous documents relating to media coverage, responses to congressional inquiries, talking points, and public remarks.[7]    However, courts have

---

[5] Plaintiffs submit only a selection of the redacted documents produced by the government as exhibits.  Upon request, Plaintiffs will submit copies of any or all of the produced documents cited herein.

[6] The government indisputably redacted substantial non-privileged information in Exhibit 5, as the U.S. Customs and Border Protection published a largely unredacted version of the same document in response to a FOIA request.  *See* Ex. 6; *April 23, 2018 Memo on Family Separation*, POGO (published Sept. 25, 2018), org, https://www.pogo.org/document/2018/09/april-23-2018-memo-on-family-separation/. The April 23, 2018 memorandum directly addresses separation of families, *see id.* at 3 ("DHS could also permissibly direct the separation of parents or legal guardians and minors held in immigration detention so that the parent or legal guardian can be prosecuted . . . ."), and contains substantial factual information that should not have been redacted.  *See, e.g.*, *id.* at 1 (discussing migration statistics, including that "[i]llegal migration toward the Southwest Border . . . continues to rise" with "family units . . . , averaging over 450 for the same period"); *id.* at 2 (summarizing public memoranda issued by the President and Attorney General).

[7] *See, e.g.*, Ex. 1, Dec. 31, 2020 Priv. Log Excerpts, at CD-US-00007298 (". . . media strategy for engaging on Zero Tolerance policy issues and family separation history"); CD-US-00009450 (". . . CJS inquiry based on news article, with draft responses and discussion of same by DOJ senior officials"); CD-US-00007785 (". . . possible response to a Bloomberg article on Zero Tolerance Policy and family separations . . ."); CD-US-00010857 ("Draft Talking Points on the Zero Tolerance Policy for DOJ community outreach effort . . ."); CD-US-00010907 ("Draft talking points for Attorney General

repeatedly held that the privilege does not apply to such communications, as they do not involve the creation of public policy. *See, e.g.*, *Nat'l Urban League v. Ross,* 2020 WL 7682251, at *3 (N.D. Cal. Dec. 24, 2020) (privilege inapplicable to documents concerning "[c]ommunications strategies," a "draft tweet," "press releases," "reactions to media articles and preparation for media appearances and op-eds," and "political responses to legislators"); *Al Otro Lado*, 2020 WL 6449152, at *4 (privilege inapplicable to "deliberations" about "public relations matters"); *Russell v. U.S. Dep't of State*, 2012 WL 12932592, at *2 (C.D. Cal. May 22, 2012) (privilege inapplicable to documents discussing "how to respond to congressional inquiries" because the "documents were not generated for the purpose of arriving at a policy decision.").[8]

## C. Plaintiffs' Need for the Documents Overrides the Government's Confidentiality Concerns

Even if the deliberative process privilege were available and properly asserted, the privilege does not preclude production of the materials in question. The privilege is qualified and a "litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *Karnoski*, 926 F.3d at 1206 (quoting *Warner*, 742 F.2d at 1161). To determine whether a plaintiff can overcome the privilege, courts often consider four factors: "1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent

---

Sessions on lack of congressional action . . . "); CD-US-00011943 (". . . draft response to a Politico article on the Zero Tolerance Policy . . ."); CD-US-00012216 ("Draft of Attorney General Sessions remarks to officials in Fort Wayne, Indiana . . . on immigration and Zero Tolerance policy prosecutions. . .").

[8] *See also, e.g.*, *Ramos v. Nielsen*, 2018 WL 5264529, at *1 (N.D. Cal. Aug. 15, 2018) (doubting that the privilege would cover "[s]ubsidiary decisions" after policy was enacted, including decisions "related to public relations, diplomatic relations, and congressional inquiries," as "these decisions do not appear to implicate the formulation of important public policy"); *Chattler v. United States*, 2009 WL 1313227, at *2 (N.D. Cal. May 12, 2009) ("preparations related to testimony before Congress or statements to Congress or the public (including press releases) . . . do not seem to be decisions akin to policymaking").

discussion regarding contemplated policies and decisions." *Id.* Courts "may also consider [5] the interest of the litigant, and ultimately society, in accurate judicial fact finding, [6] the seriousness of the issues involved in the litigation, [7] the presence of issues involving alleged governmental misconduct, and [8] the federal interest in the enforcement of federal law." *Unknown Parties v. Johnson*, 2016 WL 8199308, at *3 (D. Ariz. Jul. 21, 2016). All eight factors favor disclosure here.

First, the withheld information is highly relevant to Plaintiffs' claims. For instance, in addition to the examples discussed above, the government has fully redacted a nine-page document titled "Background and Talking Points for Principals Discussion on Immigration," which was prepared for a May 3, 2018 meeting that a number of high-ranking officials attended. *See* Ex. 7, CD-US-00007118. According to public reports, these officials voted at the meeting on whether to separate immigrant families.[9] Former President Trump's senior adviser Stephen Miller, who reportedly led the meeting, "saw the separation of families not as an unfortunate byproduct [of immigration prosecutions] but as a tool to deter more immigration" and insisted at the meeting that the policy move forward "regardless of arguments about resources and logistics."[10] The government has also redacted all substantive text of documents concerning the implementation of the Zero Tolerance Policy, problems that arose during its implementation, and concerns raised by U.S. Attorneys about the policy—all of which are relevant to Plaintiffs' claims, especially their negligence claims.[11] *See* Plaintiffs' Motion to Compel Production of Documents dated March 19, 2021.

---

[9] *See* Julia Ainsley & Jacob Soboroff, *Trump Cabinet officials voted in 2018 White House meeting to separate migrant children, say officials*, NBC News (Apr. 20, 2020), https://www.nbcnews.com/politics/immigration/trump-cabinet-officials-voted-2018-white-house-meeting-separate-migrant-n1237416.

[10] *Id.*

[11] *See, e.g.*, Ex. 1, Dec. 31, 2020 Privilege Log, at CD-US-00010833 ("Report from USAO in New Mexico on efforts undertaken and results of Zero Tolerance Policy prosecution initiatives . . . [i]ncluding successes, challenges and resource requests"); CD-US-00011511 ("Internal DOJ discussion regarding EOUSA inquiry conveying southwestern border USAOs concerns about implementation of Zero Tolerance policy and processing family

Second, regarding the availability of other evidence, Plaintiffs are unable to obtain comparable information about the deliberations that led to the family separation policy, the government's intent and DOJ's role in developing the policy, and the implementation of the policy from other sources because all of the relevant information is in the government's possession. *Coleman v. Sterling*, 2011 WL 13176814, at *4 (S.D. Cal. June 13, 2011) (factor favored plaintiffs where "[t]he contemporaneous recording . . . is not available from other sources").

Third, concerning the government's role in this litigation, courts routinely conclude that this factor favors disclosure where, as here, the "government has a central role in the events at issue . . . , and the basis for its action is a central issue." *See Ctr. for Biological Diversity v. Wolf*, 447 F. Supp. 3d 965, 975 (D. Ariz. 2020) ("[T]hat a government entity's action is the focal point of litigation weighs against upholding the deliberative process privilege.") (internal quotations omitted); *Arizona Dream Act Coal. v. Brewer*, 2014 WL 171923, at *3 (D. Ariz. Jan. 15, 2014) (factor favors disclosure where the "government is a party . . . and its intent in crafting the policy is a primary issue").

Fourth, the production of withheld information would not "hinder frank and independent discussion," *Karnoski*, 926 F.3d at 1206, because the operative Protective Orders would shield the material from public exposure. *Mayfield v. Cty. of Los Angeles*, 2020 WL 2510649, at *2 (C.D. Cal. Mar. 20, 2020) (fourth factor "tips in favor of disclosure . . . especially given that there is a protective order in place."); *accord L.H. v. Schwarzenegger*, 2007 WL 2009807, at *7 (E.D. Cal. July 6, 2007).

As to the fifth, sixth, and seventh factors (interest of litigants and society in accurate judicial fact finding, seriousness of the issues, and presence of alleged government misconduct), courts find that these considerations favor disclosure where, as here, government officials allegedly engaged in misconduct and violated plaintiffs' rights. *See,*

---

units"); CD-US-00010914 ("Draft Deputy Attorney General's weekly immigration meeting, including items on implementation of the Zero Tolerance Policy"); CD-US-00011731 ("Draft materials for call with White House on immigration issues, including status sheet on bedspace issues").

*e.g.*, *Al Otro Lado, Inc. v. Wolf*, 2020 WL 5422784, at *4 (S.D. Cal. Sept. 10, 2020) ("The government's role in the litigation is paramount since the allegations are that the government committed misconduct . . . . Given the seriousness of the allegations, both the litigants and the American public have a strong interest in accurate judicial fact-finding . . . ."); *Del Socorro Quintero Perez v. United States*, 2016 WL 499025, at *8 (S.D. Cal. Feb. 9, 2016) ("Plaintiffs' [allegations] involve potentially serious constitutional violations by [government] agents. . . . The seriousness of the issues involved magnifies the interest of the court and society in accurate fact-finding."); *Swartwood v. Cty. of San Diego*, 2013 WL 6670545, at *5 (S.D. Cal. Dec. 18, 2013) (sufficient interest in accurate judicial fact-finding and issues sufficiently serious where "the issue in this litigation is whether the County and its agencies complied with federal law when removing and detaining the minor children"); *see also, e.g.*, *Ibrahim v. Dep't of Homeland Sec.*, 2013 WL 1703367, at *9 (N.D. Cal. Apr. 19, 2013); *Kay v. City of Rancho Palos Verdes*, 2003 WL 25294710, at *20 (C.D. Cal. Oct. 10, 2003).

Eighth, concerning the federal interest in the enforcement of federal law, whether the government violated Plaintiffs' constitutional rights is a central issue because the government has argued that the discretionary function exception bars Plaintiffs' claims, whereas Plaintiffs contend that this exception does not apply because the government lacks the discretion to violate the Constitution.  *See* Case No. 2:19-cv-05217, Dkt. No. 31 at 6–7; Case No. 20-cv-00065, Dkt. No 36, at 6–7; *Perez*, 2016 WL 499025, at *10 (finding this factor favored disclosure because plaintiff's allegations of government misconduct implicated the "federal interest in the enforcement of constitutional law").  Moreover, Plaintiffs have sued the U.S. government under the Federal Tort Claims Act, which "incorporates state law into federal common law," and therefore Plaintiffs are seeking to vindicate rights made available under federal law.  *Robbins v. United States*, 2004 WL 7325705, at *2 (D. Ariz. Sept. 21, 2004); *Young v. United States*, 149 F.R.D. 199, 201–02 (S.D. Cal. 1993) (FTCA "[a]ssimilates" state law into federal law).

Because all eight factors favor disclosure, Plaintiffs would overcome the privilege even if it were applicable and properly invoked. *See Arizona Dream Act Coal.*, 2014 WL 171923, *1, *4 (privilege deemed applicable but finding that the "*Warner* factors would result in disclosure" in a case challenging a policy that "den[ied] driver's licenses to individuals granted deferred action status under the 2012 Deferred Action for Childhood Arrivals ('DACA') program").

## II.    The Government Has Improperly Invoked the Presidential Communications Privilege

The government has also redacted or withheld thousands of pages of discoverable information based on an improper assertion of the presidential communications privilege and an overbroad interpretation of its scope. "'The presidential communications privilege . . . preserves the President's ability to obtain candid and informed opinions from his advisors and to make decisions confidentially[.]" *Karnoski*, 926 F.3d at 1203 (quoting *Loving*, 550 F.3d at 37). "As such, the privilege protects communications directly involving and documents actually viewed by the President, as well as documents solicited and received by the President or his immediate White House advisers with broad and significant responsibility for investigating and formulating the advice to be given the President." *Id.* (alteration and internal quotations omitted). The privilege is "'an extraordinary assertion of power not to be lightly invoked.'" *Id.* at 1204 (quoting *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 389 (2004)). It must be "'construed as narrowly as is consistent with ensuring the confidentiality of the President's decision-making process is adequately protected.'" *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 913 F.3d 1106, 1110 (D.C. Cir. 2019) (quoting *In re Sealed Case*, 121 F.3d at 752); *Ctr. for Biological Diversity v. Off. of Mgmt. & Budget*, 2008 WL 5129417, at *12 (N.D. Cal. Dec. 4, 2008) (the privilege is "narrowly construed").

The "'presidential communications privilege should never serve as a means of shielding information regarding governmental operations that do not call ultimately for *direct decisionmaking by the President*.'" *Campaign Legal Ctr. v. U.S. Dep't of Just.*, 2020

WL 2849909, at *6 (D.D.C. June 1, 2020) (quoting *In re Sealed Case*, 121 F.3d at 752) (emphasis added).  Yet the government has made no attempt to show that entries on the January 15 privilege log involve presidential *decisionmaking* and it therefore has not met its burden to establish that the privilege applies.  Indeed, the privilege log suggests that the government is asserting the privilege with respect to documents that have nothing to do with presidential decisionmaking.[12]  *See Campaign Legal Ctr.*, 2020 WL 2849909, at *6 (privilege inapplicable where DOJ "describe[d] the communications as a 'subject of potential presidential decisionmaking' . . . , but [did] not state that the President actually . . . ma[d]e the decision or that the communications were made by presidential advisers in the course of preparing advice for the President"); *In re Sealed Case*, 121 F.3d at 752 ("the government bears the burden of proving that the communications occurred in conjunction with the process of advising the President").

First, while the government's privilege log states that many of the withheld communications involve "White House Staff," "White House senior officials," or other high-ranking government officials (such as the Attorney General or Deputy Attorney General[13]), merely listing such positions is not sufficient to demonstrate that the communications called for direct decision-making by the President.  *See, e.g.*, *Am.*

---

[12] *See, e.g.*, Ex. 2, Jan. 15, 2021 Priv. Log Excerpts, at CD-US-00014906 ("Internal, high-level discussion of various factors to be considered in assessing ongoing implementation of the Zero Tolerance Policy, including HHS processing, bed space, and other factors; communications by and to White House staff."); CD-US-00015889 ("Email from White House senior advisor to DOJ senior official regarding alleged Washington Post article inaccuracies, apparently seeking input for potential response"); CD-US-00015119 ("Email from White House to DOJ and DHS senior officials attaching talking points for administration officials for review and clearance"); CD-US-00016147 ("Emails between White House senior advisor and DOJ OPA senior official seeking assistance providing religious-based response for television appearance of Republican consultant/strategist on family separations under the Zero Tolerance policy").

[13] *See, e.g.*, Ex. 2, Jan. 15, 2021 Priv. Log Excerpts, at CD-US-00014916 (email between Deputy Attorney General Rod Rosenstein and "Camden Hybart," an alias for Attorney General Jeff Sessions); CD-US-00014902 (emails between Rosenstein and Hybart regarding Zero Tolerance); CD-US-00014881 (email between Hybart and DOJ officials Gene Hamilton and Danielle Cutrona).

*Oversight v. Off. of Mgmt. & Budget*, 2020 WL 1536186, at *7 (D.D.C. Mar. 31, 2020) ("'[T]he mere fact of communications between the OMB Director and White House staff or agency staff on matters of policy is insufficient to show that [the withheld documents] concern matters of presidential decisionmaking.'") (quoting *Prop. of the People, Inc. v. Office of Mgmt. and Budget*, 330 F. Supp. 3d 373, 390 (D.D.C. 2018)); *Judicial Watch, Inc. v. United States Dep't of Def.*, 245 F. Supp. 3d 19, 29 (D.D.C. 2017) (noting that the "deputy Attorney General and the Attorney General are not 'close presidential advisors' whose communications automatically fall within the purview of the presidential communications privilege") (quoting *Judicial Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1120 (D.C. Cir. 2004)).

Second, the inclusion of "White House staff" on emails does not establish that the communications involved the president's *immediate* advisers or their staff as required. *Ctr. for Biological Diversity v. Office of Mgmt. & Budget*, 2009 WL 1246690, at *8 (N.D. Cal. May 5, 2009) ("privilege only protects *immediate* White House advisers and their staff.") (emphasis added).[14]  Plaintiffs cannot assess from the privilege log's descriptions, or the documents themselves, whether various White House personnel or groups listed were the President's immediate advisers, and Plaintiffs are not required to divine that relationship.[15] *See Ctr. for Pub. Integrity v. U.S. Dep't of Def.*, 2020 WL 5095520, at *5 (D.D.C. Aug.

---

[14] *See also See ACLU v. Dep't of Def.*, 435 F. Supp. 3d 539, 559 (S.D.N.Y. 2020) ("circle within which the presidential communications privilege extends has a narrow diameter") (internal quotations omitted); *Ctr. for Biological Diversity*, 2008 WL 5129417, at *11 ("Only communications close enough to the President to be revelatory of his deliberations or to pose a risk to the candor of his advisers are protected.  Thus, not every person who plays a role in the development of presidential advice . . . can qualify for the privilege . . . .") (internal quotations omitted).

[15]  The government has asserted the privilege over documents involving the "Border Security Resource Group" and the "Border Security PCC" without explaining the composition, role, and purpose of these entities.  *See, e.g.*, Ex. 2, Jan. 15, 2021 Priv. Log Excerpts, at CD-US-00015069 ("Email from White House to Border Security Resource Group forwarding detention capacity information . . ."); CD-US-00015886 ("Email from White House scheduling Border Security PCC meeting . . .").

28, 2020) (proponent of privilege "'must offer more than just conclusory statements, generalized assertions, and unsworn averments of its counsel'" (citation omitted)).

Further, the government has asserted the privilege over internal agency communications—without any indication that the communications reached the President, or were solicited and received by the President or his immediate advisers or their staff.[16] But the privilege "does not shield internal agency communications that never reached the President or immediate White House advisers, even if the documents bear on matters of Presidential decisionmaking." *Prop. of the People*, 330 F. Supp. 3d at 389.

The government has also improperly asserted the presidential communications privilege over communications that were widely circulated beyond the President's inner circle. For example, the government asserted the privilege as to an email from Jim Holm at the Office of Management and Budget to over 40 recipients at multiple agencies, *see* Ex. 2, Jan. 15, 2021 Priv. Log Excerpts, at CD-US-00015272, and emails from a general "Policy Coordinator" email address to over 40 recipients at multiple agencies, *see id*. at CD-US-00016181, CD-US-00016202, and CD-US-00016204. But the "'widespread dissemination of documents, to persons well beyond the circle of close presidential advisors, will eviscerate the presidential communications privilege.'" *ACLU v. Dep't of Def.*, 435 F. Supp. 3d 539, 559 (S.D.N.Y. 2020) (citation omitted).

### III. The Government Has Not Established the Elements Necessary to Assert the Attorney-Client Privilege or Work Product Doctrine

#### A. The Government's Deficient Claims of Attorney-Client Privilege Should Be Rejected

When the government seeks to prevent disclosure of discoverable information on the basis of the attorney-client privilege, it must comply, like other litigants, with the

---

[16] *See, e.g.*, Ex. 2, Jan. 15, 2021 Priv. Log Excerpts, at CD-US-00015076 (email between Deputy Attorney General Rod Rosenstein and DOJ official Gene Hamilton); CD-US-00015080 (email between Rosenstein and DOJ official David Wetmore); CD-US-00015082 (same); CD-US-00015098 (email between Rosenstein, Wetmore, and Hamilton).

1    "prerequisites necessary to the creation of the attorney-client privilege."  *Arizona ex rel.*

2    *Goddard v. Frito-Lay, Inc.*, 273 F.R.D. 545, 554–55 (D. Ariz. 2011).  The attorney-client

3    privilege exists where: "(1) legal advice of any kind is sought (2) from a professional legal

4    adviser in his capacity as such, (3) the communications relating to that purpose, (4) made

5    in confidence (5) by the client, (6) are at his instance permanently protected (7) from

6    disclosure by himself or by the legal adviser, (8) unless the protection be waived."  *United*

7    *States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (alteration, citation, and internal

8    quotations omitted); *accord Jett v. Cty. of Maricopa*, 2019 WL 6310252, at *1 (D. Ariz.

9    Nov. 25, 2019).  "The party asserting the privilege bears the burden of proving each

10    essential element."  *United States v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009).

11        Where, as here, the party asserting the privilege relies on a privilege log to make a

12    prima facie showing, the log must establish that each element of the privilege is met for

13    each document.  *See In re Grand Jury Investigation*, 974 F.2d 1068, 1070–71 (9th Cir.

14    1992).  Courts reject claims of attorney-client privilege when logs lack this information.

15    *Evanston Ins. Co. v. Murphy*, 2020 WL 6048206, at *3 (D. Ariz. Oct. 13, 2020).

16        The government has failed to establish critical elements necessary to assert the

17    privilege, including the specific attorney and client purportedly giving and receiving legal

18    advice and the legal nature of the advice being sought or rendered.  For example, the

19    government lists David Wetmore from the Office of the Deputy Attorney General on the

20    privilege log as the recipient of a document described as "[e]mails between DOJ senior

21    officials discussing coordination of comments on, and forwarding marked up drafts of,

22    draft Zero Tolerance Immigration Prosecutions FAQs and Fact Sheet."  *See* Ex. 1, Dec. 31,

23    2020 Priv. Log Excerpts, at CD-US-00008956.  The government does not state that David

24    Wetmore is giving or receiving legal advice in the redacted emails or explain why

25    comments on FAQs and a Fact Sheet constitute legal advice.  Similarly, the government

26    lists Alex Brant from the Office of Management and Budget as the author of a document

27    described as "Readout of interagency Border Security Resource Group meeting, including

28

items for consideration and follow up" without stating whether he is providing legal advice or the nature of that advice. *See id.* at CD-US-00009725.[17]

The government's failure to identify the *attorney* in the communication providing the advice, the *client* to whom the advice is being supplied, and the *legal* nature of the advice renders the government's claim of privilege deficient. That certain individuals on the communications are DOJ lawyers, or that the communications are between government employees and agencies, is insufficient to establish a protected attorney-client communication.[18] *See, e.g., United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) ("That a person is a lawyer does not, ipso facto, make all communications with that person privileged. The privilege applies only when legal advice is sought from a professional legal advisor in his capacity as such.") (citation and internal quotations omitted).

Moreover, based on the limited information included in the privilege log, documents produced, and public records, it appears that the government has asserted the attorney-client privilege even where DOJ employees were providing commentary on non-legal matters, such as policy or procedure, rather than offering legal advice. For example, the government asserts the attorney-client privilege (as well as the deliberative process and work product privileges) as to a document authored by Chad Wolf described as "Communication between DHS and DOJ regarding COS Wolf's request to Gene Hamilton for review of memo entitled Policy Options to Respond to Border Surge of Illegal Immigration; attachment is draft with comments from Hamilton to Wolf." Ex. 1, Dec. 31,

---

[17] *See also, e.g.*, Ex. 1, Dec. 31, 2020 Priv. Log Excerpts, at CD-US-00013572 (Document received by Rosenstein described as "Internal, high-level interagency discussion of various factors to be considered in assessing ongoing implementation of the Zero Tolerance policy").

[18] The government also has failed to establish that communications involving multiple agencies contained legal advice. *See, e.g.*, Ex. 1, Dec. 31, 2020 Priv. Log Excerpts, at CD-US-00011673 (email involving at least three different agencies: DOJ, DHS, and HHS). Moreover, these communications may be subject to waiver, unless the government can satisfy a common interest analysis, which it has not attempted. *See Ctr. for Biological Diversity*, 2009 WL 1246690, at *10; *Modesto Irrigation Dist. v. Gutierrez*, 2007 WL 763370, at *15–16 (E.D. Cal. Mar. 9, 2007).

2020 Priv. Log Excerpts, at CD-US-00012651.  That document, however, is publicly available in unredacted form, *see* Ex. 8, and outlined *policy* options to deter immigration, including "[a]nnounc[ing] that DHS is considering separating family units, placing the adults in adult detention, and placing the minors under the age of 18 in the custody of HHS as unaccompanied alien children," and discussed the need for coordination among DHS, DOJ, and HHS.[19]  Despite the full redaction of its content in CD-US-00012651, Ex. 9, the document appears to provide non-legal commentary and there is no indication that it was prepared in anticipation of litigation.  Policy discussions are not protected by the attorney-client privilege.  "[W]hen government attorneys are in effect making law, they may not properly invoke the protections of the attorney-client privilege" because "the communications are made not for the purpose of securing legal advice or services, but rather for the purpose of developing policy."  *Gen. Elec. Co. v. Johnson*, 2006 WL 2616187, at *15 (D.D.C. Sept. 12, 2006) (alteration and internal quotations omitted); *see also Pub. Emps. for Env't Resp. v. EPA*, 213 F. Supp. 3d 1, 19 (D.D.C. 2016) ("Where an agency lawyer serves in a mixed capacity . . . communications will only be protected to the extent that they involve his or her professional, legal capacity.") (citation and internal quotations omitted).

These deficiencies are exacerbated by the government's failure to properly segregate attorney-client privileged information from information that is not attorney-client privileged.  "As the party asserting the privilege," the government must "establish the privileged nature of the communications and, if necessary, [ ] segregate the privileged information from the non-privileged information."  *Ruehle*, 583 F.3d at 609.  Here, the government has made no attempt to differentiate among the multiple privileges asserted in one document.  This failure renders the government's privilege claims deficient and

---

[19] This document was publicly released in unredacted form by U.S. Senator Jeff Merkley in January 2019.  Ex. 8, *available at* https://www.documentcloud.org/documents/5688664-Merkleydocs2.html *as linked in* https://www.cnn.com/2019/01/18/politics/draft-memo-significance/index.html (last visited March 18, 2021).

prevents Plaintiffs from adequately evaluating the government's attorney-client and work product privilege claims.  *See, e.g.*, *Pub. Emps. for Env't Resp.*, 213 F. Supp. 3d 1, 22 (D.D.C. 2016) (reasoning that government's failure to segregate attorney-client privilege assertions from deliberative process privilege assertions "obscur[ed] [the agency's] rationale" and that, as a result, "the agency ha[d] not met its burden").

## B.    The Government Failed to Establish Qualifications for Work Product Protection

Documents may qualify for protection from discovery under the work-product doctrine when they are: (1) "prepared in anticipation of litigation or for trial," and (2) prepared "by or for another party or by or for that other party's representative."  *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004) (internal citation and quotation omitted); *see also Upjohn Co. v. United States*, 449 U.S. 383, 397 (1981) (noting the work-product doctrine protects material "prepared or formed by an adverse party's counsel in the course of his legal duties").  Further, "the Government cannot satisfy its burden of proof by relying on a mere recitation of the elements" or by merely referring to law enforcement efforts.  *Elec. Frontier Found. v. Dep't of Justice*, 2016 WL 7406429, at *9 (N.D. Cal. Dec. 22, 2016).  The government must explain "why" the elements are met, by explaining "why [the] particular documents relate to some anticipated litigation."  *Id.*

The government has failed to establish that documents withheld or redacted on the basis of work product were prepared in anticipation of litigation.[20]  Many of the privilege log entries either contain no reference to legal analysis or make vague references to "legal analysis," "legal review," or similar perfunctory recitations, but make no reference to the

---

[20] Even if the Court finds that the documents qualify as work product, Plaintiffs can overcome the privilege.  "The work-product rule is not a privilege but a qualified immunity."  *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona*, 881 F.2d 1486, 1494 (9th Cir. 1989).  Work product materials may be ordered produced "upon an adverse party's demonstration of substantial need or inability to obtain the equivalent without undue hardship."  *Id*.  Here, the government has not provided sufficient information to permit Plaintiffs to address this analysis.

anticipation of any litigation.  *See, e.g.*, Ex. 1, Dec. 31, 2020 Priv. Log Excerpts, at CD-US-00011875 ("DOJ communication of Zero Tolerance Policy legal implementation and resource allocation; discussion of legal analysis of family unit detention under law"); CD-US-00014223 ("DOJ talking points for Community Outreach on Zero Tolerance Policy and Asylum, with various comments and edits").[21]  The government has failed to meet its burden of establishing that the work-product doctrine applies.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court direct the government to: (1) produce all documents withheld based on the deliberative process privilege; (2) produce all materials withheld under the presidential communications privilege that fall outside the privilege's scope and to revise the January 15, 2021 privilege log to articulate why any withheld or redacted materials are within the privilege's scope; (3) produce all materials improperly withheld or redacted under the attorney-client privilege and work product doctrine and revise its privilege logs so that the attorney-client privilege and work product claims are properly identified and substantiated.

RESPECTFULLY SUBMITTED this 19th day of March, 2021.


*/s/ Diana Reiter*___
Diana Reiter*
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, New York 10019-9710
212-836-8000
diana.reiter@arnoldporter.com

*(Additional Counsel for Plaintiffs Listed on the Following Page)*

---

[21] Where documents are not prepared exclusively for litigation—as can be presumed here given the government's failure to identify any anticipated litigation—the government must satisfy the "because of" test, which requires a determination that the "document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation."  *In re Grand Jury Subpoena*, 357 F.3d at 907–08.  The government has made no attempt to satisfy the "because of" standard here.

Erik Walsh*
Lucy McMillan*
Harry Fidler*
Mark Osmond*
Kaitlyn Schaeffer*
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, New York 10019-9710
212-836-8000
erik.walsh@arnoldporter.com
lucy.mcmillan@arnoldporter.com
harry.fidler@arnoldporter.com
mark.osmond@arnoldporter.com
kaitlyn.schaeffer@arnoldporter.com

R. Stanton Jones*
Emily Reeder*
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
202-942-5000
stanton.jones@arnoldporter.com
emily.reeder@arnoldporter.com

David B. Rosenbaum
Emma J. Cone-Roddy
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793

Jonathan H. Feinberg*
Kairys, Rudovsky, Messing, Feinberg
  & Lin LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
215-925-4400
jfeinberg@krlawphila.com

Mark Fleming*
National Immigrant Justice Center
224 S. Michigan Ave., Suite 600
Chicago, IL 60604
312-660-1370
mfleming@heartlandalliance.org

Trina Realmuto*
Mary Kenney*
National Immigration Litigation Alliance
10 Griggs Terrace
Brookline, MA 02446
617-819-4447
Trina@immigrationlitigation.org
Mary@immigrationlitigation.org

Katherine Melloy Goettel*
Emma Winger*
American Immigration Council
1331 G Street NW, Suite 200
Washington, DC 20005
202-507-7552
kgoettel@immcouncil.org
ewinger@immcouncil.org

*Attorneys for CM Plaintiffs*

*\* Admitted pro hac vice*

Keith Beauchamp (012434)
D. Andrew Gaona (028414)
COPPERSMITH BROCKELMAN PLC
2800 N. Central Avenue, Suite 1900
Phoenix, AZ 85004
Telephone: (602) 381-5493
kbeauchamp@cblawyers.com
agaona@cblawyers.com

Matthew J. Schlesinger*
Jason A. Carey*
Terra White Fulham*
Teresa S. Park*
COVINGTON & BURLING LLP
One City Center, 850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-5581
mschlesinger@cov.com
jcarey@cov.com
tfulham@cov.com
tpark@cov.com

Norma Ventura*
Gillian Gillers*
James Knoepp
SOUTHERN POVERTY LAW CENTER
P.O. Box 1287
Decatur, GA 30031
Telephone: (404) 521-6700
norma.ventura@splcenter.org
gillian.gillers@splcenter.org
jim.knoepp@splcenter.org

COVINGTON & BURLING LLP
Jessica R. Hanson*
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
jhanson@cov.com

*Attorneys for APF Plaintiffs*