BRIAN M. BOYNTON
Acting Assistant Attorney General
JAMES G. TOUHEY, JR.
Director, Torts Branch
PHILIP D. MACWILLIAMS
D.C. Bar No. 482883
Trial Attorney
IRINA M. MAJUMDAR
D.C. Bar No. 252757
Trial Attorney
E-mail: phil.macwilliams@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4285
Facsimile: (202) 616-5200

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| C.M., on her own behalf and on behalf of her minor child, B.M.; L.G., on her own behalf and on behalf of her minor child, B.G.; M.R., on her own behalf and on behalf of her minor child, J.R.; O.A., on her own behalf and on behalf of her minor child, L.A.; and V.C., on her own behalf and on behalf of her minor child, G.A.,<br><br>Plaintiffs,<br><br>v.<br><br>United States of America,<br><br>Defendant. | No. 2:19-CV-05217-SRB |
| A.P.F. on his own behalf and on behalf of his minor child, O.B.; J.V.S., on his own | No. 2:20-CV-00065-SRB |

behalf and on behalf of his minor child H.Y.; J.D.G. on his own behalf and on behalf of his minor child, M.G.; H.P.M. on his own behalf and on behalf of his minor child, A.D.; M.C.L. on his own behalf and on behalf of his minor child, A.J.; and R.Z.G. on his own half and on behalf of his minor child, B.P.,

Plaintiffs,

v.

United States of America,

Defendant.

## DECLARATION OF G. BRADLEY WEINSHEIMER

I, G. Bradley Weinsheimer, do hereby state and declare as follows:

1. I am an Associate Deputy Attorney General for the United States Department of Justice ("Department"). I serve as the highest-ranking career official in the Department. I have held this position since July 2018. I have worked at the Department since June 1991, serving in a variety of capacities both in the U.S. Attorney's Office for the District of Columbia and at Department headquarters. I have been a member of the Senior Executive Service since 2011. As an Associate Deputy Attorney General, my responsibilities include, among other things, advising the Attorney General and Deputy Attorney General and representing their interests on behalf of the Department on a variety of matters, including as to the release of Department documents and the assertion of privileges.

2. I base this declaration on my personal knowledge; information made available to me in the performance of my official duties, including discussions with others in the Department concerning this litigation and the underlying documents and events; and my understanding of the issues being litigated in the above-captioned cases. I do not have personal knowledge of the events that gave rise to this litigation.

2

3. I have personally reviewed each of the documents from the December 31, 2020 and January 15, 2021 productions over which the Department is asserting the deliberative process privilege as of April 9, 2021. I hereby assert, on behalf of the Department, the deliberative process privilege with respect to the documents in the April 9, 2021 re-production as described in paragraphs 10 – 12 of this Declaration and listed in the chart attached to this Declaration.[1] See Attachment 1. The Department is not asserting the deliberative process privilege for any other documents previously withheld, in whole or in part, from the December 31, 2020 and January 15, 2021 productions.

4. I understand that the government also is asserting other privileges, such as the Office of the President's assertion of the presidential communications privilege, with respect to documents re-produced on April 9, 2021. The fact that my assertion is limited to the deliberative process privilege is in no way intended to suggest that the documents and information cited herein, or other documents, are not protected by other privileges.

5. Open and honest exchange of ideas and opinions among Department employees is necessary to assist final decisionmakers in ensuring that the Department's mission of enforcing federal law and protecting the interests of the United States is executed. Release of the redacted information in the documents described in this Declaration and cited in the attached chart could chill this exchange and impede the Department's decisionmaking process. This is especially true where, as here, the opinions, proposals, and recommendations of Department employees may concern controversial approaches to the government's border security and immigration enforcement and the Department's prosecution priorities. If Department employees are aware that their opinions, deliberations, and recommendations may be subject to public disclosure—and the scrutiny and criticism which may follow—the candor of their views could be chilled. This is especially true when those opinions, deliberations, and recommendations are taken out of context or not understood in the full context in which they were made or intended.

---

[1] The chart attached to this Declaration contains three columns reflecting the three categories of documents described in paragraphs 10 – 12 of this Declaration. Because certain documents fall within more than one of the three categories, those documents appear in multiple columns on the chart.

It is thus vital that predecisional and deliberative communications such as those contained or reflected in the documents referenced herein be protected from disclosure based on the deliberative process privilege.

6. In order to create a coordinated and cohesive Executive Branch policy, Department employees routinely communicate not only with each other, but also with officials in other federal agencies and in the White House. It is crucial that these predecisional and deliberative communications be protected, as informed and frank discourse among federal governmental officials ensures that ideas, even those that are unpopular, are properly considered by final decisionmakers.

7. Notably, many of the documents described herein and cited in the attached chart contain predecisional and deliberative information regarding the consideration of the federal government's broader immigration and border security policies that is unrelated or, at most peripheral, to Plaintiffs' claims in this litigation. Some of this information concerns policy decisions that were proposed and discussed, but never implemented. Allowing Plaintiffs access to this irrelevant, sensitive material would be detrimental to honest and open inter- and intra-agency discussions.

### The Zero Tolerance Policy

8. On April 6, 2018, now-former Attorney General Jefferson Sessions issued a memorandum directed to all federal prosecutors along the Southwest border entitled "Zero Tolerance of Offenses Under 8 U.S.C. § 1325(a)" ("Zero Tolerance Memorandum"). *See* U.S. Department of Justice, News Release: Attorney General Announces Zero-Tolerance Policy for Criminal Illegal Entry (April 6, 2018), DOJ 18-417, 2018 WL 1666622 (hereinafter referred to as "Zero Tolerance Memorandum"). The Zero Tolerance Memorandum instructed federal prosecutors along the Southwest border "to the extent practicable, and in consultation with DHS-- to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under section 1325(a)."

### Documents

9. On behalf of the Department of Justice, I formally invoke the deliberative process privilege over a total of 399 documents in the April 9, 2021 re-production. Many

4

of these documents are duplicates or close variants of the same documents. Two privilege logs associated with the April 9, 2021 production are attached hereto and reflect the documents for which the Department is asserting the deliberative process privilege. *See* Attachments 2 and 3. All of the documents for which the deliberative process privilege is claimed fall within at least one of the three categories below.

10. **Draft Reports and Executive Orders**

Documents within this category are draft reports, including, among others, the "Report on Ending 'Catch and Release' at the Border of the United States"; the "Report on Securing the Southern Border of the United States"; and Executive Order 13841, "Affording Congress an Opportunity to Address Family Separation", along with corresponding e-mail discussions.

The documents are predecisional for two reasons. First, because the documents are drafts—many of which contain redlined edits and comments throughout—the documents by their very nature cannot be final and do not reflect an ultimate agency decision. Rather, disclosure of the documents would reveal the thought processes of individual agency employees. Second, the draft documents contain suggestions and recommendations from agency staff regarding the implementation of a broader immigration and border security agenda, including, for example, proposed changes to asylum law, which are, at most, peripheral to Plaintiffs' claims in this litigation. In particular, drafts of the Executive Order are predecisional to its issuance on June 20, 2018 and President Trump's statement that it was the "policy of this Administration to maintain family unity, including by detaining alien families together where appropriate and consistent with law and available resources." E.O. 13841 § 1. Based upon my review and to my understanding, these documents contain Department employees' immigration and border security views and policy recommendations, offered to assist the heads of federal agencies, or the President himself, in their decisionmaking process.

Additionally, these documents are deliberative. In these communications, officials in the Department and other federal agencies exchanged opinions and proposals, freely critiquing and debating one another's suggestions, as part of their collective effort to

recommend specific language in the reports and Executive Order that would be provided to and decided upon by heads of agency or the President. Releasing these documents could chill the frank exchange of ideas among Department employees, and those of other federal agencies, and impede ultimate Department decisionmaking, if their input may be subject to disclosure. Here, the exchange of opinions and debates among Department and other agency officials was to assist decisionmakers with difficult decisions regarding the creation and implementation of border security and immigration policies.

The documents in this category that are subject to my assertion of the deliberative process privilege are listed in the attached chart at Column A. *See* Attachment 1.

11.     **Draft Substantive Meeting Agendas and Meeting Summaries**

Documents within this category include draft substantive meeting agendas, substantive meeting summaries, and corresponding e-mails containing or reflecting the same. These documents were created for meetings of agency senior officials, including often the Attorney General and the Secretary of Homeland Security, and White House advisors. Releasing these documents could chill the frank exchange of ideas and options among Department of Justice and other executive branch employees intended to assist the ultimate agency decisionmakers in formulating agency policy.

The draft meeting agendas are predecisional as they reflect potential topics of discussion at the meetings. Many of the agendas include the advice and recommendations of Department employees regarding topics of discussion for top Department officials, including Attorney General Sessions or former-Deputy Attorney General Rod Rosenstein. As a general matter, information contained within draft meeting agendas is subject to change. As such, these draft documents do not reflect final decisions.

Additionally, the meeting summaries and related e-mail discussions memorialize sometimes in detail the topics covered during the meetings, including the discussion and debate that occurred among the senior agency officials or White House advisors. Documents in the category include policy proposals that the meeting attendees and their staff discussed, making the documents' contents predecisional. Often, the topics discussed

at the meetings, and reflected in the documents, are wholly unrelated to Plaintiffs' claims in this litigation.

Like the other documents cited in this Declaration, disclosure of this material could chill the frank exchange of ideas among Department employees pertaining to complex and sensitive agency policy decisions. For the same reasons stated in paragraph 10 herein, if Department employees, and those of other federal agencies, are aware that their opinions, recommendations, and internal debates may be subject to disclosure, the ability of agency and White House officials to freely solicit and receive the unvarnished opinions and recommendations necessary for informed decisionmaking would be impeded.

The documents in this category that are subject to my assertion of the deliberative process privilege are listed in the attached chart at Column B. *See* Attachment 1.

12. **Documents Relating to the Implementation of the Zero Tolerance Policy**

This category includes e-mail threads and their attachments, and other documents relating to the implementation of the Zero Tolerance Policy. Upon my review of each of the documents in this category, I have determined that while they are not predecisional to the creation of the Zero Tolerance Memorandum, they are predecisional to various subsequent policy decisions necessary to implement the Zero Tolerance Memorandum or other policy decisions concerning border security and immigration.

These documents are predecisional to policy decisions made after issuance of the Zero Tolerance Memorandum, including budgeting and funding necessary to execute a "zero tolerance" enforcement approach to certain criminal immigration offenses, waiver provisions in plea agreements, and consideration of plans for reunification of families separated as a result of the federal government's immigration policies. These post-Zero Tolerance Memorandum policy decisions, like the overwhelming majority of all border security and immigration policies, necessarily required coordination among the components of many federal agencies, including the Department of Homeland Security, Immigration and Customs Enforcement, Customs and Border Protection, the Department of Health and Human Services, and, at times, the White House. Officials from these agencies and components regularly communicated and collaborated to implement the Zero

Tolerance Policy and other border security and immigration policies. The e-mail threads in this category contain or reflect views, recommendations, and debate, both internal to the Department of Justice and among the Department and other federal agencies, which was used to inform and assist agency decisionmakers. These documents are predecisional to the various agency policy decisions necessary to implement the Zero Tolerance Policy and other border security and immigration policies.

Further, for the reasons provided in paragraphs 10 and 11 in this Declaration, the redacted information in these documents contains or reflects the Department deliberative process. Disclosure of the redacted portion of these documents would hinder the Department's decisionmaking process because employees may become reluctant to engage in internal debates and disagreements—particularly on decisions of final decisionmakers of which some may later disapprove—that are critical to informed decisionmaking if they believe their communications may later be revealed. Thus, senior Department officials' ability to solicit and receive frank and valuable analysis and recommendations would be impeded and, in turn, the ultimate agency decisionmaker would be deprived of candid and valuable advice.

The documents in this category that are subject to my assertion of the deliberative process privilege are listed in the attached chart at Column C. *See* Attachment 1.

13.  The redacted information in the documents described in paragraphs 10 – 12 in this Declaration and cited in the chart attached to this Declaration, is predecisional and deliberative. Accordingly, the redacted information is of the very sort the deliberative process privilege was intended to protect from disclosure.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

_____
G. Bradley Weinsheimer
Associate Deputy Attorney General