BRIAN M. BOYNTON
Acting Assistant Attorney General
JAMES G. TOUHEY, JR.
Director, Torts Branch
PHILIP D. MACWILLIAMS
Trial Attorney
THEODORE W. ATKINSON
Trial Attorney
E-mail: phil.macwilliams@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
175 N Street, NE
Room 11-1330
Washington, DC 20530
Telephone: (202) 616-4285
Facsimile: (202) 616-5200

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| C.M., on her own behalf and on behalf of her minor child, B.M.; L.G., on her own behalf and on behalf of her minor child, B.G.; M.R., on her own behalf and on behalf of her minor child, J.R.; O.A. on her own behalf and on behalf of her minor child, L.A.; and V.C., on her own behalf and on behalf of her minor child, G.A.,<br><br>Plaintiffs,<br><br>v.<br><br>United States of America,<br><br>Defendant. | Case No. 2:19-cv-05217-SRB<br><br>**DEFENDANT UNITED STATES' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL (ECF 119)** |

## INTRODUCTION

Before this court is Plaintiffs' motion to compel the production of documents filed on March 19, 2021, re-filed on January 4, 2022. (*C.M.* ECF No. 119; *A.P.F.* ECF No. 118) ("Mot. to Compel"). At the center of this discovery dispute is a report by the U.S.

Department of Justice Office of the Inspector General ("OIG") titled "Review of the Department of Justice's Planning and Implementation of Its Zero Tolerance Policy and Its Coordination with the Departments of Homeland Security and Health and Human Services" ("OIG Report"), issued on January 14, 2021.[1]

Plaintiffs' request for production of documents relating to the OIG's review and report consists of two parts: (1) certain documents referenced in the OIG Report specifically requested by Plaintiffs, as set forth in the chart at Exhibit 6; and (2) documents in the OIG's possession falling within several general categories of documents. Mot. to Compel at 5-6. At the conference on March 11, 2021, the court ordered the production of the documents comprising the first part of Plaintiffs' request.[2] Notably, Plaintiffs describe these documents, which have now been produced to them, as being the documents from the OIG's review and report "most relevant to the claims and defenses in this action." Mot. to Compel at 4. At issue here is the second part of Plaintiffs' request.

In addition to seeking documents beyond those "most relevant" to their claims, the request is extraordinarily broad and burdensome. The categories of documents Plaintiffs now seek, although "narrowed" from their previous demand, are overbroad. Taken

---

[1] Department of Justice, Office of the Inspector General, https://oig.justice.gov/reports/review-department-justices-planning-and-implementation-its-zerotolerance-policy-and-its

[2] As noted during the conference held on March 11, 2021, Plaintiffs' counsel represented to the United States during a meet and confer and related correspondence that they would seek leave to file a motion to compel on the disputed discovery issues. Contrary to this approach, at the conference Plaintiffs' counsel instead asked the court to decide the discovery disputes regarding Plaintiffs' requests for documents relating to the OIG report without written briefing. With respect to the first part of that dispute – the request for certain documents specifically referenced in the OIG Report – the court issued an order that the United States produce the requested documents no later than March 25, 2021, which the government has done. (*C.M.* ECF No. 89; *A.P.F.* ECF No. 86).

together, they encompass virtually every single document the OIG collected for its review that in any way relates to the Zero Tolerance Policy, and will require a review of all the documents the OIG collected that would take many months. Plaintiffs seek this broad discovery – which would entail searching through hundreds of thousands of documents – without demonstrating a need for it, particularly in light of the great deal of discovery already undertaken.

The claims and defenses in the cases do not justify burdensome discovery focused on the Zero Tolerance Policy, a federal prosecution policy that itself is not challengeable and which Plaintiffs concede they are not challenging, and pursuant to which Plaintiffs were neither prosecuted under nor claim to be the reason for their separation. Moreover, to the extent the creation of the Zero Tolerance Policy by DOJ and its implementation by the U.S. Attorney's Offices is relevant, Plaintiffs already have the benefit of the OIG Report itself and the "most relevant" documents cited therein. This alone should be grounds to foreclose further discovery into the Zero Tolerance Policy, not greatly expand it as Plaintiffs seek to do. Additionally, Plaintiffs' request must be viewed not in isolation, but in relation to the significant discovery into the Zero Tolerance Policy that has occurred pursuant to this District's Mandatory Initial Discovery Pilot ("MIDP") program and another Request for Production served on the United States (discussed *infra*), both of which involved significant discovery from DOJ. That discovery is more than sufficient to meet the needs of this case.[3]

---

[3] Simply because discovery relating to the Zero Tolerance Policy has occurred pursuant to MIDP does not mean that it is relevant to these actions. *See* General Order 17-08 (D. Ariz.) at A.10 ("Production of information under this General Order does not constitute an admission that information is relevant, authentic, or admissible.").

3

As the court stated to Plaintiffs during the conference, "at some point in time you just can't keep going down every single path." Mot. to Compel Exhibit 8 at 28 ln. 2-3. The United States respectfully submits that this particular path should be closed.

## ARGUMENT

### I. Plaintiffs' Request Is Not Proportional To The Needs Of The Case

Rule 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In determining whether discovery is proportional to the needs of the case, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. "At bottom, the Court's task in resolving this discovery dispute is striking a balance and weighing the need for the requested [discovery] against the needs of the case and the burden compelling it will create." *Lopez v. United States*, No. 15-CV-180, 2017 WL 1062581, *4 (S.D. Cal Mar. 21, 2017).

---

Furthermore, Plaintiffs assert that the United States' MIDP responses were deficient because they "did not identify the documents DOJ collected in connection with the OIG's investigation[.]" Mot. to Compel at 3. This assertion blurs the distinction between the litigating arm of DOJ, and the OIG, which is a statutorily created independent entity whose mission is to promote integrity, efficiency, and accountability within the Department of Justice. And, of course, because of the United States' position that the documents sought are beyond the scope of discovery, it was under no obligation to include them in the MIDP responses. Further, MIDP requires a party to perform a reasonable inquiry. It is unreasonable to expect the government to seek to obtain documents and other information from the OIG while the review was still active.

Plaintiffs' request should be denied because it is unduly burdensome and seeks information relating to a subject matter – the Zero Tolerance Policy – that is, at best, marginally relevant to this case, and for which adequate discovery has already taken place.

**A. Plaintiffs' Request Is Unduly Burdensome**

Plaintiffs try to downplay the burden on the Government in responding to this request because the documents they are seeking have already been collected by the OIG, Mot. to Compel at 2, and they have "narrowed" their request to certain categories they describe as "specific" and "discrete." *Id*. at 11. However, the documents collected by the OIG for purposes of its review are extremely voluminous, and reside within the OIG in two separate databases in a manner that does not align with Plaintiffs' categories.[4]

Specifically, for purposes of its review, the OIG collected from senior DOJ officials more than 577,000 items which are stored in OIG's Relativity database. *See* Declaration of Aundrea Baker. Additionally, another portion of the materials are held in a SharePoint site in folders organized by source, containing 2.23 GB of documents in these SharePoint folders. *Id*. The documents stored in these databases are not stored or indexed by category, and not all of the documents in the SharePoint site are readily searchable as maintained. *Id*.

In sum, the documents in the OIG's possession that would need to be reviewed in response to Plaintiffs' request not only are extremely voluminous, they are not organized in a manner that corresponds in any way to the categories Plaintiffs' created. Accordingly,

---

[4] Plaintiffs' categories appear to have been created based on language found in Appendix 1 of the OIG Report (explaining the purpose, scope, and methodology of the review), which provides a general description of the nature of the documents the OIG collected and reviewed in preparing the report.

responding to this request would involve efforts comparable to that undertaken for the MIDP ESI searches agreed to by the parties, the burdensomeness of which the court is well aware (discussed *infra*). There is no justification to again impose such a burden on the government, especially in light of the lack of need for such further discovery into the Zero Tolerance Policy.

### B. Plaintiffs Have Not Demonstrated A Need For Further Discovery Into The Zero Tolerance Policy

#### 1. Plaintiffs Seek Discovery Relating To A Federal Prosecution Policy That Cannot Be Challenged and That They Concede They Are Not Challenging

Plaintiffs' request, while set forth in several general categories of documents, broadly seeks discovery of documents relating in any way to the former Attorney General's decision to adopt the Zero Tolerance Policy. Because this decision is neither challengeable nor being challenged by Plaintiffs, further discovery down this path should be foreclosed.

The OIG Report provides the following summary:

> On April 6, 2018, then Attorney General Jeff Sessions issued a memorandum to federal prosecutors along the Southwest border directing them to adopt a "zero tolerance policy" for prosecuting immigration offenses under 8 U.S.C. § 1325(a), a statute that prohibits illegal entry and attempted illegal entry into the United States. . . . The zero tolerance policy required each U.S. Attorney's Office (USAO) along the Southwest border to prosecute all U.S. Department of Homeland Security (DHS) referrals for illegal entry violations "to the extent practicable, and in consultation with DHS." On May 4, 2018, with the urging of Sessions, DHS changed its policy of not referring family unit adults and began referring them to Southwest border USAOs for prosecution.

OIG Report at 1.

The above summary describes two separate policy decisions made by two separate federal agencies. First, the decision by the former Attorney General to

prioritize the prosecution of offenses under 8 U.S.C. § 1325(a).  Second, the decision by the former DHS Secretary – the head of the agency responsible for apprehending those who violate 8 U.S.C. § 1325(a) – to refer such violations to the USAOs for prosecution, including violations by members of a family unit. Plaintiffs now seek further discovery into the policy decision by the former Attorney General to issue the Zero Tolerance Policy for all violations of 8 U.S.C. § 1325(a), notwithstanding the impact such prosecutions would have on family units.

The decision to adopt the Zero Tolerance Policy, as well as specific charging decisions thereunder, are exercises of prosecutorial judgment that are simply not challengeable, regardless of what impact the DOJ officials knew, or should have known, that policy would have with respect to the separation of family units.  *See Mejia-Mejia v. ICE*, No. 18-cv-1445, 2019 WL 4707150, *5 (D.D.C. Sept. 26, 2019) (zero tolerance policy "amounts to exercise of the prosecutorial discretion that Congress and the Constitution confer on the Attorney General"); *Sw. Env't Ctr. v. Sessions*, 355 F. Supp. 3d 1121, 1126 (D.N.M. 2018) ("Whether a person is prosecuted for [8 U.S.C. § 1325(a)] after a referral by DHS is a decision made by DOJ, and is subject to DOJ's prosecutorial discretion.") (citation omitted).[5]  In fact,

---

[5] *See also United States v. Armstrong*, 517 U.S. 456, 464 (1996) ("The Attorney General and United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws."); *General Dynamics Corp. v. United States*, 139 F.3d 1280, 1283 (9th Cir. 1998) ("The decision whether or not to prosecute a given individual is a discretionary function for which the United States is immune from liability."); *Smith v. United States*, 375 F.2d 243, 247-48 (5th Cir. 1967) ("The federal government's decisions concerning enforcement of its criminal statutes comprise a part of its pursuit of national policy."), cert. denied, 389 U.S. 841 (1967).  *Accord Ms. L v. U.S. Immigration and Customs Enforcement*, 310 F.Supp.3d 1133, 1143 (S.D. Cal. 2018) ("parents and children may lawfully be separated when the parent is placed in criminal custody"); *Ms. L v. U.S. Immigration and Customs Enforcement*, 302 F.Supp.3d 1149, 1164 (S.D. Cal. 2018)

in one case brought under the FTCA arising out of a family separation at the border that resulted from a prosecution under the Zero Tolerance Policy, the court dismissed the action, holding that:

> [P]rosecutorial judgment is a matter of choice, and obviously grounded in considerations of public policy—such as the United States Attorney General's priorities and United States Attorneys' discretion—that is intended to be shielded by the discretionary function exception. . . . Accordingly, to the extent Plaintiffs bring claims against the United States for its 'Zero Tolerance policy,' such claims are foreclosed by the discretionary function exception.

*Pena Arita v. United States*, 470 F.Supp.3d 663, 686-687 (S.D. Tex. 2020).[6]

Plaintiffs are acutely aware of the litigation perils of bringing claims based upon the adoption and implementation of a federal prosecution policy. Accordingly, to avoid dismissal they took the position in their oppositions to the United States' motions to dismiss that they were never actually charged with a crime and, thus, their separations were not a result of the Zero Tolerance Policy. *C.M.* ECF No. 19 at 8 ("But Plaintiffs were separated upon arrival in the United States, *not as a result of any criminal prosecution*. Indeed, Plaintiff mothers were never even charged.") (citing *C.M.* Compl. ¶ 34) (emphasis added); *A.P.F.* ECF No. 29 at 15 n.3 ("Plaintiffs were never charged with a crime nor placed in criminal custody."); *id*. at 18 ("But Plaintiffs here were never charged

---

(noting that the claims focused on government conduct in separating families during civil immigration removal proceedings, not as a result of criminal prosecutions).

[6] That the decision to issue the Zero Tolerance Policy is not challengeable was made clear in the United States' motion to dismiss. *See A.P.F*. ECF No. 21 at 12; *C.M*. ECF No. 18 at 13 ("Plaintiffs, who illegally entered the United States and thus were amenable to prosecution, appropriately do not contest any criminal referrals or charging decisions pursuant to 8 U.S.C. § 1325 or ensuing criminal custody, because prioritizing enforcement of federal law and subsequent prosecutorial decisions are classic discretionary functions shielded by the FTCA's discretionary function exception and prosecutorial immunity.").

8


with a crime *and were in DHS custody only*.") (citing *A.P.F.* Compl. ¶¶ 107, 108, 196-200, 212, 223) (emphasis added).  Plaintiffs focused instead on the fact that their children were designated as unaccompanied alien children ("UACs") by DHS and transferred to the custody of the Department of Health and Human Services ("HHS") pursuant to the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 8 U.S.C. § 1232(b)(3),  *even though* Plaintiffs were not criminally prosecuted or placed in criminal custody.  *C.M.* ECF No. 19 at 8 (arguing that being merely amenable to prosecution is not a basis for determining children to be UACs); *A.P.F.* ECF No. 29 at 14-15 (same).  Thus, it was the decision by DHS to designate the children as UACs, which resulted in their separation from Plaintiffs despite the lack of criminal charges, that Plaintiffs characterized as giving rise to their claims, rather than the decision by DOJ to adopt the Zero Tolerance Policy.

It is also telling that the *A.P.F.* Plaintiffs amended their complaint to include two sets of Plaintiffs and their children who were separated after presenting at a port of entry in 2017—well before the Zero Tolerance Policy was implemented.  In seeking to amend the complaint, they expressly rejected any notion that "Plaintiffs' separations arose specifically from the United States' Zero Tolerance Policy announced in 2018." *A.P.F.* ECF No. 31 at 4.  Indeed, in arguing that the separations of the proposed plaintiffs resulted from the same transaction or occurrence as the existing *A.P.F.* Plaintiffs, they expressly relied on the distinction between the Zero Tolerance Policy and the "family separation policy." *Id*. at 5 ("Plaintiffs' filings and the Court's rulings have consistently referred to Defendant's family separation policy—*as distinct from the Zero Tolerance Policy*—as the

9

source of Plaintiffs' harm.")  (emphasis added).  In permitting the amendment, the court stated that it "understands Plaintiffs' claims not as arising narrowly from the Attorney General's zero-tolerance policy, but as arising more generally from the federal government's family-separation policy, which was instituted before Proposed Plaintiffs crossed the border [in 2017] and which resulted in the separation of both Plaintiffs and Proposed Plaintiffs." *A.P.F.* ECF No. 33 at 4.

In short, Plaintiffs seek further discovery on the decision to adopt the Zero Tolerance Policy, a federal prosecution policy that they admittedly cannot challenge.  Moreover, because they were not prosecuted pursuant to that policy, they do not even attempt to argue that it is what resulted in their separations.  Accordingly, Plaintiffs' request is fundamentally off the mark.  Insofar as Plaintiffs are now shifting positions and basing their claims on the theory that DOJ—in adopting the Zero Tolerance Policy—was the "driving force" behind their separations, this represents a significant shift in their litigation position that warrants further briefing on a renewed motion to dismiss before permitting the type and magnitude of discovery sought here by Plaintiffs.

### 2. Plaintiffs' Argument That The Discovery Is Relevant To "Intent" Is Without Merit

In an attempt to justify the requested discovery, Plaintiffs assert that this discovery somehow may "shed light on the development and implementation of the government's family separation policy" . . . including that it was "intended to inflict harm, for the purpose of deterring other migrants from seeking asylum[.]"  Mot. to Compel at 8,9; *see also id.* at 9 (stating information sought may "reflect" that "the prosecutions were pretextual and that the government's true goal was to inflict harm through family

10

separation."). Again, this argument conflates the Zero Tolerance Policy with a purported "family separation policy", in contradiction of Plaintiffs' stated basis for their clams. Furthermore, insofar as Plaintiffs argue that evidence of such motives is relevant to the United States' defenses under 28 U.S.C. § 2680(a), that is plainly incorrect. Courts consistently have held that the subjective intent of government officials in carrying out their duties is irrelevant to determining whether the exception applies. *See Gaubert v. United States*, 499 U.S. 315, 325 (1991) ("focus of the inquiry is not on the agent's subjective intent"); *Gonzalez v. United States*, 814 F.3d 1022, 1027 (9th Cir. 2016) (same).[7]

Moreover, to the extent Plaintiffs seek to discover the intent of senior DOJ leadership in the creation and implementation of the Zero Tolerance Policy, the OIG Report, which includes various statements therein attributable to DOJ senior leadership regarding the purpose of the Zero Tolerance Policy, speaks for itself. Plaintiffs have already received what they deem to be the "most relevant" documents relied on in preparation of the report. Indeed, the May 2018 conference call notes that Plaintiffs point to as establishing that Attorney General Jeff Sessions intended that families be separated, Mot. to Compel at 7, was one of the documents specifically requested by Plaintiffs and is now in their possession. Plaintiffs speculate that there are others among the remaining hundreds of thousands of documents in OIG's possession that demonstrate the government's ill intent, but mere speculation is not sufficient to warrant the discovery they

---

[7] Even if Plaintiffs were correct about the motive, they do not explain how such motives behind the creation of a federal prosecution policy could make such a policy actionable through tort claims for negligence or intentional infliction of emotional distress under the FTCA, especially when they were never even prosecuted under that policy.

11

are seeking. Simply put, the issuance of this report should be grounds for precluding further discovery on the Zero Tolerance Policy, not significantly expanding it.

### 3. The Broad Discovery Already Undertaken Is More Than Sufficient

Plaintiffs' request is also unwarranted in light of the significant amount of discovery already undertaken in these cases. Pursuant to this District's MIDP program, the United States agreed to conduct very broad ESI searches consisting of several dozen custodians from multiple federal agencies, including DOJ. These searches employed multiple search terms designed to locate documents relating to, among other things, the Zero Tolerance Policy, prosecution of members of family units, and, notably, the separation of adults with children at the border.

With respect to discovery from DOJ in particular, the ESI searches included several high-level DOJ officials, including former-Attorney General Sessions and Gene Hamilton, former Counselor to the Attorney General. These searches resulted in productions of thousands of documents on December 31, 2020 and January 15, 2021. The United States is currently in the process of reducing its privilege assertions over a substantial number of those documents and will be producing them to Plaintiffs in the coming week. *C.M.* ECF No. 96; *A.P.F*. ECF No. 93.

Additionally, through a request for production, Plaintiffs sought all documents and communications to and from DOJ Headquarters and the U.S. Attorney's Offices along the Southwest Border, and documents and communications within U.S. Attorneys Offices along the Southwest Border, concerning the El Paso Initiative and/or the Zero Tolerance Policy. Mot. to Compel, Ex. 2 ("RFP No. 2"). In response, the government collected

directly from the five U.S. Attorneys Offices along the Southwest Border the ESI those offices collected for purposes of the OIG's review, and agreed to produce documents containing guidance or direction from DOJ and within these five U.S. Attorneys Offices on the implementation of the El Paso Initiative or Zero Tolerance Policy as they relate to adults arriving in the United States with minors.  Mot. to Compel, Ex. 3.  This request also resulted in significant document productions.

The discovery in these cases relating to the Zero Tolerance Policy and, more broadly, family separations, goes well beyond DOJ.  The MIDP ESI searches described above also collected documents from custodians from within DHS Headquarters, ICE, CBP, and HHS.  Included in these searches were several high-level officials and their top deputies and assistants, including former DHS Secretary Kirstjen Nielsen, former CBP Commissioner Kevin McAleenan, former Border Patrol Chief Carla Provost, and former Acting ICE Director Thomas Homan.  Also included were many more supervisory-level employees at both the national and regional level within ICE, CBP, and HHS.  This court is very familiar with the results of these searches, which were so voluminous as to necessitate the use of Technology Assisted Review (TAR).  *See C.M*. ECF No. 78; *C.M.* ECF No. 69.

The government submits that this "policy level" discovery, which covers a date range going back to January 20, 2017, already far exceeds what is necessary for these cases, especially as it relates specifically to the Zero Tolerance Policy.  Indeed, as this court has noted, "whether the government intentionally inflicted emotional distress, acted negligently, or caused the loss of a child's consortium . . .  will turn on events occurring

after [Plaintiffs] entered the country—namely, the government's treatment of [Plaintiffs] at and after the time of separation." *A.P.F.* ECF No. 33 at 4.

The Federal Rules of Civil Procedure require proportionality, not the opportunity to track down every single document that may be of some relevance. *See Blackrock Allocation Target Shares: Series S Portfolio v. Bank of N.Y. Mellon*, No. 14- 9372, 2018 WL 2215510, *7 (S.D.N.Y. May 15, 2018) ("[A] party requesting discovery may not be entitled, under the rules of proportionality, to every single [relevant] document.") (citations and internal quotation marks omitted). This is especially so here, when the discovery sought is in large part aimed at evidence from which the policy-maker's intent supposedly can be inferred. *See Tradeshift, Inc. v. BuyerQuest, Inc.*, Case No. 20-cv-01294, 2021 WL 322053, *3 (N.D. Cal. Feb. 1, 2021) ("The dispositive problem with this discovery is that it is not proportional to the needs of the case. [Plaintiff] is essentially asking for every document generated in connection with [Defendant's] project[.] This is a burdensome request, unjustified by the slim possibility that a few of the requested documents might inferentially make [Plaintiffs'] tort claim a little bit better.").

At this point, Plaintiffs have (1) the benefit of the OIG's review and report on the creation and implementation of the Zero Tolerance Policy, and the "most relevant" documents cited therein; (2) documents relating to the Zero Tolerance Policy collected directly from the USAOs along the Southwest Border and produced pursuant to RFP No. 2; and (3) the extremely broad "policy level" discovery developed pursuant to MIDP and collected from several agencies, including DOJ, for which the government is currently making substantial rolling productions. To also impose on the government this additional

14

burdensome discovery that is hyper-focused on a federal prosecution policy that Plaintiffs were not even prosecuted under and are not directly challenging is not remotely proportional to the needs of the case.

**II. Plaintiffs Are Seeking To Create A Premature Dispute Over Privilege**

Plaintiffs contend that the government has withheld documents responsive to their request by making a "blanket" claim of privilege. Mot. to Compel at 12, 14. In so stating, Plaintiffs imply that the documents sought are otherwise discoverable under Rule 26, but nevertheless are being withheld as privileged. That, of course, is not the case. Rather, the government has objected and continues to object to Plaintiffs' requests on the basis of relevance, burden, and proportionality. In addition, the government noted in its response to the request for production and its continued communications with Plaintiffs that it objects insofar as the information sought also contains privileged information. Doing so is proper to ensure any privileges are not waived.

The likelihood of the documents responsive to this request containing privileged information is clear. The revised request now before this court seeks documents collected by the OIG from various offices within DOJ, as well as the U.S. Attorney's Offices, which will undoubtedly have information determined by the government to be privileged on the same grounds as the documents collected directly from the DOJ and the U.S. Attorney's Offices for the productions made to date. Moreover, the sought-after work product created for purposes of the OIG's review and report, such as statements provided to the OIG responding to and commenting on drafts of the report, are recognized as privileged. *See Wadelton v. Department of State*, 106 F.Supp.3d 139, 154 (D.D.C. 2015) (communications

15

with OIG protected by deliberative process privilege because they would "shed light on which facts OIG felt required development and the manner in which OIG went about developing those facts").[8]

At any rate, it is premature to address any privilege issues relating to the documents sought, and Plaintiffs' efforts to initiate a privilege dispute at this point should be rejected. Simply put, until there are specific documents determined to be discoverable under Rule 26 which are then withheld on the basis of privilege, any dispute over privilege has not sufficiently materialized for adjudication. *See e.g., Delozier v. First Nat. Bank of Gatlinburg*, 113 F.R.D. 522, 524 (E.D. Tenn. 1986) ("the information sought must *initially* satisfy the relevancy requirement of Rule 26(b), Fed. R. Civ. P., before there is any necessity to determine the appropriateness of the government's claim of privilege.") (emphasis in original); *Illumina Inc. v. BGI Genomics Co., Ltd.*, No. 20-cv-01465, 2020 WL 7047708, *1 (N.D. Cal Dec. 1, 2020) ("First the Court must decide if this discovery is relevant and proportional. Then it must decide if it is [privileged].").

Plaintiffs have the process backwards in insisting that the government should be forced to sift through such a massive volume of documents and prepare a privilege log for documents it does not believe are even discoverable under Rule 26. As the D.C. Circuit aptly explained:

> [M]atters of privilege can appropriately be deferred for definitive ruling until after the production demand has been adequately bolstered by a general showing of relevance and good cause. . . . laborious page-by-page examination which assertions of privilege will require, certainly of the

---

[8] The OIG Report explains that these statements were made in response to drafts of the report. *See* OIG Report at 20 n. 37; 21 n.38; 34 n.54; 49 n.60; 54 n.64.

[government] and perhaps also of the court may be avoided or curtailed.

*Freeman v. Seligson*, 405 F.2d 1326, 1338-39 (D.C. Cir. 1968).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel should be denied.

Submitted this 5th day of January, 2022.

           BRIAN M. BOYNTON
           Acting Assistant Attorney General

           JAMES G. TOUHEY, JR.
           Director, Torts Branch

           *s/ Phil MacWilliams*
           PHILIP D. MACWILLIAMS
           Trial Attorney
           D.C. Bar No. 482883
           THEODORE W. ATKINSON
           Trial Attorney
           D.C. Bar No. 458963
           E-mail: phil.macwilliams@usdoj.gov
           U.S. Department of Justice
           Civil Division, Torts Branch
           Benjamin Franklin Station, P.O. Box 888
           Washington, DC 20044
           Telephone: (202) 616-4285

           Attorneys for the United States of America

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

*s/ Phil MacWilliams*
PHILIP D. MACWILLIAMS
Attorney for United States of America