1
2
3
4
5
6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

7

8

| | |
|---|---|
| C.M., on her own behalf and on behalf of her minor child, B.M.; L.G., on her own behalf and on behalf of her minor child, B.G.; M.R., on her own behalf and on behalf of her minor child, J.R.; O.A., on her own behalf and on behalf of her minor child, L.A.; and V.C., on her own behalf and on behalf of her minor child, G.A., | No. CV-19-05217-PHX-SRB **ORDER** |
| Plaintiffs, | |
| v. | |
| United States of America, | |
| Defendant. | |
| A.P.F. on his own behalf and on behalf of his minor child, O.B.; J.V.S. on his own behalf and on behalf of his minor child, H.Y.; J.D.G. on his own behalf and on behalf of his minor child, M.G.; H.P.M. on his own behalf and on behalf of his minor child, A.D.; M.C.L. on his own behalf and on behalf of his minor child, A.J.; and R.Z.G. on his own behalf and on behalf of his minor child, B.P., | No. CV-20-00065-PHX-SRB **ORDER** |
| Plaintiffs, | |
| v. | |
| United States of America, | |
| Defendant. | |

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Thirty-five documents which had been redacted due to claims of the Presidential Communications Privilege and/or the Deliberative Process Privilege were reviewed by the Court *in camera*.[1]  Plaintiffs' Request for *In Camera* Review of Additional Documents asserted that the United States had improperly redacted documents based on the deliberative process privilege and had also improperly invoked the Presidential Communications privilege.  The United States has responded in opposition and included as part of its response a Declaration of Stuart F. Delery, Deputy Counsel to the President asserting on behalf of the Office of the President the Presidential Communications Privilege for documents related to the June 5, 2018 Immigration Principals Committee call, documents related to the June 22 and June 26, 2018 Immigration Principals Committee meetings, and documents referencing a meeting with the President. In Plaintiffs' Reply in Support of Plaintiffs' Request for *In Camera* Review of Additional Documents, they state they are no longer claiming the Presidential Communications Privilege was improperly invoked as to the nine documents for which the United States continued to assert the privilege.  The Court will sustain the redactions highlighted in green on the privilege logs that assert the Presidential Communications Privilege, and this Order will only discuss the continuing objections to the deliberative process privilege.

## I.     DOCUMENTS INVOKING THE PRESIDENTIAL COMMUNICATIONS PRIVILEGE

The United States has properly withheld or redacted the following Bates numbered documents based on the invocation of the Presidential Communications Privilege:

> #15183, #15191-15192 (#15191 only, deliberative process asserted for redactions on #15192), #16103-16104, #16108, #16252-16253, #16303-16304, #16355-16356 (certain

---

[1] Attorney-client and work product privilege were also claimed for a few of the 35 documents.

1
2

redactions only, deliberative process, attorney-client and
work product privilege as to others).

## II.   DELIBERATIVE PROCESS LEGAL STANDARDS

The Supreme Court most recently addressed the deliberative process privilege
in its decision in *United States Fish and Wildlife Service v Sierra Club*, 141 S. Ct. 777
(2021) describing it as "shield[ing] documents that reflect an agency's preliminary
thinking about a problem, as opposed to its final decision about it." *Id*. at 785. The
case arose out of a FOIA request for a draft biological opinion that was never
finalized.  Relevant here is the Court's conclusion that an agency's document is not
final just because nothing follows it. What matters is not whether the document is last
in line but whether it communicates agency policy.  *Id*. at 786.  Because the agencies
that prepared the draft biological opinions never treated them as final, the Court held
them not subject to disclosure under FOIA and protected by the deliberative process
privilege.  But the Supreme Court also commented that the label of "draft" is not
determinative and the deliberative process privilege will not shield from disclosure a
functionally final decision labelled "draft". *Id*. at 787-788.

The deliberative process privilege is not absolute.  Documents reflecting an
agency's deliberative process may be obtained by a litigant if the litigant's need for
the materials and the need for accurate fact-finding override the agency's interest in
non-disclosure. The Ninth Circuit has articulated a four-factor balancing test to
determine if deliberative materials are nonetheless discoverable:

> we balance four factors in determining whether this exception
> to the deliberative process privilege is met: '1)the relevance
> of the evidence; 2) the availability of other evidence; 3) the
> government's role in the litigation; and 4) the extent to which
> disclosure would hinder frank and independent discussion
> regarding contemplated policies and decisions.

*Karnoski v. Trump*, 926 F3d 1180, 1206 (9th Cir. 2019) (citing *F.T.C. v.
Warner Commc'ns, Inc*., 742 F2d 1156, 1161).

3

As to some of the documents redacted for the deliberative process privilege, Plaintiffs argue the privilege was improperly invoked and as to others Plaintiffs argue that even if properly invoked they have made the showing that overcomes the privilege. Plaintiffs also argue that the privilege is not recognized when the intent of the government actors is at issue, as it is here, citing *In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*, 145 F3d. 1422 (D.C.Cir. 1998).  The United States argues that the D.C. Circuit case is not the law in the 9th Circuit citing *Karnoski*.   The United States interprets *Karnoski* as requiring the use of the four-factor balancing test in all circumstances where the deliberative process privilege is asserted.  The Court does not read *Karnoski* to be in disagreement with *In re Subpoena.*

In *Karnoski* the Court summarized the four arguments advanced by the plaintiffs in the District Court for disclosure of the deliberative process documents including that the deliberative process privilege does not apply where government animus or discriminatory intent is alleged. The plaintiffs had also argued waiver, that the materials fell outside the scope of the privilege, and that plaintiffs had demonstrated a need for the materials that overcame any privilege under the four-factor balancing test. The Court's opinion only addressed one of these four arguments made to attempt defeat the privilege, the four-factor balancing test. The Court's opinion cannot be read to conclude that the privilege does not exist in the Ninth Circuit when discriminatory intent and government animus are alleged.

For purposes of the analysis of the assertions of deliberative process privilege in this case, *Karnoski* suggests the approach the Court finds most appropriate to this case which is to consider the documents separately and to consider the four-factor balancing test in the first instance to determine if Plaintiffs need for the documents and accurate fact finding overcome any government interest in nondisclosure. . . .

4

As described in the Declaration of G. Bradley Weinsheimer, the documents for which the privilege is asserted fall generally into four categories; the Zero Tolerance Policy, draft reports and Executive Orders, draft substantive meeting agendas and meeting summaries, and documents related to the implementation of the Zero Tolerance Policy.

## III.   ZERO TOLERANCE POLICY DOCUMENTS

The Zero Tolerance Policy was announced on April 6, 2018 by former Attorney General Sessions.  Among the documents reviewed *in camera*, only one predates the adoption of the Zero Tolerance Policy.  #7085-7089 is undated but the privilege log says the date is November 17, 2017.  The first page sets certain deadlines for adoption of the FY2018-2022 DOJ Strategic Plan.  The following redacted pages are Proposed Goals, Objectives and Strategies and FY2018-2019 Agency Priority Goals.  The description provided in the privilege log is that the document is internal DOJ strategic goals for proposed FY2018-2022.  According to the first unredacted page, the final FY2018-2022 strategic plan must be published. There is no comment about the FY2018-2019 Agency Priority Goals but the unredacted title reflects that it was "due to OMB on January 12, 2018.

This document appears unrelated to the Zero Tolerance Policy. The United States has placed it in the category of Draft Substantive Agendas and Summaries of Conclusions in its cover letter to the Court transmitting the documents. Regardless of their category if they are drafts of the final FY2018-2022 Strategic Plan and FY2018-2019 Priority Goals and the finals have been produced, then the objection is sustained. The draft documents have no relevance to child separation or Zero Tolerance and on balance should be protected from disclosure.

. . .

. . .

## IV.    DOCUMENTS RELATING TO THE IMPLEMENTATION OF ZERO TOLERANCE POLICY

There are several email strings discussing issues arising with the implementation of the Zero Tolerance Policy and reports solicited from the five Southwest Border United States Attorneys.  The United States concedes that these documents are not protected by the deliberative process privilege as pre-decisional to the Zero Tolerance Policy but claim the privilege because they are pre-decisional "to various subsequent policy decisions necessary to implement the Zero Tolerance Memorandum or other policy decisions concerning border security and immigration." (Doc. 121-1 Declaration of G. Bradley Weinsheimer at 7.)

Based on the Court's knowledge of this case, the Zero Tolerance Policy and family separations were inextricably interwoven; the latter would not have occurred without the former.  The implementation of the policy is highly relevant to the issues in this case.  The Court's review of the documents also reflects that the United States redacted much factual information that is not arguably deliberative but were facts needed to assist in implementation or to explain why zero tolerance could not be achieved.  And the Court agrees with Plaintiffs that only the Justice Department has asserted the privilege and to the extent some documents are allegedly pre-decisional to other agencies' policies, those agencies have not asserted a privilege.

> #7881 is an email reporting on a May 11, 2018, conference call with the SWB USAs and the Attorney General.  The partial redaction is of the "main takeaways from the call". The justification on the privilege log is that the email contains "legal analysis and prosecution status under Zero Tolerance Policy."  The Court's conclusions after review of the redactions is that it was a factual report without legal analysis or evidence of any deliberative process. It shall be produced.

6

#7886-7888 is an email string reporting about the same May 11 call but summarized by a different person.  The redacted email summarizes a discussion about family separation and includes some information about defense efforts in some of the SWB courts.  The redaction is explained as including "legal analysis and discussion regarding pending motion on selective prosecution." While there was information conveyed about a defense filed motion in CAS, there was no legal analysis or legal advice given.  The other two redacted emails also contain no attorney/client privileged or work product material and do not reflect any deliberative process.  They shall be produced.

#8585-8586 are two emails. The first email seeks legal advice about a question that will likely arise at a meeting.  That legal advice was properly redacted as attorney-client privileged.

#9087-9089 are emails completely redacted for deliberative process because they contain a "discussion among senior DOJ officials regarding a series of questions posed by Southwest Border district USAOs for DHS and CPB regarding implementation of Zero Tolerance Policy, and specifically about family separation."  The first email dated June 15, 2018, is addressed to the five SWB USAs and contains a list of questions suggested by three SWB USAs to pose to DHS and CBP in the five SWB districts and a request to send back their responses by July 2.  The questions are related to family separation.  The emails reflect a coordinated effort by DOJ to obtain information from DHS and CBP about numerous aspects of family separation.  In the United States' memorandum, it argued that documents such as these are pre-decisional to other agency policies or decisions.  These three pages of email may reflect concerns about responsiveness of DHS and CBP to the SWB USAs' questions, but the only decision reflected in the document is to wait a few days while Gene Hamilton communicates with DHS.  No deliberative process by DOJ is reflected in this document. It shall be produced.

#10456-10458, #11198-11199, #11439-11440 are reports from the five SWB districts. The CAS USA provided a

7

factual report to the AG on implementation of Zero Tolerance
in that district and the other four SWB USAs were asked to
do the same.  The reports outline projections for prosecution,
challenges they face and potential solutions.  While these
reports may have provided a basis for deliberations within the
DOJ about the implementation of Zero Tolerance, the reports
themselves are factual and not deliberative and shall be
produced.

#11281-11282 is an email sent by Gene Hamilton.  Three
lines of his email are redacted and all of the statistics
provided to him by CBP are redacted.  The redacted statistics
are apprehension numbers in each CBP sector and
prosecution statistics.  This is factual and not deliberative and
shall be produced.  The three lines redacted in the email
immediately follow the sentence "Here are some deliberative
ideas for your planning purposes" but the redacted two
sentences are explanatory and not deliberative and shall be
produced.  The return email from Iris Lan is fully redacted
but contains nothing deliberative only an intention to
deliberate the next day with "Serra." It shall also be produced.

#11296-11299 is a factual summary of the reports of the five
SWB USAs on their implementation of Zero Tolerance.  The
privilege claims are attorney-client, work product and
deliberative process.  The explanation on the privilege log is
"results of survey of Southwest Border USAOs on efforts to
implement the Zero Tolerance Policy, with report of statistics
on 1325 and other prosecutions.  These facts are not
deliberative and do not reflect legal advice or work product.
While the information may have been considered for policy
deliberations, no such deliberations are reflected in this
factual report.  It shall be produced.

#11436-11437 is an email Gene Hamilton sent Danielle
Cutrona of a draft of talking points for the AG.  She returns
edits.  The document is marked "Draft/Pre-Decisional.  The
Court agrees it reflects the deliberative process and nothing in
the redacted document would justify defeating the privilege.

8

#11438 is an email forwarding the SWB USAs' reports to Gene Hamilton.  The redaction is justified on the privilege log as discussing the summaries for consideration in determining policy directions.  But the redacted email merely adds to the reports that there is also engagement with the Chief Judges and USMS as well as engagement with the Director of the Administrative Office of the Courts.  The redactions do not match the description on the privilege log and are factual updates to the reports.  The email shall be produced.

#11536-11537 begins with an email forwarding an inquiry from the SWB USAs about Border Patrol's expressed intentions to Iris Lan and Norman Wong.  The substance of the inquiry is factual. The responses are privileged.  The first email from Serra Tsethlikae shall be produced.

#12439 is an email from Iris Lan to Gene Hamilton and to John Bash, the US Attorney in the Western District of Texas.  John Bash is being sent a copy of a flyer being provided to the defendants in the Magistrate Court in the Southern District of Texas by that US Attorney.  This sentence is not deliberative and shall be produced.  The last two lines are arguably deliberative and may remain redacted as they are unimportant to the issues in this case.

#13758-13759 are emails about implementation of Zero Tolerance redacted because "discussion among USAEO and DOJ senior officials about processing and manpower difficulties faced by CBP in implementing Zero Tolerance Policy, and coordination of examining and resolving CBP concerns."  Serra Tsethlikai had been asked to follow up with the SWB US Attorney offices about issues CBP listed as reasons why Zero Tolerance could not be fully implemented in the districts.  She spoke to three criminal chiefs and reported on their responses to why Zero Tolerance was not fully implemented.  This email clearly reflects the deliberative process within the DOJ and shall remain redacted.  In examining the content of the emails they do not concern family separation and therefore on balance the privilege is not overcome.

9

#13955-13957 begins with an email from John Bash, USA WDTX who is a presenter on a panel the next day at a Border Courts' conference asking for the recipients' thoughts on the Issues for Discussion.  The listed issues should not be redacted as the email suggests these were provided to him by others for the panel discussion.  The responses provided are clearly part of a deliberative process and reflect the candid thoughts of Jose Gonzalez and Jay Miller. But they also address in part issues about family separation that are highly relevant to this case and on balance those portions of the redactions shall be produced.   The redacted email from Laura Gregory is sent after the panel discussion and send an order issued by Judge Cardone.  Her "highlights" from the Order are redacted.  Her highlights are protected by the work product privilege.

#14239-14240 begin with an email from Iris Lan sending a list of questions from "John" and asking if there are any to add to the list.  Adam Braverman from CAS responds with a few more and Gene Hamilton responds with another.  All of the questions relate to family separation and appear to have been put together to ask DHS and HHS.  This list of questions goes to the heart of the issues raised in these cases and appear to reflect concerns by attorneys on the SWB about the treatment of children by CBP and particularly BP and the fate of the children after they go into HHS custody.  Applying the four-factor test, the emails are highly relevant to the issues in this case, the information is within the control of the government and not available from another source, and the government's role in the case is that of defendant and not a witness.  While disclosure arguably might have some impact on frank and independent discussion, this factor is outweighed by the three which favor disclosure.  The emails shall be disclosed.

## V.  DRAFT REPORTS AND EXECUTIVE ORDERS

#8778-8794 is a June 2018 report on Resources and Authorities to End Catch and Release.  The document is marked Pre-decisional Internal Working Document.  This appears to be a draft sent out for comment but contains no

comments.  Later versions of this document have comments and edits.  The Deliberative Process privilege is claimed because this is an "internal review of draft report for editing comment and review."  This draft report is protected by the deliberative process privilege.

#9254-9258 is an email string about drafting an Executive Order for the President to end family separation.  It is a discussion among attorneys within the DOJ about drafting and legal issues.  It is protected by both attorney-client and work product privilege.

#9259-9260 is a draft of the Executive Order with suggested edits and is attorney-client and work product privileged.

#10206-10283 is the same draft report as #8778-8794 but with edits and comments and is protected by the deliberative process privilege.

#13036-13068 is a May 2018 Report on Securing the Southern Border of the United States.  It is marked Pre-Decisional//Internal.  It is a draft with comments and edits and reflects the deliberative process.

#14532 are emails between Gene Hamilton and Steve Engel about questions that SWB USAs were asking since the issuance of the Executive Order ending family separation.  The privilege claims are deliberative process, attorney-client and work product.  This legal analysis of the implications of the Executive Order is privileged.

## VI.    DRAFT SUBSTANTIVE MEETING AGENDAS AND MEETING SUMMARIES

#11095-11097 is titled "Overview-May 24, 2018 Principals Working Group on Border Crossings."  It is marked Deliberative/Attorney Client Privileged.  It is described on the privilege log as a draft and as authored by Iris Lan. It appears to be a briefing to the DOJ representatives who will be attending of the anticipated topics and questions the DOJ

11

representatives may be asked to address.  It is deliberative and privileged.

#11106-11113 is similar to #11095-11097 but for a call the following week on May 29, 2018.  The author is identified on the privilege log as Iris Lan and she again appears to be briefing and suggesting talking points to the DOJ representatives on the call.  It is deliberative and privileged.

# 11114 is a legislative proposal to address family reunification.  It is a draft with edits and comments and protected by deliberative process.

#11167-11175 is similar to #11095-11097 and #11106-11113 but unlike these documents it is only partially redacted.  It is Background and Talking Points for the May 3, 2018 Principals meeting.  It is marked Draft/Pre-Decisional/Deliberative. The author is identified on the privilege log as Gene Hamilton.  There appears to be no reason to redact the factual information in the Background section.  It is not deliberative.  The Court cannot discern the reason for the partial redactions on #11168 and the top of #11169.  Moreover, the redactions on #11168-11169 including those under the second and third bullet points directly relate to family separation and DOJ's knowledge of issues related to bed space and sponsors and shall be produced.  The redactions on #11170-11175 are of no particular relevance to the issues in this case and need not be produced.

#11733 is a document first prepared to address agenda items for the weekly White House call for cabinet secretaries on immigration issues on May 22, 2018. Deliberative process properly invoked.  Items in the talking points are of minimal relevance.

#15191-15192 is a two-page document described on the privilege log as a draft agenda for a White House principals meeting.  Presidential privilege is claimed for #15191 and deliberate process for #15192.  The author of the document is identified on the privilege log as Rod Rosenstein. Mr.

12

Rosenstein's proposals for prosecution and separation of
family units with one parent and with two parents goes to the
heart of Plaintiffs' case, is highly relevant to the issues in this
case, and on balance shall be produced.

#16355-16356 asserts Presidential Privilege over minimal
redactions in the body of emails and the summary of
conclusions sent by the White House Policy Coordinator.
The remaining redactions are attorney-client/work product
privileged.

IT IS ORDERED that the United States comply with the disclosures found to
not be protected any asserted privilege no later than 14 days from the date of this
Order.

Dated this 24th day of February, 2022.

Susan R. Bolton
United States District Judge

13