1   GARY M. RESTAINO
    United States Attorney
2   District of Arizona
    WILLIAM C. STAES
3   Assistant U.S. Attorney
    Illinois State Bar No. 6314835
4   40 North Central Avenue, Suite 1800
    Phoenix, Arizona  85004-4449
5   Telephone:  (602) 514-7500
    Email: William.Staes@usdoj.gov
6   *Attorneys for the United States of America*

7

8                 IN THE UNITED STATES DISTRICT COURT

9                     FOR THE DISTRICT OF ARIZONA

10  B.A.D.J., on her own behalf and on behalf        No. CV-21-00215-PHX-SMB
    of her minor child X.B.J.A.,
11                                                    **RESPONSE TO PLAINTIFFS'**
                    Plaintiff,                        **SECOND MOTION TO TRANSFER**
12                                                    **TO JUDGE SUSAN BOLTON**
           v.                                         **PURSUANT TO LOCAL RULES OF**
13                                                    **CIVIL PROCEDURE 42.1**
    United States of America,
14
                    Defendant.
15

16          Defendant United States of America, through undersigned counsel, respectfully

17  submits this memorandum in response to Plaintiffs' second motion pursuant to Local Rules

18  of Civil Procedure ("LRCiv") 42.1(a) to transfer this action to the Honorable Susan R.

19  Bolton (the "Motion") (Doc. 39).  The United States identifies a few points below that may

20  be relevant to the Court's decision but takes no position on the Motion and defers to the

21  Court in managing its docket with respect to this litigation and the large number of cases

22  that could arise in the District of Arizona.

23                **BACKGROUND AND PROCEDURAL HISTORY**

24          On February 8, 2021, Plaintiff B.A.D.J. commenced this action, on behalf of herself

25  and her eight-year-old child X.B.J.A., against the United States.  *See* Complaint, *B.A.D.J.*

26  *v. United States*, No. 2:21-cv-00215-SMB (D. Ariz. Feb. 8, 2021), ECF No. 1 ("*B.A.D.J.*

27  Compl.").  According to the Complaint, Plaintiff and her daughter crossed into the United

28  States at or near the city of San Luis, Arizona, in May 2018, where they were apprehended

by U.S. Customs and Border Patrol ("CBP") agents and taken into custody. *Id.* at ¶¶ 88-89. Plaintiff alleges that, while in federal custody, she and her daughter were subjected to improper treatment by CBP agents and other immigration officials, forced to sign documents related to their detention and immigration charges, and subjected to inhumane conditions of confinement. *Id.* at ¶¶ 91-93, 97-103.

According to the Complaint, on their third day in CBP custody, Plaintiff was separated from her daughter. *Id.* at ¶ 105. Plaintiff was then detained at a CBP facility in Yuma, Arizona; she was then transferred to a CBP facility in Wellton, Arizona; then to a facility named Santa Cruz; and then to an Immigration and Customs Enforcement ("ICE") facility in Ocilla, Georgia. *Id.* at ¶ 125. Plaintiff alleges that during her detention in Georgia she "began having chest pains, headaches, and difficulty breathing due to the immense stress of her separation from [her daughter], lack of sleep, scant intake of food and water, and the other inhumane conditions of her detention." *Id.* at 136. She also received medical treatment and a credible-fear interview while detained in Georgia. *Id.* at ¶¶ 137-140. After an immigration judge denied bond, Plaintiff signed her removal order to El Salvador. *Id.* at ¶ 143. Within weeks of her removal, on or about December 17, 2018, Plaintiff again crossed into the United States, after which she was apprehended by CBP agents and removed from the United States for a second time. *Id.* at ¶¶ 144-145.

On May 11, 2018, Plaintiff's daughter, X.B.J.A., was placed in the care of the Department of Health and Human Services, Office of Refugee Resettlement ("ORR"), in accordance with federal immigration statutes. More specifically, Plaintiff's daughter was placed in an ORR facility in Florida, where she spent two weeks, before being reunited with her father in California. *Id.* at ¶¶ 121-122. Plaintiff's daughter currently lives with her father in California, while Plaintiff is currently in El Salvador. *Id.* at ¶ 147.

***C.M. v. United States.*** *C.M.* was filed in September 2019 and is currently pending before Judge Bolton. *See* Complaint, *C.M. v. United States*, No. 2:19-cv-05217-SRB (D. Ariz. Filed Sept. 9, 2019), ECF No. 1 ("*C.M.* Compl."). The plaintiffs in *C.M.* are five mothers, who sued on behalf of themselves and their respective five minor children,

1     alleging that they were separated from their children after crossing into the United States
2     in Arizona, in May 2018, and taken to a Border Patrol station in Arizona.  *See C.M.* Compl.
3     ¶¶ 71, 119, 121, 171-72, 236, 305.  The *C.M.* plaintiffs allegedly were then sent to different
4     secure detention facilities in Arizona, Nevada, and California.  *Id.* at ¶¶ 86, 89, 137-138,
5     140-141, 194, 256, 258, 273, 331, 339.   The *C.M.* plaintiffs' children were then, in
6     accordance with federal immigration statutes, placed in various and different care facilities
7     by ORR, including facilities in New York and Arizona.  *Id.* at ¶¶ 100, 152, 211, 281, 355.
8     The *C.M.* plaintiffs and their children were reunited at the South Texas Family Residential
9     Center in Dilley, Texas.  *Id.* at ¶¶ 112, 166-68, 230, 232, 371, 376-80.

10            ***A.P.F. v. United States.***  *A.P.F.* was filed in January 2020 and is currently pending
11    before Judge Bolton.  *See* Complaint, *A.P.F. v. United States*, No. 2:20-cv-00065-SRB (D.
12    Ariz. Filed Jan. 10, 2020), ECF No. 1.  The plaintiffs in *A.P.F.* are six noncitizen fathers,
13    who sued on behalf of themselves and their respective six minor children, alleging that they
14    were separated from their children after crossing into the United States in Arizona, where
15    they were encountered by CBP agents and taken into custody.  *See* Amended Complaint at
16    ¶¶ 86-91, 113, 182, 193, 203, 265-266, 273, 308-309, 317, 369-371, 377, 413, 418, 424,
17    *A.P.F. v. United States*, No. 2:20-cv-00065-SRB (D. Ariz. Filed June 16, 2020), ECF No.
18    34 ("*A.P.F.* FAC").  The *A.P.F.* plaintiffs were then transferred to the custody of ICE and
19    allegedly sent to different secure detention facilities in Arizona, Georgia, and Texas.  *Id.* at
20    ¶¶ 32-43, 122, 210-215, 277-281, 293.  Their children were placed in various care facilities
21    by ORR, including facilities in New York, Texas, and Michigan.  *Id.* at ¶¶ 32-43.  The
22    *A.P.F.* plaintiffs and their children were later reunited after separation periods allegedly
23    spanning from eight weeks to more than eight months.  *Id.* at ¶¶ 32, 34, 36, 39, 41, 43.

24            On March 15, 2021, Plaintiff B.A.D.J. filed a motion pursuant to LRCiv 42.1(a) to
25    transfer this action to Judge Bolton.  *See* Motion to Transfer, *B.A.D.J. v. United States*, No.
26    2:21-cv-00215-SMB (D. Ariz. Mar. 15, 2021), ECF No. 10.  The United States filed a
27    response, noting a few points that may be relevant to the Court's decision, but ultimately
28    taking no position and deferring to the Court on Plaintiff's initial motion to transfer.  *See*

Response to Motion to Transfer, *B.A.D.J. v. United States*, No. 2:21-cv-00215-SMB (D. Ariz. Mar. 15, 2021), ECF No. 23.  On May 10, 2021, the United States filed a motion to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction or, in the alternative, pursuant to Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) for failure to state a claim.  United States' Motion to Dismiss, *B.A.D.J. v. United States*, No. 2:21-cv-00215-SMB (D. Ariz. May 10, 2021), ECF No. 27.  Shortly thereafter, this action and the *C.M.* and *A.P.F.* cases were stayed in light of settlement negotiations.  *See* Order, *B.A.D.J. v. United States*, No. 2:21-cv-00215-SMB (D. Ariz. May 20, 2021), ECF No. 29; Order, *C.M. v. United States*, No. 2:19-cv-05217SRB (D. Ariz. May 3, 2021), ECF No. 105; Order, *A.P.F. v. United States*, No. 2:20-cv-00065-SRB (D. Ariz. May 3, 2021), ECF No. 102.  In light of all three cases being stayed, on June 22, 2021, Judge Bolton denied without prejudice Plaintiff's initial motion to transfer.  Order, *B.A.D.J. v. United States*, No. 2:21-cv-00215-SMB (D. Ariz. June 22, 2021), ECF No. 31.  Since then, the stay in this case has expired, *see* Order, *B.A.D.J. v. United States*, No. 2:21-cv-00215-SMB (D. Ariz. Nov. 18, 2021), ECF No. 37, and the stays in *C.M.* and *A.P.F.* have been lifted, *see* Order, *C.M. v. United States.*, No. 2:19-cv-05217-SRB (D. Ariz. Dec. 21, 2021), ECF No. 118; Order, *A.P.F. v. United States*, No. 2:20-cv- 00065-SRB (D. Ariz. Dec. 21, 2021), ECF No. 117.

## LEGAL STANDARD

Under Local Rule of Civil Procedure 42.1(a), a party may move to transfer two or more different cases to a single judge when the party believes that the cases (1) "arise from substantially the same transaction or event;" (2) "involve substantially the same parties or property;" (3) "call for determination of substantially the same questions of law;" or (4) "for any other reason would entail substantial duplication of labor if heard by different Judges." When considering a motion under LRCiv 42.1(a), "[a] principal factor is whether party economy or judicial economy is substantially served by transfer to another judge." *Cagle v. Ryan*, No. CV-16-03912-PHX-JAT-JFM, 2018 WL 2688775, at *1 (D. Ariz. June 5, 2018) (internal quotations omitted).

These factors "are not binding on the Court's ultimate decision to grant or deny the motion."  *Smith v. Sperling*, No. 11-0722-PHX-PGR, 2011 WL 4101508, at *1 (D. Ariz. Sept. 14, 2011). Rather, the Court retains "broad discretion regarding the assignment or reassignment of cases." *Badea v. Cox,* 931 F.2d 573, 575 (9th Cir. 1991) (internal citation and quotations omitted); *Dishon v. Gorham*, No. CV-16-04069-PHX-ROS, 2018 WL 4257936, at *4 (D. Ariz. Sept. 6, 2018).

## ARGUMENT

The United States takes no position on the pending Motion and defers to the Court on its application of the LRCiv 42.1(a) factors but offers some points that may be relevant to the Court's application of those factors and the instant Motion.

**1.      "Transaction or Event"**

This case, like *C.M.* and *A.P.F.*, involves claims of family separation as a result of the government's enforcement of federal immigration law.  The separations at issue are alleged to have been the result of the same high-level policy determinations.  But there are also differences between the different cases.  For example, Plaintiff here alleges that her daughter should have been reunited with her husband, *see B.A.D.J.* Compl. ¶ 122, while the plaintiffs in *C.M.* and *A.P.F.* generally allege that their children should have been more expeditiously reunited with the plaintiffs themselves, *see C.M.* Compl. ¶¶ 4, 53; *A.P.F.* FAC ¶ 524.  The length of separation is also different: In this case, plaintiff's daughter was separated from her parents for approximately "two weeks," *B.A.D.J.* Compl. ¶ 122, while the minors in *C.M.* and *A.P.F.* were separated for "more than two months" and "periods ranging from around eight weeks to around eight months," respectively, *see C.M.* Compl. ¶ 5; *A.P.F.* FAC ¶ 524.

Moreover, each case features different allegations of mistreatment and improper conditions of confinement both before and after plaintiffs' separation.  For example, Plaintiff here alleges that she was detained in Ocilla, Georgia, where she "began" experiencing immense stress due to the separation *as well as* "the other inhumane conditions of her detention."  *B.A.D.J.* Compl. ¶¶ 26, 125-136.  No plaintiff in *C.M.* or

*A.P.F.* was detained in the ICE detention facility in Ocilla, Georgia, and therefore the conditions at that facility are not relevant to those cases.  Further, the Plaintiff here alleges improper conduct and inhumane conditions upon her initial intake by CBP and prior to separation, allegations that are unique to this case.  *Id.* at ¶¶ 91-93, 97-103.  Additionally, Plaintiff alleges that her child was placed in an ORR facility in Florida.  *Id.* at ¶¶ 121-122.  In contrast, none of the children in *C.M.* or *A.P.F.* were placed in an ORR facility in Florida, and facts relating to that facility or its efforts at reunification will not be relevant in those cases.  *See A.P.F.* FAC ¶¶ 32-43, 122, 210-215, 277-281, 293; *C.M.* Compl. ¶¶ 18-19.  Finally, unlike the allegations at issue in *A.P.F.*, this case does not involve allegations of abuse at an ORR facility in New York.  *A.P.F.* FAC ¶¶ 93-95, 139-141, 279, 454.

### 2.     Parties or Property

Although this case and the *C.M.* and *A.P.F.* cases involve a common defendant, the United States, all three cases involve different plaintiffs.  In similar circumstances, this Court has held that the presence of a common government defendant is insufficient to meet LRCiv 42.1(a)'s prong requiring "substantially the same parties."  *See Pangerl v. Ehrlich*, No. CV06-1464 PHXMHM, 2007 WL 686703, at *3 (D. Ariz. Mar. 2, 2007).  The cases do not involve common property.

### 3.     Questions of Law

This case and the *C.M.* and *A.P.F.* cases present similar state law causes of action for negligence and intentional infliction of emotional distress under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671-2680 ("FTCA").  *B.A.D.J.* Compl. ¶¶ 161-70; *C.M.* Compl. ¶¶ 387-93; *A.P.F.* FAC ¶¶ 527-48.[1]  There is also some overlap between the legal defenses presented in this case and the *C.M.* and *A.P.F.* cases, including whether a court has subject-matter jurisdiction of a plaintiff's challenge to the government's enforcement of federal immigration law and resulting separation of families.

But there are also differences between the legal issues presented in this case vis-à-vis *C.M.* and *A.P.F.*  As an initial matter, it is not the case that "nearly every legal argument

---

[1] As noted in the Motion, Plaintiff here and the plaintiffs in *A.P.F.* also raise a claim of loss of consortium under the FTCA.  *B.A.D.J.* Compl. ¶¶ 171-74; *A.P.F.* FAC ¶¶ 549-54.

raised in the [United States'] motion to dismiss has already been before this Court in *C.M.* and *A.P.F.*"  Motion at 7.  Rather, the United States' motion to dismiss in this case will require the Court to consider and decide different legal issues than the motions to dismiss that the government filed in the *C.M.* and *A.P.F.* cases.  For example, as Plaintiff acknowledges in the Motion, the United States' motion to dismiss in this case raises two arguments that the government did not raise at the motion to dismiss stage in either the *C.M.* or *A.P.F.* case: (1) Plaintiff's claims are barred because the FTCA does not waive the United States' sovereign immunity for institutional tort claims, and (2) Plaintiff fails to allege facts sufficient to state a claim for negligence under Fed. R. Civ. P. 8(a)(2) and 12(b)(6). Motion at 7 n.2; *see also* Motion to Dismiss, *B.A.D.J.*, ECF No. 27 at 18-19 and 20-22.  Both arguments present legal questions that were not before the Court in *C.M.* or *A.P.F.  See C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2020 WL 1698191, at *2-4 (D. Ariz. March 30, 2020); *A.P.F. v. United States*, 492 F. Supp. 3d 989 (D. Ariz. 2020).

It is also important to note that, in denying the United States' motions to dismiss in the *C.M.* and *A.P.F.* cases, the Court held that the government could not avail itself to the "discretionary function exception" to the FTCA because the plaintiffs in those cases "plausibly alleged that the government's separation of their families violated their constitutional rights."  *A.P.F.*, 492 F. Supp. 3d at 996; *C.M.*, 2020 WL 1698191, at *4.  Here, Plaintiff does not allege in the Complaint that the government violated any provision of the Constitution in separating her from her daughter.  *See* Motion to Dismiss, *B.A.D.J.*, ECF No. 27 at 11 n.7; *see also generally B.A.D.J.* Compl.  This is a distinction between the government's discretionary function exception argument in this case and its arguments in *C.M.* and *A.P.F.*, which will require the Court to address and resolve different legal questions than those presented in the *C.M.* and *A.P.F.* cases.

Moreover, once the Court is past the legal assessment of threshold arguments, Plaintiff's FTCA claims for negligence, intentional infliction of emotional distress, and loss of consortium will focus on individualized facts, including the actions of the specific federal agents in applying those national policies, as well as the actions of officers who

encountered Plaintiff during her detention and the actions of the specific ORR employees who encountered Plaintiff's daughter during periods of custody after separation.   For example, as the Court has noted, "whether the government intentionally inflicted emotional distress, acted negligently, or caused the loss of a child's consortium … will turn on events occurring after [Plaintiff] entered the country—namely, the government's treatment of [Plaintiff] at and after the time of separation."  Order, *A.P.F.*, ECF No. 33 at 4.

While the government agrees that the overlap in legal issues across these cases might weigh in favor of transfer, transfer may not be appropriate where there are substantial factual differences between the cases, even if "there may be some overlap in at least one of the legal issues."  *Lexington Ins. Co. v. Scott Homes Multifamily, Inc.*, No. CV-12-02119-PHX-JAT, 2013 WL 4026883, at *2 (D. Ariz. Aug. 7, 2013); *Lopez v. I-Flow Inc.*, No. CV-08-1063-PHX-SRB, 2009 WL 5574373, at *3 (D. Ariz. May 8, 2009); *Cooke v. Town of Colorado City, Ariz.*, No. CV 10-08105- PCT-JAT, 2012 WL 5835401, at *2 (D. Ariz. Nov. 16, 2012).  For example, in *Lopez v. I Flow Inc.*, the court declined to transfer a case involving the same "legal defenses" and "causes of action," holding that "factual differences"—each plaintiff's individual "medical history" and "alleged damages"—will "result in different legal analysis and individualized issues related to liability and causation."  *See Lopez*, 2009 WL 5574373, at *3.

### 4.   Judicial Economy

The United States defers to the Court on whether transfer is likely to serve judicial economy or conserve judicial resources.  The government recognizes the importance of ensuring judicial economy in handling the twenty FTCA cases filed in federal courts across the nation addressing the impact of these policies on individuals, and in potentially handling the hundreds of tort claims pending before federal agencies that could result in litigation.  Many of the pending lawsuits and administrative claims stem from separations that occurred in Arizona, and the Court may want to consider this larger picture in determining how to manage those cases being filed in the District of Arizona. Consolidation of some matters at the appropriate time might increase efficiency,

particularly where different suits could be consolidated or briefed in parallel.  At the same time, the Court could conclude that it would not serve judicial economy to transfer every such case to a single judge—particularly if the cases are at very different stages—and that, instead, "a division of labor between" Judges in this District could be "more conducive to judicial economy than would transfer to a single Judge." *S.E.C. v. Fraser*, No. CR-09-00365-PHX-FJM, 2009 WL 1327756, at *2 (D. Ariz. May 13, 2009) (declining to transfer civil case).

The Court may also want to consider that six lawsuits arising out of family separations at the Southwest border are currently pending before five different Judges in the District of Arizona.  *See C.M. v. United States*, No. 2:19-cv-05217 (D. Ariz. Filed Sept. 9, 2019) (Bolton, District Judge); *A.P.F. v. United States*, No. 2:20-cv-00065 (D. Ariz. Filed Jan. 10, 2020) (Bolton, District Judge); *B.A.D.J. v. United States*, No. 2:21-cv-00215 (D. Ariz. Filed Feb. 8, 2021) (Brnovich, District Judge); *A.I.I.L. v. Sessions et al.*, No. 4:19-cv-00481 (D. Ariz. Am. Compl. Filed Sept. 3, 2020) (Hinderaker, District Judge); *F.R. v. United States*, No. 2:21-cv-00339 (D. Ariz. Filed Feb. 25, 2021) (Rayes, District Judge); *E.S.M. v. United States*, No. 4:21-cv-00029 (D. Ariz. Filed Jan. 1, 2021) (Soto, District Judge).  Although Plaintiff suggests that it would be "a needless expenditure of judicial resources when one judge within the District must analyze and decide factual and legal issues with which another judge is intimately familiar," *see* Motion at 8, transferring the instant action would not centralize all "family separation" litigation in the District of Arizona or eliminate the possibility of an intra-District conflict.

Courts also regularly consider whether cases are at different stages in litigation in deciding whether to transfer.  *See, e.g.*, *Cooke*, 2012 WL 5835401, at *2; *Toomey v. Arizona*, No. CV 20-0335-TUC-SHR, 2020 WL 6149843, at *2 (D. Ariz. Oct. 20, 2020).  One illustrative example is *Cooke*, where the court denied a transfer motion despite finding that the cases "shar[ed] common legal issues concerning violations of the Fair Housing Act" and "generally ar[ose] from the same transactions or events."  *Cooke*, 2012 WL 5835401, at *2.  Among other things, the court found transfer to be inappropriate because

the cases were "at very different stages of litigation," one being "at the summary judgment stage" and the other "just recently filed." *Id.*  The Court could reach the same conclusion here.  The *C.M.* and *A.P.F.* cases are past the motion to dismiss stage, the United States has filed an answer in both cases, the Court has held a case management conference in both cases, the parties have served responses pursuant to the District of Arizona's former Mandatory Initial Discovery Pilot Program ("MIDP"), and the cases are well into the discovery process.  By contrast, this action—like the *F.R.* and *E.S.M.* cases that are also pending in this District—remains in motion to dismiss briefing and would not be subject to the MIDP if discovery commenced.  Thus, the Court may wish to consider whether consolidation of this action with *C.M.* and *A.P.F.* is the most efficient manner of handling the actions currently pending in this District.

## **CONCLUSION**

As noted above, the factors set forth in LRCiv 42.1(a) "are not binding on the Court's ultimate decision to grant or deny" the instant Motion, *Smith*, 2011 WL 4101508, at \*1, and the Court retains "broad" discretion regarding the reassignment of cases, *Dishon*, 2018 WL 4257936, at \*4.  For the reasons set forth above, we defer to the Court on the transfer decision.

RESPECTFULLY SUBMITTED this 8th day of March, 2022.

GARY M. RESTAINO
United States Attorney
District of Arizona

s/*William C. Staes*
WILLIAM C. STAES
Assistant United States Attorney
*Attorneys for the United States*

- 10 -

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 8, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

**Austin Clark Yost**
**Christopher David Thomas**
**Joel W Nomkin**
PERKINS COIE LLP − PHOENIX, AZ
2901 N Central Ave., Ste. 2000
Phoenix, AZ 85012
Tel: 602−351−8000
Fax1: 602−351−7000 (Yost and Thomas)
Fax2: 602-648-7185 (Nomkin)
ayost@perkinscoie.com
cthomas@perkinscoie.com
JNomkin@perkinscoie.com

**David S Almeling**
OMELVENY & MYERS LLP − SAN FRANCISCO, CA
2 Embarcadero Ctr., 28th Fl.
San Francisco, CA 94111
Tel: 415−984−8700
Fax: 415−984−8701
dalmeling@omm.com

**R Collins Kilgore**
**Vanessa Guerrero**
OMELVENY & MYERS LLP − LOS ANGELES, CA
400 S Hope St., 18th Fl.
Los Angeles, CA 90071
Tel: 213−430−6000
Fax1: 213−430−5407 (Suhr)
Fax2: 213-430-6407 (Kilgore and Guerrero)
ckilgore@omm.com
vguerrero@omm.com

*Attorneys for Plaintiff*


*s/ Lauren M. Routen*
U.S. Attorney's Office