UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| **C.M., et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | **CV-19-05217-PHX-SRB** |
| | ) | |
| v. | ) | |
| | ) | |
| **United States of America,** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| **A.P.F., et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | **CV-20-00065-PHX-SRB** |
| | ) | |
| v. | ) | |
| | ) | Phoenix, Arizona |
| **United States of America,** | ) | April 26, 2022 |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**BEFORE:  THE HONORABLE SUSAN R. BOLTON, SENIOR JUDGE**

<u>**REPORTER'S TRANSCRIPT OF PROCEEDINGS**</u>

<u>**DISCOVERY DISPUTE HEARING**</u>

(Proceedings conducted via Zoom)

Official Court Reporter:
Teri Veres, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 38
Phoenix, Arizona 85003-2151
(602) 322-7251

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

```
 1                      A P P E A R A N C E S

 2   (All counsel appearing via Zoom)

 3   For the Plaintiffs C.M., et al.:

 4            ARNOLD & PORTER KAY SCHOLER, LLP
              By:  Diana E. Reiter, Esq.
 5                 Lucy Sarah McMillan, Esq.
                   Kaitlyn Schaeffer, Esq.
 6                 Erik Walsh, Esq.
              250 W. 55th Street
 7            New York, New York  10019

 8            ARNOLD & PORTER KAY SCHOLER, LLP
              By:  Emily Anne Reeder-Ricchetti
 9            601 Massachusetts Avenue, NW
              Washington, D.C.  20001
10
              NATIONAL IMMIGRANT JUSTICE CENTER
11            BY:  Mark Feldman, Esq.
              224 S. Michigan Avenue, Suite 600
12            Chicago, Illinois  60604

13            OSBORN MALEDON, P.A.
              By:  BriAnne Nichole Illich Meeds, Esq.
14            2929 North Central Avenue, 21st Floor
              Phoenix, Arizona  85012-2793
15
              KAIRYS, RUDOVSKY, MESSING, FEINBERG & LIN, LLP
16            By:  Jonathan Howard Feinberg, Esq.
              The Cast Iron Building
17            718 Arch Street, Suite 501 South
              Philadelphia, Pennsylvania  19106
18
     For the Plaintiffs A.P.F., et al.:
19
              COVINGTON & BURLING, LLP
20            By:  Teresa Sanghee Park, Esq.
                   Kristin Marie Cobb, Esq.
21            850 10th Street NW
              Washington, D.C.  20001-4596
22
              COPPERSMITH BROCKELMAN
23            By:  Keith Beauchamp, Esq.
              2800 North Central Avenue, Suite 1900
24            Phoenix, Arizona  85004

25
```

```
 1              SOUTHERN POVERTY LAW CENTER
                By:  Norma Ventura, Esq.
 2                   James Knoepp, Esq.
                     Sharada Jambulapati, Esq.
 3              P.O. Box 1287
                Decatur, Georgia  30031
 4

 5  For the Defendant United States of America:

 6              U.S. DEPARTMENT OF JUSTICE - CIVIL DIVISION
                By:  Philip Davis MacWilliams, Esq.
 7                   Walter Edward Parker, IV, Esq.
                P.O. Box 888
 8              Ben Franklin Station
                Washington, D.C.  20044
 9
                U.S. DEPARTMENT OF JUSTICE - FEDERAL TORT CLAIMS
10              By:  Irina Maya Majumdar, Esq.
                P.O. Box 888 Ben Franklin Station
11              Washington, D.C.  20044

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                         P R O C E E D I N G S
 2   (Whereupon the proceedings started at 12:51 p.m.)
 3             COURTROOM DEPUTY:  Civil case 19-5217, C.M. versus
 4   the United States of America, and civil case 20-065, A.P.F.
 5   versus the United States of America.  Both cases set for
 6   discovery dispute hearing.
 7             THE COURT:  Good afternoon.  Maureen has already
 8   taken the names of everyone who is appearing on this video
 9   conference, and so the minutes will reflect who has appeared
10   and I would only ask that counsel who are going to be
11   presenting just identify themselves by name before they begin
12   speaking for the court reporter.
13             So this is the time set for a discovery dispute
14   hearing.  May I ask at whose request we are having this
15   conference?
16             MS. REITER:  Your Honor, this is Diana Reiter for
17   the C.M. Plaintiffs.  Plaintiffs are requesting this
18   conference as to certain issues, and the Defendant is
19   requesting this conference as to other issues.
20             THE COURT:  All right.  Why don't you begin, then,
21   Ms. Reiter, and tell me what the issues are that you wish to
22   discuss.
23             MS. REITER:  Certainly.  And just before we get to
24   the four issues at issue today, I just want to make the Court
25   aware that the Government is seeking to claw back a
```

1  previously-produced document on the grounds that it's

2  privileged and that Plaintiffs dispute that claim; and since

3  the Government has marked the document as confidential and

4  consistent with the Rule 502(d) order in this case, we plan to

5  file a joint motion seeking leave to file a Motion for

6  Judicial Determination of a Privileged Claim Under Seal.

7          I don't think there's anything to discuss with

8  respect to that today, Your Honor, unless you have questions,

9  but I just wanted to let you know that was coming.

10         THE COURT:  All right, thank you.

11         MS. REITER:  The parties have a dispute over the

12  Government's deliberative process privilege assertions.

13  Specifically, Plaintiffs have asked the Government to review

14  certain of their deliberative process privilege assertions in

15  connection with their productions from DHS and its agencies

16  and to conform them to the Court's February 24th order on

17  Plaintiffs' Motion to Compel.

18         The Government has refused to do so and we,

19  therefore, seek an order requiring the Government to undertake

20  that review, which I can outline in more detail now or after

21  I've gone through the other issues.

22         THE COURT:  Let's take them one at a time.  So

23  discuss the issues with deliberative process first.

24         MS. REITER:  Certainly.  Your Honor previously ruled

25  on Plaintiffs' Motion to Compel documents improperly reacted

based on various privileges; and that motion focused, as you
may recall, on two DOJ productions with the idea that the
Court's order would provide guidance that would assist the
parties in working out privilege disputes with respect to
other productions.

As I noted, after that order came down, Plaintiffs
asked the Government to review its deliberative process
privilege claims for some of the remaining productions and to
conform those claims to the Court's order.

The Government declined to do that, and that's why
we're here today; and, Your Honor, the history on this issue
demonstrates why the Government should be required to perform
this requested review.

Notably, every time the Government has been forced
to reassess its deliberative process privilege assertions, it
has withdrawn a significant percentage of those assertions
entirely and has removed other redactions.

So, for example, once faced with defending its
privilege claims in response to Plaintiffs' first Motion to
Compel, the Government withdrew 82 percent of its original
deliberative process privilege claims for those two DOJ
productions, and then the Court ordered additional
reproductions following its in camera review.

So effectively, the Government has conceded that its
original privilege claims were extremely overbroad and, yet,

1   it's declined to reevaluate its privilege assertions for the

2   vast majority of documents which were not subject to that

3   Motion to Compel, and we have tried to reach a resolution on

4   this issue.

5           When the Government first declined to reevaluate its

6   claims after the February order and in an effort to move the

7   process forward, Plaintiffs asked the Government to review a

8   sample of 57 documents we selected and, again, that review

9   resulted in the Government withdrawing over 33 percent of its

10  privilege claims entirely and then revising redactions for

11  additional documents and revising its privilege log

12  descriptions.

13          So that exercise confirmed, once again, the extreme

14  overbreadth of the Government's deliberative process privilege

15  claims and the need for the Government to do a more

16  comprehensive re-evaluation of its remaining privilege

17  assertions.

18          THE COURT:  What is the -- what volume of documents

19  are you requesting that they perform this re-evaluation on?

20          MS. REITER:  So, your Honor, the Government,

21  according to their own count, they have asserted privilege

22  claims as to over 8,000 documents.

23          However, we aren't asking them to review all 8,000.

24  Again, in an order -- in order to respond to their claims of

25  burden, we've requested a more narrow review.  Specifically,

 1   we've asked only that they review documents from DHS and its

 2   agencies.

 3          We also have limited our request consistent with

 4   Your Honor's order.  So, for instance, we are only asking the

 5   Government to review documents related to development and

 6   implementation of the Zero Tolerance Policy and Family

 7   Separation.  We are not asking them to review draft executive

 8   orders and draft reports where the final has been produced

 9   because we recognize that in Your Honor's February order Your

10   Honor did not require the Government to produce those

11   documents.

12          So I don't have a precise number for you on the

13   number of documents we're asking them to re-review, but it is

14   likely in the thousands of documents.

15          THE COURT:  All right.  Let me hear from

16   Mr. MacWilliams.

17          MR. MacWILLIAMS:  Good afternoon, Your Honor, Phil

18   MacWilliams on behalf of the Defendant United States.

19          I can start with the number, if that's where the

20   Court wants me to start in terms of responding.  According to

21   our calculation, the number of documents over which there's

22   some assertion of the deliberative process privilege, not

23   necessarily a full redaction, but it could be any sort of

24   redaction is about 5,700 documents.

25          Within this set of documents Plaintiffs are

1   referring to, Ms. Reiter referred to a limited set; but the

2   reality is they are asking the Government to re-review all the

3   DHS documents, including ICE and Customs and Border

4   Protection, really just taking out HHS is what they're asking.

5          So if you take the HHS documents out of the

6   equation, we're looking at about 5,700 documents that they're

7   asking us to re-review.

8          THE COURT:  So the privilege claims were made before

9   I issued my order in February.  Is a re-review not in order in

10  light of that ruling?

11         MR. MacWILLIAMS:  If Plaintiffs want to challenge

12  some documents, Your Honor -- this is where -- one of the

13  areas as to where there's sort of fundamental disagreement

14  with Plaintiffs as to what they're asking and what the next

15  step should be.

16         First of all, the Government never refused to

17  re-review anything.  Our position is if Plaintiffs have

18  documents that they want to challenge, please bring them to

19  our attention and we will re-review them; and the history that

20  Ms. Reiter provided shows that we are willing to work with

21  them and make changes, make alterations to the privilege log.

22         By no means is it a concession that the privilege

23  assertions were incorrect.  Rather, it's, I think, a showing

24  that the Government will work with them and try and move the

25  case forward and avoid a dispute; but what the Government

1  finds wholly unworkable is to say, "Go back and just look at

2  everything again."

3       There could be documents that Plaintiffs would not

4  want to challenge, are not challenging.  We think there should

5  be a discrete set of documents that Plaintiffs want to

6  challenge and key those up for discussion first and then we

7  can -- if there's still a dispute, then we can bring it to the

8  Court.  To do a re-review --

9       THE COURT:  Let me ask, Ms. Reiter, why isn't that a

10 reasonable way to proceed rather than simply asking for,

11 essentially, a wholesale re-review of many thousands of

12 documents?

13      MS. REITER:  Your Honor, we think it's unreasonable

14 for several reasons.  First, this is a problem of the

15 Government's own making.  The record makes clear that they

16 improperly redacted a significant percentage of their

17 documents and that they've known about these issues at least

18 since April 2021, which is when they withdrew the 82 percent

19 of their privilege assertions.  So they should have to fix it.

20 The volume is what it is because they have over redacted.

21      Second, the Government's privilege log descriptions

22 are so inadequate that it is impossible for Plaintiffs to

23 identify with any reliability the most relevant documents.  We

24 can't use the context from the documents themselves because so

25 many of the documents have been redacted in their entirety

 1   except from the "to," "from," "subject line" and "date."

 2          And relatedly, the Court observed in its February

 3   order that the Government's privilege log descriptions do not

 4   always match the document, which further hampers Plaintiffs'

 5   ability to identify the most important documents.

 6          And finally, the Government bears the burden to show

 7   that the deliberative process privilege applies, and it hasn't

 8   done that because its privilege logs are so big that they do

 9   not provide the information we need to identify the documents.

10          THE COURT:  Okay, I've heard enough on that subject.

11          What's your second subject?

12          MS. REITER:  Your Honor, Ms. McMillan's going to

13   address the deposition-related issues.

14          MS. McMILLAN:  Good afternoon, Your Honor, Lucy

15   McMillan for the C.M. Plaintiffs.  We have three different

16   disputes over depositions.  The first two relate to

17   Plaintiffs' intention to notice certain Plaintiff-specific

18   depositions, and the third relates to policy level

19   depositions.

20          So as you may recall, the case management order

21   divides the depositions into Plaintiff-specific and policy,

22   and the Plaintiff-specific depositions are related to

23   Plaintiff-specific claims.

24          The policy depositions are defined in the order as

25   "depositions of government officials related to the creation,

1  development and implementation of the family separation

2  policy."

3          So the first dispute concerns two deponents, James

4  De La Cruz and Elizabeth Strange.  Plaintiffs intend to depose

5  these Plaintiff-specific deponents, but the Government is

6  objecting and says they are policy deponents.

7          Mr. De La Cruz was a Senior Federal Field Specialist

8  supervisor in the Office of Refugee Resettlement.  He was not

9  involved in the creation, development or implementation of the

10  Family Separation Policy and, instead, he was involved in

11  tracking families, assisting with communications issues and

12  reunifications, including for our clients.

13          For example, the C.M. team has e-mails from ORR

14  shelters that concern the reunification of two of our clients

15  that Mr. De La Cruz is on.  He also sent spreadsheets relating

16  to issues of communication between parents and children and

17  our clients are on some of those spreadsheets, and there are

18  multiple examples that the parties could share; but in short,

19  he appears to have served as sort of like a troubleshooting

20  role relating to tracking, communication and reunification,

21  including issues raised by the shelters that housed our

22  clients.

23          And Plaintiffs have always said these ideas are --

24  these issues are Plaintiff-specific issues, and so we're

25  asking to depose him as a Plaintiff-specific deponent.

```
 1              THE COURT:  So you want to ask him about your two
 2   specific Plaintiffs, the reunification that he was personally
 3   involved in?
 4              MS. McMILLAN:  Well, we'd like to ask him about
 5   tracking and communication issues.  There's many, many
 6   spreadsheets that have our clients on them that relate to
 7   communication problems and tracking problems and we want to --
 8              THE COURT:  Well, isn't it likely, then, that he's
 9   -- he falls into both categories?
10              MS. McMILLAN:  You know, he -- I don't think that he
11   was involved in the creation or implementation of the Family
12   Separation Policy.  Those are different categories of people
13   who are involved in developing the policy, pushing it out,
14   making sure it was implemented.
15              He was involved in, if anything, undoing it to some
16   extent; but he was really involved on a granular level as well
17   and, you know, to the extent that he has some knowledge that
18   go beyond our Plaintiffs, I would just point to the
19   Government's own statements in our recent Joint Discovery
20   Plan, which was submitted in February.
21              The Government there said referring to discovery as
22   Plaintiff specific and policy level is a helpful way to
23   conceptualize and organize discovery, but there is some
24   overlap.  Depositions of witnesses with Plaintiff-specific
25   information may well cover not only the individual experiences
```

of that plaintiff and child, but also touch on any policies or
practices in place at the time.  Therefore, Plaintiffs'
opportunity to learn such information through depositions is
not necessarily limited to the ten policy deponents.

THE COURT:  So, I guess, is the Government objecting
to any deposition of Mr. De La Cruz or just to the scope?

MR. MacWILLIAMS:  Your Honor, first of all, for what
it's worth, this is the Government's issue they want to bring
-- that they asked for the hearing on; but to answer your
question, it's not the deposition itself.  It's how it should
be counted against Plaintiffs' totals.

They were given twelve policy depositions and then
fifteen Plaintiff-specific.

THE COURT:  And they all have -- has that number,
then, all been noticed such that they can't add any more in
their -- into one category or another?

MR. MacWILLIAMS:  No.  For both categories, Your
Honor, they're not done.  They still have more to go.

THE COURT:  Well, why are we fighting about it
before we get to the limit and the Plaintiffs want to take
No. 13 or No. 16?

MR. MacWILLIAMS:  Okay, fair question, Your Honor.
That is a possibility if that's how you want to handle it.

My -- my views, I think the Plaintiffs agreed, was
it would be best to get this disagreement ironed out

 1    beforehand so we're not in a situation where Plaintiffs --

 2             THE COURT:  Well, from my perspective, I think I

 3    would be in a much better position to iron out No. 13 or

 4    No. 16 if they come up, the possibility exists that they

 5    won't, and Mr. De La Cruz having been deposed, it would be a

 6    lot easier to know which category he fell into.

 7             I don't know enough about him and what the

 8    Plaintiffs want to ask him to know whether he should be

 9    characterized as one of the twelve policy depositions or one

10    of the fifteen Plaintiff-specific.  So why don't you just all

11    go ahead with that deposition, and if a dispute comes up later

12    about exceeding the twelve or the fifteen we can resolve it

13    then.

14             MS. McMILLAN:  Your Honor, if I may, the -- the

15    issue is that there are more than twelve relevant policy

16    deponents.  I mean, as you know, this spans many, many

17    agencies; and so it's difficult for us to plan which twelve to

18    focus on if we're not sure where some of these are going to

19    fall.

20             THE COURT:  I understand your dilemma, but I'm not

21    going to solve it for you.

22             Tell me about why you want to depose the former

23    United States Attorney for the District of Arizona.

24             MS. McMILLAN:  Yes, your Honor.  So Ms. Strange --

25    we have five -- the C.M. team has five Plaintiff -- adult

1    Plaintiffs.  For three of those we have these Border Patrol

2    prosecution memos that list two different ASUAs on them, and

3    two of our clients do not have these prosecution forms at all.

4           So we want to depose one person who can discuss why

5    our clients were not prosecuted, and we would like to depose

6    the person who ultimately had responsibility to decide whether

7    to prosecute our clients.

8           You know, we don't want to depose multiple lower

9    level people, especially because some of the lower level

10   people we have deposed so far in other agencies have said that

11   they were simply following orders or that the records

12   themselves were not correct and they were not, in fact, the

13   person who was -- who did a certain task.

14          So by deposing one person who was ultimately

15   responsible for deciding whether to prosecute our clients, we

16   think that we could get a better understanding of what

17   happened in their cases.

18          THE COURT:  What leads you to believe that she has

19   that specific information?

20          MS. McMILLAN:  Well, you know, we have -- there is

21   some public reporting that during this time -- I understand

22   that, generally speaking, the acting U.S. Attorney or the U.S.

23   Attorney may not be involved in individual cases.

24          There is some public reporting that at this time she

25   was involved in deciding individual cases.  I can't tell you

1    that she was involved in deciding our clients, but she --

2    there is public reporting that she was deciding to decline

3    cases because of the family separation situation; and so, you

4    know, based on that, we do believe she was more involved on a

5    granular level than she may otherwise have been.

6           THE COURT:  Well, I guess if you want to use up one

7    of your depositions on this possibility or probability that

8    the former United States Attorney might have specific

9    information, I'm not sure I want to stop you from doing that;

10   but why wouldn't this be better handled using an interrogatory

11   or two?

12          MS. McMILLAN:  We have served an interrogatory --

13   let's see, yeah, we could serve an interrogatory to ask who it

14   was she was ultimately responsible.  I will note that there

15   are two clients for which there are no forms whatsoever.

16          So you're right, we could serve an interrogatory to

17   ask who was the person responsible for declining their

18   prosecutions.

19          THE COURT:  Okay.  Mr. MacWilliams, why, if at all,

20   are you opposing the deposition of Ms. Strange?

21          MR. MacWILLIAMS:  Your Honor, at this point we're

22   not necessarily opposing the deposition.  It's how it should

23   be categorized.

24          Again, the Government's position is that this should

25   be a policy deposition rather than a Plaintiff-specific

deposition, and I think what you're seeing here -- whether you
want to decide the issue now or not, what you're seeing here
is the problem unfolding and the tactic being used, which is
Plaintiffs saying we want to ask about -- in Ms. Strange's
example, "Why were our clients not prosecuted?"

That's going to take about five minutes.  For the
next six, six and a half hours it's going to be all policy
related.  They want to use this -- they have an abundance of
Plaintiff-specific depositions but, as they've acknowledged,
they want more policy depositions.

And this is what they're doing, they're using people
who should be policy witnesses and are using some kind of a
hook to say, "We're going to ask a few questions about our
Plaintiffs," and then they're going to veer off into what
would clearly be policy-related focus.

So I just want to make sure these depositions are
categorized the right way and counted the right way against
their totals.

THE COURT:  Okay.  So I'm not going to categorize
them until after they're taken, and if they're not in the
category that the plaintiff wants them to be in, they're being
taken at that risk.

So what's No. 3?

MS. McMILLAN:  The third issue is, again, for
Plaintiff-specific depositions whether or not -- depositions

1    that are noticed by the C.M. Plaintiffs and during which the

2    A.P.F. Plaintiffs do not depose or ask questions, whether

3    those should be counted against the A.P.F. total of

4    Plaintiff-specific depositions and vice versa.

5           So as Your Honor recalls, the A.P.F. Plaintiffs are

6    entitled to eighteen Plaintiff-specific depositions and the

7    C.M. team is entitled to fifteen.  The case management order

8    says that if counsel questions a deponent noticed for a

9    Plaintiff-specific deposition in the C.M. case, that

10   deposition is counted against the total authorized in the

11   A.P.F. case.

12          And so here the C.M. Plaintiffs are planning to

13   notice the depositions of third-party case managers who were

14   responsible for the child plaintiffs in the shelters, and

15   A.P.F. does not believe that any of these individuals were

16   case managers for the A.P.F. Plaintiffs.

17          The A.P.F. Plaintiffs have decided to issue

18   third-party 30(b)(6) deposition notices for the four shelters

19   where their clients were held instead of the seven case

20   managers that were responsible for their child plaintiffs.

21          Neither set of lawyers intends to ask questions at

22   the other's depositions.  We've even offered to forego

23   attendance at those depositions, even though that was not

24   contemplated in the case management order and so we're -- we

25   think that A.P.F. third-party 30(b)(6) depositions should not

count against C.M. and that the C.M. case workers should not

count against A.P.F.

THE COURT:  And you think differently,

Mr. MacWilliams?

MR. MacWILLIAMS:  I do, Your Honor.  As to the case

managers, I can't really speak to that because they haven't

been noticed or subpoenaed.  I don't know who they're even

talking about.  So whether there's a dispute there as to

whether they should be C.M. or A.P.F. or both, I don't know.

There's really nothing to bring to the Court yet on those

potential depositions.

What I can speak to is that the A.P.F. Plaintiffs

have subpoenaed four of the ORR grantees.  The ORR grantees

are where the children were placed while they were in the

custody of ORR.  To be specific, it's Cayuga Centers, Lutheran

Social Services, Southwest Key Programs and Bethany Christian

Service.

Of those four, the Government's position that three

of those should count for -- against C.M. and A.P.F. total

because of the overlap of where the children were.

Counsel for C.M. read some language from the Court's

case management order, but they kind of skipped over the most

important part, which I would like to read.  "To the extent

there is overlap of individuals who were involved with the

separations of the parents and children or in the ORR

```
 1    placement of the children in these cases, those depositions
 2    will count against the total Plaintiff-specific depositions
 3    authorized in each case."
 4          So let me go through the numbers.  For Cayuga there
 5    were three C.M. children, three A.P.F. children.  For
 6    Lutheran, one of each; and Southwest Key, one of each.
 7    There's overlap with these ORR grantees, meaning the children
 8    were all at the same places -- or at least in the same care of
 9    these grantees.
10          So I think that the Court's order clearly
11    contemplated a situation like this where's there's this sort
12    of overlap, that that should be a joint deposition.
13          THE COURT:  Okay.  I'm agreeing with Mr. MacWilliams
14    on this, that there was -- when these numbers were set and
15    they were set at different numbers for each case, there was --
16    it was contemplated that there would be overlap, and this
17    seems to be the exact situation that was contemplated.
18          When you have the exact same facility that housed
19    children from both of the cases, why would you not count the
20    30(b)(6) deposition for both?
21          MS. McMILLAN:  Well, Your Honor, the C.M. team has
22    decided that it believes deposing the case managers for the
23    children is the strategy we would like to use.
24          We are not planning to attend the 30(b)(6)
25    depositions --
```

 1          THE COURT:  What if it is the same -- what if it's
 2    the same person?  Do you know that the case managers are
 3    different?
 4          MS. McMILLAN:  I don't know that because we don't
 5    know who the 30(b)(6) deponent -- I would be surprised if it
 6    was the same person because the case managers are very
 7    specific granular day-to-day with the children and I think
 8    the --
 9          THE COURT:  Hold on.  For your five plaintiffs, are
10    they five different case managers?
11          MS. McMILLAN:  They are five different case
12    managers, yes, yes, and we would prefer to take the case
13    manager rather than a 30(b)(6) deposition; but under
14    Mr. MacWilliams' position we don't have that choice because
15    we're running out of depositions if we end up having to take
16    our case managers and attend the 30(b)(6).
17          THE COURT:  Have you seen a proposed 30(b)(6)
18    notice?
19          MS. McMILLAN:  Yes, and I -- I will defer to --
20    Ms. Park is here, too, for the A.P.F. team, but I would say
21    that it is -- the topics listed are broader than I -- I
22    believe any case manager could answer.
23          THE COURT:  And is there any overlap between the
24    case managers in the C.M. case and in the A.P.F. case?
25          MS. McMILLAN:  No, the A.P.F. -- well, go ahead

 1   Teresa -- I'm sorry, Ms. Park, go ahead.

 2            MS. PARK:  Your Honor, if I may, Teresa Park for the

 3   A.P.F. Plaintiffs.  We're happy to answer.  To the best of our

 4   knowledge, the case managers for our Plaintiffs were seven and

 5   they do not overlap, as we understand it, from the C.M. case

 6   managers for these facilities and for an additional facility

 7   -- or, I'm sorry, or our grantee that Mr. MacWilliams was

 8   referring to, and I think -- if I may add a few points.

 9            It's certainly no doubt that our cases are complex

10   and that there are a number of witnesses.  For A.P.F. alone,

11   for example, we have twelve Plaintiffs and the Government has

12   identified over 130 individuals in its MIDP responses as

13   having relevant knowledge regarding the case.

14            Back in 2020 when A.P.F. and the Government were

15   discussing in its various meet and confers and submitting a

16   joint case management report, which the Court ultimately ruled

17   on, the Court had allowed the A.P.F. Plaintiffs eighteen

18   Plaintiff-specific depositions; but what the Government's

19   position would be, in effect, would mean that A.P.F. may be

20   forced to count the deposition of, let's say, a tangential

21   witness because that witness was a key witness for C.M.'s

22   Plaintiffs or vice versa; and here we believe our 30(b)(6)

23   witnesses, although they haven't yet been identified,

24   (technical glitch) themselves did not overlap as we understand

25   it.  In effort --

1          THE COURT:  Okay, I've heard enough on this one.

2          I'm going to allow the case managers, the four --

3    I'm sorry, the C.M. case managers' depositions because there's

4    no overlap between these case managers and the case managers

5    in the A.P.F. case.  They'll only count against the number of

6    depositions permitted in the C.M. case and not in the A.P.F.

7    case.

8          With respect to the 30(b)(6) depositions, they'll

9    not count against the C.M. Plaintiffs so long as C.M. doesn't

10   appear or participate in the questioning in that case.  That's

11   my ruling on that one.

12          Is there another issue?

13          MS. McMILLAN:  Yes, your Honor.  The third issue is

14   with respect to two individuals who are -- all parties agree

15   are policy deponents, and the issue is whether they can be

16   deposed now or whether they need to be deferred until a later

17   date.

18          So, again, as Your Honor is aware, the case

19   management order states that, "Plaintiffs will conduct

20   depositions of current or former Cabinet level officials,

21   heads of agencies, or White House officials or advisors only

22   on agreement of the parties or with the Court's leave," and

23   that the parties shall meet and confer on or before June 3rd

24   to assess the need for these depositions.

25          The two individuals we would like to depose now are

1    Mr. Albence, who was the Executive Associate Director of

2    Enforcement and Removal Operations at Immigration and Customs

3    Enforcement.

4              THE COURT:  Say that again.  He was the --

5              MS. McMILLAN:  Executive Associate Director of

6    Enforcement and Removal Operations --

7              THE COURT:  Okay.

8              MS. McMILLAN:  -- at Immigration and Customs

9    Enforcement during the relevant period.

10             So he was not an agency head during the relevant

11   period and he is no longer in the Government.  From July 5th,

12   2019, to August 25th, 2020, a year after the events in

13   question, he was the Acting Director of ICE; but as we have

14   represented to the Government, we do not intend to depose him

15   about the time period when he was Acting Director, only about

16   the time period when he was Executive Associate Director of

17   the Enforcement and Removal Operations.

18             And similarly, Mr. Wolf was the Chief of Staff to

19   the Secretary of Homeland Security and not an agency head

20   during the relevant time period, and he's no longer in the

21   Government.  He was the Acting Secretary of Homeland Security

22   in 2019 to 2021, although a number of Federal Courts

23   subsequently ruled that the appointment was unlawful.

24             In any event, the Plaintiffs, again, have told the

25   Government we don't intend to depose him about any time when

1  he was the Acting Secretary; and so we are asking to depose

2  these two individuals now and not wait until later because

3  they are critical to the case.

4        They are on documents that are really key to the

5  facts developed here and will inform decisions about future

6  depositions, and the documents show that they were really

7  crucial to the creation, development and implementation of the

8  policy; and then just on a practical level, I'll note if we

9  can't depose people like Mr. Albence and Mr. Wolf now, it's

10  going to be very hard during a June 3rd meet and confer to

11  discuss which higher-level officials we do need because so

12  many people were either heads of agencies, White House

13  officials during the time or are currently heads of agencies,

14  which we will wait until a later date to depose.

15        THE COURT:  Okay, let me turn to Mr. MacWilliams.

16        If the Plaintiffs are limiting these depositions to

17  the time periods when they were not acting directors of their

18  agencies but instead had other lesser responsibilities, why

19  shouldn't they go forward now?

20        MR. MacWILLIAMS:  Well, Your Honor, that's entirely

21  your decision, of course.  All -- the Government's position is

22  the same as with the other depositions.  We're just asking

23  that the plain language of the Court order be followed, and

24  the plain language of the Court order says current or former

25  agency heads can't be deposed right now.

```
 1              There's no exceptions for when they were in that
 2   role and so on.  If the Court wants to grant Plaintiffs' leave
 3   to do these depositions now from this particular provision of
 4   the order, that's your decision; but the Government's position
 5   is if we start -- the Government agrees if we start making
 6   exceptions, Plaintiffs are going to keep asking for exceptions
 7   of other individuals --
 8              THE COURT:  Okay --
 9              MR. MacWILLIAMS:  -- so that's why we can't agree.
10              THE COURT:  I think they should go ahead.  The
11   intention behind that limitation was to depose people who were
12   holding those positions about these -- the issues in this case
13   while they were holding those positions.
14              With respect to Mr. Albence and Mr. Wolf, they're
15   not going to be deposed as agency heads.  They're going to be
16   deposed as to what their -- as to actions they took or
17   policies that were being implemented when they held the
18   positions of Executive Assistant Director of Enforcement and
19   Removal for ICE or Chief of Staff to the DHS Director, not in
20   their roles as Acting Director or -- of either Immigration and
21   Customs Enforcement or DHS, but they do count --
22              MR. MacWILLIAMS:  Understood, Your Honor.
23              THE COURT:  They do count against the number for
24   policy.
25              MR. MacWILLIAMS:  Okay.  Thanks, Your Honor.  I
```

 1   think we actually agree -- that's one thing the Plaintiffs and

 2   I agree on, though.

 3          Could I have one point, though, about the Wolf and

 4   Albence deposition?  They are former officials and they have

 5   not been subpoenaed yet.  So to the extent -- I wanted to make

 6   the record clear to the extent the Court's ruling that they

 7   can go forward, it just relates this -- the Court's just not

 8   applying this one provision to the case management order.

 9   There may be other bases for them to object to a deposition

10   once they're subpoenaed.

11          THE COURT:  Right, I --

12          MR. MacWILLIAMS:  So I want to make sure that's out

13   there.

14          THE COURT:  I understand that the Government does

15   not have control over these individuals and they have to be

16   subpoenaed or accept subpoenas for deposition and, obviously,

17   my ruling today with respect to how this fits into the case

18   management order and the limitations and then is not intended

19   in any way to resolve any other objections that these

20   individuals on their own might make to a subpoena.

21          MR. MacWILLIAMS:  Understood, Your Honor.

22          THE COURT:  Okay.  Is that it?

23          MS. REITER:  Your Honor, if I may, I just want to

24   raise two minor issues related to the privilege issue that we

25   discussed earlier.

1          The first is that Plaintiffs would like to request
2     that the Court review in camera 24 documents as to which the
3     Government has maintained its privilege assertions after
4     reviewing the sample that I discussed earlier.

5          Based on the information available, these documents
6     appear to be highly relevant to Plaintiffs' claims, and it
7     also appears that the Government redacted segregable factual
8     information.

9          We are prepared to file a Motion to Compel seeking
10    in camera review of those documents with the Court's
11    permission, unless the Government is willing to provide those
12    documents voluntarily and the Court is willing to conduct such
13    a review.  That's the first issue, Your Honor.

14         The second is that the Government's extraordinarily
15    overbroad privilege assertion should not inure to the
16    Government's benefit by preventing Plaintiffs from questioning
17    witnesses about documents that are later produced in response
18    to this dispute.

19         As you just heard, depositions are already under
20    way.  So I just wanted to make clear that Plaintiffs reserve
21    their right to move to reopen depositions of Government
22    witnesses to enable Plaintiffs to question them on
23    subsequently-produced documents that are material to
24    Plaintiffs' case.

25         THE COURT:  Thank you for reminding me that I didn't

 1  give you any guidance on these 5,700 documents for which

 2  deliberative process privilege was asserted prior to the entry

 3  of my order in February.

 4       If these documents are anything like the documents

 5  that I reviewed they're not 5,700 discrete documents, but

 6  probably numerous copies of the same document with suggestions

 7  or red lining -- I think I reviewed -- in the ones that I saw,

 8  there were some documents I saw, you know, ten or twelve

 9  times.

10       And I think that it is appropriate in light of the

11  Court's order on deliberative process, Mr. MacWilliams, for

12  the Government to take a second look at these documents and

13  see whether or not its privilege log is still consistent with

14  my order, whether it needs to be -- whether some of the

15  documents need to be produced in light of that order and

16  whether or not the privilege log should be amended to be more

17  clear about the basis for the privilege.

18       I am persuaded by the fact that when this was

19  undertaken before my in camera review, it resulted in the

20  Government giving the Plaintiffs a tremendous number of

21  documents that had previously been withheld; and I don't have

22  any reason to believe that that wouldn't be the case if these

23  5,700 documents or whatever smaller number of discrete

24  documents there are were reviewed again, because I think that

25  the order that I entered with respect to deliberative process

1  probably gives clearer guidance than what there was at the
2  time that the privilege log was first made and the documents
3  were withheld or redacted.
4       MR. MacWILLIAMS:  Your Honor, just so I make sure
5  we're clear on this.  There was an estimate of there being
6  5,700 documents total, and then Ms. Reiter talked about the 57
7  documents they brought to the Government's attention to
8  re-review.  I wanted to make sure --
9       THE COURT:  No, she said 24, I thought.
10      MR. MacWILLIAMS:  Well, there were -- there were --
11 the Plaintiffs said, "Please review these 57 documents," and
12 it made it confusing because on the one hand there's 5,700
13 documents in the larger set and Plaintiffs said, "Please
14 review these 57," and the Government did that already; and
15 based on that re-review, the Plaintiffs are now challenging
16 24.
17      THE COURT:  Oh, okay.
18      MR. MacWILLIAMS:  I think that's what Ms. Reiter was
19 talking about.  She wants to file a Motion to Compel with
20 respect to those 24 documents that -- for which the redaction
21 still survived following the Government's re-review, and
22 that's what she wants to bring to the Court's attention for an
23 in camera review.
24      MS. REITER:  If I may, that's not accurate.  We do
25 want to bring the 24 documents to Your Honor's attention for

1    in camera review; but Your Honor's absolutely correct, our

2    primary request is a re-review of the 5,700 documents that you

3    just discussed.

4            THE COURT:  I think -- and that's what I'm saying I

5    believe is appropriate, Mr. MacWilliams, in light of the

6    Government's change before my in camera review that resulted

7    in a substantially more production than had originally been

8    made with respect to the DOJ documents that I don't have any

9    reason to believe that wouldn't be the same result when the

10   DHS documents were reviewed again.

11           There was a significant amount of over redaction and

12   claim of deliberative process when it was -- well, it was just

13   done overly broadly based on what I reviewed of the many

14   documents that were the subject of my two prior orders, and

15   we're talking deliberative process here, not attorney-client

16   privilege.  So that's my ruling.

17           MR. MacWILLIAMS:  That's correct.

18           THE COURT:  Okay, that's my ruling and that's all

19   the time we have today.  Thank you very much.

20           MS. REITER:  Your Honor, if I could just ask a

21   clarifying question?  With respect to the 24 documents that

22   the Government has already reviewed and that we still dispute

23   the privilege claim for, should we go ahead and file a Motion

24   to Compel in camera review of those documents?

25           THE COURT:  You may.

1          MS. REITER:  Thank you, your Honor.

2          THE COURT:  Okay, thank you very much.

3          Court is in recess.

4          MS. REITER:  Thank you.

5          MS. McMILLAN:  Thank you, your Honor.

6

7  *(Proceedings ended at 1:33 p.m.)*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

***REPORTER'S CERTIFICATION***

1

2

3          I, TERI VERES, do hereby certify that I am duly

4  appointed and qualified to act as Official Court Reporter for

5  the United States District Court for the District of Arizona.

6          I FURTHER CERTIFY that the foregoing pages

7  constitute a full, true, and accurate transcript of all of

8  that portion of the proceedings contained herein, had in the

9  above-entitled cause on the date specified therein, and that

10 said transcript was prepared under my direction and control.

11          DATED at Phoenix, Arizona, this 27th of

12 April, 2022.

13
                                    s/Teri Veres
14                               TERI VERES, RMR, CRR

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT