Exhibit 1

**From:** Wynne, Maggie (HHS/IOS)
**Sent:** Thursday, February 16, 2017 7:57 PM
**To:** Katy Talento (Kathryn.F.Talento@who.eop.gov)
**CC:** Stannard, Paula (HHS/IOS)
**Subject:** Unaccompanied children

Katy,

I should have more details to provide tomorrow, but the basics are a bit different from what I said on the phone, but only in DHS motivation.

DHS met earlier this week with ORR staff to see how HHS could support actions the department is contemplating to deter illegal cross-border entries.

Lots of details are still unclear or not described to HHS, such as when this might happen, what stage it's at (but NSC and DPC were mentioned as looped in already), and if it will be done across the board or started in one location.

(1) DHS proposes separating children in family units from their parents and referring them to ORR as Unaccompanied Alien Children (UACs). Previously I thought HHS would get involved to help a likely overflow problem from limited DHS housing for families, but DHS would do this regardless as a deterrent to families who have not yet entered the U.S.

(2) CBP will re-implement a requirement that all undocumented UAC sponsors come forward to be processed and given a notice to appear (NTA). (Side note: Wade Horn was instrumental in getting DHS to back off of this practice in the mid-2000s because it led to parents using paid U.S. citizen or LPR sponsors to get their children out of ORR care.)


DHS stressed told ORR that the overall intent of the actions is to serve a deterrent in the longer term, but ORR believes the immediate impact is certain to have capacity and budgetary impacts for the UAC Program.

ORR requested white papers from DHS on both proposals but will also write up something for me to share with the Policy Team here and with you.

Maggie

CD-US-0181371

Exhibit 2

| POTENTIAL DHS PROPOSAL[1] | DHS STATED PURPOSE | POTENTIAL LEGAL ISSUES | CAPACITY PLANNING IMPLICATIONS FOR ORR | | ADDITIONAL CONCERNS OR RISKS |
|---|---|---|---|---|---|
| | | | IMPLICATIONS FOR REFERRALS | IMPLICATIONS FOR DISCHARGE/LOC | |
| *DHS will separate children from parents in Family Unit apprehensions and refer them to HHS as UC.* | Deterrence of Family Unit migration | Ninth Circuit in 2016 found that DHS had authority to separate children. However, DHS does not have authority to detain children. Family Units must be separated, repatriated, or released within 21 days. | Based on recent historical Family Unit apprehension data from CBP, family unit separation referrals would result in referral levels approximately 2.5 times UC levels alone. | Very few separated UC will be Category 1. Majority of separated UC will be Category 3 or Category 4. With 2/3 of new referrals predominantly Cat-3 or Cat-4, average length of care will increase significantly. Separated UC are at greater risk of having no viable sponsor in the US and remaining in ORR custody for very long periods of time. | Family Unit children are predominantly Tender Age (under 12) children, many very young (under 5). Per CBP apprehension data for October 2016-January 2017, there were 39,555 children in Family Units, of which 30,691 (78%) were 12 and under and 16,223 (41%) were 5 years old or younger. *Total capacity in ORR shelter system licensed to serve Tender Age is 1192 beds and would rapidly be exceeded.* *Tender Age UC cannot be placed in Influx Shelters.* Separated UC historically are high-demand cases, involving international home studies, Embassy engagement. |

---

[1] *Potential proposals based on verbal brief by DHS on 14FEB—written white paper proposals from DHS will be forthcoming.*

SENSITIVE BUT UNCLASSIFIED//FOR OFFICIAL USE ONLY

| POTENTIAL DHS PROPOSAL[2] | DHS STATED PURPOSE | LEGAL ISSUES | IMPLICATIONS FOR REFERRALS | IMPLICATIONS FOR DISCHARGE/LOC | ADDITIONAL CONCERNS OR RISKS |
|---|---|---|---|---|---|
| *DHS will issue Notices to Appear (NTAs) to sponsors of UC at point of reunification if sponsors do not have legal status. ORR providers would be required to notify ICE of reunifications so that ICE can serve NTAs on sponsors at point of reunification.* | Deterrence of UC migration. | Unknown. Potential conflicts with TVPRA and Flores requirement to act in best interest of child to move child to least restrictive setting for ORR programs to actively assist in enforcement actions. | None anticipated. | Many sponsors will be deterred from stepping forward. Very significant decline in discharge rate/increase in length of care expected. 70% of sponsors currently lack SSNs. Increase in proportions of Cat-3 and especially no-viable-sponsor placements. Severe reduction in discharge rate possible. | Trafficking risks will increase significantly, as parents/family members pay to have LPRs or AmCits act as sponsors. This market for sponsorship was historically a feature of the program years ago when NTAs were issued at reunification. Growth in number of long-term UC in care may require more Long Term Foster Care (LTFC) capacity than presently available to ORR. Some providers may cease sheltering services for ORR, due to mission conflicts with assisting in apprehension of sponsors or social work licensure issues. |

---

[2] *Potential proposals based on verbal brief by DHS on 14FEB—written white paper proposals from DHS will be forthcoming.*

SENSITIVE BUT UNCLASSIFIED//FOR OFFICIAL USE ONLY

CD-US-0134730

## KEY TERMS

**Category 1:** Children sponsored by a parent or legal guardian.

**Category 2:** Children sponsored by a close family member (grandparent, adult sibling, aunt, or uncle)

**Category 3:** Children sponsored by a non-relative or distant relative.

**Category 4:** Children with no identified viable sponsor for reunification.

**LOC:** Length of care.  Time spent by UC in ORR shelter care and custody.

**Tender Age:**  UC who are twelve years of age or younger.

SENSITIVE BUT UNCLASSIFIED//FOR OFFICIAL USE ONLY



CD-US-0134731

Exhibit 3

**From:** Swartz, Tricia (ACF)
**Sent:** Wednesday, December 13, 2017 2:06 PM
**To:** White, Jonathan (ACF)
**Subject:** Prosecution and Background Checks

Hi Jonathan-

A summary from yesterday's conversation with Gloria Chavez and Ray Renken on "prosecution of parents."...

In addition to Chavez and Renken, there was another person on the call from a DHS component intel office but I didn't catch her name (was standing next to a loud NYC construction site, in the rain).

In short, one hand doesn't know what the other is doing. It sounds very uncoordinated. Gloria is going to try to find some other folks and regroup.

CBP has no comments on the fingerprint MOA because it is an ICE product. However, there is concern about unintended consequences of all these actions. Chavez suggests we create a white paper to outline consequences once she finds the right people. DHS S1 has not signed off on the actions yet.

The parental prosecutions from the summer already caused an ORR capacity issue and DHS is looking to expand those prosecution efforts. DHS had just received the complaint letter about family separation from their OIG and was discussing the injunction (I assume this is the RILR case injunction, the one that I mentioned would reappear in the Steve Wagner meeting). They don't know if/how they can proceed.

In sum, it sounds a bit chaotic. Nobody knows what each other are doing. Sounds like Gloria is going to try to help pull together the right people and make some sense of it. She is supposed to reach out again.

Tricia

CD-US-0136124

Exhibit 4

**From:** Wolf, Chad
**Sent:** Friday, December 15, 2017 11:24 PM
**To:** Shah, Dimple; Short, Tracy
**CC:** Neumann, Elizabeth
**Subject:** RE: UAC response
**Attachments:** UAC_Options.docx

Tracy,
Please see that attachment. I began putting your work into a format for S1 to easily read and digest. Please finish the initial ideas you included and areas that have "???". Would recommend that you kick it over to Dimple tomorrow morning so she can fully incorporate her changes / edits.

I would then send the document to a wider audience for comments / edits by early Sunday. My plan is to provide to S1 on Sunday. I need both yours and Dimple's help to get the options paper in good shape.

Chad F. Wolf
(Acting) Chief of Staff
Department of Homeland Security

**From:** Shah, Dimple
**Sent:** Friday, December 15, 2017 6:41 PM
**To:** Wolf, Chad <chad.wolf@hq.dhs.gov>; Short, Tracy <tracy.short@hq.dhs.gov>
**Cc:** Neumann, Elizabeth <elizabeth.neumann@hq.dhs.gov>
**Subject:** RE: UAC response
I made some tweaks to the text below the break. Nothing major as it is a great start. Some other bullets below to consider. I leave it to your discretion to add/subtract.

**Special Immigrant Juvenile Visas**

- **USCIS should consider revising its interpretation of the Special Immigrant Visa Statute to align with Congress' original intent of the program (Long term as rulemaking is likely required).** This re-interpretation would allow the SIJ program to better support those children who are truly abandoned and do not have a single parent available to care for them. USCIS is consulting with OGC on the availability of such a revised interpretation, as well as the appropriate procedure for making the change (e.g., a revised policy memo or a notice-and-comment rulemaking), especially in light of the 2011 NPRM.
- To prevent potential abuses in the SIJ program and save resources, **DHS could bolster the vetting and adjudication aspects of the SIJ program** as follows (short term):
    - Review and improve the entire biometrics and security/vetting procedures for the SIJ population, including obtaining foreign criminal history information for SIJ petitioners.
    - Before addressing adjudication concerns, DHS should ensure the identity of SIJ petitioners and carefully scrutinize the possibility of gang membership/affiliation. If a gang membership/affiliation issue is identified, USCIS adjudicators should understand and implement the Referral to ICE (RTI) process, specific to the SIJ population, to ensure any potential threat to public safety is referred to the proper component of ICE—which oftentimes is Homeland Security Investigations (HSI).
    - Separate from the security/vetting procedures, review whether USCIS' consent function can be used to deny a case involving gang membership or otherwise poses a threat to public safety or national security.
    - Develop a formal process to encourage DHS components (e.g., ICE trial attorneys, ICE or CBP officers, etc.) to report cases of suspected SIJ program fraud to USCIS. For example, the process would provide that an ICE trial attorney who notices a child seeking SIJ classification attending immigration court with two parents should report this factor to USCIS for further investigation.

**Asylum**

- Work with EIOR to adjudicate all cases on last in first out basis. In the meantime, USCIS can adjudicate the asylum cases they receive in order of last in first out also. Both processes must be consistent in order to effectuate prompt removal and to have a deterrent impact.
- Detain arriving aliens in a manner consistent with statute such that they are detained for the duration of the adjudication of their asylum claims. This would require rescission of the 2009 Morton memo which allows for parole of all such aliens contrary to statute. Rescission must occur following a decision in the Jennings vs. Rodriguez case as DOJ relied on the memo in its arguments in October. A decision by the SCOTUS should be issued this summer.

---

- Instruct CBP and ICE to significantly increase the prosecution of family unit parents when they are encountered at the border. The parents would be prosecuted for illegal entry (misdemeanor) or illegal reentry (if they have been previously deported) and the minors with them would be placed in HHS custody as UACs. Since the parents would be criminally prosecuted, they would be placed in the custody of the U.S. Marshal to await trial. Not all parents could be criminally prosecuted because of the large number of families illegally entering, but the increase would be reported and it would have a deterrent effect. A public announcement of the policy could be made before implemented. This is already being done by CBP on a limited scale.
- Announce that DHS will begin separating family units, placing the adults in adult detention and placing the minors under the age of 18 in the custody of HHS as unaccompanied alien children (UAC) because the minors will meet the definition of "unaccompanied alien child," i.e., (1) has no lawful immigration status in the U.S.; (2) has not attained the age of 18; and (3) has no parent or legal guardian in the U.S., or no parent or legal guardian in the U.S. is available to provide care and physical custody. *See* 6 USC § 279(g)(2). This will require close coordination with HHS, to ensure that sufficient capacity is available to detain the UACs.
- Begin separating family units, as stated above. This option could be presented to S1 and a decision could be made within a few weeks, but operational coordination between the components and HHS and DOJ (consolidating the cases of parents and minors in immigration court proceedings) would be key.
- There is an S1 decision memo awaiting signature, which would: (1) direct USCIS to rescind a 2013 memo that prevents their staff from making independent UAC determinations (thereby allowing for the redesignation of children who no longer meet the statutory UAC definition); and (2) allow ICE to redesignate UACs as "accompanied alien juveniles" if/when HHS releases them to a parent or legal guardian.

Near-term response:

- Complete the MOU between ICE and HHS to fingerprint sponsors of UACs, conduct background checks on those individuals, and place

CD-US-0096663

them into removal proceedings. This would deter parents/sponsors from taking custody of their children, requiring HHS to keep the UACs in custody longer. It would also deter parents from smuggling their children.

- DOJ is currently considering placing video teleconference (VTC) units at or near HHS facilities to allow immigration judges to conduct removal hearings in these facilities remotely. ICE could work with DOJ to expeditiously facilitate this policy.
- Request that the State Department provide financial assistance to countries like Panama and Mexico, to fund efforts by those countries to interdict, detain, and remove aliens from the Northern Triangle who are transiting those countries en route to the United States.

Long-term response:

- On September 25, 2017, Acting Secretary Duke signed a decision memo directing CBP, ICE, and USCIS to develop and draft regulations implementing the Flores Settlement Agreement and TVPRA, in conjunction with DOJ and HHS. ICE is currently drafting the regulations.
- Conclude a Safe Third Country Agreement with Mexico. Acting Secretary Duke recently authorized DHS to request authority from the State Department to begin discussions with Mexico and Canada for the purpose of entering into a trilateral Safe Third Country Agreement with the parties. This will involve long-term negotiations with those countries.
- Begin negotiations with Mexico to implement INA § 235(b)(2)(C), which authorizes immigration officers to return aliens to the country from which they entered the U.S., pending a determination of their removability in removal proceedings. This would require the assent of Mexico because it would require aliens from the Northern Triangle to remain in Mexico until their removability and claims for relief have been decided by an immigration judge, which will likely hold hearings at the ports of entry (port courts). There are litigation risks associated with this proposal, as it would implicate refugee treaties and international law.
- Seek a legislative fix for Flores and the TVPRA (Trafficking in Victims Protection Reauthorization Act). ICE can seek to expand detention capacity by entering into contracts with detention vendors along the border.

**From:** Wolf, Chad
**Sent:** Friday, December 15, 2017 5:51 PM
**To:** Short, Tracy <tracy.short@hq.dhs.gov>
**Cc:** Neumann, Elizabeth <elizabeth.neumann@hq.dhs.gov>; Shah, Dimple <dimple.shah@hq.dhs.gov>
**Subject:** RE: UAC response

Thank you, Tracy. Great starting point. I'll work to put these into a package and resend for comment tonight / tomorrow morning.

Chad F. Wolf
Acting Chief of Staff
Department of Homeland Security
T: 202-447-3087
C: 202-875-9152
Confidential Assistant
Connor Gauvin
Connor.gauvin@hq.dhs.gov
T: 202-447-4105

**From:** Short, Tracy
**Sent:** Friday, December 15, 2017 5:36 PM
**To:** Wolf, Chad <chad.wolf@hq.dhs.gov>
**Cc:** Neumann, Elizabeth <elizabeth.neumann@hq.dhs.gov>; Shah, Dimple <dimple.shah@hq.dhs.gov>
**Subject:** UAC response

As requested, below are options to respond to the current border crisis:

Immediate response:

- Instruct CBP and ICE to significantly increase the prosecution of family unit parents when they are encountered at the border. The parents would be prosecuted for illegal entry (misdemeanor) or illegal reentry (if they have been previously deported) and the minors with them would be placed in HHS custody as UACs. Since the parents would be criminally prosecuted, they would be placed in the custody of the U.S. Marshal to await trial. Not all parents could be criminally prosecuted because of the large number of families illegally entering, but the increase would be reported and it would have a deterrent effect. A public announcement of the policy could be made before implemented. This is already being done by CBP on a limited scale.
- Announce that DHS will begin separating family units, placing the adults in adult detention and placing the minors under the age of 18 in the custody of HHS as unaccompanied alien children (UAC) because the minors will meet the definition of "unaccompanied alien child," i.e., (1) has no lawful immigration status in the U.S.; (2) has not attained the age of 18; and (3) has no parent or legal guardian in the U.S., or no parent or legal guardian in the U.S. is available to provide care and physical custody. *See* 6 USC § 279(g)(2). This will require close coordination with HHS, to ensure that sufficient capacity is available to detain the UACs.
- Begin separating family units, as stated above. This option could be presented to S1 and a decision could be made within a few weeks, but operational coordination between the components and HHS and DOJ (consolidating the cases of parents and minors in immigration court proceedings) would be key.
- There is an S1 decision memo awaiting signature, which would: (1) direct USCIS to rescind a 2013 memo that prevents their staff from making independent UAC determinations (thereby allowing for the redesignation of children who no longer meet the statutory UAC definition); and (2) allow ICE to redesignate UAC as "accompanied alien juveniles" if/when HHS releases them to a parent or legal guardian.

Near-term response:

- Complete the MOU between ICE and HHS to fingerprint sponsors of UACs and place them into removal proceedings. This would deter parents/sponsors from taking custody of their children, requiring HHS to keep the UACs in custody longer. It would also deter parents from smuggling their children.
- DOJ is currently considering placing video teleconference (VTC) units at or near HHS facilities to allow immigration judges to conduct removal hearings in these facilities remotely. ICE could work with DOJ to expeditiously facilitate this policy.
- Request that the State Department provide financial assistance to countries like Panama and Mexico, to fund efforts by those countries to interdict, detain, and remove aliens from the Northern Triangle who are transiting those countries en route to the United States.

Long-term response:

- On September 25, 2017, Acting Secretary Duke signed a decision memo directing CBP, ICE, and USCIS to develop and draft regulations implementing the Flores Settlement Agreement and TVPRA, in conjunction with DOJ and HHS. ICE is currently drafting the regulations.
- Conclude a Safe Third Country Agreement with Mexico. Acting Secretary Duke recently authorized DHS to request authority from the State Department to begin discussions with Mexico and Canada for the purpose of entering into a trilateral Safe Third Country Agreement with the parties. This will involve long-term negotiations with those countries.

- Begin negotiations with Mexico to implement INA § 235(b)(2)(C), which authorizes immigration officers to return aliens to the country from which they entered the U.S., pending a determination of their removability in removal proceedings. This would require the assent of Mexico because it would require aliens from the Northern Triangle to remain in Mexico until their removability and claims for relief have been decided by an immigration judge, which will likely hold hearings at the ports of entry (port courts). There are litigation risks associated with this proposal, as it would implicate refugee treaties and international law.
- Seek a legislative fix for Flores and the TVPRA (Trafficking in Victims Protection Reauthorization Act).
- ICE can seek to expand detention capacity by entering into contracts with detention vendors along the border.

CD-US-0096665

Exhibit 5

# Immigration Priorities and Border Security Briefing

Current Challenges and

Effective Solutions

 Homeland Security

December 11, 2017

PREDECISIONAL/FOR OFFICIAL USE ONLY

CD-US-0035388

# Immigration Enforcement Priorities

Border Security:
- Construct a wall and expand technology
- Expeditiously remove illegal border crossers (UACs and Family Units)
- Close legal loopholes (credible fear, asylum, UAC status)

Interior Enforcement:
- Detain removable aliens and expeditiously remove them (criminals, gang members)
- Disincentivize sanctuary cities
- Increase state and local cooperation (honor detainers, expand 287(g))

Merit Based Immigration System:
- Establish a points-based system (bring in skilled workers, end the diversity lottery)
- End chain migration (limit expansive family-based immigration)
- Expand E-verify

CD-US-0035389

# Current Southwest Border Statistics

There was a sharp decline in Southwest border apprehensions from November 2016 through April 2017. In April, apprehensions began steadily rising again in all categories – Family Units (FMUAs), Unaccompanied Alien Children (UACs), and Single Adults.



Apprehensions - Oct 2016 - Nov 2017

CD-US-0035390

# Current Southwest Border Statistics (previous 21-day Averages)

21-day average of Southwest border apprehensions by CBP through Saturday, 12/9/17. The highest day in apprehensions was 12/05/2017 with 1,538 apprehensions.



|  | 19-Nov | 20-Nov | 21-Nov | 22-Nov | 23-Nov | 24-Nov | 25-Nov | 26-Nov | 27-Nov | 28-Nov | 29-Nov | 30-Nov | 1-Dec | 2-Dec | 3-Dec | 4-Dec | 5-Dec | 6-Dec | 7-Dec | 8-Dec | 9-Dec | Avg |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| UAC | 159 | 188 | 164 | 165 | 151 | 190 | 167 | 136 | 166 | 175 | 196 | 170 | 181 | 155 | 144 | 123 | 227 | 183 | 188 | 202 | 170 | 171 |
| FMUA | 328 | 386 | 321 | 312 | 399 | 499 | 378 | 278 | 434 | 421 | 442 | 432 | 424 | 336 | 309 | 314 | 397 | 333 | 364 | 465 | 355 | 377 |
| Singles | 824 | 925 | 754 | 806 | 749 | 808 | 848 | 802 | 773 | 913 | 883 | 853 | 861 | 778 | 771 | 801 | 914 | 795 | 825 | 661 | 765 | 815 |
| Total | 1,311 | 1,499 | 1,239 | 1,283 | 1,299 | 1,497 | 1,393 | 1,216 | 1,373 | 1,509 | 1,521 | 1,455 | 1,466 | 1,269 | 1,224 | 1,238 | 1,538 | 1,311 | 1,377 | 1,328 | 1,290 | 1,364 |

CD-US-0035391



# Current Southwest Border Statistics (previous 21-day Averages)

21-day average of Southwest border apprehensions by CBP through Saturday, 12/9/17. The highest day in apprehensions was 12/05/2017 with 1,538 apprehensions.

| | 19-Nov | 20-Nov | 21-Nov | 22-Nov | 23-Nov | 24-Nov | 25-Nov | 26-Nov | 27-Nov | 28-Nov | 29-Nov | 30-Nov | 1-Dec | 2-Dec | 3-Dec | 4-Dec | 5-Dec | 6-Dec | 7-Dec | 8-Dec | 9-Dec | Avg |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| UAC | 159 | 188 | 164 | 165 | 151 | 190 | 167 | 138 | 168 | 175 | 196 | 170 | 181 | 155 | 144 | 123 | 227 | 183 | 188 | 202 | 170 | 171 |
| FMUA | 328 | 386 | 321 | 312 | 399 | 499 | 378 | 278 | 434 | 421 | 442 | 432 | 424 | 336 | 309 | 314 | 397 | 333 | 364 | 485 | 355 | 377 |
| Singles | 824 | 925 | 754 | 806 | 749 | 808 | 848 | 802 | 773 | 913 | 883 | 853 | 861 | 778 | 771 | 801 | 914 | 795 | 825 | 661 | 765 | 815 |
| Total | 1,311 | 1,499 | 1,239 | 1,283 | 1,299 | 1,497 | 1,393 | 1,216 | 1,373 | 1,509 | 1,521 | 1,455 | 1,466 | 1,269 | 1,224 | 1,238 | 1,538 | 1,311 | 1,377 | 1,328 | 1,290 | 1,364 |

11/3/2020

This is a 21 day average of border apprehensions by CBP up until Saturday, 12/9/17. Our highest day in apprehensions was 12/05 with 1,538 apprehensions by CBP.

CD-US-0035392

# Current CBP Capacity

| Location | Capacity | In Custody | % Capacity |
|----------|----------|-----------|-----------|
| USBP/EPT | 399 | 121 | 30% |
| USBP/RGV | 3613 | 874 | 24% |
| USBP/SDC | 1501 | 215 | 14% |
| USBP/TCA | 1799 | 142 | 8% |
| USBP/YUM | 205 | 127 | 62% |

| Location | Capacity | In Custody | % Capacity |
|----------|----------|-----------|-----------|
| RGV/CPC | 1750 | 659 | 38% |
| TCA/TCC | 313 | 88 | 28% |

| Location | Capacity | In Custody | % Capacity |
|----------|----------|-----------|-----------|
| BROWNSVILLE, TX (2301) | 137 | 8 | 6% |
| CALEXICO, CA (2503/2507) | 66 | 49 | 74% |
| EL PASO, TX (2402) | 226 | 251 | 111% |
| HIDALGO, TX (2305) | 54 | 12 | 22% |
| LAREDO, TX (2304) | 90 | 10 | 11% |
| NOGALES, AZ (2604) | 74 | 56 | 76% |
| SAN LUIS, AZ (2608) | 48 | 11 | 23% |
| SAN YSIDRO (2504) | 316 | 243 | 77% |

❖ USBP and OFO continue to experience temporary holding capacity challenges in California, Arizona, and South & West Texas due the large numbers of family units.

❖ For OFO, El Paso, San Ysidro, and Nogales Ports of Entry are seeing an increase in FMUA apprehensions.

❖ For USBP, both Rio Grande Valley and Yuma Sectors are seeing most of the FMUA apprehensions.

❖ CBP is working closely with ICE-ERO to manage the daily availability of space at the Family Residential Centers. As a temporary stop gap, USBP stations provide support to OFO for holding space of POE detainees.

CD-US-0035393

# Current CBP Capacity

| Location | Capacity | In Custody | % Capacity |
|----------|----------|------------|------------|
| USBP/EPT | 399 | 121 | 30% |
| USBP/RGV | 3613 | 874 | 24% |
| USBP/SDC | 1501 | 215 | 14% |
| USBP/TCA | 1799 | 142 | 8% |
| USBP/YUM | 205 | 127 | 62% |

| Location | Capacity | In Custody | % Capacity |
|----------|----------|------------|------------|
| RGV/CPC | 1750 | 659 | 38% |
| TCA/TCC | 313 | 88 | 28% |

| Location | Capacity | In Custody | % Capacity |
|----------|----------|------------|------------|
| BROWNSVILLE, TX (2301) | 137 | 8 | 6% |
| CALEXICO, CA (2503/2507) | 66 | 49 | 74% |
| EL PASO, TX (2402) | 226 | 251 | 111% |
| HIDALGO, TX (2305) | 54 | 12 | 22% |
| LAREDO, TX (2304) | 90 | 10 | 11% |
| NOGALES, AZ (2604) | 74 | 56 | 76% |
| SAN LUIS, AZ (2608) | 48 | 11 | 23% |
| SAN YSIDRO (2504) | 316 | 243 | 77% |

11/3/2020

❖ USBP and OFO continue to experience temporary holding capacity challenges in California, Arizona, and South & West Texas due the large numbers of family units.

❖ For OFO, El Paso, San Ysidro, and Nogales Ports of Entry are seeing an increase in FMUA apprehensions.

❖ For USBP, both Rio Grande Valley and Yuma Sectors are seeing most of the FMUA apprehensions.

❖ CBP is working closely with ICE-ERO to manage the daily availability of space at the Family Residential Centers. As a temporary stop gap, USBP stations provide support to OFO for holding space of POE detainees.

At CBP, we are working closely with ERO to triage the lack of holding space for FMUAs. Both locations Dilley and Karnes located in Texas are at full capacity levels; therefore, complicating the process on the front end, with processed detainees waiting for ERO pick up and transfer. If incline in apprehensions continue, ERO will need to start planning for a more permanent plan for extra holding capacity.

CD-US-0035394

# CBP Dispositions of Apprehended and Inadmissible Detainees





- Steady increase of credible fear cases, particularly at the Ports of Entry.
- ICE-ERO makes custody re-determinations based on a number of factors, including bedspace.
- When FMUA Expedited Removals (ER) exceed detention space, ICE directs CBP to convert ERs to Warrant of Arrest/Notice to Appear (WA/NTA).

CD-US-0035395

# CBP Dispositions of Apprehended and Inadmissible Detainees





- Steady increase of credible fear cases, particularly at the Ports of Entry.
- ICE-ERO makes custody re-determinations based on a number of factors, including bedspace.
- When FMUA Expedited Removals (ER) exceed detention space, ICE directs CBP to convert ERs to Warrant of Arrest/Notice to Appear (WA/NTA).

11/3/2020

These charts depict the disposition status of CBP apprehensions by USBP and OFO. Disposition of CBP detainees is determined by CBP; however, custody re-determination is conducted by ICE-ERO based on a number of factors which primarily involves availability of bed-space for holding detainees. As you can see in the charts the Notices to Appear are beginning to rise again as well as Credible Fear cases.

CD-US-0035396

# Current UAC HHS Capacity (HHS/ORR/ACF Report for 12/10/2017)

- ORR's overall funded capacity is 8,139 beds
- ACF is at **89%** capacity with 7,230 UACs in care.
- Open beds = 909.
- Estimated # of days until maximum capacity target is reached (85%) = **Now**.
- Estimated # of days until maximum operational capacity is reached (90%) = **1** day.



CD-US-0035397

# DHS Initiated Solutions- Policy Proposals

## FMUA & UACs

### • Parental Choice of Detention or Separation

- DHS OGC assess legality of allowing parents to choose between family separation under *Flores* and longer term detention with children.

### • Prosecution of Criminal Parents in FMUA

- Evaluate the potential for increased application.
- Recent pilot initiative in El Paso Sector separated FMUAs when the parent(s) had a criminal immigration violations on record. During the 4 month pilot period, 15.58% of FMUAs were separated.

CD-US-0035398

# DHS Initiated Solutions- Policy Proposals

## International

- **Detention and Removal (D&R) Foreign Assistance**
  - October 25 memo from Acting Secretary to Secretary Tillerson requesting support:
    - Determine US policy to support D&R operations.
    - Ensure State Dept. and DHS have authority to use funds for D&R assistance (or seek legislative authority as necessary).
    - Prioritize or seek funding for D&R assistance.

- **Safe Third Country Agreement with Mexico**
  - December 6 memo from DHS PLCY to State Department.
    - Requests C-175 authority for DHS to negotiate Safe Third Country Agreement between the U.S., Canada, and Mexico.

CD-US-0035399

# Legislative Proposals

## Reform

- ***Trafficking Victims Protection Reauthorization Act* (TVPRA) Reform**
  - Seek legislative clarification that the TVPRA supersedes the *Flores* settlement.

- ***Protection of Children Act***
  - Among other things, would amend the TVPRA to eliminate special repatriation requirements for UACs who are nationals or residents of a country contiguous to the United States.

## Operational

- **Border Investment**
  - Seek funding for the right operational mix of border wall, technology, people, infrastructure, and other tools to support enforcement requirements.

CD-US-0035400



**U.S. Customs and Border Protection**



## Cost to Build Top 12 Priorities

| Priority | Location | Miles* | | | | | Cost (B) |
|---|---|---|---|---|---|---|---|
| | | New Primary | Primary Pedestrian Replacement | Vehicle-to-Primary Pedestrian | Secondary/ Enforcement Zone | Total | |
| 1 | Rio Grande Valley, Texas | 61 | 0 | 0 | 0 | 61 | $ 1.3 |
| 2 | Rio Grande Valley, Texas | 46 | 0 | 0 | 0 | 46 | $ 1.1 |
| 3 | Rio Grande Valley, Texas | 19 | 1 | 0 | 0 | 20 | $ 0.5 |
| 4 | San Diego, California | 2 | 0 | 0 | 17 | 19 | $ 0.4 |
| 5 | El Centro, California | 0 | 1 | 0 | 2 | 3 | $ 0.05 |
| 6 | Yuma, Arizona | 1 | 0 | 0 | 2 | 3 | $ 0.07 |
| 7 | Laredo, Texas | 55 | 0 | 0 | 0 | 55 | $ 1.3 |
| 8 | El Paso, Texas | 0 | 0 | 6 | 3 | 9 | $ 0.3 |
| 9 | El Centro, California | 0 | 10 | 0 | 12 | 22 | $ 0.4 |
| 10 | Yuma, Arizona | 0.5 | 28 | 13 | 57 | 99 | $ 1.7 |
| 11 | San Diego, California | 0.1 | 3 | 0 | 3 | 6 | $ 0.2 |
| 12 | Laredo, Texas | 75 | 0 | 0 | 0 | 75 | $ 1.8 |
| **Total** | | **260** | **44** | **0** | **96** | **418** | **$ 9.3** |

After completing the Top 12 Priorities, there will be 914 mi of primary barrier across the SW border (653 mi of pedestrian wall & 261 mi of vehicle barrier). Of the 418 miles, 349 miles will deploy a *wall system*, including wall, a 150' enforcement zone, Fiber Optic Distributed Sensors, lighting, enforcement cameras, gates, access roads, patrol roads, and maintenance roads.

CD-US-0035401

# ICE Enforcement Statistics

- ERO Operations FY 2017
  - 143,470 arrests
  - 110,568 arrests since January (42% increase over FY 2016)
  - 226,119 total removals
  - 61,094 interior removals since January (37% increase over FY 2016)

- HSI Operations FY 2017
  - 32,958 criminal arrests
  - 4,818 gang arrests (796 MS-13 arrests)
  - 2,370 pounds of Fentanyl seized

CD-US-0035402

# Sanctuary Jurisdictions

- Increased risk to public safety
- More at-large arrests and ICE presence in the community
- Creates a "pull factor" for illegal immigration
- Provides a safe haven for criminals
- Results in preventable crimes

CD-US-0035403

# Detainer Litigation

- Some jurisdictions are reluctant to comply with detainers due to litigation risks.

- ICE, in coordination with DOJ, is providing support to state and local partners when they face legal challenges for lawfully cooperating with ICE detainers.

- ICE is working with willing sheriffs to accept detainers by paying for the custody of aliens held pursuant to detainers.

- Congress must pass legislation that clarifies ICE's detainer authority and the ability of state and local law enforcement to fully honor ICE detainers.

CD-US-0035404

# Policy Solutions

- ICE ended "catch and release" policies, which resulted in the release of thousands of aliens—many of whom are convicted criminals—back onto the streets.

- ICE is considering detaining parents apart from their children during removal proceedings, which will ease operational challenges for ICE in detaining minors with their parents. This change would deter families from illegally entering the United States, as well as alleviate operational issues stemming from limited family bed space.

- ICE recommends vetting the potential sponsors of UACs, which will include criminal background and immigration status checks, and taking appropriate enforcement action as needed.

- Terminate the UAC designation after unaccompanied alien children are placed in the care of a parent or sponsor by HHS.

CD-US-0035405

# Legislative Solutions

- Make detention mandatory for convicted criminals.
  - Some judicial decisions, such as *Zadvydas v. Davis,* restrict ICE's authority to maintain custody of criminal aliens pending their removal.
    - In Fiscal Year 2017, 1,666 criminal illegal aliens were released from ICE custody because of this 2001 Supreme Court decision.
- Amend the TVPRA to treat all UACs the same, regardless of their country of origin (Protection of Children Act).
  - Allowing non-contiguous UACs to depart the US under Voluntary Return would eliminate lengthy EOIR hearing. Expansion of expedited removal to include more classes of inadmissibility.
- Amend the definition of "special immigrant juvenile" to require that the applicant prove reunification with either parent is not viable due to abuse, neglect, or abandonment and that the applicant is a victim of trafficking.

CD-US-0035406

- USCIS Backlogs grew gradually past 10 years. Are now higher than most recent high point in Dec 2007 (all numbers shown in equivalent units).
- Reasons for current backlog include:
  - Increase in overall volume of petitions/applications (up 27% from FY 2012);
  - Growing complexity of work, including new forms, new statutory & policy decisions, increased security checks.



CD-US-0035407



As of the end of September 2017 USCIS has a net backlog of **2.33 million** forms, accounting for approximately 41% of its total pending inventory of **5.59 million**.

# USCIS ASYLUM BACKLOG

## Overview

- USCIS experienced significant increase in 2 humanitarian programs over past few years: Affirmative Asylum Program & Credible Fear (CF) Program.

- USCIS received 48,052 CF cases in FY15, 94,048 in FY16, and 79,798 in FY17. Though receipts trended downward significantly early in Feb, 2017, receipts are again on the rise.

- Affirmative Asylum workload also increased significantly with 83,197 in FY15, 114,965 in FY16, and 141,638 In FY17.

- Affirmative Asylum backlog also increased during this time frame with 108,725 in FY15,194,986 in FY16, and 289,835 in FY17.



Credible Fear and Affirmative Asylum Receipts and Pending Caseload

FY 17 Asylum:  141,638

FY 17 Credible Fear:  79,798

FY 17 Asylum Pending: 289,935

# Credible Fear/Asylum Solutions

## Credible Fear and Asylum – Initiated Solutions

Credible Fear
- Revised CF training & trained all staff to apply the full asylum credibility standard to the CF screening process.
- Placed Asylum Officers at additional ICE detention facilities to conduct in-person interviews.
- Began detailing FDNS Immigration Officers to detention facilities to improve CF fraud detection/deterrence.

Asylum
- Preparing to return to Asylum Reform interview scheduling (most recent filings interviewed first) in FY 2018 Q2.
- Approved establishment of Asylum Centralized Vetting/Screening Center in Atlanta, with approval of additional 250+ Asylum & FDNS staff positions to review &screen asylum & credible fear cases for fraud & national security concerns.
- Approved opening additional Asylum Division facilities &an additional 190 Asylum Division personnel to conduct CF screenings and affirmative asylum interviews. Asylum Division staffing more than doubled since FY13.
- Continue to detail 100 Refugee Affairs Division personnel to Asylum Division to assist with Asylum Division case processing.

## Credible Fear and Asylum – Proposed Reforms

Credible Fear
- Support revision to CF standard contained in HR 391 Asylum Reform and Border Protection Act.
- Given continued high-rate of positive CF findings and EOIR overturn rate of approximately 30% for negative CF findings, propose ending CF screening process & detaining fear claimants from the Expedited Removal process for duration of consideration of their protection claims in proceedings. Detention &prompt adjudication are well-established deterrents to abuse. Would allow USCIS to apply all Asylum Division resources to processing Affirmative Asylum cases, quickly work down growing Affirmative Asylum backlog &deter continued abuse of that program.

Asylum
- Repeal USCIS initial jurisdiction over I-589s filed by UACs apprehended at border and placed into removal proceedings.
- *Close Loophole for Frivolous/Baseless Asylum Filings.* USCIS proposes legislative changes to INA , making anyone found to have filed a frivolous asylum application ineligible to receive any future immigration benefits under the INA. These changes would go further than those outlined in SECURE Act proposal.
- Support legislation restoring USCIS authority to terminate asylum approvals in 9th Circuit (*Nijjar v. Holder*)
- Support legislation increasing statute of limitations for commission of immigration/asylum fraud and strengthening sentencing guidelines for those found guilty of committing such fraud.

CD-US-0035410

# USCIS ENHANCED VETTING

USCIS enhanced vetting of benefits applicants:

1. Expansion & enhancements of interviews:
   - In CY17, USCIS began interviewing employment-based applicants for adjustment of status, K-1 fiancé applicants, and follow-to-join beneficiaries of refugees and asylees
   - USCIS partners with CBP to provide best-in-class interview & credibility training for all field interview staff
2. USCIS continues to expand the use of social media & enhanced classified vetting; current emphasis on refugee & asylum applicants
3. USCIS continues to develop and implement Continous Immigration Vetting (CIV) beyond naturalization applicants
4. Refugees now subject to heightened screening due to Executive Order that resumed the USRAP, which required an additional 90-day review

In addition, USCIS FDNS expanded its staffing footprint for Asylum Pre-screening: 112 total FDNS Officers

- FDNS Field Offices: 163 FDNS Officers to expand targeted site visits in support of BAHA, combat marriage fraud, & address unobserved fraud
- FDNS Headquarters: 40 FDNS Officers to conduct social media vetting and enhanced intelligence screening
- DHS Joint Task Forces & ICE fusion centers: 12 FDNS Officers
- FDNS Headquarters: 13 FDNS positions to enhance FDNS training & perform quality control functions

CD-US-0035411

# USCIS POLICY-EMPLOYMENT BASED REFORMS

## E-Verify

- Aug 2017, more than 740,000 employers enrolled in E-Verify - approximately 10% of 7 million US employers.
- Options for expanding E-Verify participation: 1) incentivize employer participation by attaching E-Verify to receipt of certain discretionary immigration/visa benefits;
- 2) expand universe of federal contractors required to use E-Verify;
- 3) ensure federal agencies are fully participating in E-Verify;
- 4) require employers who violate the INA employment-related provisions to participate in E-Verify; 5) encouraging more States to require E-Verify use; 6) requiring employers who apply for federal grants to participate in E-Verify; and 7) further increasing E-Verify public awareness.
- USCIS has draft language for the Administration to present to Congress. This bill would, among other things, require all employers to use system within 1 year of enactment, increase penalties, & allow employers to verify all employees, not just new hires.

## Employment Based Reforms

- Created new email tip lines in April to allow public to report fraud/abuse in H-1B & H-2B visa programs.
- Working on regulations to root out fraud &abuse in the B, E, H-1B and L visa programs as well as Optional Practical Training program run by ICE.
- New policy memorandum to guide adjudicators on certain employment based benefits.
- USCIS established a Buy American and Hire American webpage that provides public with information on all USCIS actions related to the EO. Webpage includes data sets on non-immigrant benefits & employment authorization documents.
- Site Visits: FDNS is doing more targeted site visits in H-1B visa program.
- In coming weeks, USCIS plans to launch a targeted L site visit program to focus on the L-1B (Specialized Knowledge Beneficiary) who will be primarily stationed at third party worksites. The primary purpose is to ensure that anti-job shop provision of L-1 Visa Reform Act of 2004 is fully enforced, and ensure employers are not using L-1B program as an end-run around H-1B program requirements.

CD-US-0035412

# ABUSE OF PAROLE AUTHORITY

- On January 25, 2017, President Trump issued Executive Order (E.O.) 13767, *Border Security and Immigration Enforcement Improvements,* prescribing improvements to border security & immigration enforcement.  Section 11(d) of the E.O. requires the DHS Secretary to "take appropriate action to ensure that parole authority under section 212(d)(5) of the INA (8 U.S.C. 1182(d)(5)) is exercised only on a case-by-case basis in accordance with the plain language of the statute, and in all circumstances only when an individual demonstrates urgent humanitarian reasons or a significant public benefit derived from such parole."

- Since then, USCIS has terminated the Central American Minors Parole Program and delayed the effective date and initiated rescission of the final rule providing for International Entrepreneur Parole.  The remaining programs proposed for termination include:

    - Certain Iranian Nationals who are Former Members of the Mujahedin-e Khalq;
    - Haitian Family Reunification Parole;
    - Cuban Family Reunification Parole;
    - Cuban Family-Based Parole;
    - Parole in the Commonwealth of the Northern Mariana Islands;
    - Parole in Place for Certain Military Family Members; and
    - Filipino World War II Veterans Parole.

- A separate decision memo for the Secretary is now forthcoming on termination of all parole programs.  USCIS would have to issue a notice for each of these, with the exception of the MEK parole.  With concurrence of the Secretary, we hope to begin these terminations in Spring 2018.

CD-US-0035413

## Ending Chain Migration and Creating a Merit Based System

**Problem**:
- Each year, U.S. grants about 1 million green cards and most of those are based on family ties.
- Only 1 out of 15 immigrants to the U.S. are admitted based on their skills.
- The diversity visa (maintained by DoS), which allows people to randomly enter a lottery and enter the U.S., is susceptible to fraud, is costly, and labor intensive to administer.

**Legislative Solution: Establish a merit-based immigration system that protects U.S. workers & taxpayers, and which promotes financial success & assimilation for newcomers.**
Establish a new, points-based system for awarding Green Cards based on factors that allow individuals to successfully assimilate & support themselves financially.
- Will allow USCIS to focus on evaluating applicants' potential contributions to U.S. economy
- End extended-family chain migration by limiting family-based green cards to spouses & minor children and replace it with merit-based system that prioritizes skills over family connections.
  - Current system creates chain of unskilled migrant that lowers wages & reduces employment opportunities for U.S. workers.
- Eliminate Diversity Visa Lottery.
- Establish annual limits on number of refugees.

CD-US-0035414

Exhibit 6

# Graphic Representation - USBP Prosecution Processing Flow Chart



Exhibit 7

**From:** HUDSON, RICHARD M
**Sent:** Thursday, May 10, 2018 8:49 PM
**To:** HASTINGS, BRIAN S
**Subject:** RE: Follow-up on PCC Items

Thanks. Just got home.

I don't like the MCAT speaking for or with our stats. I want to know their methodology. They need to explain it. We will look like idiots if their info is presented. We had 21K straight up UAC apps since October. We had 49K people associated with FMUAS. The problem is they are likely using the 9K FMUAS state number, which is the number of FMUAS groups. We have the breakdown of actually bodies within that 9K number. It is in your packet. I think they are assuming they know what reports to run and what to ask for.

Let me put the kids to bed and I will respond to Valerie.

VR

Rich

Richard M. Hudson
Deputy Chief, Operational Programs
US Border Patrol Headquarters
Law Enforcement Operations Directorate
202 344 1956 Office
202 644 2232 Cellular
RICHARD.M.HUDSON@CBP.DHS.GOV

**From:** HASTINGS, BRIAN S
**Sent:** Thursday, May 10, 2018 8:21:53 PM
**To:** HUDSON, RICHARD M
**Subject:** RE: Follow-up on PCC Items

GOOD JOB Today!
Huge help and greatly appreciate the work you and your folks are doing.

**From:** HUDSON, RICHARD M
**Sent:** Thursday, May 10, 2018 6:27 PM
**To:** BOYD, VALERIE S <valerie.s.boyd@cbp.dhs.gov>
**Cc:** DIKMAN, SABRI Y <SABRI.Y.DIKMAN@CBP.DHS.GOV>; ROGGOW, MATTHEW J <MATTHEW.J.ROGGOW@CBP.DHS.GOV>; HASTINGS, BRIAN S <BRIAN.S.HASTINGS@CBP.DHS.GOV>; PETERLIN, MEGHANN K <meghann.k.peterlin@cbp.dhs.gov>
**Subject:** RE: Follow-up on PCC Items

Yes, Ma'am. Chief Hastings and I are both attending. We believe our chart answers the numbers questions and are working on the remainder of the responses – only those specific to USBP.

Specific the broader questions:

1. How do we determine whether an individual is amenable to prosecution? All adults are amenable to prosecution.
2. What percent of single adults and FMUA adults do we expect to be judged amenable to prosecution? All adults are amenable to prosecution – 100%. We anticipate approximately 5% of those arrested will not be referred for prosecution based on humanitarian reasons. If a prosecution is declined or a person's case is not referred for prosecution due to humanitarian reasons, USBP will process the individuals through the normal immigration process (expedited removal, re-instatement of a previous order of removal or 240 proceedings, whatever is appropriate).
3. What role will we need to play in reunification after prosecution but before deportation? ICE ERO is responsible to effect the removal of those persons who have been ordered removed administratively (expedited removal/re-instatement of a previous order of removal) or by an Immigration Judge. CBP interdicts and arrests and ERO is responsible for the "back end" of the immigration process (removal).

VR

Rich

Richard M. Hudson
Deputy Chief
Operational Programs
Law Enforcement Operations Directorate
U.S. Border Patrol Headquarters
(202) 344-1956 office
(202) 644-2232 cellular

**From:** BOYD, VALERIE S
**Sent:** Thursday, May 10, 2018 5:51 PM
**To:** HUDSON, RICHARD M <RICHARD.M.HUDSON@CBP.DHS.GOV>
**Cc:** DIKMAN, SABRI Y <SABRI.Y.DIKMAN@CBP.DHS.GOV>; ROGGOW, MATTHEW J <MATTHEW.J.ROGGOW@CBP.DHS.GOV>; HASTINGS, BRIAN S <BRIAN.S.HASTINGS@CBP.DHS.GOV>; PETERLIN, MEGHANN K <meghann.k.peterlin@cbp.dhs.gov>

CD-US-0038003

**Subject:** RE: Follow-up on PCC Items

Thank you, Rich! I'll share your updated chart with DHS PLCY. Is someone from your team attending the 11am OMB meeting tomorrow? I saw OMB's discussion outline today, too, and realize that haven't seen answers to the highlighted questions below.

Summarized, they are:
1. How do we determine whether an individual is amenable to prosecution?
2. What percent of single adults and FMUA adults do we expect to be judged amenable to prosecution?
3. What role will we need to play in reunification after prosecution but before deportation?

Discussion outline
1. For "zero tolerance" policy implementation
   a. What additional referrals does CBP project will be made, by sector, to DOJ?
   i. What determines whether an individual is "amenable to prosecution" per the memorandum signed by S1? What happens to individuals "not amenable" to prosecution? Any difference between Single and Family "not amenable" cases? [USBP, OCC?]
   ii. When will the various increased referrals be put into effect – projections by CBP sector/AUSA area
      1. Single Adults – quantities projected by location, by week
         a. Projected CBP apprehensions and percent judged "amenable" to prosecution
         b. Projected referral impact on USMS transportation and detention, pre- and post-hearing
         c. Projected referral impact on US Attorneys
         d. Projected impact on ICE transportation and removals – plus estimates of country of origin to identify ICE costs to remove
      2. Families – quantities projected by location, by week
         a. Projected CBP apprehensions and percent judged "amenable" to prosecution
         b. Projected referral impact on USMS transportation and detention, pre- and post-hearing
   i. What detention impact is there for adults separated from UAC after their criminal case is complete? What process, if any, is there for reunification with UAC before the adult is returned to their country of origin? Will this require additional detention capacity at USMS or at ICE?
         c. Projected referral impact on US Attorneys
         d. Projected number of new UAC to refer to HHS, including anticipated average length of stay in HHS care
   i. If an adult separated from a UAC is convicted of criminal charges, what happens to the UAC in HHS custody? What process, if any, is there for reunification before the adult is returned to their country of origin? Will this require additional detention capacity at HHS or ICE?
         e. Projected impact on ICE – quantities by location, by week
   i. UAC transport – for separated UAC, for reunified UAC
   ii. Adult transportation and removals for adults convicted of criminal charges – plus estimates of country of origin to identify ICE costs to remove
      3. Any other additional caseload? OFO impact at POEs?
         a. If there is a surge at undocumented aliens at POEs, will they be queued/metered in Canada or Mexico until OFO has capacity to process them?
   i. What is the estimated impact on POE processing times? Will this generate unbudgeted OT or other costs?
      2. Regulations to replace Flores settlement
         a. Any ICE detention or TRP impact in FY18?
      3. ICE detention baseline
         a. What additional detention capacity requirements does ICE project for FY18, based on current arrest/apprehension levels
         a. What additional transportation and removal work does ICE project for FY18, based on current arrest/apprehension levels
         b. What costs for above and what reprogramming sources

**From:** HUDSON, RICHARD M
**Sent:** Thursday, May 10, 2018 5:35 PM
**To:** BOYD, VALERIE S <valerie.s.boyd@cbp.dhs.gov>
**Cc:** DIKMAN, SABRI Y <SABRI.Y.DIKMAN@CBP.DHS.GOV>; ROGGOW, MATTHEW J <MATTHEW.J.ROGGOW@CBP.DHS.GOV>; HASTINGS, BRIAN S <BRIAN.S.HASTINGS@CBP.DHS.GOV>
**Subject:** RE: Follow-up on PCC Items

Ms. Boyd,

Please see an updated version of the chart previously provided. I added a column based on the questions received and forwarded by AC Ladowicz today in preparation for the meeting tomorrow at the NEOB. Specifically, we were asked to provide estimates by week. I simply took the number of anticipated apprehensions for the remainder of the year and divided it by the number of prosecution weeks (20) remaining until September 30, 2018. (also noted on the sheet)

If you have any questions, please let me know.

VR
Rich

Richard M. Hudson
Deputy Chief
Operational Programs
Law Enforcement Operations Directorate
U.S. Border Patrol Headquarters
(202) 344-1956 office
(202) 644-2232 cellular

CD-US-0038004

**From:** HASTINGS, BRIAN S
**Sent:** Thursday, May 10, 2018 11:55 AM
**To:** BOYD, VALERIE S <valerie.s.boyd@cbp.dhs.gov>
**Cc:** DIKMAN, SABRI Y <SABRI.Y.DIKMAN@CBP.DHS.GOV>; HUDSON, RICHARD M <RICHARD.M.HUDSON@CBP.DHS.GOV>; ROGGOW, MATTHEW J <MATTHEW.J.ROGGOW@CBP.DHS.GOV>
**Subject:** RE: Follow-up on PCC Items

Valerie,

We may at some point we may want to pass on the rough order magnitude number of adults that would be amenable to prosecution based upon the last 7 months of flow to help the partners plan as to what personnel, detention space (HHS, Marshalls, ERO) will be needed to get to 100% prosecutions. I know MCAT is working this as well. I provided this (unofficially to Drew) a while back, but we need to provide officially to plan against.

It is important to note that these numbers are not perfect because we do not control flow, but they are based upon historic trends. Additionally, as we have said many times, the numbers will drop after the work gets relayed via social media.

V/r,

Brian

**From:** BOYD, VALERIE S
**Sent:** Thursday, May 10, 2018 10:22 AM
**To:** McCament, James <james.mccament@hq.dhs.gov>; Petyo, Briana <briana.petyo@hq.dhs.gov>; Scudder, Ryan <ryan.scudder@hq.dhs.gov>
**Cc:** PETERLIN, MEGHANN K <meghann.k.peterlin@cbp.dhs.gov>; HASTINGS, BRIAN S <BRIAN.S.HASTINGS@CBP.DHS.GOV>; FLANAGAN, PATRICK S <Patrick.Flanagan@dhs.gov>
**Subject:** Follow-up on PCC Items

James,

Per our discussion late yesterday, we wanted to coordinate on some outstanding taskings from recent PCC and sub-PCC meetings. We'd defer to DHS to coordinate and provide the responses to DPC, NSC, and OMB, but we want to make it as easy as possible.

1. **OMB is requesting resource implications of increased referrals at the border, under the zero tolerance initiative, for a Friday 11am meeting**. They are specifically interested in the impact on ICE detention space, CBP border requirements, and HHS and DOJ impacts.
   - Drew Cramer requested the attached Border Patrol implementation plan, but we don't believe it provides what OMB needs. We do not envision new resource requirements for the Border Patrol. Chief Hastings has briefed Drew Cramer verbally and extensively about the attached plan, but we have not provided it electronically.
   - Regarding potential impacts of increased migration flow at the Ports of Entry, we have asked the Office of Field Operations to provide planning information by 2pm today, and we'll provide it to you. We do not expect OFO to request additional resources, either.
   - At the PCC, someone floated the idea of incorporating ICE detention space and other resource needs into the attached Border Patrol implementation plan. That may not make the most sense, because CBP does not anticipate resource impacts from this plan, so you might prefer to provide ICE detention bed needs separately.

2. **In an April 30 sub-PCC Summary of Conclusions, NSC tasked CBP with providing our prosecution referral statistics on a weekly basis.**
   - We have the statistics to provide (last week's attached as an example), but should we send these to someone on your team to provide to Justin Bristow on a weekly basis?

3. **DPC/NSC requested metrics on National Guard deployment effectiveness.**
   - Chief Hastings' team is preparing the attached slide for the Secretary, at Chad Wolf's request, on Mondays and Thursdays. Would you like us to send it to your team, to forward to Tomasulo, Zadrozny, and Bristow?

Is there someone on your team who should coordinate component responses to PCC taskings and provide them to the White House?
Thanks!
Valerie
**Valerie Smith Boyd**
Deputy Chief of Staff – Policy
Office of the Commissioner
U.S. Customs and Border Protection
(202) 325-1679

CD-US-0038005

Exhibit 8

**From:** BLANCHARD-JR, KENNETH W
**Sent:** Thursday, May 10, 2018 3:50 PM
**To:** TOOTHMAN, DAVID M; HULL, AARON A; CLEM, CHRIS T
**Subject:** RE: Yuma FAMU Adult Prosecutions

In the teleconference today, the Ninth Circuit sectors all mentioned this happening. If the AUSA/CRIMCHIEF is turning down these cases, and just as importantly, if they are being instructed to place these limitations, there will be repercussions. Chief Hastings stated that USBP HQ has been ensured by the AG's Office that if USA/AUSAs are doing this, they will find themselves working in another district, away from the Southwest Border.

This is not happening now in our Districts, and we don't anticipate this type of thing either, barring any injunctions.

**Kenny Blanchard**
**Division Chief, LEOP**
**United States Border Patrol**
**El Paso Sector**
**Office: 915.834.8308**
**Cell: 575.545.2891**

**From:** TOOTHMAN, DAVID M
**Sent:** Thursday, May 10, 2018 1:43 PM
**To:** HULL, AARON A <AARON.A.HULL@cbp.dhs.gov>; CLEM, CHRIS T <CHRIS.T.CLEM@CBP.DHS.GOV>
**Cc:** BLANCHARD-JR, KENNETH W <KENNETH.W.BLANCHARD-JR@CBP.DHS.GOV>
**Subject:** FW: Yuma FAMU Adult Prosecutions

We are good sir.


Dave

Office: (915) 834-8306
Cell: (915) 504-5968
Fax: (915) 782-4333
HSDN (SIPR): David.toothman@dhs.sgov.gov
Address: 8901 Montana Ave, El Paso, TX 79925

**From:** GARDEA, JOSE G
**Sent:** Thursday, May 10, 2018 1:42:00 PM
**To:** TOOTHMAN, DAVID M
**Cc:** BLANCHARD-JR, KENNETH W
**Subject:** RE: Yuma FAMU Adult Prosecutions

That is correct, no issues with our AUSA and/or ERO partners. All cases are being accepted. Also was notified that 6 out of 35 additional AUSAs going to SWB will be going to NM.

**From:** TOOTHMAN, DAVID M
**Sent:** Thursday, May 10, 2018 1:39 PM
**To:** GARDEA, JOSE G <JOSE.G.GARDEA@CBP.DHS.GOV>
**Cc:** BLANCHARD-JR, KENNETH W <KENNETH.W.BLANCHARD-JR@CBP.DHS.GOV>
**Subject:** FW: Yuma FAMU Adult Prosecutions

Joe,

Pretty sure we have not seen this, but please confirm.


Dave

Office: (915) 834-8306
Cell: (915) 504-5968
Fax: (915) 782-4333
HSDN (SIPR): David.toothman@dhs.sgov.gov
Address: 8901 Montana Ave, El Paso, TX 79925

**From:** HULL, AARON A
**Sent:** Thursday, May 10, 2018 1:35:15 PM
**To:** BLANCHARD-JR, KENNETH W; TOOTHMAN, DAVID M; REYES, RAFAEL
**Cc:** CLEM, CHRIS T
**Subject:** FW: Yuma FAMU Adult Prosecutions

Please advise. Thanks.

CD-US-0112505

**From:** Joyce, William P
**Sent:** Thursday, May 10, 2018 1:20:56 PM
**To:** BOATRIGHT, ROBERT L; HULL, AARON A
**Subject:** FW: Yuma FAMU Adult Prosecutions

Apparently, word is spreading. Is either Big Bend or El Paso Sector experiencing these issues?

As a follow up from yesterday.

A few issues have arisen.

Yuma Sector has presented FAMU adults for prosecution but all have been declined. However, it appears after the declination that the adults are not being reunited with the children and they have not cancelled the placement requests for the children in the ORR portal.

According to Yuma Sector, the AUSAs declined these cases because they had no guidance. Apparently, the AUSAs have received guidance and they won't prosecute on any FAMU adults if there is only one adult parent. If there are two adults with the FAMU they will prosecute one of the adults. USAO has indicated they will not prosecute if it will cause a separation of the child and adult, in other words the breaking up of the FAMU. Tucson Sector has indicated that they have not heard of this but are checking with USAO in that region.

USAO in Yuma indicated to ERO Yuma that they have an emergency conference call today regarding this endeavor.

More to follow as it is received.

CD-US-0112506

Exhibit 9

# YUM Zero Tolerance Initiative LIMFACs

- **Yuma Federal Court**
  - "Hard Cap" of 30 cases per day at the order of Chief Judge Raner Collins, District of AZ
  - Judge Collins considered all entities involved to determine capacity

    - Magistrate Judge
      - Yuma County has one Magistrate Judge for current federal caseload
    - Interpreters
      - Specialized demand for varying languages & dialects
    - County Clerk
      - Overburdened with scheduling due to language barriers, workload etc.

- **ERO**
  - Increased demand to *quickly* clear out subjects from YUM processing areas
  - Tender age for USBP is 4 years of age, ERO is 10
    - ERO will see an increase in children from 5-10 years of age
    - Local ERO has been advised that once a child has been separated YUM will not try to reunite if prosecution is denied for parent

- **U.S. Marshalls**
  - Shackling Rule increases manpower requirements

- **YUM**
  - Currently exceeding sector capacity of 300, by 101 subjects
    - Strain on personnel due to meal preparation, and feeding
    - Creation of additional UACs has created an equal or greater amount of cases that need prioritization
  - Casework limited by 12 workstations @ YUS (currently adding 4-6 additional)
  - Increased Time in Custody if WEL utilized
  - Additional personnel assigned to Prosecutions and the Processing, Screening and Transport Unit

- **9th Circuit**
  - TB screening for all subjects attending court (CA only)
  - 24 hour due process timeline
  - Security Shackling Rule – 1 officer per subject, plus one officer.  (Ex. 10 subjects, 11 officers)

Exhibit 10

**From:** MacWilliams, Phil (CIV) <Phil.MacWilliams@usdoj.gov>
**Sent:** Wednesday, March 30, 2022 8:43 AM
**To:** McMillan, Lucy S. <Lucy.McMillan@arnoldporter.com>
**Cc:** McConnon, Jim (CIV) <Jim.McConnon@usdoj.gov>; Nazarov, Ari (CIV) <Ari.Nazarov@usdoj.gov>; Garman, Ashley R. (CIV) <Ashley.R.Garman@usdoj.gov>; Majumdar, Irina M (CIV) <Irina.M.Majumdar@usdoj.gov>; Parker, Walter E. (CIV) <Walter.E.Parker@usdoj.gov>; Reiter, Diana <Diana.Reiter@arnoldporter.com>; Walsh, Erik <Erik.Walsh@arnoldporter.com>; Fidler, Harry <Harry.Fidler@arnoldporter.com>; zzz.External.trina@immigrationlitigation.org <trina@immigrationlitigation.org>; zzz.External.jfeinberg@krlawphila.com <jfeinberg@krlawphila.com>; zzz.External.MFleming@heartlandalliance.org <MFleming@heartlandalliance.org>; zzz.External.KGoettel@immcouncil.org <KGoettel@immcouncil.org>; Schaeffer, Kati <Kaitlyn.Schaeffer@arnoldporter.com>
**Subject:** RE: C.M. Plaintiff-Specific Documents

External E-mail

Lucy

These documents were located in CBP's E3 database. For V.C. and C.M., prosecution disposition forms (which you attached for the other plaintiffs) were not found in E3.

Phil

Phil MacWilliams
Trial Attorney
U.S. Department of Justice
Civil Division, Torts Branch, FTCA Office
P: 202-616-4285
F: 202-616-5200
phil.macwilliams@usdoj.gov

---

**From:** McMillan, Lucy S. <Lucy.McMillan@arnoldporter.com>
**Sent:** Tuesday, March 29, 2022 3:34 PM
**To:** MacWilliams, Phil (CIV) <Phil.MacWilliams@usdoj.gov>
**Cc:** McConnon, Jim (CIV) <Jim.McConnon@usdoj.gov>; Nazarov, Ari (CIV) <Ari.Nazarov@usdoj.gov>; Garman, Ashley R. (CIV) <Ashley.R.Garman@usdoj.gov>; Majumdar, Irina M (CIV) <Irina.M.Majumdar@usdoj.gov>; Parker, Walter E. (CIV) <Walter.E.Parker@usdoj.gov>; Reiter, Diana <Diana.Reiter@arnoldporter.com>; Walsh, Erik <Erik.Walsh@arnoldporter.com>; Fidler, Harry <Harry.Fidler@arnoldporter.com>; trina@immigrationlitigation.org; jfeinberg@krlawphila.com; MFleming@heartlandalliance.org; KGoettel@immcouncil.org; Schaeffer, Kati <Kaitlyn.Schaeffer@arnoldporter.com>
**Subject:** [EXTERNAL] C.M. Plaintiff-Specific Documents

Phil,

The government produced Subject Activity Logs from CBP for each of our clients in the C.M. matter. The Subject Activity Logs for L.G., M.R. and O.A. include the attached prosecution disposition forms, but the logs for V.C. and C.M. do not. Can you please either produce these documents for V.C. and C.M. or confirm that they do not exist?

Regards,

Lucy

_____
Lucy McMillan
Chief Pro Bono Counsel

Arnold & Porter
250 West 55th Street | New York, New York 10019-9710
T: +1 212.836.7379
Lucy.McMillan@arnoldporter.com | www.arnoldporter.com
Pronouns: she/her/hers

Exhibit 11

| | |
|---|---|
| **From:** | Albence, Matthew [Matthew.Albence@ice.dhs.gov] |
| **Sent:** | 5/10/2018 10:05:11 PM |
| **To:** | Homan, Thomas [Thomas.Homan@ice.dhs.gov] |
| **CC:** | Blank, Thomas [Thomas.Blank@ice.dhs.gov]; Asher, Nathalie R [Nathalie.R.Asher@ice.dhs.gov]; Flores, Marisa A [Marisa.A.Flores@ice.dhs.gov] |
| **Subject:** | Phoenix Prosecution Paper |
| **Attachments:** | ES - 1325 Prosecutions and DHS Coordination 5-10-18(MA).docx |

Tom:

Per this morning's discussion, attached is a paper that details the issues in PHX with the zero tolerance policy. As this is a new policy, the situation is fluid so we aren't able to fully assess the overall operational impact.  Bottom line, our concern is that the adults that were separated from their children due to the prosecution will be returned to the USBP immediately after the guilty plea is accepted by the Court, as the local District Court generally only imposes time-served. This will result in a situation in which the parents are back in the exact same facility as their children—possibly in a matter of hours—who have yet to be placed into ORR custody.

The asks are:

1)      CBP:  They need to remain flexible and work with the FOD to prevent this from happening. This may mean transporting the UACs to an ORR facility themselves, at an accelerated pace, bringing the adults to ERO after the prosecution is completed, as opposed to back to the USBP station, or any other number of new processes that may need to be established.  The traditional BP approach of washing their hands of the aliens once they are done with them is not going to work in this situation.

2)      DOJ:  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

3)      DHS:  Probably a good idea just to give them visibility that this issue exists, and confirm that the expectation is that we are NOT to reunite the families and release (either pre or post FRC).

Thanks.

Matt



## Executive Summary

Purpose

To provide an overview of operational issues within the ERO Phoenix area of responsibility that are anticipated to arise due to the increased prosecution requirements impose by the U.S. Department of Justice.

Background

In accordance with the new Attorney General guidelines, U.S. Border Patrol (USBP) in Arizona will start presenting for criminal prosecution any adult caught illegally entering the United States between the ports of entry. Family units will be separated and the now unaccompanied alien children (UAC) processed for transfer to the Office of Refugee Resettlement (ORR) with the parent(s) being held for prosecution.

Arizona District Courts have a streamlined approach to border crimes – aliens are arrested by the USBP, (family separation takes place, if applicable), they are taken to court, and the vast majority are sentenced to time served and returned to a USBP station. At that point, Mexican nationals who do not claim credible fear are removed from the U.S. and the remainder of the aliens are turned over to ERO for detention and removal proceedings.

Due to the minimal sentence imposed by the District Courts, the parents who were prosecuted will be returned to the same USBP station where their children will likely still be undergoing processing/awaiting transfer to ORR.

Discussion

As noted in the April 24, 2018 memorandum from U.S.Department of Homenald Security General Counsel Mitnick to Secretary Nielsen entitled, *Criminal Prosecution of Aliens Who Entered Unlawfully: Legal Guidance on Potential Separation of Family Members*, "it is legally permissible to adopt a policy that all adults who appear to have violated 8 U.S.C. § 1325 be referred to DOJ for prosecution. It is also permissible for minors to be separated from accompanying adults as a result of such a referral." In fact, it is legally permissible to house adults separately from their minor children, even absent referral for prosecution. The ICE Office of the Principal Legal Advisor (OPLA) is ████████████████████████████████

████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

**FOR OFFICIAL USE ONLY**



**FOR OFFICIAL USE ONLY**

CD-US-0167962



**FOR OFFICIAL USE ONLY**

Exhibit 12

**From:** GOLDHAMER, SANDI I
**Sent:** Saturday, May 26, 2018 8:04 AM
**To:** SANCHEZ1, EDUARDO
**Subject:** RE: CBP is Reuniting adults with kids

That was the exact theme during last nights conversations. Plus the fact that "time served" is not exactly a consequence we had in mind.

---

**From:** SANCHEZ1, EDUARDO
**Sent:** Saturday, May 26, 2018 3:21:56 AM
**To:** GOLDHAMER, SANDI I; TUCKER, MICHAEL E
**Subject:** RE: CBP is Reuniting adults with kids

10-4

maybe if we had some actual support from our partners we wouldn't be in this situation.

Eduardo Sanchez
Assistant Chief
U.S. Border Patrol
(O) 202.325.2631
(C) 202.697.2113
eduardo.sanchez1@cbp.dhs.gov

---

**From:** GOLDHAMER, SANDI I
**Sent:** Saturday, May 26, 2018 3:57:53 AM
**To:** SANCHEZ1, EDUARDO; TUCKER, MICHAEL E
**Subject:** FW: CBP is Reuniting adults with kids

We had a conference call and this is what was finalized.

---

**From:** HASTINGS, BRIAN S
**Sent:** Friday, May 25, 2018 8:30:17 PM
**To:** VITIELLO, RONALD D (USBP); PROVOST, CARLA (USBP); DIKMAN, SABRI Y; LUCK, SCOTT A (USBP); HUFFMAN, BENJAMINE C; HUDSON, RICHARD M; GOLDHAMER, SANDI I
**Subject:** RE: CBP is Reuniting adults with kids

Chief,
What is occurring in RGV is that the parents are being sent to their initial, they are pleading out immediately, and they are being sentenced to time served (sometimes within hours). They are then being remanded back to the CPC before HHS has placed the UAC's (Less than 72 hours). HHS does not place the UAC's at that point as the adult has already plead out.
We don't believe that we have another option, but to reunite the families if the kids are still in our custody after the adult gets back (before HHS has placed the UAC) from time served.

The goal is to prosecute, not separate families. The separation is a byproduct of the prosecution, not the end state.
We are dealing with two scenarios. Both of which are outlined below and in the attached.

Scenario 1: The parent is prosecuted and child is gone from BP custody to HHS when parent returns. ERO will reunite families upon removal order.

Scenario 2: (happening in RGV) Parent is prosecuted. Gone for hours and returns after time served at the initial is given by the judge. The child is still in BP custody pending transfer to HHS. The parent, because he or she was not remanded to USMS custody (because at the initial he was given time served), is still, technically in USBP custody. Parent is returned to the station. Both parent and child are in BP custody and the prosecution is complete. We now have a family unit, again.

V/r,
Brian

---

**From:** VITIELLO, RONALD D (USBP)
**Sent:** Friday, May 25, 2018 9:18 PM
**To:** PROVOST, CARLA (USBP) <CARLA.PROVOST@CBP.DHS.GOV>; HASTINGS, BRIAN S <BRIAN.S.HASTINGS@CBP.DHS.GOV>; DIKMAN, SABRI Y <SABRI.Y.DIKMAN@CBP.DHS.GOV>; LUCK, SCOTT A (USBP) <SCOTT.A.LUCK@CBP.DHS.GOV>; HUFFMAN, BENJAMINE C <BENJAMINE.C.HUFFMAN@cbp.dhs.gov>; HUDSON, RICHARD M <RICHARD.M.HUDSON@CBP.DHS.GOV>
**Subject:** FW: CBP is Reuniting adults with kids
Need some fidelity on this

CD-US-0032848

Ronald Donato Vitiello
Acting Deputy Commissioner
Customs and Border Protection
(202) 344-3129 (202) 465-2328

**From:** Albence, Matthew
**Sent:** Saturday, May 26, 2018 2:01:35 AM
**To:** MCALEENAN, KEVIN K; Homan, Thomas; VITIELLO, RONALD D (USBP)
**Subject:** FW: CBP is Reuniting adults with kids

FYSA. Not sure if you are aware. It sounds like ORR is refusing to take the children as UAC if the parent arrives back that the processing site and the child is still there. This is happening at the CPC as indicated below and have also heard in AZ.
This obviously undermines the entire effort and the Dept is going to look completely ridiculous if we go through the effort of prosecuting only to send them to a FRC and out the door....

Sent with BlackBerry Work
(www.blackberry.com)

**From:** Johnson, Tae D <Tae.D.Johnson@ice.dhs.gov>
**Date:** Friday, May 25, 2018, 8:29 PM
**To:** Asher, Nathalie R <Nathalie.R.Asher@ice.dhs.gov>, Albence, Matthew <Matthew.Albence@ice.dhs.gov>
**Subject:** CBP is Reuniting adults with kids
CBP is Reuniting adults with kids after prosecution in McAllen. My guess is there is no place to house the adult, so they are bringing them back to the station and since the child is still there, they are joining them. These kids have already been designated and are awaiting transportation to HHS. Transportation arrangements are now being cancelled and presumably the males HoHs are being released..... What a fiasco.

CD-US-0032849

Exhibit 13

**From:** HUDSON, RICHARD M
**Sent:** Friday, May 25, 2018 11:23 PM
**To:** HASTINGS, BRIAN S
**Subject:** RE: CBP is Reuniting adults with kids

Sent you a previous message. You go, we go. Call me if something comes in. We can carry this crap together, but not alone individually.


Richard M. Hudson
Deputy Chief, Operational Programs
US Border Patrol Headquarters
Law Enforcement Operations Directorate
202 344 1956 Office
202 644 2232 Cellular
RICHARD.M.HUDSON@CBP.DHS.GOV

---

**From:** HASTINGS, BRIAN S
**Sent:** Friday, May 25, 2018 11:15:33 PM
**To:** GOLDHAMER, SANDI I; HUDSON, RICHARD M
**Cc:** SANCHEZ1, EDUARDO; TUCKER, MICHAEL E
**Subject:** RE: CBP is Reuniting adults with kids

Sandi / Rich / Team,

Get some sleep. Thank you for all you do. I sent C-2 the email and text, but not response yet. I will give it another hour, than I am going to bed. I got it! Get some rest. Thank you all for what you all do. Means a lot!

V/r,
Brian

**From:** GOLDHAMER, SANDI I
**Sent:** Friday, May 25, 2018 10:15 PM
**To:** HUDSON, RICHARD M <RICHARD.M.HUDSON@CBP.DHS.GOV>; HASTINGS, BRIAN S <BRIAN.S.HASTINGS@CBP.DHS.GOV>
**Cc:** SANCHEZ1, EDUARDO <EDUARDO.SANCHEZ1@CBP.DHS.GOV>; TUCKER, MICHAEL E <MICHAEL.E.TUCKER@CBP.DHS.GOV>
**Subject:** RE: CBP is Reuniting adults with kids

Chief Hudson

Please call me.

---

**From:** HUDSON, RICHARD M
**Sent:** Friday, May 25, 2018 8:08:47 PM
**To:** HASTINGS, BRIAN S; GOLDHAMER, SANDI I
**Cc:** SANCHEZ1, EDUARDO; TUCKER, MICHAEL E
**Subject:** RE: CBP is Reuniting adults with kids

Chief,

This is what is happening. Also would like confirmation and comment from ACC Goldhamer.


Richard M. Hudson
Deputy Chief, Operational Programs
US Border Patrol Headquarters
Law Enforcement Operations Directorate
202 344 1956 Office
202 644 2232 Cellular
RICHARD.M.HUDSON@CBP.DHS.GOV

---

**From:** HASTINGS, BRIAN S
**Sent:** Friday, May 25, 2018 10:07:13 PM
**To:** GOLDHAMER, SANDI I; HUDSON, RICHARD M
**Cc:** SANCHEZ1, EDUARDO; TUCKER, MICHAEL E
**Subject:** RE: CBP is Reuniting adults with kids

Below is what I am preparing to send to C-2. Recommended changes?
Chief,
What is occurring in RGV is that the parents are being sent to their initial, they are pleading out immediately, and they are being sentenced to time served (sometimes within hours). They are then being remanded back to the CPC before HHS has placed the UAC's (Less than 72 hours). HHS does not place the UAC's at that point as the adult has already plead out.

We don't believe that we have another option, but to reunite the families if the kids are still in our custody after the adult gets back (before HHS has placed the UAC) from time served.

The goal is to prosecute, not separate families. The separation is a byproduct of the prosecution, not the end state.
We are dealing with two scenarios. Both of which are outlined below and in the attached.

Scenario 1: The parent is prosecuted and child is gone from BP custody to HHS when parent returns. ERO will reunite families upon removal order.

Scenario 2: (happening in RGV) Parent is prosecuted. Gone for hours and returns after time served at the initial is given by the judge. The child is still in BP custody pending transfer to HHS. The parent, because he or she was not remanded to USMS custody (because at the initial he was given time served), is still, technically in USBP custody. Parent is returned to the station. Both parent and child are in BP custody and the prosecution is complete. We now have a family unit, again.

V/r,
Brian

**From:** GOLDHAMER, SANDI I
**Sent:** Friday, May 25, 2018 10:04 PM
**To:** HASTINGS, BRIAN S <BRIAN.S.HASTINGS@CBP.DHS.GOV>; HUDSON, RICHARD M <RICHARD.M.HUDSON@CBP.DHS.GOV>
**Cc:** SANCHEZ1, EDUARDO <EDUARDO.SANCHEZ1@CBP.DHS.GOV>; TUCKER, MICHAEL E <MICHAEL.E.TUCKER@CBP.DHS.GOV>
**Subject:** FW: CBP is Reuniting adults with kids

Good evening Chief

I just received a call from RGV and was also forwarded his message.

It seems we are getting hit from all's sides and no matter what we do, we are in a losing battle. I recommend we cease the reunification process when a family member is given time served and sent back to the CPC. This is causing too many issues as RGV is doing an outstanding job of ensuring timely placement of the child with HHS.

If you are concerned with appearances than do not return the family unit adult back to the CPC. Take them to an alternate temporary holding facility and have ERO pick them up from that designated location. Additionally, continue providing the separated adult with the tear sheet which provides information on locating their child.

We are doing everything in our power to ensure our part of the reunification process is done correctly. ICE and HHS need to do their part too.

Please advise concurrence so I may notify RGV and other affected sectors.

Regards

Sandi

**From:** EASTERLING, LLOYD M (RGV)
**Sent:** Friday, May 25, 2018 7:44:01 PM
**To:** GOLDHAMER, SANDI I
**Subject:** FW: CBP is Reuniting adults with kids

Lloyd Easterling
DC-RGV
956-295-0400

**From:** PADILLA, MANUEL JR
**Sent:** Friday, May 25, 2018 7:33:36 PM
**To:** EASTERLING, LLOYD M (RGV); QUALIA, CARMEN F (CAG); GRAME, MONIQUE R
**Cc:** ORTIZ, RAUL L
**Subject:** FW: CBP is Reuniting adults with kids

For action

**From:** HASTINGS, BRIAN S
**Sent:** Saturday, May 26, 2018 2:30:18 AM
**To:** PADILLA, MANUEL JR; ORTIZ, RAUL L; KARISCH, RODOLFO; SELF, JEFFREY D; HUDSON, RICHARD M; ROGGOW, MATTHEW J; PORVAZNIK, ANTHONY J; LANDRUM, CARL E
**Subject:** FW: CBP is Reuniting adults with kids

Chiefs, Deputies,

I apologize for pinging this late, on a holiday weekend, but can you please provide some insight as to the questions below? Respectfully request a quick turn around.

V/r,
Brian

**From:** VITIELLO, RONALD D (USBP)
**Sent:** Friday, May 25, 2018 9:17:56 PM
**To:** PROVOST, CARLA (USBP); HASTINGS, BRIAN S; DIKMAN, SABRI Y; LUCK, SCOTT A (USBP); HUFFMAN, BENJAMINE C; HUDSON, RICHARD M
**Subject:** FW: CBP is Reuniting adults with kids

Need some fidelity on this

Ronald Donato Vitiello
Acting Deputy Commissioner
Customs and Border Protection
(202) 344-3129 (202) 465-2328

**From:** Albence, Matthew
**Sent:** Saturday, May 26, 2018 2:01:35 AM
**To:** MCALEENAN, KEVIN K; Homan, Thomas; VITIELLO, RONALD D (USBP)
**Subject:** FW: CBP is Reuniting adults with kids

FYSA. Not sure if you are aware. It sounds like ORR is refusing to take the children as UAC if the parent arrives back that the processing site and the child is still there. This is happening at the CPC as indicated below and have also heard in AZ.
This obviously undermines the entire effort and the Dept is going to look completely ridiculous if we go through the effort of prosecuting only to send them to a FRC and out the door....

Sent with BlackBerry Work
(www.blackberry.com)

**From:** Johnson, Tae D <Tae.D.Johnson@ice.dhs.gov>
**Date:** Friday, May 25, 2018, 8:29 PM
**To:** Asher, Nathalie R <Nathalie.R.Asher@ice.dhs.gov>, Albence, Matthew <Matthew.Albence@ice.dhs.gov>
**Subject:** CBP is Reuniting adults with kids
CBP is Reuniting adults with kids after prosecution in McAllen. My guess is there is no place to house the adult, so they are bringing them back to the station and since the child is still there, they are joining them. These kids have already been designated and are awaiting transportation to HHS. Transportation arrangements are now being cancelled and presumably the males HoHs are being released..... What a fiasco.

CD-US-0030039

Exhibit 14

| | |
|---|---|
| **From:** | Johnson, Tae D [Tae.D.Johnson@ice.dhs.gov] |
| **Sent:** | 5/9/2018 11:34:37 PM |
| **To:** | Moore, Stevie [Stevie.Moore@ice.dhs.gov]; Caudill, Dewey [Dewey.Caudill@ice.dhs.gov] |
| **CC:** | Cates, Harold [Harold.Cates@ice.dhs.gov]; Harris, Andrea [Andrea.Harris@ice.dhs.gov]; Jones, Marla M [Marla.M.Jones@ice.dhs.gov]; Parsons, Robert L [Robert.L.Parsons@ice.dhs.gov]; Aguilar, Michelle [Michelle.Aguilar@ice.dhs.gov] |
| **Subject:** | RE: Reprogramming Question |

A lot if this information is unknown. Below is all the information I have at this time.

**From:** Moore, Stevie
**Sent:** Wednesday, May 9, 2018 5:23 PM
**To:** Caudill, Dewey <Dewey.Caudill@ice.dhs.gov>
**Cc:** Cates, Harold <Harold.Cates@ice.dhs.gov>; Harris, Andrea <Andrea.Harris@ice.dhs.gov>; Jones, Marla M <Marla.M.Jones@ice.dhs.gov>; Parsons, Robert L <Robert.L.Parsons@ice.dhs.gov>; Johnson, Tae D <Tae.D.Johnson@ice.dhs.gov>; Aguilar, Michelle <Michelle.Aguilar@ice.dhs.gov>
**Subject:** RE: Reprogramming Question

Hi Tim,

Reviewing this on our end and it would be helpful if the questions below were answered to assist with our assumptions & analysis. Please let me know the status of your review/response when you get a chance.

1. *How many USAO's on the SWB will take and prosecute cases?*

*I don't know. As I understand it some border locations will be able to do 100% prosecutions while other much busier locations like RGV will require a more phased approach.*

2. *Is DHS/DOJ prosecuting all adults (including both parents) and are they seeking remand of the adults to USMS custody? If they split the family units, is ICE prepared to hold the remaining adults in ICE detention or will they release them to reunite with the UAC's?*

*100% prosecutions of adults will occur in some places. If the families are separated, ICE will be required to house the adults after they have served their sentences. Chances are that most of these individuals will plea out and be time served, but we don't know for certain how this will play out. It is not clear whether they will be reunited after prosecution, but I suspect not, particularly when the child has already been placed with ORR. More internal discussion between ICE and CBP is needed on this last piece.*

3. *Can ORR (HHS) handle the temporary increase in their foster housing program? Do they have locations near the SWB or are they interior and will need to have ICE increase contract transportation to accompany the UAC to the necessary housing?*

*ORR will need to expand their capacity or consider the use of DoD sites. Not sure what additional options are available along the SWB. There will likely be a need for increased transportation of UACs.*

4. *Will CBP be completing Expedited Removal (ER) orders at processing? If not will DOJ seek a Federal Judicial Order (FJO) of removal as part of the 1325 prosecution? If not, then ICE might have to "present the alien" to an IJ for a removal hearing, increasing bed space.*

*Considering that most of these individuals will claim asylum, they will need to appear before an IJ.*

CD-US-0117565

5.      Even if you get ER or FJO as noted above, ICE will need to house them after federal case to effectuate removal. Will there be a plan to use beds near the border or hub areas that ICE can secure a travel doc and put them on an Air Ops flight quickly?

*Ideally, beds along the SWB can be used, but they must be activated first – which will take some time.*

6.      If USAO's can't take the cases directly from CBP, then ICE will need to house adults for a few days and present for prosecution – increasing bed space.

*The way prosecutions are done will vary by sector and judicial district.  ICE should prepare for an increase in detention of single adults*

r,
Stevie

---

**From:** Caudill, Dewey
**Sent:** Tuesday, May 8, 2018 5:53 PM
**To:** Johnson, Tae D <Tae.D.Johnson@ice.dhs.gov>; Moore, Stevie <Stevie.Moore@ice.dhs.gov>
**Cc:** Cates, Harold <Harold.Cates@ice.dhs.gov>; Harris, Andrea <Andrea.Harris@ice.dhs.gov>; Jones, Marla M <Marla.M.Jones@ice.dhs.gov>
**Subject:** RE: Reprogramming Question

We are currently reviewing to determine if we believe any of the alternatives could drive us outside of the upper bound of 50% CI, which is the level we had requested funding for.  We should have an initial response by tomorrow morning.


Tim Caudill
Chief, Strategy & Operations Analysis
Law Enforcement Systems & Analysis
DHS-ICE- ERO
Desk 202-732-6462
Mobile 202-487-8417
dewey.caudill@ice.dhs.gov

---

**From:** Johnson, Tae D <Tae.D.Johnson@ice.dhs.gov>
**Date:** Tuesday, May 08, 2018, 5:48 PM
**To:** Moore, Stevie <Stevie.Moore@ice.dhs.gov>, Caudill, Dewey <Dewey.Caudill@ice.dhs.gov>
**Cc:** Cates, Harold <Harold.Cates@ice.dhs.gov>, Harris, Andrea <Andrea.Harris@ice.dhs.gov>
**Subject:** RE: Reprogramming Question

My take is the bed model has no way of factoring in the new prosecutions policy. In speaking with OMB today we only get one chance at this reprogramming so I would suggest we add in the cost of 2500 extra beds for the last quarter of the FY to be safe.


Sent with BlackBerry Work
(www.blackberry.com)

---

**From:** Moore, Stevie <Stevie.Moore@ice.dhs.gov>
**Date:** Tuesday, May 08, 2018, 4:23 PM
**To:** Caudill, Dewey <Dewey.Caudill@ice.dhs.gov>
**Cc:** Cates, Harold <Harold.Cates@ice.dhs.gov>, Johnson, Tae D <Tae.D.Johnson@ice.dhs.gov>, Harris, Andrea <Andrea.Harris@ice.dhs.gov>

CD-US-0117566

**Subject:** FW: Reprogramming Question

Hi Tim,

Can you please take a look at this when you get a chance. The Dept. is asking if our cost implications account for the "new policy on prosecutions". With the shortfall provided – Custody Operations makes up $134M out of $197M total. I'm not sure if the "new policy" is taken into consideration when developing the ADP projection.

Please let me know when you get a chance.

Thanks

r,
Stevie

**From:** Mencher, Daniel
**Sent:** Tuesday, May 8, 2018 3:24 PM
**To:** Moore, Stevie <Stevie.Moore@ice.dhs.gov>
**Cc:** Aguilar, Michelle <Michelle.Aguilar@ice.dhs.gov>; Parsons, Robert L <Robert.L.Parsons@ice.dhs.gov>; Blotzer, Allison <Allison.Blotzer@ice.dhs.gov>
**Subject:** Reprogramming Question

Stevie

DHS and OMB are asking if the opening salvo number that has been floated ($197M) includes the cost implications of the new policy on prosecutions (see attached). We will most certainly be asked about the implications when we brief DHS and OMB should a reprogramming go forward.

Thanks.

Daniel A. Mencher
Deputy Budget Director (Controls)
Office of Budget and Program Performance
Immigration & Customs Enforcement
(T) 202.732.6205 | (C) 202.713.0325
(E) daniel.mencher@ice.dhs.gov

CD-US-0117567

Exhibit 15

| | |
|---|---|
| **From:** | Johnson, Tae D [Tae.D.Johnson@ice.dhs.gov] |
| **Sent:** | 6/23/2018 10:45:06 PM |
| **To:** | Dougherty, Deane [Deane.Dougherty@ice.dhs.gov]; Harper, Mellissa B [Mellissa.B.Harper@ice.dhs.gov]; Lorenzen-Strait, Andrew R [Andrew.R.Lorenzen-Strait@ice.dhs.gov]; Trickler-McNulty, Claire [Claire.Trickler-McNulty@ice.dhs.gov] |
| **Subject:** | FW: HHS |

FYSA


Sent with BlackBerry Work
(www.blackberry.com)

---

**From:** Johnson, Tae D <Tae.D.Johnson@ice.dhs.gov>
**Date:** Saturday, Jun 23, 2018, 6:43 PM
**To:** Asher, Nathalie R <Nathalie.R.Asher@ice.dhs.gov>, Guadian, Robert <Robert.Guadian@ice.dhs.gov>, Albence, Matthew <Matthew.Albence@ice.dhs.gov>
**Cc:** Jennings, David W <David.W.Jennings@ice.dhs.gov>
**Subject:** RE: HHS

Big win for us all the way around as long as we don't have to sit there daily.


Sent with BlackBerry Work
(www.blackberry.com)

---

**From:** Asher, Nathalie R <Nathalie.R.Asher@ice.dhs.gov>
**Date:** Saturday, Jun 23, 2018, 6:27 PM
**To:** Guadian, Robert <Robert.Guadian@ice.dhs.gov>, Albence, Matthew <Matthew.Albence@ice.dhs.gov>, Johnson, Tae D <Tae.D.Johnson@ice.dhs.gov>
**Cc:** Jennings, David W <David.W.Jennings@ice.dhs.gov>
**Subject:** RE: HHS

Thanks Robert.

+ Tae

This plan does have potential to shift the burden of parent to child communication and parent to case manager from ERO to ORR..Not necessarily a bad thing as Robert points out.

With inclusion of JFRMU and the FOJCs on the  ground it is definitely worth a try.

What needs to be abundantly clear is that aside from the communication piece, any efforts for reunification is for removal only and therefore we should take the lead when the case flips to this step.

Sent with BlackBerry Work
(www.blackberry.com)

---

**From:** Guadian, Robert <Robert.Guadian@ice.dhs.gov>
**Date:** Saturday, Jun 23, 2018, 6:06 PM
**To:** Albence, Matthew <Matthew.Albence@ice.dhs.gov>
**Cc:** Asher, Nathalie R <Nathalie.R.Asher@ice.dhs.gov>, Jennings, David W <David.W.Jennings@ice.dhs.gov>
**Subject:** RE: HHS

Matt, you were right. They really didn't have a starting point.

The were tasked today to be the principal agency responsible for reunifying UACs (at removal or otherwise) and facilitating the communication between separated parents and children. Both items ERO would benefit from.

HHS will be deploying assets to the Field Offices to assist in these endeavors.

I helped with the following:

Provided an overview of the removal process;

Held a conference call with their group, ASPR, and Andrew Lorenzen to discuss what ERO is currently doing in regards to family communication efforts. There is a huge amount of duplication;

Provided a list showing where parents and separated kids are located current as of June 20 ( ASPR had been working on this for a while);

Identified the 4 AORs with the most parents( ELP, SNA,PHO and ATL) for HHS deployment planning purposes;

Provided my contact info to the Commander and AD for troubleshooting purposes;

Recommended a daily ICE call with no commitment for presence at the ASPR;

The call could work through ASPRs request for assistance on the below topics.


1.     We want to support telephone and preferably video-phone/Skype contact between parents detained in ICE custody and minors in ORR care. A system to ensure twice/weekly contact between

2.     It is also our goal to use this contact process to facilitate discussions between parents and the child's case manager in the ORR sheltering program, so that the parent can participate in planning for the child's discharge from ORR custody.


We are looking at providing case management support to help with this but would welcome any solutions or suggestions you may have.

CD-US-0060883

Acting Deputy Assistant Director
HQ-Domestic Ops

Redacted for PII

---

**From:** Albence, Matthew <Matthew.Albence@ice.dhs.gov>
**Date:** Saturday, Jun 23, 2018, 3:20 PM
**To:** Guadian, Robert <Robert.Guadian@ice.dhs.gov>
**Cc:** Asher, Nathalie R <Nathalie.R.Asher@ice.dhs.gov>, Jennings, David W <David.W.Jennings@ice.dhs.gov>
**Subject:** HHS

Robert:

Thanks so much for taking care of this. In talking to HHS, I don't think they really have any idea as to what they are doing. Their immediate goal is to meet their S1's directive to ensure that communication is established and regular between the UACs and their parent. Once they are able to identify where the parent is, beginning Monday they plan to send people to the facilities to ensure that they can communicate (I get the impression they may be bringing iPads or something to facilitate).

They will push you for a commitment to having someone there full-time. Tell them you're not in a position to do that. That is definitely not my preference and hope that you will be able to assess the true need-I would much rather manage this out of PCN rather than send another person out of the building. And understand if it takes more than one visit to make that assessment-no worries.

Also, while I made it abundantly clear to them, they will want to know what can be done to facilitate immediate reunification. I told them that wasn't going to happen unless we are directed by the Dept to do so. We are moving forward w reunification only for the purposes of removal. If a judge bonds the parent out, then of course the parent is free to sponsor the child from HHS. Absent that, we aren't releasing and we aren't going to put them in a FRC for the sole purpose of releasing 20 days later.

Let me know if any issues arise. Can call my cell anytime. Redacted for PII

Thanks!


Sent with BlackBerry Work
(www.blackberry.com)

CD-US-0060884

Exhibit 16

**From:** Asher, Nathalie R [Nathalie.R.Asher@ice.dhs.gov]
**Sent:** 5/26/2018 1:31:11 AM
**To:** Albence, Matthew [Matthew.Albence@ice.dhs.gov]; Jennings, David W [David.W.Jennings@ice.dhs.gov]; Johnson, Tae D [Tae.D.Johnson@ice.dhs.gov]
**Subject:** RE: CBP is Reuniting adults with kids

So now he will have to be the bad guy with his own...

Sent with BlackBerry Work
(www.blackberry.com)

**From:** Albence, Matthew <Matthew.Albence@ice.dhs.gov>
**Date:** Friday, May 25, 2018, 9:30 PM
**To:** Jennings, David W <David.W.Jennings@ice.dhs.gov>, Johnson, Tae D <Tae.D.Johnson@ice.dhs.gov>, Asher, Nathalie R <Nathalie.R.Asher@ice.dhs.gov>
**Subject:** RE: CBP is Reuniting adults with kids

McAleenan looking into it

Sent with BlackBerry Work
(www.blackberry.com)

**From:** Jennings, David W <David.W.Jennings@ice.dhs.gov>
**Date:** Friday, May 25, 2018, 9:29 PM
**To:** Johnson, Tae D <Tae.D.Johnson@ice.dhs.gov>, Asher, Nathalie R <Nathalie.R.Asher@ice.dhs.gov>, Albence, Matthew <Matthew.Albence@ice.dhs.gov>
**Subject:** RE: CBP is Reuniting adults with kids

Of course no written directives but Tucson keeping separate 13 and older. Yuma keeping all separate right now.

Sent with BlackBerry Work
(www.blackberry.com)

**From:** Johnson, Tae D <Tae.D.Johnson@ice.dhs.gov>
**Date:** Friday, May 25, 2018, 21:26
**To:** Jennings, David W <David.W.Jennings@ice.dhs.gov>, Asher, Nathalie R <Nathalie.R.Asher@ice.dhs.gov>, Albence, Matthew <Matthew.Albence@ice.dhs.gov>
**Subject:** RE: CBP is Reuniting adults with kids

Thanks

Sent with BlackBerry Work
(www.blackberry.com)

**From:** Jennings, David W <David.W.Jennings@ice.dhs.gov>
**Date:** Friday, May 25, 2018, 9:04 PM

CD-US-0128444

**To:** Asher, Nathalie R <Nathalie.R.Asher@ice.dhs.gov>, Albence, Matthew <Matthew.Albence@ice.dhs.gov>, Johnson, Tae D <Tae.D.Johnson@ice.dhs.gov>
**Subject:** RE: CBP is Reuniting adults with kids

Same from Phoenix. Dan said a judge is questioning in RGV.

Sent with BlackBerry Work
(www.blackberry.com)

**From:** Asher, Nathalie R <Nathalie.R.Asher@ice.dhs.gov>
**Date:** Friday, May 25, 2018, 20:58
**To:** Albence, Matthew <Matthew.Albence@ice.dhs.gov>, Johnson, Tae D <Tae.D.Johnson@ice.dhs.gov>
**Cc:** Jennings, David W <David.W.Jennings@ice.dhs.gov>
**Subject:** FW: CBP is Reuniting adults with kids

Adding Tae -

Sent with BlackBerry Work
(www.blackberry.com)

**From:** Jennings, David W <David.W.Jennings@ice.dhs.gov>
**Date:** Friday, May 25, 2018, 8:55 PM
**To:** Albence, Matthew <Matthew.Albence@ice.dhs.gov>
**Cc:** Asher, Nathalie R <Nathalie.R.Asher@ice.dhs.gov>
**Subject:** RE: CBP is Reuniting adults with kids

Dan says ORR won't place if parent comes back to CPC. BP asked Dan to tell them what to do - Dan said his job is simply to move what they give him so if it's a family unit he'll try and place. No consequence at this point.  ORR needs arm twisted.

Sent with BlackBerry Work
(www.blackberry.com)

**From:** Albence, Matthew <Matthew.Albence@ice.gov>
**Date:** Friday, May 25, 2018, 20:30
**To:** Jennings, David W <David.W.Jennings@ice.dhs.gov>
**Cc:** Asher, Nathalie R <Nathalie.R.Asher@ice.dhs.gov>, Jennings, David W <David.W.Jennings@ice.dhs.gov>
**Subject:** FW: CBP is Reuniting adults with kids

DJ-call Dan please. We can't have this. If I need to call mcAleenan if I need to.

Sent with BlackBerry Work
(www.blackberry.com)

**From:** Johnson, Tae D <Tae.D.Johnson@ice.gov>
**Date:** Friday, May 25, 2018, 8:29 PM
**To:** Asher, Nathalie R <Nathalie.R.Asher@ice.dhs.gov>, Albence, Matthew <Matthew.Albence@ice.gov>
**Subject:** CBP is Reuniting adults with kids

CD-US-0128445

CBP is Reuniting adults with kids after prosecution in McAllen.  My guess is there is no place to house the adult, so they are bringing them back to the station and since the child is still there, they are joining them.  These kids have already been designated and are awaiting transportation to HHS.  Transportation arrangements are now being cancelled and presumably the males HoHs are being released…..  What a fiasco.

CD-US-0128446

Exhibit 17

**From:** PORVAZNIK, ANTHONY J
**Sent:** Friday, May 25, 2018 9:37 PM
**To:** LANDRUM, CARL E
**Subject:** FW: CBP is Reuniting adults with kids

Anthony J. Porvaznik
Chief Patrol Agent
USBP Yuma Sector
928.318.9594 (cell)
928.341.6501 (office)

**From:** HASTINGS, BRIAN S
**Sent:** Friday, May 25, 2018 7:30:18 PM
**To:** PADILLA, MANUEL JR; ORTIZ, RAUL L; KARISCH, RODOLFO; SELF, JEFFREY D; HUDSON, RICHARD M; ROGGOW, MATTHEW J; PORVAZNIK, ANTHONY J; LANDRUM, CARL E
**Subject:** FW: CBP is Reuniting adults with kids

Chiefs, Deputies,

I apologize for pinging this late, on a holiday weekend, but can you please provide some insight as to the questions below? Respectfully request a quick turn around.

V/r,
Brian

**From:** VITIELLO, RONALD D (USBP)
**Sent:** Friday, May 25, 2018 9:17:56 PM
**To:** PROVOST, CARLA A (USBP); HASTINGS, BRIAN S; DIKMAN, SABRI Y; LUCK, SCOTT A (USBP); HUFFMAN, BENJAMINE C; HUDSON, RICHARD M
**Subject:** FW: CBP is Reuniting adults with kids

Need some fidelity on this

Ronald Donato Vitiello
Acting Deputy Commissioner
Customs and Border Protection
(202) 344-3129 (202) 465-2328

**From:** Albence, Matthew
**Sent:** Saturday, May 26, 2018 2:01:35 AM
**To:** MCALEENAN, KEVIN K; Homan, Thomas; VITIELLO, RONALD D (USBP)
**Subject:** FW: CBP is Reuniting adults with kids

FYSA. Not sure if you are aware. It sounds like ORR is refusing to take the children as UAC if the parent arrives back that the processing site and the child is still there. This is happening at the CPC as indicated below and have also heard in AZ.

This obviously undermines the entire effort and the Dept is going to look completely ridiculous if we go through the effort of prosecuting only to send them to a FRC and out the door....

Sent with BlackBerry Work
(www.blackberry.com)

**From:** Johnson, Tae D <Tae.D.Johnson@ice.dhs.gov>
**Date:** Friday, May 25, 2018, 8:29 PM
**To:** Asher, Nathalie R <Nathalie.R.Asher@ice.dhs.gov>, Albence, Matthew <Matthew.Albence@ice.dhs.gov>
**Subject:** CBP is Reuniting adults with kids

CBP is Reuniting adults with kids after prosecution in McAllen. My guess is there is no place to house the adult, so they are bringing them back to the station and since the child is still there, they are joining them. These kids have already been designated and are awaiting transportation to HHS. Transportation arrangements are now being cancelled and presumably the males HoHs are being released..... What a fiasco.

Exhibit 18

**From:** Swartz, Tricia (ACF)
**Sent:** Wednesday, March 15, 2017 5:51 PM
**To:** White, Jonathan (ACF)
**Subject:** starting point
**Attachments:** Fam Sep Impacts.docx

Here is a starting point. Not sharing with others for edits until you are ready to do so.

CD-US-0136800

As a method of migration deterrence, the Department of Homeland Security (DHS) is considering a policy of separating immigrant children from their families. In this plan, DHS would refer the accompanied but separated children to the Office of Refugee Resettlement (ORR), within the Department of Health and Human Services (HHS). At this time, DHS indicates that all arriving families could be subject to such separation, regardless of whether the immigrants are seeking protection/status or whether they are crossing the border for economic/other reasons ("illegal").

Referrals of children who are separated from families would have an impact overall on both ORR and the children, disproportionately impacting the youngest of these.

<u>Volume of Referrals</u>

Customs and Border Protection (CBP) provided the below data on family units. Historically, for each unaccompanied child (UC), CBP apprehends 2.5 accompanied child (AC). The AC tend to skew heavily toward tender aged children. Receiving AC would cause an increase of 1880% over UC referral alone for children aged 0-5 years. For children 6-12 years, the addition of AC would increase the referral rate by 356%. Additional age groups are represented in the chart and graph below.

| Volume of Accompanied Children and Unaccompanied Children by Age (Data Set October 2016 through January 2017) | | | | | | |
|---|---|---|---|---|---|---|
| | 0 - 5 years | 6-12 years | 13 - 14 years | 15 - 16 years | 17 years | TOTAL |
| Accompanied Children (DHS) | 16,223 | 14,468 | 3,313 | 3,734 | 1,817 | 39,555 |
| Unaccompanied Children (HHS/ORR) | 863 | 4,061 | 3,940 | 10,079 | 8,306 | 27,249 |
| Both Accompanied and Unaccompanied Children (DHS & HHS/ORR) | 17,086 | 18,529 | 7,253 | 13,813 | 10,123 | 66,804 |
| Percent Increase | 1880% | 356% | 84% | 37% | 22% | 145% |
| Ratio (for each UC, ORR would receive and additional accompanied child) | 19.8 | 4.6 | 1.8 | 1.4 | 1.2 | 2.5 |



## Specialized Needs

The tender age (0-12) of the typical AC, as compared to the typical age of a UC (15-17), requires specialized care. There are particular licensing requirements and bed types needed to accommodate the little ones. In addition, there are a variety of particular needs to consider such as weaning and traumatization of separation.

## Discharge Rate

ORR anticipates that discharge of AC will be more complicated than for UC, resulting in longer lengths of stay in ORR care. The majority of released UC are sponsored by a parent. In the case of AC, the parent would be detained or repatriated, necessitating the attempt to locate an alternate sponsor. Such alternate sponsors, if located, require lengthier background checks.  Even if the particular parent is eventually released, ORR must follow policy and procedure for the safety of the children.

## Increase Risk of Human Trafficking

Separating children from families could increase the risk of human trafficking as parents and families seek to locate alternate sponsors.

## International Legal Issues

When parents are separated and repatriated, this sometimes creates a myriad of international legal issues resulting in long lengths of stay in care and involvement of many agencies and foreign governments. This often results in the need for international home study as well.

## Human Rights

The separation of children from their families could be considered a human rights abuse, resulting in the refusal to participate by grantees, contractors or staff on the grounds that the practice is illegal, immoral or unethical.

## Resulting in Long Lengths of Stay and High Costs

All of these factors would indicate long periods of care, complicated cases and issues, as well as high costs.

Exhibit 19

*Summary:*
The Compliance Branch (Compliance) will be issuing recommendations on behalf of CRCL resulting from our investigation into the separation of family members in DHS custody. In order to ensure implementation of the recommendations, which involve multiple DHS Components and inter-agency partners, CRCL believes the establishment of a working group, preferably run or co-chaired by DHS Policy, would be an effective tool to meet this goal.

*Context:*
The forthcoming Recommendations Memo (Rec Memo) will discuss the investigative findings resulting from our 2017 investigation into 27 of the 950 family separation matters that Compliance has received since 2016. CRCL will also issue recommendations to address the investigation's findings, highlighting that voids exist in current DHS policy and procedure regarding the separation of families. As stated above, these recommendations will form the basis for an interagency DHS/HHS ORR workgroup.

*Findings and Recommendations:*

Compliance expects the following general areas to be addressed in the findings and recommendations.

**Findings**

- Inadequate Protocols: There is a lack of clear family separation protocols to guide CBP and ICE agents and officers in their decisions whether or not to separate family members. There is also no uniform and clear understanding within CBP and ICE regarding their legal obligations under the *Flores* Settlement Agreement and the TVPRA
- Inconsistency: CRCL found significant inconsistency in agents'/officers' separation decisions and custody placements, complicated by an array of miscellaneous and outdated internal instructions as well as with record-keeping.
- Lack of Collaboration: CBP, ICE and ORR, are not communicating, which can lead to family fragmentation, with members of the same family placed in facilities in different legal jurisdictions across the U.S. Additionally, there is a lack of coordinated, timely, and effective inter-agency coordination and information-sharing protocols.
- Resources: There are an inadequate number of two-parent family detention centers for families in ICE detention.

**Recommendations:**

CRCL's Rec Memo will recommend that a workgroup be formed in order to address the problems noted in the findings. Given DHS HQ Policy's history in leading and oversight of the Department's treatment of unaccompanied children (previous DHS HQ Workgroup on Unaccompanied Minors), this coordinated effort to address family separation would be most effective if directed by DHS HQ leadership.

CD-US-0090006

- *DHS/ORR  Workgroup*
  Form a DHS/ORR Family Separation Protocols Workgroup to address and implement the actions detailed above.  Workgroup Members should be operational personnel within ICE and CBP (adding ORR when required) who have both the authority and expertise to create family separation protocols that may require policy and process changes and possibly additional resources. Key personnel should include: ICE, CBP OFO and OBP HQ Juvenile Coordinators; ICE JFRMU HQ and onsite SMEs and CORs (from the Karnes, Dilley, and Berks Family Residential Centers); ICE ERO Supervisory Family Case Managers; CBP and ICE IT Systems Managers; the HQ Director for the HHS Office of Refugee Resettlement,  and additional personnel the agencies deem appropriate.

  - Specifically, the workgroup will address implementation of the following actions:

    a.  Add a Family Separation Section to the I-213/EARM systems

    b.  Formalize decision-making criteria and separation procedures (CBP/ICE)

    c.  Formalize separation review (I-213 and EARM) requirements (CBP/ICE)

    d.  Require timely I-213/EARM Review/Updates (CBP/ICE)

    e.  Develop coordinated jurisdiction/custody placement procedures (CBP/ICE/ORR)

    f.  Address options for needed duo-parent Family Residential Centers (ICE)

    g.  Develop "Family-Member Locator System" (CBP/ICE/ORR)

    h.  Establish streamlined process to ease communication among separated family members (CBP/ICE/ORR)

    i.  Develop decision-making criteria/policies/procedures for family reunification (for needs e.g. immigration court, approved asylum, family release, family removal) (CBP/ICE/ORR)

    j.  Publish and train on developed protocols, policies, and procedures to ensure consistency, efficiency and effectiveness

CD-US-0090007

# Exhibit 20

**FILED UNDER SEAL**