BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division
JAMES G. TOUHEY, JR.
Director, Torts Branch
PHILIP D. MACWILLIAMS
Trial Attorney
D.C. Bar No. 482883
ASHLEY R. GARMAN
Trial Attorney
N.Y. Bar No. 4904009
SARAH E. KLEIN
Trial Attorney
Florida Bar No. 119533
E-mail: Ashley.R.Garman@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
175 N Street, NE
Room 11-1330
Washington, DC 20530
Telephone: (202) 305-2609
Facsimile: (202) 616-5200

Attorneys for the United States of America

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| C.M., on her own behalf and on behalf of her minor child, B.M.; L.G., on her own behalf and on behalf of her minor child, B.G.; M.R., on her own behalf and on behalf of her minor child, J.R.; O.A. on her own behalf and on behalf of her minor child, L.A.; and V.C., on her own behalf and on behalf of her minor child, G.A.,<br><br>Plaintiffs,<br><br>v.<br><br>United States of America,<br><br>Defendant. | No. 2:19-CV-05217-PHX-SRB<br><br>**DEFENDANT UNITED STATES' REPLY IN SUPPORT OF ITS MOTION TO COMPEL THE ADULT PLAINTIFFS TO SUBMIT TO RULE 35 PSYCHOLOGICAL EXAMINATIONS AND SECOND MOTION TO EXTEND EXPERT DISCOVERY DEADLINES** |

Plaintiffs concede that they have put their mental conditions "in controversy" in this litigation by alleging severe and ongoing mental and emotional injuries, and that, in such circumstances, it is "normal practice" for a Court to permit Rule 35 psychological examinations by the defendant's expert. That is so even where the plaintiffs have sat for depositions, been examined by their own experts, or produced documents relating to their mental conditions. Examination by a defendant's expert is often the only means by which the defendant can determine the extent of a plaintiff's mental and emotional injuries and subject the assessments of plaintiff's expert to adversarial testing. And experienced psychologists like Defendant's expert, Dr. Winkel, can and regularly do perform those examinations without posing any risk of harm.

Plaintiffs provide no persuasive reason why the Court should deviate from that standard practice here. The President has denounced the prior practice of separating children from their parents at the United States-Mexico border and condemned "the human tragedy" that occurred. But Plaintiffs' claims of liability and their requests for damages must be assessed on an individual basis; indeed, presumably for that reason, Plaintiffs themselves each sat for multiple examinations by their own chosen expert. Defendant plainly has "good cause" to conduct the same examinations that Plaintiffs themselves deemed necessary to prove their case. And those examinations are particularly important here, given that Plaintiffs' allegations of mental and emotional injury are not an incidental part of their claims, but instead form the core basis for their damages claim.

The United States did not, as Plaintiffs contend, unreasonably delay in seeking these examinations. Rather, the United States undertook good-faith efforts to narrow the

issues and potentially avoid the need for contested motions practice before filing this motion—including reviewing Plaintiffs' expert disclosures, conferring with Plaintiffs, and proposing to conduct such examinations under the same conditions agreed to in another similar family-separation litigation.  When those efforts proved unsuccessful, Defendants moved promptly to compel the examinations of the Adult Plaintiffs.  The United States proposes to conduct those examinations under reasonable conditions that are no more intrusive than the conditions under which Plaintiffs conducted their own examinations.  Further, Plaintiffs' failure to provide complete expert disclosures until nearly three weeks *after* their August 25, 2022 disclosures deadline justifies an extension of time for the United States to serve its expert disclosures.  Accordingly, the United States' motions for an order compelling the Adult Plaintiffs to submit to Rule 35 psychological examinations by Dr. Winkel and for an extension of the expert disclosure deadline to allow for the examinations should be granted.

## **ARGUMENT**

### A. Good Cause Exists for Rule 35 Examinations of the Adult Plaintiffs, and the Proposed Parameters of Such Examinations are Reasonable

Though Plaintiffs concede that Rule 35 examinations would ordinarily be appropriate in a tort suit asserting ongoing severe mental and emotional harm, they argue that such examinations are not necessary here because the United States "already *knows* how Plaintiffs have been traumatized," Pls.' Opp. (ECF No. 292) at 13-14 (emphasis in original).  That contention misses the mark.  Although the government has condemned the prior practice of separating parents from children, acknowledged that many families have suffered, and made mental health resources available for separated families in general,

2

those statements and actions do not establish the nature or extent of any harm that *these specific Plaintiffs* suffered as a result of their separations, or inform the damages analysis. In this litigation, each Plaintiff—like any other plaintiff bringing a claim for intentional infliction of emotional distress under Arizona law—must prove, among other elements, that they suffered "severe emotional distress" as a result of Defendant's conduct. *Citizen Publ'g Co. v. Miller*, 115 P.3d 107, 110 (Ariz. 2005) (en banc) (citations omitted). A determination of whether a plaintiff suffered severe emotional distress requires an individualized assessment of that plaintiff's symptoms, *see E.E.O.C. v. GLC Restaurants, Inc.*, 2006 U.S. Dist. LEXIS 78270, at **27-28 (D. Ariz. Oct. 26, 2006), and cannot be established merely by reference to what one might expect or predict as a general matter. *See* 136 Am. Jur. Proof of Facts 3d 175 (originally published in 2013) (recognizing that claims for infliction of emotional distress necessarily turn on individualized factors).

Furthermore, beyond the "severe emotional distress" inquiry, considering causation and damages in the context of a tort claim for emotional distress requires particularized assessment of numerous factors such as, for example, a plaintiff's current presentation, prognosis, treatment needs, and possible alternative or contributing causes. Presumably, it is for these very reasons that Plaintiffs retained their own expert to conduct mental health evaluations of each Plaintiff. The United States should be afforded an equal opportunity to conduct its own individualized assessments in order to defend against Plaintiffs' liability and damages claims. *See Alvarado v. Northwest Fire Dist.*, 2020 U.S. Dist. LEXIS 79584, **7-8 (D. Ariz. May 5, 2020) (claim of emotional distress, accompanied by, *inter alia*, a cause of action for intentional infliction of emotional distress, an

allegation of a specific mental or psychiatric injury or disorder, *or* a claim of unusually severe emotional distress, is sufficient to support Rule 35 examination) (quoting *Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D. Cal. 1995)).

Plaintiffs' argument that other discovery provided in this litigation obviates the United States' need for its expert to examine the Adult Plaintiffs, Pls.' Opp. (ECF No. 292) at 6-7, 14, is equally mistaken. As the United States explained in its motion, it should not be precluded from conducting Rule 35 examinations because Plaintiffs have been deposed, have submitted expert reports, and have produced some document discovery regarding their mental conditions. *See* Defs.' Mot. for Rule 35 Examinations (ECF No. 288) at 8-9 (citing cases). Those discovery devices are not substitutes for examinations performed by an expert psychologist. *See Ashley v. City & County of San Francisco*, 2013 U.S. Dist. LEXIS 77134, **7-8 (N.D. Cal. May 30, 2013) (although defense expert could review plaintiff's videotaped deposition and medical records, "Defendants have the right to perform their own assessment, because one of the purposes of Rule 35 is to level the playing field in cases where physical or mental condition is at issue"). Plaintiffs do not cite any cases to the contrary or explain why they nonetheless believe that document and deposition discovery is an adequate substitute for Rule 35 evaluations here, nor could they persuasively do so.

Further, despite Plaintiffs' assertion that they have produced "substantial document evidence outlining Plaintiffs' ongoing harms," Pls.' Opp. (ECF No. 292) at 7, four of the five Adult Plaintiffs have not seen any mental health professional—except for Plaintiff's retained expert—since their release from immigration detention in late 2018, resulting in

4

an absence of treatment records. *See, e.g.,* Exhibit 1 **(**O.A. Dep. Tr.) at 98:15—100:6; Exhibit 2 (L.G. Dep. Tr.) at 124:1—125:6; Exhibit 3 (filed under seal) at 112:14-19, 118:5-21, 122:1-5; Exhibit 4 (C.M. Dep. Tr.) at 37:19-25.  Furthermore, to the extent Plaintiffs suggest that their allegations of severe, ongoing, and permanent mental or emotional injuries are uncontroverted in discovery, that is inaccurate.  *See, e.g.*, Exhibit 2 (L.G. Dep. Tr.) at 125:3-10 (L.G. stating that she has no mental health issues that affect her in her daily life); Exhibit 1 (O.A. Tr.) at 101:8—102:1 (O.A. stating that she has made progress over time, and that her daughter L.A. "is good now"); Exhibit 4 (C.M. Dep. Tr.) at 50:14—51:15, 54:7-20 (C.M. stating that she saw a psychologist while in detention after reunification with her child because her attorney had instructed her to do so, not because she had any "mental condition" or because she was upset or scared).[1] Given that questions remain regarding the nature, extent, and causes of the Adult Plaintiffs' claimed injuries—questions which are critical for both the liability and damages inquiry and which will be explored by Dr. Winkel during his examinations—there exists good cause for the proposed Rule 35 examinations even though other discovery methods have been permitted regarding Plaintiffs' claims.  *See Perona v. Time Warner Cable*, 2016 U.S. Dist. LEXIS 202950 *14 (C.D. Cal. May 5, 2016) ("Only if no additional relevant information could be gained by an examination should defendant's expert be denied examination." (citation and internal quotation marks omitted)).

        Finally, although Plaintiffs contend that they have significant interests in not being subjected to examinations, Pls.' Opp. (ECF No. 292) at 15-16, that unspecified interest

---

[1] The United States provides these record citations by way of example only, and not as all evidence adduced in discovery in contradiction of Plaintiffs' claims.

does not outweigh the United States' right to develop its defense to Plaintiffs' claims. Plaintiffs state that they have work and child care responsibilities, but such obligations are common to many tort plaintiffs, and Dr. Winkel would work with Plaintiffs to minimize any inconvenience, for example by conducting the examination on a non-workday if possible. Nor is there any basis for Plaintiffs' suggestion that they would be harmed by the requested examinations by the United States' expert—which, as discussed below, would be conducted in a professional manner by an experienced psychologist, pursuant to reasonable and non-invasive conditions that (like the expert examinations that Plaintiffs' own experts repeatedly conducted) pose no risk of traumatizing the Plaintiffs.  Thus, Plaintiffs have failed to demonstrate that their interests in not submitting to the examinations outweigh the United States' right to a fair trial.  *See Silva v. Mercado Food Enter.*, 2012 U.S. Dist. LEXIS 6463, \*\*10-12 (E.D. Cal. 2012).

Furthermore, contrary to Plaintiffs' assertions, the United States' proposed parameters for the requested Rule 35 examinations are well within the bounds of what courts have found reasonable, are consistent with those in another family-separation case pending in another district, and are less burdensome than the multiple, multi-day examinations conducted by Plaintiffs' own experts. The proposed content (a clinical interview and standardized testing) and duration (*i.e.*, not to exceed eight hours, inclusive of breaks) of the requested examinations are entirely reasonable.[2] *See* Defs.' Mot. for

---

[2] Indeed, Plaintiffs' own expert examined Plaintiffs over multiple full days, in some cases, as much as five-and-a-half days. Like Defendant's proposal, Plaintiffs' expert's examinations included a clinical interview and the administration of tests or questionnaires.

Rule 35 Examinations (ECF No. 288) at 12 (collecting cases). Moreover, the United States' proposal makes accommodations for each Plaintiff's language preference, *see id.* at 13 (Defendant's expert, a native Spanish speaker, will conduct the examination in the examinee's preferred language, and will proceed through a translator if necessary), and the Plaintiff's preferred geographic location, *see id.* at 10-11 (explaining that Defendant will conduct the examination in the preferred geographic location of the Plaintiff to be examined, wherever possible). And under the United States' proposal, the examinations will not be audio or video recorded—just as Plaintiffs' expert's examinations were not.[3]

Any potential temporary licensing issues also do not provide a basis for denying the Rule 35 examinations. The United States' expert faces no licensing restriction in Arizona, where Plaintiffs chose to bring this lawsuit. And although plaintiffs are usually required to travel to the forum state for Rule 35 examinations, 8B Fed. Prac. & Proc. Civ. § 2234 (3d ed.), the United States has agreed to conduct the examinations, if authorized, in the Plaintiff's preferred geographic location wherever possible.[4] As noted in its motion, the United States previously requested that Plaintiffs provide their preferred city and state for

---

[3] Plaintiffs argue that the Court should require the video recording of the examinations given Plaintiffs' concerns regarding language and literacy issues. Pls.' Opp. (ECF No. 292) at 17. But Defendant's proposal provides more appropriate and less intrusive accommodations for any language and literacy issues. Defendant's chosen expert, fully fluent in English, is also a native Spanish speaker who has conducted hundreds of examinations in Spanish. *See* Winkel Decl. (ECF No. 288-2). To the extent an examination needs to be conducted in a language other than Spanish or English, Defendant will conduct the examination through an interpreter—just as Plaintiffs' expert did.

[4] Temporary licensing requirements vary from state to state, so Defendant needs to know the state in which the examination would occur before its expert applies for a temporary license. It is the United States' understanding through Spring/Summer 2022, many states had relaxed or waived temporary licensure requirements as a result of the COVID-19 pandemic. Since that time, however, many states have re-tightened their licensure requirements.

each examination, but Plaintiffs never provided that information.  *See* Defs.' Mot. for Rule 35 Examinations (ECF No. 288) at 11.  Based on Defendant's current understanding, two of the five Adult Plaintiffs currently reside in Florida, which does not present any licensing issues for Defendant's expert.  As for the other three Adult Plaintiffs, Defendant's expert will make all reasonable efforts to obtain temporary licenses in or near Plaintiff's preferred geographic location, and Defendant will do its best to minimize any travel by Plaintiffs.

**B. The United States Has Not Unreasonably Delayed in Seeking the Rule 35 Examinations, and Good Cause Exists to Extend the Expert Discovery Deadlines**

The United States did not unreasonably delay in seeking an extension of its expert disclosures deadline, as Plaintiffs claim.  The United States sought an extension of its expert disclosures deadline on August 12, 2022—*before* Plaintiffs' expert disclosures deadline (ECF No. 268).  But Plaintiffs argued then that the United States' request was premature, and the United States' motion was denied on that basis (ECF No. 276).  Upon reviewing Plaintiffs' expert reports, the United States revisited the topic of Rule 35 examinations, as Plaintiffs invited it to do.[5]  The United States then reached out to Plaintiffs in an attempt to reach an agreement without court intervention, and the parties engaged in good-faith negotiations.  *See* Defs.' Mot. for Rule 35 Examinations (ECF No. 288) at 15.  Only once Plaintiffs advised the United States that they would not agree to an initial extension of the United States' expert disclosures deadline in order to continue

---

[5] *See* Pls.' Opp. to Defs.' 1st Mot. for Extension (ECF No. 273) at 1 ("If Defendant decides to seek Rule 35 psychological examinations after reviewing Plaintiffs' expert disclosures, the parties and the Court can address any necessary extensions at that time.").

those negotiations and that they did not consent to the United States' proposed Rule 35 examinations of the Adult Plaintiffs did this motion become necessary. *Id.* at 15-16.[6]

Moreover, Plaintiffs largely ignore that the United States' extension request is independently premised upon Plaintiffs' failure to make timely complete expert disclosures. *See* Scheduling Order at 4 (ECF No. 144) ("Plaintiffs shall provide full and complete expert disclosures, as required by Rule 26(a)(2)(A) - (C) of the Federal Rules of Civil Procedure, no later than August 25, 2022."). It is undisputed that Plaintiffs' expert reports did not contain all "the facts or data considered by the [expert] witness in forming [their opinion]," as required by Rule 26(a)(2)(B)(ii). In forming her opinions, Plaintiffs' expert purportedly relied on responses to certain tests or questionnaires the expert administered to each of the Plaintiffs. Yet Plaintiffs did not provide Defendant with any of the Plaintiffs' answers to those tests or questionnaires—*i.e.*, the raw data—until September 13, 2022, and only after Defendant specifically requested it. The United States' experts are entitled to review and consider that material in forming their opinions. Accordingly, separate and apart from the United States' request for Rule 35 examinations of the Adult Plaintiffs, an extension of its expert disclosure deadline related to all Plaintiffs is warranted based on Plaintiffs' delay.

---

[6] The United States' requested extension is warranted not only to ensure adequate time to conduct the Rule 35 examinations, if permitted, but also to enable Defendant's experts to complete their reports. While they have been working diligently on reviewing Plaintiffs' expert disclosures and preparing their own reports, the uncertainty regarding the Rule 35 examinations necessarily has created uncertainty regarding the scope of Defendant's experts' reports. And, as explained below, Defendant's experts have been hindered by Plaintiffs' nearly three-week delay in providing the raw data underlying their expert's opinions.

**CONCLUSION**

For the foregoing reasons, the Court should grant the United States' motion in its entirety.

Submitted this 13th day of October, 2022.

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General,
Civil Division
JAMES G. TOUHEY, JR.
Director, Torts Branch

*s/ Ashley R. Garman*
ASHLEY R. GARMAN
Trial Attorney
N.Y. Bar No. 4904009
SARAH E. KLEIN
Florida Bar No. 119533
E-mail: Ashley.R.Garman@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 305-2609

Attorneys for the United States of America