BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division
JAMES G. TOUHEY, JR.
Director, Torts Branch
PHILIP D. MACWILLIAMS
Trial Attorney
D.C. Bar No. 482883
IRINA MAJUMDAR
Trial Attorney
D.C. Bar No. 252757
SARAH E. KLEIN
Trial Attorney
Florida Bar No. 119533
E-mail: Irina.M.Majumdar@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
175 N Street, NE
Room 11-1330
Washington, DC 20530
Telephone: (202) 305-2609
Facsimile: (202) 616-5200

Attorneys for the United States of America

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| C.M., on her own behalf and on behalf of her minor child, B.M.; L.G., on her own behalf and on behalf of her minor child, B.G.; M.R., on her own behalf and on behalf of her minor child, J.R.; O.A., on her own behalf and on behalf of her minor child, L.A.; and V.C., on her own behalf and on behalf of her minor child, G.A., <br><br>Plaintiffs,<br><br>v.<br><br>United States of America,<br><br>Defendant. | No. 2:19-CV-05217-SRB<br><br>**UNITED STATES' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO CONDUCT THE DEPOSITION OF KIRSTJEN NIELSEN (ECF 302)** |

Plaintiffs ask this Court to take the extraordinary action of ordering the deposition of former Secretary of Homeland Security Kirstjen Nielsen so that Plaintiffs may question her about her official actions. *See C.M.* ECF 302; *A.P.F.* ECF 301 ("Motion for Leave"). However, the Supreme Court and the Ninth Circuit have stated that a deposition of a Cabinet official should be countenanced in only the most extraordinary circumstances. *United States v. Morgan,* 313 U.S. 409 (1941); *In re U.S. Dep't of Educ.*, 25 F.4th 692, 704 (9th Cir. 2022). Such extraordinary circumstances require a showing that the Cabinet official possesses unique, first-hand knowledge unavailable from any other source and is essential to the plaintiffs' claims. Plaintiffs have not – and cannot – make such a showing here, particularly given the United States' voluminous document productions and the depositions already conducted of high-ranking officials who worked directly with Secretary Nielsen.

Accordingly, the United States respectfully requests that this Court deny Plaintiffs' motion to depose Secretary Nielsen. If this Court concludes that Plaintiffs have shown the required extraordinary circumstances to obtain certain, specific testimony from Secretary Nielsen, the United States respectfully requests that her deposition be limited in duration and scope to only the particular topic or topics identified by the Court.

**I. BACKGROUND**

    **A. Factual Background**

Kirstjen Nielsen served as the Secretary of Homeland Security from December 6, 2017 until April 10, 2019.

On April 6, 2018, former Attorney General Jefferson Sessions issued a memorandum to all federal prosecutors along the Southwest border, directing each United States Attorney's Office "to the extent practicable, and in consultation with DHS - to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under section 1325(a)." (the "Zero Tolerance Memorandum"). Following issuance of the Zero Tolerance Memorandum, a memorandum was prepared for Secretary Nielsen that addressed various options to increase referrals for prosecution of immigration offenses, consistent with the Zero Tolerance Memorandum. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

On April 23, 2018, the memorandum entitled "Increasing Prosecutions of Immigration Violations" was submitted to Secretary Nielsen. *See* Motion for Leave Exhibit G (the "DHS Referral Memorandum"). The DHS Referral Memorandum was signed by Kevin McAleenan, Commissioner of U.S. Customs and Border Protection ("CBP"), Thomas Homan, Acting Director of U.S. Immigration and Customs Enforcement ("ICE"), and Francis Cissna, Director of U.S. Citizenship and Immigration Services ("USCIS"). The memorandum ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████ *Id*. ████████████████████████████ *Id*. On May 4, 2018, Secretary Nielsen approved Option 3 in the DHS Referral Memorandum, ██████████████████████████████ █████████████████ *Id*. (the "DHS Referral Policy").

**B. Procedural Background**

Plaintiffs are noncitizen adults and their noncitizen minor children who were separated at the United States-Mexico border in 2017 or 2018. Plaintiffs bring claims against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2680, for intentional infliction of emotional distress and negligence. Plaintiffs allege that federal officials developed a "policy and practice" to "intentionally traumatize migrant families, in an effort to deter others from seeking asylum in the United States." Motion for Leave at 1. Plaintiffs also contend that the government acted negligently by failing to properly track and reunify separated families and by failing to facilitate adequate communications between separated parents and children. Motion for Leave at 2.

The United States' production of documents in this litigation has been voluminous. Specifically, it has produced over 60,000 documents, tens of thousands of which are from custodians within DHS, CBP, and ICE, including Secretary Nielsen. Moreover, in the Amended Case Management Order, Plaintiffs were authorized to depose 12 government

officials regarding the "creation, development, and implementation" of policy or policies that led to the separation of families. *See C.M.* ECF 144 at 3; *A.P.F.* ECF 144 at 3.

In authorizing the policy-level depositions, the Court exempted "current or former Cabinet level officials, heads of agencies, or White House officials or advisors." *Id*. The depositions of such witnesses could only be conducted by agreement of the parties or leave of this Court. *See id*. In addition to the 12 government officials, the United States also consented to Plaintiffs' request to depose two former heads of agencies—CBP Commissioner McAleenan and former ICE Director Homan.[1] Additionally, the United States agreed to the deposition of another policy-level deponent, Robert Guadian, who served as the senior ICE representative for the inter-agency team involved in the efforts to reunify separated families. Plaintiffs therefore have deposed 15 current or former senior government officials regarding the "creation, development, and implementation" of the Zero Tolerance Policy and the DHS Referral Policy, and any other policy or policies that would have involved separations of families, including a Rule 30(b)(6) deposition of DHS.[2]

Despite the wealth of information already obtained by Plaintiffs, on September 22, 2022, Plaintiffs notified the United States that they sought to depose Secretary Nielsen. The parties met and conferred on September 27, 2022. On September 29, 2022, the United States informed Plaintiffs that it would not consent to Secretary Nielsen's deposition and Plaintiffs would need to seek leave of the Court.

## II.   ARGUMENT

### A. The *Morgan* Doctrine Governs Requests to Depose Cabinet Officials

---

[1] Plaintiffs did not seek to depose Director Cissna.

[2] In addition to the depositions of Mr. McAleenan, Mr, Homan, and the DHS 30(b)(6) witness, Plaintiffs deposed the following eight senior DHS, CBP, or ICE witnesses: Matthew Albence (Executive Associate Director for ICE Enforcement and Removal Operations), Michael Dougherty (former DHS Assistant Secretary for Border, Immigration, and Trade in the Office of Policy), Robert Guadian (former ICE liaison to reunification task force), Mellissa Harper (former Unit Chief of the ICE Juvenile and Family Residential Management Unit), Brian Hastings (former CBP Chief of Law Enforcement Operations), Tracy Short (former Senior Counselor to the Secretary of Homeland Security and former U.S. Immigration and Customs Enforcement Principal Legal Advisor), Ronald Vitiello (former CBP Deputy Commissioner), and Chad Wolf (former DHS Chief of Staff).

The Supreme Court and courts of appeals have uniformly rejected compelled depositions of high-ranking federal officials in civil cases and have long held that such an official should not be "subjected to [an] examination" "regarding the process by which he reached the conclusions of his [decision], including the manner and extent of his study of the record and his consultation with subordinates." *Morgan*, 313 U.S. at 422; *see Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979) ("Heads of government agencies are not normally subject to deposition."); *Peoples v. U.S. Dep't of Agric.*, 427 F.2d 561, 567 (D.C. Cir. 1970) ("[S]ubjecting a cabinet officer to oral deposition is not normally countenanced."). "[C]ompelling the testimony of a cabinet secretary about the actions she took as a leader of the executive branch" is an "extraordinary action" requiring "extraordinary circumstances." *In re U.S. Dep't of Educ.*, 25 F.4th at 695. That is because "judicial inquiry into executive motivation represents a substantial intrusion into the workings of another branch of Government," and "should normally be avoided." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2573 (2019) (quotation marks omitted). This foundational principle was central to the Supreme Court's decision in *Morgan*, where a district court had authorized testimony by the Secretary of Agriculture concerning "the process by which he reached the conclusions of his order, including the manner and extent of his study of the record and his consultation with subordinates." 313 U.S. at 421–22. The Supreme Court held that this was error and cautioned that the executive and judicial processes represent "collaborative instrumentalities of justice and the appropriate independence of each should be respected by the other." *Id.* at 422.

*Morgan* is the "seminal authority on the deposition of cabinet secretaries and other high-ranking government officials." *In re U.S. Dep't of Educ.*, 25 F.4th at 700. Courts across the country have applied it to prevent Cabinet officials and other high-ranking government officials from being compelled to testify about their reasons for taking official action absent extraordinary circumstances. "Although district courts have occasionally ordered such depositions, circuit courts have issued writs of mandamus to stop them when asked to, generally finding that the circumstances before them were not extraordinary." *Id.* at 699–705 (granting writ of mandamus); *In re McCarthy*, 636 F. App'x 142, 143 (4th Cir.

2015) (Fourth Circuit, granting writ of mandamus); *Warren Bank* v. *Camp*, 396 F.2d 52, 56–57 (6th Cir. 1968); *In re United States (Bernanke)*, 542 F. App'x 944, 947–48 (Fed. Cir. 2013); *Lederman v. N.Y.C. Dep't of Parks & Rec.*, 731 F.3d 199, 203 (2d Cir. 2013); *Bogan v. City of Boston*, 489 F.3d 417, 423–24 (1st Cir. 2007); *In re United States (Holder)*, 197 F.3d 310, 313–14 (8th Cir. 1999) (granting writ of mandamus); *In re FDIC*, 58 F.3d 1055, 1060–63 (5th Cir. 1995) (granting writ of mandamus); *In re United States* (Kessler), 985 F.2d 510, 511–13 (11th Cir. 1993) (per curiam) (granting writ of mandamus); *Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211–12 (4th Cir. 1991); *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586–87 (D.C. Cir. 1985); *United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 316 (D.N.J. 2009) (noting and citing "wide agreement among the Circuits" that high-ranking government officials "should not be subject to the taking of depositions absent extraordinary circumstances"). Indeed, when faced with this issue, the Ninth Circuit has never permitted the deposition of a current or former Cabinet official. *See In re U.S. Dep't of Educ.*, 25 F.4th at 706 (issuing writ of mandamus directing the district court to quash the subpoena for former Secretary of Education's deposition); *Kyle Eng'g Co.*, 600 F.2d at 231 (upholding district court's order vacating deposition notice of the Administrator of the Small Business Administration, commenting that "[h]eads of government agencies are not normally subject to deposition").[3]

These decisions rest on several rationales. First, constitutional separation-of-powers principles are implicated when litigating parties attempt to ascertain the thoughts and mental processes by which high-ranking government officials exercise their official discretion. *See Morgan*, 313 U.S. at 422 ("Just as a judge cannot be subjected to such a scrutiny, . . . so the integrity of the administrative process must be equally respected."). Second, subjecting high-ranking government officials to depositions in civil actions involving their agency

---

[3] Plaintiffs' motion cites only one case purporting to authorize the compelled deposition of a Cabinet secretary—*Sherrod v. Breitbart*, 304 F.R.D. 73 (D.D.C. 2014), where a district court authorized the deposition of the Secretary of Agriculture—but the D.C. Circuit subsequently granted the government's petition for a writ of mandamus in that case, holding that the district court had abused its discretion, and ordering the subpoenas for the Secretary's deposition quashed. *See* Order, *In re United States (Vilsack)*, No. 14-5146 (D.C. Cir. July 24, 2014) at Exhibit 2.

6

would impede the exercise of official duties by exerting a chilling effect on official decision-making. *See In re U.S. Dep't of Educ.*, 25 F.4th at 700-01. Third, a contrary rule could "discourage them from taking that office in the first place." *See id.* at 705.[4]

Applying these principles, the Ninth Circuit recently affirmed that the *Morgan* doctrine applies even after a Cabinet official leaves office. *See In re U.S. Dep't of Educ.*, 25 F.4th at 705 ("The threat of having to spend their personal time and resources preparing for and sitting for depositions could hamper and distract officials from their duties while in office. If allowed the minute cabinet secretaries leave office, overwhelming and unnecessary discovery could also discourage them from taking that office in the first place or leaving office when there is controversy."); *see also In re United States*, 542 F. App'x 944, 949 (Fed. Cir. 2013) ("We note that the process-inquiry rationale of *Morgan* and its successors hardly becomes inapplicable upon an official's departure from [her] office.").[5]

The party seeking the deposition of a Cabinet official bears the burden of demonstrating "extraordinary circumstances" that justify their request. *See In re U.S. Dep't of Educ.*, 25 F.4th at 695. Specifically, a requesting party must show that the Cabinet official possesses information that is *essential* to their claims and that is *not obtainable from another source*. *See id.* at 702. It is insufficient for plaintiffs to show that the sought testimony is relevant—or even highly relevant—to their claims. *Id.* at 703 (explaining that the court

---

[4] Plaintiffs state that their request to depose Secretary Nielsen should be analyzed under the "apex doctrine." *See* Motion for Leave at 7. Although some courts have used the "*Morgan* doctrine" and "apex doctrine" interchangeably, the doctrines are not substitutable. The *Morgan* doctrine is the proper analysis for requests to depose Cabinet officials such as Secretary Nielsen as set forth herein.

[5] In arguing that the presumption against deposition applies with less force for former officials, Plaintiffs rely on two district court cases -- one from outside this circuit and the other unreported -- that pre-date *In re U.S. Dep't of Education*. *See* Pls' Mot. at 9 (quoting *Givens v. Newsom*, No. 2:20-cv-0852, 2021 WL 65878, at *8 (E.D. Cal. Jan. 7, 2021); *Sec. & Exch. Comm'n v. Comm. On Ways & Means of the U.S. House of Representatives*, 161 F. Supp. 3d 199, 249 (S.D.N.Y. 2015)). Neither case involved the deposition of a former Cabinet official. Indeed, *Sec. & Exch. Comm'n* was decided on the grounds that the deponent – a staff director for a House subcommittee – was not even a high-ranking government official entitled to the presumption. *See Sec. & Exch. Comm'n*, 161 F. Supp. 3d at 250.) Moreover, this court has recognized that high-ranking government officials "continue to be protected even after leaving office." *Topete v. City of Mesa*, No. CV1803127, 2020 WL 8872800, at *1 (D. Ariz. Apr. 29, 2020) (citation omitted).

should not allow "the taking of depositions of cabinet-level officials in which relevant, but unnecessary information, was sought"). Instead, the requested testimony must be "absolutely needed for a case." *Id.* at 695 ("If the information is not *absolutely needed* for a case, we cannot allow a deposition to disrupt the normal governmental balance of powers.") (emphasis added). Further, the Ninth Circuit has held that "literal exhaustion of alternatives" is required to justify the deposition of a Cabinet official. *See id.* at 704.

### B. The *Morgan* doctrine bars Plaintiffs from deposing Secretary Nielsen

Plaintiffs' motion should be denied because they have not shown extraordinary circumstances warranting Secretary Nielsen's deposition. They have failed to demonstrate that she possesses unique, first-hand knowledge essential to their claims that cannot be obtained from any other source. Plaintiffs already have the deposition testimony of former CBP Commissioner McAleenan, former ICE Director Homan, and the other 13 policy-level government witnesses, the United States' voluminous document productions, and Secretary Nielsen's testimony to Congress concerning the DHS Referral Policy. Further, that Secretary Nielsen is no longer a high-ranking government official, or that she has spoken publicly about the DHS Referral Policy on a few instances since leaving office, has no bearing on the *Morgan* analysis.

### 1. Secretary Nielsen does not possess unique, personal knowledge that is essential to Plaintiffs' claims and is unavailable from any other source.

Plaintiffs argue that they should be permitted to depose Secretary Nielsen because "she has unique, first-hand knowledge" of the "purpose of the DHS Referral Policy and how the DHS Referral Policy was formulated and implemented, including the operational considerations taken into account before the DHS Referral Policy was implemented, and the government's understanding of the psychological harm and trauma that the DHS Referral Policy would inflict on the parents and children being separated." Motion for Leave at 10. The testimony Plaintiffs seek from Secretary Nielsen thus falls within three categories: (1) her rationale for approving Option 3 in the DHS Referral Memorandum; (2) her knowledge of alleged operational limitations attendant to implementing the DHS Referral Memorandum; and (3) her knowledge of the alleged potential harm of family separations.

Motion for Leave at 11. Because Plaintiffs have not demonstrated that Secretary Nielsen possesses unique, personal knowledge on these topics that is essential to their claims against the United States and is not obtainable from another source -- particularly in light of the voluminous discovery they have already received in this case -- they have not established extraordinary circumstances justifying her deposition.

### a. Secretary Nielsen's rationale for approving Option 3

Plaintiffs assert that only Secretary Nielsen can say why she approved Option 3 in the DHS Referral Memorandum. *See* Motion for Leave at 11. Plaintiffs are wrong. The DHS Referral Memorandum is the decision document that was signed by Secretary Nielsen and ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *See* Motion for Leave at Exhibit G. Moreover, even looking beyond this decision document, there are other sources of information on this topic. First, Secretary Nielsen's then-Chief of Staff, Chad Wolf, testified ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *See* Exhibit 3 (Chad Wolf Dep. at 262:12-263:10). Second, Secretary Nielsen's publicly available congressional testimony ▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *See* Exhibit 4 (March 6, 2019 testimony at 31)(testifying that she issued the DHS Referral Policy "after many consultations with [her component heads about] the direction to increase prosecution between ports of entry"). Finally, Plaintiffs have already deposed two of those component heads responsible for preparing the DHS Referral Memorandum and ▉▉▉▉▉▉▉▉▉▉—former ICE Director Homan and former CBP Commissioner McAleenan. Mr. Homan and Mr. McAleenan both testified as ▉▉▉▉▉▉▉▉▉▉ *See* Exhibit 1 (McAleenan Dep at 95:15-98:6, 344:24-368:18) ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉; Exhibit 5 (Thomas Homan Dep. at 43:13-45:22; 149:5-150:8) (▉▉▉▉ They also testified that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

[REDACTED] Exhibit 1 (McAleenan Dep. at 370:16-18). *See also* Exhibit 4 (Homan Dep. at 32:18-24).

Plaintiffs seek to discover Secretary Nielsen's "intention in signing the DHS Referral Policy", *see* Motion for Leave at 2, even though the voluminous discovery materials already received by Plaintiffs and the sworn testimony of the 15 policy-level deponents to date establish that the purpose of the DHS Referral Policy was to increase prosecutions for immigration offenses. Plaintiffs' mere allegations of governmental misconduct *writ large* do not warrant this apparent fishing expedition in seeking Secretary Nielsen's deposition. *See In re United States*, 542 F. App'x 944, 949 (Fed. Cir. 2013) (granting writ of mandamus directing lower court not to allow deposition of Chairman of Federal Reserve Board; noting requesting party's "efforts to inquire into these issues have all the appearance, and vices, of a fishing expedition").

Former CBP Commissioner McAleenan testified [REDACTED] Exhibit 1 (McAleenan Dep. at 371:9-22). Mr. McAleenan further explained that [REDACTED] *Id.* at 373:23-374:1. Secretary Nielsen's own sworn statements before Congress [REDACTED] *See* Exhibit 4 (March 6, 2019 testimony at 46) (testifying that families were not separated for the purpose of deterring them from coming to the United States), Exhibit 6 (May 15, 2018 testimony at 18) (testifying, less than two weeks after signing the DHS Referral Memorandum, that she had "not been directed to [separate parents and children] for the purposes of deterrence" but that "[her] decision has been that anyone who breaks the law will be prosecuted"). Accordingly, Plaintiffs already have learned through other available sources that Secretary Nielsen did not approve Option 3 in the DHS Referral Memorandum with ill intent or to cause harm. *See In re Dep't of Educ.*, 25 F.4th at 704 (considering Secretary DeVos deposition not essential since Plaintiffs knew how DeVos would testify on the intended deposition subject matter). Plaintiffs therefore have not

established extraordinary circumstances to warrant Secretary Nielsen's deposition on this topic.

### b. Secretary Nielsen's knowledge of alleged operational limitations associated with the DHS Referral Policy

Plaintiffs seek to depose Secretary Nielsen regarding "her awareness of the operational limitations that would impact the government's ability to care for, track, and reunify separated families." Motion for Leave at 10-11. Plaintiffs do not demonstrate that this information is not obtainable from any other source and is essential to their claims.

Deposition testimony of other policy-level government officials has established that Secretary Nielsen's awareness of the operational aspects of implementing the DHS Referral Policy ███████████████████████████████████████ Mr. Homan and Mr. McAleenan both testified ███████████████████████████████████████ *See* Exhibit 5 (Homan Dep. at 48:17-51:19, 152:5-25) ███████████████████████████████████████; Exhibit 1 (McAleenan Dep. at 232:3-22, 265:8-14; 272:12-274:25) ███████████████████████████████████████ Thus, information regarding Secretary Nielsen's awareness of alleged operational limitations associated with the DHS Referral Policy can be—and was—obtained from other sources. *Tierra Blanca Ranch High Country Youth Program v. Gonzales*, 329 F.R.D. 694, 698–99 (D.N.M. 2019) ("[I]t is difficult to conclude that [the Governor's] knowledge about what happened at those meeting was unique to her.").

Furthermore, because Secretary Nielsen ███████████████████████ her understanding of those operational processes cannot be essential to Plaintiffs' claims. *See In re Dep't of Educ.*, 25 F.4th 703. Multiple witnesses, including DHS's 30(b)(6) deponent, have testified ███████████████████████

1   *See, e.g.*, Exhibit 7 (DHS 30(b)(6) Dep. at 145:8-17) ██████████
2   ████████████████████████████████████████████████████████████████
3   ████████████████████████████████████████████████████████████████
4   ███████████████████████, Exhibit 7 (DHS 30(b)(6) Dep. at 247:12-250:1) ████
5   ████████████████████████████████████████████████████████████████
6   ██████████████; Exhibit 1 (McAleenan Dep. at 71:4-24) ██████████████
7   ████████████████████████████████████████████████████████████████
8   ████████████████████████████████████████████████████████████████
9   ████████████████████████████████████████, Exhibit 1 (McAleenan
10  Dep. at 214:7-215:16) ██████████████████████████████████████████
11  ██████████████████████████████; Exhibit 5 (Homan Dep. at 41:13-25)
12  ████████████████████████████████████████████████████████████████
13  ███████████████████████████; Exhibit 8 (Brian Hastings Dep. at 60:19-62:17)
14  ████████████████████████████████████████████████████████████████
15  ████ Exhibit 9 (Ronald Vitiello Dep. at 181:9-182:16) ██████████████
16  ████████████████████████████████████████████████████████████████
17  ███████████████████████████████ Thus, the deposition testimony already
18  obtained by Plaintiffs demonstrates that Secretary Nielsen does not have unique, first-hand
19  knowledge essential to Plaintiffs' claims regarding the implementation of the DHS Referral
20  Policy.
21      The Ninth Circuit has warned that ordering the deposition of Cabinet officials in
22  every litigation in which they may have relevant knowledge would "distract[] cabinet
23  secretaries from their essential duties with an inundation of compulsory, unnecessary
24  depositions and upset[] the proper balance of powers." *In re Dep't of Educ.*, 25 F.4th at
25  703. Testimony from the DHS Rule 30(b)(6) witness ████████████████ To
26  ██████ He explained that ████████████████████████████████████████
27  ████████████████████████████████████████████████████████████████
28  ████████████████████████████ Exhibit 7 (DHS 30(b)(6) Dep. at 59:15-60:2). To

require a Cabinet official to testify to their knowledge of the operational impacts of a policy creates serious concerns that the Secretary's duties would be disrupted given "the sheer number of lawsuits filed against" the United States for actions taken by DHS and its component agencies. *In re Dep't of Educ*. 25 F.4th at 703.

### c. Secretary Nielsen's purported knowledge of alleged potential harm from the DHS Referral Policy

Plaintiffs' request to depose Secretary Nielsen regarding her purported knowledge of alleged potential harm resulting from family separations, Motion for Leave at 11, fares no better. Plaintiffs have not shown and cannot show a need for Secretary Nielsen's testimony on this topic in light of other information that is available. While under oath during congressional hearings, Secretary Nielsen was questioned about her awareness of potential harms that may occur from family separations. *See* Exhibit 4 (March 6, 2019 testimony at 41-44), Exhibit 6 (May 15, 2018 testimony at 20). Additionally, Secretary Nielsen's Chief of Staff Chad Wolf ███████████████████████████████████████ *See* Exhibit 3(Wolf Dep. at 194:13-198:10). Therefore, information on this issue is available from other sources. Moreover, even if Secretary Nielsen were to testify as to an understanding regarding the potential risks of family separation as a general matter, Plaintiffs have not demonstrated that she has any unique, personal knowledge with respect to any harms that might have been experienced by any particular plaintiffs. Thus, Plaintiffs have not demonstrated a need to depose Secretary Nielsen on the basis of any unique and non-repetitive personal knowledge on this topic. *See Topete*, 2020 WL 8872800, at *2 (granting defendant's motion for a protective order where Plaintiff failed to "*credibly* show[]" that the individual he sought to depose had unique and non-repetitive first-hand knowledge) (emphasis added).

### C. Secretary Nielsen's public engagements are immaterial to Plaintiffs' request

Plaintiffs argue that Secretary Nielsen's comments about the DHS Referral Policy in a few interviews since leaving office weigh in favor of ordering her deposition. *See* Motion for Leave at 16. Plaintiffs' contention is without merit. The government's interest in

protecting Cabinet officials from deposition regarding their official actions is not changed by the official's decision to offer non-sworn commentary on a policy or issue after leaving office. Indeed, one of the rationales underlying the *Morgan* doctrine is that the probing of a Cabinet official's mental processes "would have serious repercussions for the relationship between two coequal branches of government." *In re United States*, 624 F.3d 1368, 1372 (11th Cir. 2010) (quotation omitted); *cf. Dep't of Comm.*, 139 S. Ct. at 2573 ("[J]udicial inquiry into executive motivation represents a substantial intrusion into the workings of another branch of Government. . . ." (quotation omitted)); *Morgan*, 313 U.S. at 422 ("Just as a judge cannot be subjected to such scrutiny, so the integrity of the administrative process must be respected"). This rationale applies with equal force even if a Cabinet official later may voluntarily choose to speak publicly about a government policy in which she is involved.[6]

A deposition of Secretary Nielsen is unjustified because it is not essential to Plaintiffs' claims. Further, Plaintiffs already have the deposition testimony of former CBP Commissioner McAleenan, former ICE Director Homan, and the other 13 policy-level government witnesses, the United States' voluminous document productions, and Secretary Nielsen's testimony to Congress concerning the DHS Referral Policy.

### D. If this Court grants Plaintiffs' motion, the deposition of Secretary Nielsen should be circumscribed in duration and scope

Should this Court conclude that Plaintiffs have established extraordinary circumstances justifying the deposition of Secretary Nielsen, the deposition should be narrowly limited in duration and scope. On the rare occasions where courts have permitted the deposition of high-ranking government officials, they have imposed significant time and content limitations. *See, e.g.*, *Kob v. Cnty. of Marin*, No. 07-2211, 2009 WL 3706820, at *4 (N.D. Cal. Nov. 3, 2009) (permitting deposition of County President of Board of

---

[6] There is a difference between a voluntary decision to speak publicly on a topic at a time and place of one's choosing and a court-ordered deposition, particularly where there is a real prospect of numerous deposition requests in the dozens of similar cases that are currently in litigation in various districts across the country. As explained *supra*, the former does not implicate the rationales underlying the *Morgan* doctrine.

14

Supervisors but limiting the permissible topics of inquiry); *Odom v. Roberts*, 337 F.R.D. 359 (N.D. Fla. 2020) (permitting deposition of Sheriff but limiting deposition to two hours).

### III. CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court deny Plaintiffs' Motion for Leave to Conduct the Deposition of Kirstjen Nielsen. Should the Court conclude that Plaintiffs have demonstrated extraordinary circumstances to depose Secretary Nielsen, the United States requests the deposition be limited in duration and scope to only that topic or topics identified in the order compelling the deposition.

Submitted this 14th day of November, 2022.

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JAMES G. TOUHEY, JR.
Director, Torts Branch

*s/ Irina M. Majumdar*
IRINA M. MAJUMDAR
Trial Attorney
D.C Bar No. 252757
SARAH E. KLEIN
Trial Attorney
Florida Bar No. 119533
E-mail: Irina.m.majumdar@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 598-5403

Attorneys for the United States of America

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

*s/ Irina M. Majumdar*
IRINA M. MAJUMDAR
Attorney for United States of America