David B. Rosenbaum, 009819
Travis C. Hunt, 035491
BriAnne N. Illich Meeds, 036094
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
(602) 640-9000
drosenbaum@omlaw.com
thunt@omlaw.com
billichmeeds@omlaw.com
*Counsel for C.M. Plaintiffs*
*(Additional Counsel Listed on the Signature Page)*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| C.M., on her own behalf and on behalf of her minor child, B.M.; L.G., on her own behalf and on behalf of her minor child, B.G.; M.R., on her own behalf and on behalf of her minor child, J.R.; O.A., on her own behalf and on behalf of her minor child, L.A.; and V.C., on her own behalf and on behalf of her minor child, G.A.,<br><br>Plaintiffs,<br><br>v.<br><br>United States of America,<br><br>Defendant. | No. 2:19-cv-05217-SRB<br><br>**REPLY IN SUPPORT OF MOTION FOR LEAVE TO CONDUCT THE DEPOSITION OF KIRSTJEN NIELSEN** |

Plaintiffs submit this reply in support of their Motion for Leave to Conduct the Deposition of Kirstjen Nielsen (E.C.F No. 302). Defendant opposes Plaintiffs' Motion because Ms. Nielsen purportedly does not possess "unique, first-hand knowledge unavailable from any other source and [which] is essential to the plaintiffs' claims." *See* E.C.F No. 315 at 1. To the contrary, the extensive record in this case and Ms. Nielsen's public statements provide ample evidence of her unique knowledge—████████ ████████████████████████████████. Plaintiffs' Motion should be granted.

**I.   ARGUMENT**

    **A.   *In Re U.S. Dep't of Education* is Inapplicable.**

Relying on *In Re U.S. Dep't of Educ.*, 25 F.4th 692, 704 (9th Cir. 2022), Defendant argues that Plaintiffs are not entitled to depose Ms. Nielsen unless Plaintiffs can "show

that the Cabinet official possesses information that is *essential* to their claims and that is *not obtainable from another source*." E.C.F No. 315 at 7 (citing *In Re U.S. Dep't of Educ.*, 25 F.4th at 702) (emphasis in original). But as Plaintiffs explained in their Motion, *In Re U.S. Dep't of Educ.* is inapplicable to the dispute before the Court. That case involved review of an agency action under the Administrative Procedure Act ("APA"), which is generally limited to the administrative record absent a showing of agency bad faith. *See U.S. Dep't of Educ.*, 25 F.4th at 700. There, the court considered whether separation of powers allowed for the extra-record deposition of an agency secretary when reviewing an agency action under the APA. *Id.* at 702. To allow a deposition in a case brought under the APA, the Ninth Circuit required: "(1) a showing of agency bad faith; (2) [that] the information sought from the secretary is essential to the case; and (3) [that] the information sought from the secretary cannot be obtained in any other way." *Id.* The Ninth Circuit expressly noted that this test "rest[s] on a constitutional foundation, and *we see our analysis in this opinion as distinct from the 'apex doctrine.'*" *Id.* at 700 n.1 (emphasis added). Because Plaintiffs' claims arise under the FTCA, not the APA, *In Re U.S. Dep't of Educ.* does not control.[1]

Defendant also contends that "constitutional separation-of-powers principles are implicated when litigating parties attempt to ascertain the thoughts and mental processes

---

[1] Although the test set forth in *In Re U.S. Dep't of Educ.* is inapplicable here, Plaintiffs also meet this standard as Plaintiffs have alleged intentional misconduct on the part of the government, that the information sought is essential to the case, and that the information sought cannot be obtained through other depositions or means of discovery. *Compare C.M.* Compl. (E.C.F. No. 1) ¶ 27 (alleging that the government instituted the family separation policy "to deter individuals from seeking asylum or otherwise coming to the United States" and "to deter immigration by harming families through the forcible separation of parents and children"), *with State v. United States Dep't of Com.*, 333 F. Supp. 3d 282, 289 (S.D.N.Y. 2018) (finding that a deposition of then-Secretary of Commerce Wilbur Ross was appropriate where plaintiffs "plausibly allege[d] that an invidious discriminatory purpose was a motivating factor in the challenged decision" to add a citizenship question to the decennial census and that such a motive would be indicative of bad faith or improper behavior), *vacated as moot*, 351 F. Supp. 3d 502 (S.D.N.Y. 2019), *aff'd in part, rev'd in part and remanded sub nom. Dep't of Com. v. New York*, 139 S. Ct. 2551 (2019).

by which high-ranking government officials exercise their official discretion." E.C.F No. 315 at 6 (citing *United States v. Morgan*, 313 U.S. 409, 422 (1941)). Yet Defendant's argument again rests on a case involving review of an agency action under the APA, which is not at issue in this litigation. Here, Plaintiffs have brought claims for negligence and intentional infliction of emotional distress under the FTCA and state law. Plaintiffs are not challenging the DHS Policy under the APA, and as such are not limited to an administrative record. Plaintiffs, therefore, are entitled to discovery regarding the intent behind the implementation of the Policy, which necessarily involves probing the mental processes of the officials involved in developing and implementing the Policy.

Plaintiffs' request to depose Ms. Nielsen is properly subject to the apex doctrine. Under the apex doctrine, the Court must assess "(1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012); *see also Coleman v. Schwarzenegger*, 2008 WL 4300437, at *3 (N.D. Cal. Sept. 15, 2008) (to meet their burden, plaintiffs must show that proposed high-ranking deponents "possess personal knowledge of facts critical to the outcome of the proceedings and that such information cannot be obtained by other means"). Because Plaintiffs have established that Ms. Nielsen has unique first-hand, non-repetitive knowledge of the facts at issue in the case and have exhausted other less-intrusive discovery methods, her deposition should be allowed.

**B.  Ms. Nielsen Has Unique First-Hand, Non-Repetitive Knowledge Of The Facts At Issue In The Case.**

Defendant argues that Plaintiffs "have not demonstrated that Ms. Nielsen possesses unique, personal knowledge" justifying her deposition in this case. E.C.F No. 315 at 8–9. Defendant's position is not supported by the record, especially in light of the public statements made by Ms. Nielsen, ███████████████████████

As an initial matter, Defendant attempts to downplay the significance of Ms. Nielsen's public statements regarding the DHS Referral Policy by arguing that "[t]he government's interest in protecting Cabinet officials from deposition regarding their official actions is not changed by the official's decision to offer non-sworn commentary on a policy or issue after leaving office." E.C.F No. 315 at 13–14.  Where a proposed apex deponent has made public statements about the facts at issue in a case—as Ms. Nielsen has done here—courts have found that those statements suggest that the deponent has unique, firsthand knowledge. *See, e.g.*, *Ahlman v. Barnes*, 2021 WL 1570838, at *7–8 (C.D. Cal. Mar. 9, 2021) (allowing the deposition of a Sherriff because "[i]n looking at Sheriff Barnes's public statements as a whole, it is clear that he was not only involved in setting COVID-19 related policies within the Orange County Jail, but he also has personal knowledge of how COVID-19 is impacting the Orange County Jail"); *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, 2021 WL 3140030, at *12 (D.N.J. July 7, 2021) (allowing an apex deposition where the proposed high-level employee "possesses superior or unique information relevant to the issues being litigated" and made "public statements [that] revealed additional information about the alleged prior misstatements . . . [which] are relevant to these cases.").  Ms. Nielsen chose to voluntarily make public statements about her role in the development and implementation of the DHS Referral Policy after she resigned as the Secretary of DHS.  Those public statements, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ demonstrate that she has unique, non-repetitive knowledge regarding the concerns she had about DHS's ability to implement the policy; the factors that led her to ultimately sign the policy; and her understanding of the risks associated with implementing the family separation policy, including the risk of psychological harm that would result from separating families.  Accordingly, Plaintiffs should have the opportunity to depose Ms. Nielsen to obtain her understanding of events,

and this Court should have the opportunity to weigh testimony of each relevant individual when determining the issues in this case.[2]

One rationale of the apex doctrine is that "high ranking government officials have greater duties and time constraints than other witnesses and . . . , without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation." *Givens v. Newsom*, 2021 WL 65878, at *4 (E.D. Cal. Jan. 7, 2021) (citation omitted) (alterations in original). However, the apex doctrine applies "with *less force* when the proposed deponent is not currently serving in office. For instance, there is no longer a concern that requiring the person to sit for a deposition will pull them away from other duties of public service." *Id.* at *8 (emphasis added); *see also Sec. & Exch. Comm'n v. Comm. on Ways & Means of the U.S. House of Repres.*, 161 F. Supp. 3d 199, 249 (S.D.N.Y. 2015) ("[T]he fact that [the party is] not [a] current high-ranking official[] is a factor when considering whether the information can be obtained through less burdensome means and whether the deposition will interfere with the official's government duties."). Here, Ms. Nielsen is no longer a government official.

Moreover, although Defendant argues that "the Ninth Circuit has never permitted the deposition of a current or former Cabinet official," E.C.F No. 315 at 6, this has no bearing on whether the deposition of Ms. Nielsen should be permitted in this case because Plaintiffs have met their burden for allowing the deposition under the apex doctrine. District courts in the Ninth Circuit have allowed depositions of high-ranking government officials, including the deposition of James Mattis, the Secretary for the Department of Defense. *See, e.g.*, *Karnoski v. Trump*, 2020 WL 5231313, at *5–6 (W.D. Wash. Sept. 2, 2020)[3]; *Coleman*, 2008 WL 4300437, at *3. In fact, Plaintiffs' request to depose Ms.

---

[2] Under the FTCA, there is no right to a jury trial, and the claims at issue will be determined after a bench trial. *See* 32 CFR § 750.32(b) (citing 28 U.S.C. § 2402).

[3] Because *Karnoski* was brought under the APA, Plaintiffs were not allowed to inquire as to Secretary Mattis's "mental processes" during his deposition. As noted above, this is not an APA case, and such limitation does not apply here. To the contrary, the "mental processes" of high-level government officials is a critical issue in the case.

- 5 -

1 Nielsen is analogous to the plaintiffs' request to depose General Paul J. Selva in *Karnoski*.
2 There, the plaintiffs sought to depose General Selva, who was "personally involved in the
3 decision to delay implementation" of a policy concerning transgender individuals in the
4 military. *Karnosk*, 2020 WL 5231313, at *2. The court in *Karnoski* allowed the
5 deposition to proceed because the documents did not answer the plaintiffs' questions and
6 other witnesses could not speak to General Selva's role and ultimate decisions—only
7 General Selva could testify to those facts. *Id.* at *5.

          **1.    Ms. Nielsen Is the Only Individual That Can Testify as to Why She Approved the DHS Referral Policy**

Defendant argues that Ms. Nielsen is not the only individual that can testify as to why she approved the DHS Referral Policy. E.C.F. No. 315 at 9. To support this argument, Defendant relies on ███████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████ *Id.* ██████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

    Moreover, as detailed in Plaintiffs' Motion, ███████████████████████ as well as Ms. Nielsen's previous congressional testimony, conflicts with Ms. Nielsen's recent public statements about her decision to implement the DHS Referral Policy—which further demonstrates Ms. Nielsen has unique first-hand knowledge of key issues in this case. For example, Ms. Nielsen recently stated in the media that (a) Mr. McAleenan pressured her to authorize the DHS Referral Policy, (b) that she trusted his assurances about the policy and, (c) in retrospect, wishes she had not done so. *See* E.C.F. No. 302-6

1  (Ex. J (Dickerson, *An American Catastrophe: The secret history of the U.S. government's*
2  *family-separation policy* at 74–75)). ███████████████
3  ███████████████████████████████████████████████████████
4  ███████████████████████████████████████████████████████
5  Further, while Ms. Nielsen staunchly defended the DHS Referral Policy during her
6  congressional testimony, she recently stated that she wishes she had not signed the DHS
7  Referral Policy.  *See* E.C.F. No. 302-6 (Ex. J (Dickerson, *An American Catastrophe: The*
8  *secret history of the U.S. government's family-separation policy* at 74–75)).  And, as
9  discussed in more detail below, Ms. Nielsen's statement on the record that she never
10 received answers to her questions about the government's capacity to carry out the Policy
11 ████████████████████████████████ *See infra* at I.B.2.

12  Notably, a district court in the Ninth Circuit recently allowed the deposition of a
13 high-level government official, under the apex doctrine, where that official made public
14 statements that contradicted deposition testimony elicited in the matter.  *See Ahlman*,
15 2021 WL 1570838, at *7–8 ("In looking at Sheriff Barnes's public statements as a whole,
16 it is clear that he was not only involved in setting COVID-19 related policies within the
17 Orange County Jail, but he also has personal knowledge of how COVID-19 is impacting
18 the Orange County Jail. . . . As Plaintiffs have pointed out, Plaintiffs have deposed
19 numerous 30(b)(6) witnesses on the topics that Plaintiffs identified but have faced factual
20 inconsistencies. . . . Consequently, the Court disagrees with Defendants and will permit
21 Sheriff Barnes's deposition.").  Given the contradictions between the ████████
22 ████████ congressional testimony, and Ms. Nielsen's public statements, Plaintiffs
23 should have the opportunity to depose Ms. Nielsen.

24     **2.**  **Ms. Nielsen's Understanding of the Operational Limitations,**
25         **Prior to Implementing the DHS Referral Policy Is Relevant to Plaintiffs' Claims**

26  Defendant next argues that "because Secretary Nielsen was not involved in the
27 implementation of the DHS Referral Policy, her understanding of those operational
28

processes cannot be essential to Plaintiffs' claims." *See* E.C.F No. 315 at 11. Defendant misses the mark on this argument for several reasons.

Plaintiffs dispute that Ms. Nielsen was not involved in the implementation of the DHS Referral Policy—she was, after all, the head of the agency responsible for the Policy and issued a memorandum to DHS personnel ordering the implementation of the DHS Referral Policy. ████████████████████████████████████████████████████████

Importantly, her deposition is needed to determine whether, and to what extent, she considered the harm that would be inflicted upon Plaintiffs due to the government's inability to, *inter alia*, (i) adequately house and care for the affected children, (ii) track parents and children who were separated, (iii) and reunify separated families. And, again, Ms. Nielsen's recent public statements highlight the necessity of this testimony. Specifically, Ms. Nielsen told reporters that she did not think she had enough information to make a decision on the family separation proposal, including because she never received answers to her questions about whether Border Patrol stations had capacity to house additional migrants, whether the Justice Department had enough lawyers to take on extra cases, and what would happen to the children while the prosecutions were being carried out. *See* E.C.F No. 302-6 (Ex. J (Dickerson, *An American Catastrophe: The secret history of the U.S. government's family-separation policy* at ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

### 3. Ms. Nielsen's Knowledge of the Harms that Would Result from the DHS Referral Policy, Prior to Implementing the DHS Referral Policy, Is Relevant to Plaintiffs' Claims

Defendant argues that "in light of other information that is available," "Plaintiffs have not shown and cannot show a need for Secretary Nielsen's testimony" regarding "her purported knowledge of alleged potential harm resulting from family separations." *See* E.C.F No. 315 at 13. The "other information" Defendant relies upon to support this argument is ████████████████ as well as Ms. Nielsen's congressional testimony. *Id.* Defendant's reliance on ████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████ Moreover, Ms. Nielsen's Congressional Testimony is in direct conflict with ██
████████ When Ms. Nielsen was asked "[w]hen you officially began family separation in spring 2018 were you aware of research showing it causes trauma that can do both immediate and long-term damage to children's health?" Ms. Nielsen responded that "[t]he information that I was aware of at the time was that the trauma is from part of the journey to come up to the border illegally." *See* E.C.F No. 315-4 at 41–42. Neither ████████████ nor Ms. Nielsen's congressional testimony establish that Plaintiffs have received information on this topic—in fact, it highlights the necessity of asking Ms. Nielsen, herself, about this issue, given the contradictions between ████████ and her congressional testimony.

### C. Plaintiffs' Deposition of Ms. Nielsen Should Not be Limited in Duration or Scope.

Relying upon two cases, Defendant makes the sweeping conclusion that "[o]n the rare occasions where courts have permitted the deposition of high-ranking government officials, they have imposed significant time and content limitations." ECF No. 315 at

14 (citing *Kob v. Cnty. of Marin*, 2009 WL 3706820 (N.D. Cal. Nov. 3, 2009); *Odom v. Roberts*, 337 F.R.D. 359 (N.D. Fla. 2020)).  But neither case imposed "significant time and content limitations."  The court in *Kob* did not place a time limit on plaintiff's deposition of Marin County's President of the Board of Supervisors, 2009 WL 3706820, at *4, and the court in *Odom* did not limit the topics for plaintiff's deposition of the county Sheriff, 337 F.R.D. at 365–66.  And both cases involved current officials, whose performance of their official duties could be overwhelmed by preparing and sitting for excessive depositions—a concern that does not apply to a former official such as Ms. Nielsen.  *See Odom*, 337 F.R.D. at 363.

In fact, both *Kob* and *Odom* support Plaintiffs' request to depose Ms. Nielsen.  In each case, the court allowed plaintiffs to depose the officials about their "unique and personal knowledge" that plaintiffs could not otherwise obtain.  *Kob*, 2009 WL 3706820, at *4; *see also Odom*, 337 F.R.D. at 365 ("Here, Odom has demonstrated that Roberts likely has information from first-hand experiences, which no other witness likely would possess.").  Plaintiffs have similarly demonstrated that Ms. Nielsen has unique and personal knowledge, and Plaintiffs should be allowed to depose Ms. Nielsen on these topics that cannot be obtained from other witnesses.

## II.   CONCLUSION

Based on the aforementioned reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for leave to conduct the deposition of Ms. Nielsen.

Respectfully submitted this 21st day of November, 2022.

By s/ *BriAnne N. Illich Meeds*

OSBORN MALEDON, P.A.
David B. Rosenbaum
Travis C. Hunt
BriAnne N. Illich Meeds

ARNOLD & PORTER KAYE SCHOLER LLP
Diana Reiter*
Erik Walsh*
Lucy McMillan*
Harry Fidler*
Kaitlyn Schaeffer*
Brian Auricchio*
Julia Kindlon*
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000
diana.reiter@arnoldporter.com
erik.walsh@arnoldporter.com
lucy.mcmillan@arnoldporter.com
harry.fidler@arnoldporter.com
kaitlyn.schaeffer@arnoldporter.com
brian.auricchio@arnoldporter.com
julia.kindlon@arnoldporter.com

ARNOLD & PORTER KAYE SCHOLER LLP
Sean Morris*
777 South Figueroa Street
Los Angeles, CA 90017-5844
sean.morris@arnoldporter.com

ARNOLD & PORTER KAYE SCHOLER LLP
R. Stanton Jones*
David Hibey*
Emily Reeder-Ricchetti*
601 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 942-5000
stanton.jones@arnoldporter.com
david.hibey@arnoldporter.com
emily.reeder-ricchetti@arnoldporter.com

KAIRYS, RUDOVSKY, MESSING, FEINBERG & LIN LLP
Jonathan H. Feinberg*
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
Telephone: (215) 925-4400
jfeinberg@krlawphila.com

NATIONAL IMMIGRANT JUSTICE CENTER
Mark Fleming*
Mark Feldman*
224 S. Michigan Ave., Suite 600
Chicago, IL 60604
Telephone: (312) 660-1370
mfleming@heartlandalliance.org
mfeldman@heartlandalliance.org

NATIONAL IMMIGRATION LITIGATION ALLIANCE
Trina Realmuto*
Mary Kenney*
10 Griggs Terrace
Brookline, MA 02446
Telephone: (617) 819-4447
trina@immigrationlitigation.org
mary@immigrationlitigation.org

AMERICAN IMMIGRATION COUNCIL
Katherine Melloy Goettel*
Emma Winger*
Gianna Borroto*
1331 G Street NW, Suite 200
Washington, DC 20005
Telephone: (202) 507-7512
Telephone: (202) 742-5619
kgoettel@immcouncil.org
ewinger@immcouncil.org
gborroto@immcouncil.org

*Attorneys for Plaintiffs C.M. et al.*
* *Admitted pro hac vice*