David B. Rosenbaum (009819)
Travis C. Hunt (035491)
BriAnne N. Illich Meeds (036094)
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
Telephone: (602) 640-9000
drosenbaum@omlaw.com
thunt@omlaw.com
billichmeeds@omlaw.com
*Counsel for C.M. Plaintiffs*

Keith Beauchamp (012434)
D. Andrew Gaona (028414)
COPPERSMITH BROCKELMAN PLC
2800 N. Central Avenue, Suite 1900
Phoenix, AZ 85004
Telephone: (602) 381-5493
kbeauchamp@cblawyers.com
agaona@cblawyers.com
*Counsel for A.P.F. Plaintiffs*

*(Additional Counsel for Plaintiffs Listed on the Signature Page)*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| C.M., on her own behalf and on behalf of her minor child, B.M.; et al.<br><br>Plaintiffs,<br><br>v.<br><br>United States of America,<br><br>Defendant. | No. 2:19-cv-05217-SRB<br><br>**MOTION FOR SANCTIONS** |
| A.P.F. on his own behalf and on behalf of his minor child, O.B.; et al.<br><br>Plaintiffs,<br><br>v.<br><br>United States of America,<br><br>Defendant. | No. 2:20-cv-00065-SRB |

# I. INTRODUCTION

After the close of fact discovery on July 15, 2022, Defendant made more than thirty document productions consisting of thousands of documents, none of which Plaintiffs had the benefit of reviewing before deciding who to depose or what to cover during the vast majority of the fact depositions. Two sets of late-produced documents are the subject of this motion: (1) handwritten notes from key witnesses that Defendant did not collect and produce in the fall of 2020, when it represented to Plaintiffs that it was doing so, and (2) re-produced Immigration and Customs Enforcement ("ICE") documents that were originally produced stripped of their track changes and comments (the "Annotated Documents").[1]

The late-produced documents, penned, in many cases, by senior government officials—including former Customs and Border Protection ("CBP") Commissioner Kevin McAleenan, former Executive Associate Director for ICE's Enforcement and Removal Operations Matthew Albence, former Department of Homeland Security ("DHS") Secretaries Kirstjen Nielsen and John Kelly, and former Acting Secretary of DHS Elaine Duke—are critical documents that contradict deposition testimony and that Plaintiffs would have used in multiple fact witness depositions. The documents demonstrate that Defendant's decision to forcibly separate parents from their children was designed to deter would-be immigrants from seeking asylum in the United States. They also demonstrate that Defendant was not operationally ready to implement the policy that caused the separation of thousands of families (the "DHS Referral Policy"), including Plaintiffs.[2]

---

[1] After the close of fact discovery, Defendant also disclosed that handwritten notes taken by former ICE Chief of Staff Thomas Blank were destroyed after Plaintiffs sent a document preservation notice to Defendant on February 22, 2019. Mr. Blank took these notes during high-level meetings in which family separation was discussed. Plaintiffs may address appropriate sanctions for Mr. Blank's spoliated notes in a later motion, after Plaintiffs take the deposition of Mr. Blank and further meet and confer with Defendant.

[2] As stated in prior briefing [redacted]

As early as June 18, 2020, Defendant was on notice that the District of Arizona's Mandatory Initial Discovery Pilot (MIDP) project applied to these cases. *C.M.* ECF No. 47 ¶ 1; *A.P.F.* ECF No. 50 ¶ 1. The MIDP requires the ongoing collection and disclosure of evidence "relevant to any party's claims or defenses," D. Ariz. G.O. 17-08 § B.3, including "[h]ard-copy documents . . . as they are kept in the usual course of business," *id.* § C.1. Defendant also represented to Plaintiffs that it was searching for hard-copy documents for the agreed-upon MIDP custodians—which included the senior government officials mentioned above—on multiple occasions, including during a meet and confer in October 2020. McMillan Decl. ¶ 11(a) and Ex. A. Yet, it was not until Defendant "renewed its efforts" to collect handwritten notes in the summer and fall of 2022, and only after multiple witnesses admitted to the existence of handwritten notes during their depositions, that Defendant collected and produced the key notes at issue in this motion. With respect to the Annotated Documents, Defendant did not notify Plaintiffs about a production issue with these documents until August 10, 2022, and the Annotated Documents were not produced until after the end of fact discovery. *See* McMillan Decl. ¶ 11(b) and Ex. B.

Defendant's failure to collect and produce handwritten notes, and its failure to produce complete ICE documents until long after the close of depositions and fact discovery, prejudiced Plaintiffs. Plaintiffs were unable to question deponents about these documents and were forced to make key strategic decisions—including who to depose and what to ask the deponents—based on an incomplete record.

Given Defendant's failure to collect and produce all relevant evidence in accordance with the MIDP Order, sanctions are warranted.[3] The Court already cautioned

[3] On October 5, 2022, the parties held a meet and confer to discuss Defendant's failure to timely collect and produce the documents subject to this motion. Defendant suggested re-opening depositions to allow Plaintiffs the opportunity to examine witnesses about the

that a party who fails to disclose information that may be *helpful* to that party's case will be sanctioned: "Parties who fail to timely disclose relevant information will be precluded from using it in the case and may be subject to other sanctions." ECF No. 47 ¶ 4 n.1. Here, Plaintiffs seek an equivalent sanction for Defendant's failure to disclose information that may be *harmful* to its case. As such, Plaintiffs seek an order that (1) the late-produced handwritten notes and hard-copy documents be deemed admitted at trial if offered by Plaintiffs; (2) Defendant be precluded from contesting or otherwise using the handwritten notes and hard-copy documents at trial; and (3) the late-produced Annotated Documents be deemed admitted at trial if offered by Plaintiffs.[4]

## II.  BACKGROUND

On September 19, 2019, Plaintiffs filed the Complaint in the *C.M.* action. Complaint, ECF No. 1. On June 18, 2020, the Court confirmed that the MIDP applied to that case.[5] ECF No. 47 ¶ 1. "[T]he MIDP requires the parties to identify all 'documents' that 'may be relevant to any party's claims and defenses' and to produce those documents alongside their initial MIDP response (or make them available on that date)." *Brennan v. New 4125 LLC*, No. CV-18-01717-PHX-DWL, 2019 WL 1150799, at *7 (D. Ariz. Mar. 13, 2019) (quoting D. Ariz. G.O. 17-08 § B.3.). Hard-copy documents "must be produced as they are kept in the usual course of business." D. Ariz. G.O. 17-08 § C.1. The requirement to provide responses—and, by extension, to produce documents—is a "continuing" one. *Id.* § A.8; *see also SiteLock LLC v. GoDaddy.com LLC*, No. CV-19-02746-PHX-DWL, 2022 WL 3716499, at *1 (D. Ariz. Aug. 29, 2022) (judicially affirming

---

belatedly produced documents, while Plaintiffs suggested the sanctions sought below. McMillan Decl. ¶ 10. On October 25, 2022, the Court "rejected the idea that [Plaintiffs] should go back and have to re-depose [deponents] because there has been a late disclosure of their notes." and directed Plaintiffs to file a motion detailing their request. *See C.M.* ECF No. 301.

[4] Defendant conducted a relevance review prior to its production of documents, and even withheld relevant documents under the deliberative process privileged until that issue was resolved by the Court.

[5] The *A.P.F.* Complaint was filed on January 10, 2020. *A.P.F.* Complaint, ECF No. 1. The Court confirmed that the MIDP applied to the *A.P.F.* case on September 10, 2020. ECF No. 50 ¶ 1. The cases have been effectively consolidated for discovery purposes since September 3, 2020. *See* ECF No. 44.

continuing duty). The requirement ends only on the date set by the Court—here February 11, 2022. *C.M.* ECF No. 144 ¶ 4; *A.P.F.* ECF No. 144 ¶ 4.

Between June and November 2020, the parties negotiated custodians and search terms. McMillan Decl. ¶ 11(a) and Ex. A. The parties also exchanged correspondence confirming their understanding that Defendant would search for both ESI and hard-copy documents. *Id.* For example, on October 23, 2020, the parties agreed in writing that Defendant would collect and produce "relevant hard copy documents . . . from the identified custodians." *Id.* By then, Defendant had identified Ms. Nielsen, Mr. McAleenan, Mr. Albence, Mr. Blank and Mr. Kelly as custodians. McMillan Decl. ¶ 11(c) and Ex. C; McMillan Decl. ¶ 11(d) and Ex. D.

On July 15, 2022, nearly two years after Defendant made its representation that it would collect and produce relevant hard-copy documents from its custodians, the parties substantially completed fact discovery, in accordance with the Court's Amended Case Management Order. McMillan Decl. ¶ 3. Plaintiffs reasonably assumed that, with the exception of documents that were being re-produced pursuant to the Court's June 29, 2022 deliberative process privilege order, Defendant had collected and produced all relevant hard-copy and ESI documents for the custodians agreed-upon during the MIDP process. *C.M.* ECF No. 144 ¶ 4; *C.M.* ECF No. 246; *A.P.F.* ECF No. 144 ¶ 4; *A.P.F.* ECF No. 236.[6] As of July 15, 2022, all that remained for Plaintiffs' fact discovery was to depose DHS's 30(b)(6) witness and several government apex witnesses. It was during the apex depositions in September 2022 that Plaintiffs first learned that Defendant had not collected and produced handwritten notes for critical witnesses.

On September 9, 2022, Plaintiffs deposed apex witness Thomas Homan, the former Acting Director of ICE. McMillan Decl. ¶ 11(e). Mr. Homan testified that his "chief of staff," Thomas Blank, "would take notes" at ICE leadership meetings, including meetings discussing "policy changes" related to zero tolerance and family separation. McMillan

---

[6] On June 29, 2022, the Court issued an order requiring Defendant to reproduce documents relating to the family separation policy that Defendant had redacted pursuant to the deliberative process privilege. *See C.M.* ECF No. 246; *A.P.F.* ECF No. 236.

Decl. ¶ 11(e) and Ex. E at 184:2–186:10. Defendant has not produced Mr. Blank's notes because "these notes were destroyed." McMillan Decl. ¶ 11(f) and Ex. F.

On September 13, 2020, Plaintiffs deposed apex witness Kevin McAleenan, the former CBP Commissioner. McMillan Decl. ¶ 11(h). Minutes before Mr. McAleenan's deposition, counsel for Defendant informed Plaintiffs' counsel that Mr. McAleenan also took handwritten notes and that he retained handwritten notes that might be relevant to the case. *See* McMillan Decl. ¶ 11(g) and Ex. G. During his deposition, Mr. McAleenan confirmed that he had taken notes related to, among other salient topics, zero tolerance and increased prosecution. McMillan Decl. ¶ 11(h) and Ex. H at 15:23–16:2. Although Mr. McAleenan has always been a key custodian in the case, Defendant did not produce Mr. McAleenan's notes until September 30, 2022—14 days after his deposition, 45 days after the close of fact discovery, and almost *two years* after Defendant represented to Plaintiffs that it was collecting hard-copy documents. McMillan Decl. ¶ 4.

After the revelations by Mr. Homan and Mr. McAleenan, Defendant stated that government counsel had asked the relevant agencies to search for handwritten notes in June *2022*, and that it had "produced handwritten notes for Matt Albence and hard-copy documents (with some notes thereon) for [former Acting Secretary] Elaine Duke on August 15, 2022"—after the end of the bulk of fact discovery, and well after Mr. Albence's deposition, which took place on June 24, 2022.[7] McMillan Decl. ¶ 11(i) and Ex. I. Defendant further stated that, as of October 2022, it was "renewing" its efforts to collect handwritten notes. *Id.* Defendant subsequently produced notes penned by former DHS Secretaries Kelly and Nielsen, as well as former USCIS Director Francis Cissna. McMillan Decl. ¶¶ 6-8. Although Plaintiffs asked several times, Defendant has not told Plaintiffs what it did to collect handwritten notes during the MIDP process.

[7] Notably, Defendant did not inform Plaintiffs that it had directed its agencies to search for handwritten notes in June 2022. When Defendant produced these notes, it also did not notify Plaintiffs that it had belatedly discovered relevant handwritten notes. At that time, in August 2022, Plaintiffs had no idea that Defendant was collecting and producing relevant documents that should have been produced as part of the MIDP process—including notes taken by individuals Plaintiffs already had deposed.

      The belatedly produced notes are voluminous and highly relevant. Mr. McAleenan's notes alone amount to dozens of pages of on-topic admissions. McMillan Decl. ¶ 4. The late-produced notes address central, contested issues in this case and include revealing observations that the architects of Defendant's family-separation policy recorded contemporaneously and that should have been produced to Plaintiffs long ago. The same goes for the thousands of pages of ICE documents that Defendant produced without tracked changes and comments. McMillan Decl. ¶ 9.[8]

While Plaintiffs take Defendant at its word that the mis-production of the ICE documents was inadvertent, many of the stripped comments and edits are highly relevant, and Plaintiffs would have used them in depositions to question witnesses. In them, [redacted] [redacted], McMillan Decl. ¶ 11(j) and Ex. J, [redacted], McMillan Decl. ¶ 11(k) and Ex. K, and [redacted], McMillan Decl. ¶ 11(l) and Ex. L. As with the notes, many of the stripped comments were made by individuals—like ICE's former Associate Director for Enforcement and Removal Operations, Mr. Albence—that Plaintiffs had already deposed.[9]

Taken together, the late-produced documents undermine Defendant's defenses in critical ways. For example, Defendant's principal theory has been that family separation was a mere byproduct of Defendant's prosecuting all those amenable to prosecution, and

[8] While it is not entirely clear from the productions, Plaintiffs believe that the late-produced handwritten notes and hard-copy documents are Bates Ranges: CD-US-0218389 - CD-US-0218392; CD-US-0219125 - CD-US-0219148; CD-US-0219211 - CD-US-0219301; CD-US-0219320 - CD-US-0219551; CD-US-0219552; CD-US-0219554 - CD-US-0219561; CD-US-0219588 - CD-US-0219589; CD-US-0219590 - CD-US-0219620; CD-US-0219621 - CD-US-0219622. The Annotated Documents are all documents that contain the letter "T" at the end of the Bates number. In *C.M.*, those documents are included in Defendant's 80th production (dated August 31, 2022), 83rd production (dated September 7, 2022), 84th production (dated September 14, 2022) and 87th production (dated September 16, 2022), and in *A.P.F.*, those documents are included in Defendant's 87th production (dated August 31, 2022), 90th production (dated September 7, 2022), 91st production (dated September 14, 2022), and 94th production (dated September 16, 2022).

[9] Defendant produced the Annotated Documents without identifying the custodian of the documents, or who inserted the various comments. Instead, the Annotated Documents simply list the custodian as "ICE" and the comments include only the custodians' initials.

that deterrence was never the goal of separation. *E.g.*, *C.M.* ECF No. 37 ¶ 27 (denying Plaintiffs' allegation that the Zero Tolerance policy was designed to "deter individuals from seeking asylum or otherwise coming into the United States"); *C.M.* ECF No. 18 at 13 (arguing that separation was the collateral result of "[s]trict enforcement of the Nation's immigration laws"); *A.P.F.* ECF No. 21 at 17 (same); McMillan Decl. ¶ 11(m) and Ex. M at 228:2–11 ([redacted]); *see also* McMillan Decl. ¶ 11(n) and Ex. N at 328:1– 329:2 ([redacted]); McMillan Decl. ¶ 11(s) and Ex. O at 249:9–15 ([redacted]).

Defendant's theory that deterrence was not the goal of separation is [redacted]

McMillan Decl. ¶ 11(p) and Ex. P (highlighting added). And Mr. McAleenan's late-produced notes indicate that [redacted]

. McMillan Decl. ¶ 11(q) and Ex. Q ( ). If the notes had been timely produced, Plaintiffs would have used Mr. Kelly's and Mr. McAleenan's notes to press Mr. McAleenan, Mr. Homan, Chad Wolf (former Chief of Staff to Ms. Nielsen), Tracy Short (former Counselor to Ms. Nielsen), and others, about the true purpose of family separation.

The late-produced notes also undermine . For instance, Mr. McAleenan testified that McMillan Decl. ¶ 11(r) and Ex. R at 222:7–20.

McMillan Decl. ¶11(t) and Ex. S (highlighting added).

Moreover, when asked about how Defendant tracked parents and children it separated, Mr. McAleenan testified that . McMillan Decl. ¶ 11(t) and Ex. T at 303:17–24. Once again,

McMillan Decl. ¶ 11(u) and Ex. U (highlighting added). If Defendant had produced these notes prior to the depositions of Mr. McAleenan, Mr. Homan, Mr. Albence and other ICE deponents, Plaintiffs would have used the notes to challenge the witnesses' assertions that ICE and the other agencies were operationally ready.

The late-produced documents also speak to another key issue in this case: why and when Defendant designated children who crossed the border with a parent as "unaccompanied." Under the Homeland Security Act of 2002, a child is considered an "unaccompanied alien child ['UAC']" if he or she "(A) has no lawful immigration status in the United States; (B) has not attained 18 years of age; and (C) with respect to whom—(i) there is no parent or legal guardian in the United States; or (ii) no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g). If a child is deemed a UAC, DHS must transfer the child to the custody of the Department of Health and Human Services ("HHS")'s Office of Refugee Resettlement ("ORR"), within 72 hours. 8 U.S.C. § 1232(b)(1), (3). HHS, and thus, ORR, only has

statutory authority for the custody and care of UACs, and not for children who are accompanied by a parent. *See id*.

During his deposition, Mr. McAleenan testified that [REDACTED]. McMillan Decl. ¶ 11(v) and Ex. V at 71:21–24; *see e.g. id*. at 73:5–24. Yet Mr. McAleenan's late-produced notes show [REDACTED] *Compare id.* at 71:21–24, *with* McMillan Decl. ¶ 11(w) and Ex. W. Had such notes been timely produced, Plaintiffs would have used these notes to press Mr. McAleenan on his understanding, [REDACTED]

The late-produced Annotated Documents also show inconsistencies in deposition testimony relating to [REDACTED] McMillan Decl. ¶ 11(x) and Ex. X at 245:4–15. Yet, according to the Annotated

Documents, [REDACTED] McMillan Decl. ¶ 11(q) and Ex. Y. Again, Plaintiffs would have used the late-produced documents to [REDACTED]

**III. LEGAL STANDARD**

Rule 37 of the Federal Rules of Civil Procedure empowers a court to sanction parties who violate discovery orders, fail to make required disclosures or cooperate with the discovery process, or spoliate evidence. Fed. R. Civ. P. 37. "Order" is "read broadly" to "include any order related to discovery." *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1222 (9th Cir. 2018) (citations omitted). The MIDP qualifies as an order related to discovery and, it follows, Rule "37(b)(2) shall apply to mandatory discovery responses required by [the MIDP] order." D. Ariz. G.O. 17-08 § A.11. Indeed, multiple District of Arizona courts have found that violations of the MIDP are sanctionable under Rule 37(b)(2). *See, e.g.*, *FTC v. Noland*, No. CV-20-00047-PHX-DWL, 2022 WL 2341221, at *3 (D. Ariz. June 29, 2022); *McGee v. Zurich American Insurance Co.*, No. CV-17-04024-PHX-DGC, 2021 WL 6070608, at *1 (D. Ariz. Dec. 22, 2021).

To prevail on their request for sanctions, Plaintiffs bear the initial burden of demonstrating that Defendant failed to comply with the MIDP. *Noland*, 2022 WL 2341221, at *3. Because Plaintiffs do not seek terminating sanctions, they need not demonstrate that Defendant acted willfully, in bad faith, or with fault. *See Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 843–44 (9th Cir. 1976). Indeed, sanctions may be imposed even for negligent failure to provide discovery. *Khalaj v. City of Phoenix*, No. CV-17-01199-PHX-GMS (JZB), 2021 WL 222408, at *4 (D. Ariz. Jan. 22, 2021). If Plaintiffs meet their burden, the Court may impose merits sanctions, Fed R. Civ. Pro. 37(b)(2)(A),

the contours of which are left to the Court's discretion, *see Payne v. Exxon Corp.*, 121 F.3d 503, 510 (9th Cir. 1997).

Rule 37(b) enumerates some, but not all, possible merits sanctions. *Nyerges v. Hillstone Restaurant Group Inc.*, No. CV-19-02376-PHX-DWL, 2021 WL 3299625, at *8 (D. Ariz. Aug. 2, 2021) (noting that Rule 37(b)(2)'s enumerated list of merits sanctions is "not exhaustive"). The court may "strike out portions of pleadings; deem certain facts as established for purposes of the action or preclude admission of evidence on designated matters; dismiss all or part of the action; or render a default judgment against the disobedient party." *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980) (citing FRCP 37(b)).

## IV. ARGUMENT

### A. Defendant Failed to Comply with the MIDP Discovery Order

The MIDP is "designed to accelerate the exchange of relevant information that would otherwise be produced later in the litigation through traditional discovery requests." *FTC v. Hite Media Grp., LLC*, No. CV-18-02221-PHX-SPL, 2018 WL 4676158, at *2 (D. Ariz. July 23, 2018). Courts in this District have affirmed that the MIDP's required information exchange includes the "produc[tion of] documents and ESI that may be relevant to any party's claims or defenses." *Salt River Project Agric. Improvement & Power Dist. v. Trench France SAS*, 303 F. Supp. 3d 1004, 1006 (D. Ariz. 2018) (internal quotation marks omitted); *accord Brennan*, 2019 WL 1150799, at *7. Pertinent to this case, "[h]ardcopy documents must be produced as they are kept in the usual course of business." D. Ariz. G.O. 17-08 § C.1. The requirement to produce documents is a "continuing" one. *SiteLock LLC*, 2022 WL 3716499, at *1.

There can be little doubt that, by its terms and as judicially interpreted, the MIDP required Defendant to locate and produce the handwritten notes and the Annotated Documents, and to do so continually until the February 11, 2022 cut-off date. Indeed, in October 2020, Defendant acknowledged and agreed that Defendant would search for both ESI and hard-copy documents from the agreed-upon custodians, which Plaintiffs

confirmed in an email summary to Defendant. McMillan Decl. ¶ 11(a) and Ex. A. [REDACTED] . McMillan Decl. ¶ 11(c) and Ex. C; McMillan Decl. ¶ 11(d) and Ex. D. Plaintiffs took Defendant at its word that it was collecting hard-copy documents for the MIDP custodians but, despite its representations to Plaintiffs, Defendant did not produce relevant hard-copy documents. Instead, it appears Defendant did not collect hard-copy documents for many of the key custodians until *after* the bulk of the depositions had been completed and, in many instances, only after witnesses admitted during depositions that government officials took notes in meetings in which family separation was discussed. Defendant also did not produce the Annotated Documents until after the end of fact discovery.

Simply put, Defendant "fail[ed] to obey an order to provide . . . discovery." Fed. R. Civ. P. 37(b)(2)(A). As a consequence, Plaintiffs have been, for much of this case, deprived of access to significant evidence. While Plaintiffs need not demonstrate prejudice to prevail here, prejudice does stem from the belated disclosure of on-point evidence. *See SiteLock LLC v. GoDaddy.com LLC*, No. CV-19-02746-PHX-DWL, 2021 WL 2895503, at *9 (D. Ariz. July 9, 2021), *reconsideration denied*, No. CV-19-02746-PHX-DWL, 2021 WL 9597871 (D. Ariz. July 21, 2021) (imposing sanctions for the disclosure of evidence on the discovery deadline because belated disclosure prevented a party from pursuing additional, related discovery).

### B. The Requested Sanctions Are Appropriate

Early on, this Court urged the parties to "review[] carefully" General Order 17-08, which "implements the MIDP." *C.M.* ECF No. 47 ¶ 4 n.1. The Court warned that "[p]arties who unreasonably postpone disclosure of relevant information to the end of the discovery period will," pursuant to General Order 17-08, "be subject to sanctions." *Id.* Defendant unreasonably postponed disclosure of highly relevant information until *after* the discovery period. Sanctions, therefore, are appropriate.

This Court has articulated one possible sanction for violations of the MIDP order. "Parties who fail to timely disclose relevant information," the Court wrote, "will be precluded from using it in the case and may be subject to other sanctions." *C.M.* ECF No. 47 ¶ 4 n.1. Precluding Defendant from using the handwritten notes does not help Plaintiffs, however, because Defendant's untimely evidence favors Plaintiffs, rather than Defendant. Instead, Plaintiffs propose a similar form of preclusion that is tailored to reflect Defendant's failure to produce documents that are potentially *harmful* to its case: (1) that the notes are deemed admitted at trial if offered by Plaintiffs; and (2) that Defendant is precluded from contesting or otherwise using the notes at trial. Plaintiffs seek an even more limited sanction for Defendant's failure to timely produce the Annotated Documents, to reflect Defendant's apparent lack of fault, while also remediating the significant prejudice to Plaintiffs—namely, that the Annotated Documents be deemed admitted at trial if offered by Plaintiffs.

Plaintiffs' proposed sanctions are relatively modest. Rule 37's enumerated merits sanctions include, among others, "deem[ing] certain facts as established for purposes of the action." *Sumitomo Marine & Fire Ins. Co.*, 617 F.2d at 1369. Given Defendant's failure to comply with the MIDP's clear mandate with respect to the handwritten notes, it would be entirely fair to deem established Defendant's admissions—*e.g.*, that ICE was not ready and that family separation was about deterrence—made in the late-produced notes. A more severe sanction would be warranted here because it was the government that disobeyed the MIDP order. As the Ninth Circuit has said:

> The effectiveness of and need for harsh measures is particularly evident when the disobedient party is the government. The public interest requires not only that Court orders be obeyed but further that Governmental agencies which are charged with the enforcement of laws should set the example of compliance with Court orders.

*Sumitomo Marine & Fire Ins. Co.*, 617 F.2d at 1370 (cleaned up). Nonetheless, Plaintiffs seek sanctions designed only to prohibit witnesses from disputing or explaining away the contents of notes that Plaintiffs did not have the benefit of during depositions—sanctions

that are consistent with the type of sanctions contemplated by the Court in the Case Management Order. Plaintiffs submit that the requested sanctions would adequately restore Plaintiffs to their *status quo ante*.[10]

Although Plaintiffs do not wish to prolong this case by taking additional depositions, Plaintiffs request that, if the Court does not grant Plaintiff's requested relief, Plaintiffs be permitted to depose any government trial witnesses who authored late produced notes or annotations about those documents, prior to their testimony at trial.[11]

## V. CONCLUSION

Based on the foregoing, Plaintiffs request that the Court issue an order that (1) the late-produced handwritten notes and hard-copy documents are deemed admitted at trial if offered by Plaintiffs; (2) that Defendant is precluded from contesting or otherwise using the late-produced handwritten notes and hard-copy documents at trial; and (3) that the late-produced Annotated Document are deemed admitted at trial if offered by Plaintiffs.

Respectfully submitted this 14th day of December, 2022.

---

[10] This sanction is particularly reasonable since, under the Federal Tort Claims Act, the case will be subject to a bench trial and not a jury trial, and the Court will be able to determine the weight of the evidence. *See* 32 CFR § 750.32(b) (citing 28 U.S.C. § 2402).

[11] The court in *Nyerges v. Hillstone Restaurant Group Inc.* acknowledged that reopening depositions after the close of fact discovery is not an adequate sanction as it would "cause undue delay" and would "inadequately deter [the disobedient party's] discovery violation." No. CV-19-02376-PHX-DWL, 2021 WL 3299625, at *16 (D. Ariz. Aug. 2, 2021) (citing Mandatory Initial Discovery Users' Manual for the Dist. of Ariz. § C.1(h) ("Courts should remember that the effectiveness of the MIDP will depend significantly on the willingness of judges to impose real consequences on parties who fail to comply with their mandatory discovery obligations.")). Something more is required. To the extent Plaintiffs must take additional depositions to probe potential trial testimony about the late produced documents, Plaintiffs will seek to recover fees and costs for those depositions from Defendant. *See* Fed. R. Civ. P. 37(b)(2)(C).

By  */s/ BriAnne N. Illich Meeds*

OSBORN MALEDON, P.A.
David B. Rosenbaum (009819)
Travis C. Hunt (035491)
BriAnne N. Illich Meeds (036094)

ARNOLD & PORTER KAYE SCHOLER LLP
Diana Reiter*
Erik Walsh*
Lucy McMillan*
Harry Fidler*
Kaitlyn Schaeffer*
Brian Auricchio*
Julia Kindlon*
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000
diana.reiter@arnoldporter.com
erik.walsh@arnoldporter.com
lucy.mcmillan@arnoldporter.com
harry.fidler@arnoldporter.com
kaitlyn.schaeffer@arnoldporter.com
brian.auricchio@arnoldporter.com
julia.kindlon@arnoldporter.com

ARNOLD & PORTER KAYE SCHOLER LLP
R. Stanton Jones*
David Hibey*
Emily Reeder-Ricchetti*
601 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 942-5000
stanton.jones@arnoldporter.com
david.hibey@arnoldporter.com
emily.reeder-ricchetti@arnoldporter.com

ARNOLD & PORTER KAYE SCHOLER LLP
Sean Morris*
777 South Figueroa Street
Los Angeles, CA 90017-5844
sean.morris@arnoldporter.com

KAIRYS, RUDOVSKY, MESSING, FEINBERG & LIN LLP
Jonathan H. Feinberg*
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
Telephone: (215) 925-4400
jfeinberg@krlawphila.com

NATIONAL IMMIGRANT JUSTICE CENTER
Mark Fleming*
Mark Feldman*
224 S. Michigan Ave., Suite 600

Chicago, IL 60604
Telephone: (312) 660-1370
mfleming@heartlandalliance.org
mfeldman@heartlandalliance.org

NATIONAL IMMIGRATION LITIGATION ALLIANCE
Trina Realmuto*
Mary Kenney*
10 Griggs Terrace
Brookline, MA 02446
Telephone: (617) 819-4447
trina@immigrationlitigation.org
mary@immigrationlitigation.org

AMERICAN IMMIGRATION COUNCIL
Katherine Melloy Goettel*
Emma Winger*
Gianna Borroto*
1331 G Street NW, Suite 200
Washington, DC 20005
Telephone: (202) 507-7512
Telephone: (202) 742-5619
kgoettel@immcouncil.org
ewinger@immcouncil.org
gborroto@immcouncil.org

*Attorneys for Plaintiffs C.M. et al.*
** Admitted pro hac vice*

By */s/ Keith Beauchamp*
COPPERSMITH BROCKELMAN PLC
Keith Beauchamp
D. Andrew Gaona

COVINGTON & BURLING LLP
Matthew J. Schlesinger*
Jason A. Carey*
Jennifer L. Saulino*
Terra White Fulham*
Teresa S. Park*
Kathleen E. Paley*
Kavita R. Pillai*
Emily R. Woods*
Kristin M. Cobb*
Shadman Zaman*
Stephen Rees*†
Paulina Slagter*
Samuel Greeley*
Joshua Silver*
Patrick Lee*
One City Center, 850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-5581

mschlesinger@cov.com
jcarey@cov.com
jsaulino@cov.com
tfulham@cov.com
tpark@cov.com
kpaley@cov.com
kpillai@cov.com
rwoods@cov.com
kcobb@cov.com
szaman@cov.com
srees@cov.com
pslagter@cov.com
sgreeley@cov.com
jsilver@cov.com
plee@cov.com

SOUTHERN POVERTY LAW CENTER
Norma Ventura*
James Knoepp*
Sharada Jambulapati*
P.O. Box 1287
Decatur, GA 30031
Telephone: (404) 521-6700
norma.ventura@splcenter.org
jim.knoepp@splcenter.org
sharada.jambulapati@splcenter.org

SOUTHERN POVERTY LAW CENTER
Paul R. Chavez*
P.O. Box 370037
Miami, FL 33137
Telephone: (786) 347-2056
paul.chavez@splcenter.org

*Attorneys for Plaintiffs A.P.F. et al.*
** Admitted pro hac vice*
† *Admitted only in Illinois, not admitted in the District of Columbia, and supervised by principals of the firm.*