1   BRIAN M. BOYNTON
    Principal Deputy Assistant Attorney General
2   Civil Division
    JAMES G. TOUHEY, JR.
3   Director, Torts Branch
    PHILIP D. MACWILLIAMS
4   Trial Attorney
    D.C. Bar No. 482883
5   IRINA MAJUMDAR
    Trial Attorney
6   D.C. Bar No. 252757
    E-mail: Irina.M.Majumdar@usdoj.gov
7   U.S. Department of Justice
    Civil Division, Torts Branch
8   175 N Street, NE
    Washington, DC 20530
9   Telephone: (202) 305-2609
    Facsimile: (202) 616-5200
10

11  Attorneys for the United States of America

12              **IN THE UNITED STATES DISTRICT COURT**
                  **FOR THE DISTRICT OF ARIZONA**
13

| | |
|---|---|
| 14 C.M., on her own behalf and on behalf of her minor child, B.M.; L.G., on her own behalf and on behalf of her minor child, B.G.; M.R., on her own behalf and on behalf of her minor child, J.R.; O.A., on her own behalf and on behalf of her minor child, L.A.; and V.C., on her own behalf and on behalf of her minor child, G.A., Plaintiffs, v. | No. CV-19-05217-PHX-SRB **OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS** |
| 20 United States of America, Defendant. | No. CV-20-00065-PHX-SRB |
| 21 A.P.F. on his own behalf and on behalf of his minor child, O.B.; J.V.S., on his own behalf and on behalf of his minor child H.Y.; J.D.G. on his own behalf and on behalf of his minor child, M.G.; H.P.M. on his own behalf and on behalf of his minor child, A.D.; M.C.L. on his own behalf and on behalf of his minor child, A.J.; and R.Z.G. on his own behalf and on behalf of his minor child, B.P., Plaintiffs, v. United States of America, Defendant. | |

1

The United States has approached its discovery obligations in this litigation with diligence.   The United States has produced well over 60,000 documents[1], including electronically stored information ("ESI"), hardcopy documents, and handwritten notes, collected from custodians within five federal agencies: the Department of Homeland Security ("DHS"), Customs and Border Protection ("CBP"), Immigration and Customs Enforcement ("ICE"), the Department of Justice ("DOJ"), and the Department of Health and Human Services ("HHS").   Additionally, it responded to numerous sets of Interrogatories, Requests for Admission, and Requests for Production ("RFPs") propounded by Plaintiffs.  The United States has made available for deposition more than 35 witnesses, including former CBP Commissioner Kevin McAleenan and former ICE Acting Director Thomas Homan.  As this Court recognized, the United States "has done a whole lot to collect everything that [it] possibly can" during the discovery process.  Oct. 25, 2022 Hr'g Tr. at 13:16-17 ("Hr'g Tr.").   Despite the government's evident significant discovery efforts, Plaintiffs now move for sanctions based on a small subset of documents produced after the close of fact discovery.  *C.M.* ECF 333, *A.P.F.* ECF 328 ("Motion for Sanctions").   For the reasons set forth below, this Court should deny Plaintiffs' Motion for Sanctions.

## I.  BACKGROUND

On June 18, 2020, this Court issued a Case Management Order which stated that this litigation was subject to the Mandatory Initial Discovery Pilot Project ("MIDP").  *C.M.* ECF 47 at 1-2; *A.P.F.* ECF 50 at 1-2.  Following issuance of the Case Management Order, the parties engaged in extensive negotiations regarding discovery search terms and custodians. The parties agreed to custodians for searches for ESI and hardcopy documents.  In early fall 2020, during the height of the global Covid-19 pandemic, the government began to collect ESI, handwritten notes, and hardcopy documents from five separate government agencies. As this Court has noted, "[T]his [wa]s not easy to do."  Hr'g Tr. at 13:22.

The United States produced tens of thousands of policy-level documents, including hardcopy documents, on a rolling basis beginning in late summer 2020 until April 2021,

---

[1]  This number pertains only to the "policy-level" documents.  The United States has produced thousands of more documents as part of the Plaintiff-specific discovery.

when the parties entered into a nine month stay to engage in settlement negotiations. *See C.M.* ECF 102; *A.P.F.* ECF 99. Following the lifting of the stay in January 2022, the Court issued an Amended Scheduling Order, setting February 11, 2022 as the deadline to supplement the MIDP disclosures, and July 15, 2022 as the deadline for fact discovery. *See C.M.* ECF 144; *A.P.F.* ECF 144. The United States produced substantially all documents collected pursuant to the MIDP by February 1, 2022, including handwritten notes and hardcopy documents.

### A. The Hardcopy Documents and Handwritten Notes at Issue in Plaintiffs' Motion

On June 7, 2022, *C.M.* Plaintiffs served the United States their fourth set of RFPs. *See* Exhibit 1. Included therein was a request that the United States produce all "notes, minutes, agendas, calendar invites, and attendee lists related to all meetings about the creation and implementation of the Zero Tolerance Policy." Exhibit 1 at 11. Plaintiffs later withdrew the RFP. Nevertheless, the United States requested that DHS, CBP, and ICE again search for any relevant handwritten notes that might not have been located during their earlier collection efforts, which began in 2020. During this supplemental search the government discovered: 24 relevant pages of handwritten notes from former ICE Executive Associate Director for Enforcement and Removal Operations Matthew Albence; five hardcopy documents collected from former Acting DHS Secretary Elaine Duke; and 30 hardcopy documents collected from former DHS Secretary Kirstjen Nielsen. Eight of the hardcopy documents collected from Secretary Nielsen were exact duplicates of documents that had been previously produced to Plaintiffs on March 26, 2021. Additionally, several of the hardcopy documents collected from Secretary Duke were also duplicates, excluding the marginalia. Further, as the hardcopy documents are printouts of ESI, very similar documents in substance to the hardcopy documents, and in many cases duplicate documents, have existed elsewhere in the government's productions, since well-before the close of fact discovery.

In September 2022, just days before Mr. McAleenan's deposition, the United States learned for the first time that Mr. McAleenan may have handwritten notes in his personal

possession.  Mr. McAleenan searched his personal property and informed the United States the day before his deposition that he had located handwritten notes and that they contained information he believed to be relevant to this litigation.[2]  Accordingly, prior to the start of Mr. McAleenan's deposition on September 13, 2022 — before the handwritten notes were even in the United States' possession — the United States informed Plaintiffs of this discovery.  Plaintiffs did not request to postpone Mr. McAleenan's deposition until his notes had been obtained and they had an opportunity to review.  Rather, Plaintiffs requested that the deposition remain "open, depending on what the production of those notes reveals, and subject to our right to recall Mr. McAleenan to ask questions about those documents." Exhibit 2 (McAleenan Dep. at 19:15-19).  The United States indicated both at Mr. McAleenan's deposition, and in several subsequent conversations with Plaintiffs, that it was willing to reopen Mr. McAleenan's deposition once the notes were collected and reviewed. *Id*. at 19:20-20:1.  The United States produced 65 pages of notes by Mr. McAleenan on September 30, 2022.  Of those pages, 55 were redacted either in part or in full as they contained pre-decisional deliberative material unrelated to this litigation.

On September 15, 2022, Plaintiffs requested a meet and confer to discuss the United States' handwritten notes collection.  In response to Plaintiffs' request, and despite the government's previous efforts, the government agreed in good-faith to engage in further searches to ensure that all handwritten notes were collected.[3]  During this supplemental effort, the United States learned for the first time that former DHS Secretary John Kelly had one two-page handwritten note in his personal possession.  The United States collected that

---

[2]   In searching for handwritten notes, Mr. McAleenan also discovered several hardcopy documents in his personal possession that the United States determined to be relevant to this litigation.  Plaintiffs have not asserted that they were prejudiced by the production of those hardcopy documents.  Near duplicates or substantially similar versions of the hardcopy documents had previously been produced to Plaintiffs before the February 11, 2022 deadline to supplement MIDP disclosures.

[3]   This Court has previously found that the United States was not required to provide Plaintiffs with an accounting of all the steps it has taken to collect and produce handwritten notes.  *See* Hr'g Tr. at 13:23-14:2 ("I do not share your concern that would require [the government] to provide [Plaintiffs] with some extensive explanation for all the steps [it has] taken for the past couple of years to collect the many, many thousands of documents that have been produced.").

document from Secretary Kelly and promptly produced it to Plaintiffs on October 24, 2022. Further, as a result of these additional efforts, 14 hardcopy documents from Secretary Kelly and one handwritten note by Francis Cissna, the former Director of U.S. Citizenship and Immigration Services, were also discovered by the agencies. The hardcopy documents collected from Secretary Kelly were produced on November 2, 2022. Eight of those hardcopy documents were exact duplicates of timely-produced documents and the remainder were substantially similar to other documents produced in this litigation. Although Mr. Cissna was not even a custodian agreed to by the parties, the United States produced to Plaintiffs his note on October 26, 2022, further underscoring the government's commitment to its discovery efforts.[4]

### B. The Annotated Documents at Issue in Plaintiffs' Motion

Beginning in 2020, the United States collected, reviewed, and produced thousands of electronic documents from ICE custodians pursuant to the MIDP. Those documents were produced to Plaintiffs on a rolling basis, with all such documents produced by February 1, 2022. In early August 2022 – after the July 15, 2022 close of fact discovery – the United States discovered a technical error concerning certain Word documents collected from ICE custodians. Because of this previously unknown processing error, certain Word documents were produced without track changes and comments in the margins. On August 10, 2022, the United States promptly notified Plaintiffs of this processing error. *See* Mot. for Sanctions at Exhibit B. The United States informed Plaintiffs that it was working diligently to review and produce corrected versions of those Word documents, which would be linked to the original documents with a -T suffix (the "Annotated Documents").

The technical processing error with the ICE Word documents was discovered before Plaintiffs conducted the depositions of Mr. Homan, Mr. McAleenan, and the DHS Rule 30(b)(6) witness. In an effort to mitigate any potential prejudice to Plaintiffs on account of the inadvertent processing error, the United States prioritized the review and reproduction of those documents in which Mr. Homan and Mr. McAleenan were identified by name or

---

[4]   Additionally, via a third-party subpoena pursuant to Federal Rule of Civil Procedure 45, Plaintiffs obtained four pages of relevant notes from former DHS Chief of Staff Chad Wolf. Mr. Wolf's notes were produced to Plaintiffs on January 9, 2023.

were the sender or recipient of the document.  All such Annotated Documents were produced to Plaintiffs in advance of Mr. Homan's and Mr. McAleenan's depositions, and the United States completed its re-production of all the Annotated Documents by September 16, 2022, four days before the DHS Rule 30(b)(6) deposition.  Notably, no Annotated Documents were presented as exhibits at any of those three depositions.[5]

## II. ARGUMENT

### A. Legal Standard

Plaintiffs seek sanctions under Federal Rule of Civil Procedure Rule 37(b)(2).  *See* Mot. for Sanctions at 12-13.  Rule 37(b)(2) "authorizes the court to impose sanctions on a party only when it 'fails to obey an order to provide or permit discovery.'"  *Hyde & Drath v. Baker*, 24 F.3d 1162, 1170 (9th Cir. 1994) (quoting Fed. R. Civ. P. 37(b)(2)).  This litigation is subject to the MIDP.  *See C.M.* ECF 47; *A.P.F.* ECF 50.  Because the MIDP supersedes other discovery obligations traditionally required by the Federal Rules of Civil Procedure, this Court has held that "a violation of the MIDP's disclosure obligations is sanctionable under Rule 37(b)(2)."  *Nyegers v. Hillstone Restaurant Grp. Inc.*, 2021 WL 3299625, at *8 (D. Ariz. Aug. 2, 2021).

The moving party bears the burden of establishing a violation of a court order.  *See Fed. Trade Comm'n v. Noland*, 2022 WL 2341221, at *3 (D. Ariz. June 29, 2022).  If the moving party establishes that a court order has been violated, the court has discretion to determine whether to impose sanctions and if so, what type of sanctions to issue.  *See Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 844 (9th Cir. 1976).  Under Rule 37(b)(2), a court may only impose sanctions that are "just."  Although the plain text of Rule 37(b)(2) does not "specifically enumerate a 'substantially justified or harmless' escape hatch for liability" like that of Rule 37(c)(1), this Court has interpreted Rule 37(b)(2)'s requirement that sanctions be "just" as necessitating a court to review the "concepts of substantial justification and harmlessness when deciding [whether] to impose sanctions under Rule 37(b)(2)."  *SiteLock LLC v. GoDaddy.com LLC*, 562 F. Supp. 3d 283, 322 n.18 (D. Ariz.

---

[5] In total, the United States produced nearly 1,300 Annotated Documents. Plaintiffs were in receipt of all of those documents by February 11, 2022, except for certain track changes and comments as a result of the inadvertent technical processing error.

2022).  Accordingly, even if a party has violated a court order, this Court will not impose sanctions where the disobeying party can "substantially justify the late disclosure, or prove its harmlessness."  *Greenawalt v. Sun City West Fire Dist.*, 2006 WL 1688088, at \*3 (D. Ariz. June 10, 2006); *see also Party v. Arizona Bd. of Regents*, 2022 WL 17459745, at \*5 (D. Ariz. Dec. 6, 2022).  "[W]hile a finding of bad faith is not a requirement for imposing sanctions, good or bad faith may be a consideration in determining whether imposition of sanctions would be unjust," *Hyde & Drath v. Baker*, 24 F.3d 1162, 1172 (9th Cir. 1994), and the "choice of sanctions," *David v. Hooker*, 560 F.2d 412, 419-20 (9th Cir. 1977).

## B. Sanctions Are Not Warranted Here

Sanctions are not warranted here because Plaintiffs have failed to establish that the United States violated the MIDP Order.  Mr. McAleenan's and former Secretary Kelly's handwritten notes were in their personal possession and thus the United States' late production of them did not violate the MIDP.  As for the other handwritten notes and hardcopy documents produced after the close of fact discovery, the United States' belated production was substantially justified and harmless.  Finally, Plaintiffs have failed to demonstrate how an inadvertent technical error in processing the earlier versions of the Annotated Documents violated the MIDP.  Even if this Court concludes that a violation of the MIDP occurred, such violation was substantially justified or harmless, and sanctions are not appropriate, as Plaintiffs have substantially probed the substance of the documents during depositions.

### 1.  The Handwritten Notes and Hardcopy Documents

#### a.  Mr. McAleenan's and former Secretary Kelly's Handwritten Notes

Production of Mr. McAleenan's and former Secretary Kelly's handwritten notes after the close of fact discovery did not violate the MIDP Order.  "MIDP requires each party, among other things, to . . . produce documents *in their possession, custody, or control* that they believe may be relevant to any party's claims or defenses."  *Drake v. Chop Hospitality*

*LLC*, 2021 WL 2939978, at *2 (N.D. Ill. July 13, 2021).[6]   Under the MIDP, hardcopy documents are "to be produced as they are kept in the usual course of business."  *See* D. Ariz. G.O. 17-08 § C.1.

Mr. McAleenan left government service in November 2019. Mr. Kelly left his position as Secretary of DHS in July 2017 and federal government service altogether in January 2019.  Accordingly, both Mr. McAleenan and former Secretary Kelly were no longer federal employees well before June 18, 2020, the date Plaintiffs argue that the United States' obligations under the MIDP began.  Mot. for Sanctions at 4.  During the course of this litigation, their handwritten notes were in their personal possession.  The United States was under no MIDP obligation to locate and collect documents, including handwritten notes, exclusively in the personal possession of former employees of which it was not aware. "Simply put, [a party] cannot produce what [it] does not have." *U.S v. Fitzpatrick*, 2008 WL 853055, at *7 (D. Ariz. Feb. 4, 2008).  A "litigant cannot withhold evidence that is not within its possession, custody, or control." *See Hernandez v. Helm*, 2019 WL 5922233, at *10 (N.D. Ill. Nov. 12, 2019) (finding in an action governed by the MIDP that government counsel was under no obligation to produce documents in the personal possession of a *current* employee where the government did not "possess or otherwise control" those documents).

Plaintiffs do not cite any authority requiring the United States under MIDP to locate and collect documents exclusively in the personal possession of former employees.  *See SiteLock LLC*, 562 F. Supp. 3d at 298 (requiring some authority to show a claimed violation of the MIDP).  Indeed, that the United States endeavored to locate and collect and produce the notes immediately upon learning of their existence went beyond its MIDP obligations and demonstrates its good-faith discovery efforts.  Because Plaintiffs have failed to meet their burden of establishing that the United States violated the MIDP Order by producing Mr. McAleenan's and former Secretary Kelly's handwritten notes after the close of fact

---

[6] Two courts participated in the MIDP program: the District of Arizona and the Northern District of Illinois. *See* Federal Judicial Center, https://www.fjc.gov/content/320224/midpp-standing-order.

discovery, Plaintiffs' request for sanctions on that basis should be denied. *See Noland*, 2022 WL 2341221 at *3.

Even assuming for argument's sake that the United States violated the MIDP Order with respect to Mr. McAleenan's and former Secretary Kelly's notes, sanctions are not warranted because any late production was substantially justified or harmless. *See Greenawalt*, 2006 WL 1688088 at *3. First, any late production of Mr. McAleenan's and Secretary Kelly's notes was substantially justified as the United States only learned of the notes after Mr. McAleenan and Secretary Kelly searched their personal property.

Second, Plaintiffs were not harmed by the later production of Mr. McAleenan's notes. Plaintiffs identify three topics on which they claim they would have "pressed" Mr. McAleenan and other deponents if Mr. McAleenan's notes had been available earlier: (1) "the true purpose of family separation"; (2) whether ICE and other government agencies were "operationally ready"; and (3) Mr. McAleenan's "understanding . . . as to why and when a child who crossed the border with a parent was deemed unaccompanied." Mot. for Sanctions at 8-11. Yet deposition testimony demonstrates that Plaintiffs already extensively probed Mr. McAleenan and other witnesses about each of these three topics. *See, e.g.,* Exhibit 3 ▌

▌, Exhibit 4 ▌

▌; Mot. for Sanctions at Exhibit R ▌

▌, Exhibit 2 (McAleenan Dep at 223:5-224:21) (discussing Topic 2), Exhibit 5 ▌

▌, Exhibit 4 ▌

Exhibit 2 (McAleenan Tr. at 62:5-69:22) (discussing Topic 3, Mr. McAleenan's understanding regarding why and when a child would be deemed unaccompanied), Mot. for Sanctions at Exhibit V ▌

Since Plaintiffs already had questioned Mr. McAleenan and other witnesses at length on these topics, the later disclosure of his notes was harmless and does not warrant sanctions. *Cf. SiteLock LLC*, 562 F. Supp. 3d at 323 (rejecting defendant's harmlessness argument where plaintiff identified *new* categories of evidence it would have pursued absent

1    defendant's violation).  Importantly, Plaintiffs do not—and cannot— genuinely argue that
2    they would have engaged in entirely *new* lines of questioning had these notes been produced
3    prior to depositions.
4         The later production of the single handwritten note penned by Secretary Kelly also
5    was harmless. ███████████████████████████████████████████████████████
6    ███████████████████████████████████ of which Plaintiffs are well-aware.  For example,
7    in March 2017, Secretary Kelly said during a CNN interview that he was considering
8    separating parents and children "in order to deter more movement along this terribly
9    dangerous network," a statement in similar terms to that contained in the handwritten note.[7]
10   Indeed, Plaintiffs' complaints ██████████████████████████████, *see C.M.* ECF 1 at
11   15; *A.P.F.* ECF 34 at 12, 16.  Plaintiffs cannot sincerely argue that they would have pursued
12   a different litigation strategy or deposition questioning had the note been disclosed prior to
13   depositions.[8]  Thus, any untimely disclosure was harmless.

### b. Mr. Albence's Handwritten Notes and Secretaries Duke's, Kelly's, and Nielsen's Hardcopy Documents

15        The United States does not deny that the MIDP applied to the 24 handwritten notes
16   collected from Mr. Albence, and the 49 hardcopy documents collected from Secretaries
17   Duke, Kelly, and Nielsen, as such documents were in the United States' "possession,
18   custody, or control."  *Drake*, 2021 WL 2939978 at *2.  However, in litigation such as this
19   where the United States has timely produced tens of thousands of documents, that a small
20   number of documents was produced late "is not, by itself, evidence of discovery
21   misconduct."  *McGhee v. N. Am. Bancard*, LLC, 2021 WL 5764708, at *2 (S.D. Cal. June
22   28, 2021) (declining to issue sanctions where a relatively "small number of documents" in
23   a large litigation were located and produced late).  It is well-recognized by courts within this

---

24        [7] *See* Daniella Diaz, Kelly: DHS is Considering Separating Undocumented Children
25   from Their Parents at the Border, CNN (Mar. 7, 2017)
     https://www.cnn.com/2017/03/06/politics/john-kelly-separating-children-from-parents-
     immigration-border/index.html.
26
27        [8] Plaintiffs did not seek the United States' consent or leave of this Court to depose
     former Secretary Kelly, as would have been required by the Court's Amended Case
28   Management Order. *See C.M.* ECF 144 at 3; *A.P.F.* ECF 144 at 3.

circuit that the Federal Rules of Civil Procedure "do not demand perfection." *Reinsdorf v. Skechers U.S.A., Inc.* 296 F.R.D. 604, 615 (C.D. Cal. 2013). "A party may comply in good faith with its discovery obligations and yet there may be supplemental productions or even additional responsive documents that were inadvertently omitted. Such supplemental productions or responses do not necessarily equate to discovery misconduct." *Id.* Such is the case here.

Plaintiffs' rigid reading of the MIDP Order ignores the spirit of the Federal Rules of Civil Procedure and the challenges of complex, large litigation involving many federal agencies. Despite good-faith efforts and diligence, documents may be discovered and produced late, without amounting to a violation of a court order that warrants sanctions. *See McGhee*, 2021 WL 5764708 at *2. That the government discovered and produced a small number of documents after the close of fact discovery does not warrant sanctions under Rule 37(b).

If this Court concludes that the United States' belated production of a small number of documents violated the MIDP Order, the violation was harmless. *See Greenawalt*, 2006 WL 1688088 at *3. Out of the total documents from Mr. Albence and former Secretaries Kelly, Duke, and Nielsen that were produced late, at least eight documents from Secretary Nielsen and eight documents from Secretary Kelly are exact duplicates of documents produced before the MIDP deadline (*i.e.*, before all depositions commenced in this litigation). Moreover, Plaintiffs have not specified the prejudice they suffered by the belated production of the remaining hardcopy or handwritten documents. That is because the substance of those documents is similar to other documents that already had been produced to Plaintiffs or are publicly available. Accordingly, no sanctions are warranted for the belated production of the small number of handwritten notes and hardcopy documents collected from Mr. Albence and former Secretaries Kelly, Duke, and Nielsen.

### 2. The Annotated Documents

Sanctions are not warranted on account of the Annotated Documents. The discovery process is not anticipated to be perfect, and a production issue is "not, by itself, evidence of discovery misconduct." *McGhee*, 2021 WL 5764708 at *2. Here, the United States

produced the original versions of the Annotated Documents many months before the close of fact discovery in accordance with its MIDP obligations.  As soon as the United States discovered a technical processing issue with the documents, it informed Plaintiffs. *See* Mot. for Sanctions at Exhibit B.  Plaintiffs do not contest that this processing issue was inadvertent. *See id*. at 7.  The inadvertent error in processing the original versions of the Annotated Documents does not amount to a violation of the MIDP Order. *See Radiologix, Inc. v. Radiology & Nuclear Med., LLC,* 2019 WL 354972, at \*7 (D. Kan. Jan. 29, 2019) (declining to impose Rule 37(b) sanctions where alleged error "amounted to a technical oversight when producing documents from an electronic document management database" which the party quickly remedied upon discovery).

Moreover, Plaintiffs have only identified *four* comments in the Annotated Documents in support of their claim of prejudice. *See* Mot. for Sanctions at 7-11.  None of those comments would have afforded new lines of deposition questioning, because Plaintiffs have already questioned witnesses about these topics at length.[9] *Cf. SiteLock LLC*, 562 F. Supp. 3d at 323.  For example, Plaintiffs contend that ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮  ▮  ▮  ▮  ▮  ▮  ▮  ▮  ▮

*See* Mot. for Sanctions at 7, Exhibit J.  Yet, Plaintiffs probed Chad Wolf, the DHS Chief of Staff, at deposition about this very issue. *See* Exhibit 7 (Chad Wolf Dep. at 204:4 – 209:11).

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ *see* Exhibit 7 ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮ *see* Exhibit 7(▮▮▮▮▮▮▮

The same holds true for the other three comments relating ▮▮▮▮▮▮▮, *see* Exhibit 2

---

[9] On December 22, 2022, the United States issued a clawback letter pursuant to this Court's 502(d) Order for CD-US-0102694T to CD-US-0102697T, Exhibit K to Plaintiffs' Motion.  The document contains comments from ICE counsel, protected by the attorney-client privilege and attorney work product doctrine that were inadvertently not redacted. The United States has submitted an amended version of this document at Exhibit 6, which should be relied upon instead of Exhibit K.

(McAleenan Tr. at 223:24-225:7); ████████████████████████████████████ ,
*see* Exhibit 8 (Matthew Albence Tr. at 256:4-259:24); and the ████████████████
████████ , *see* Exhibit 2 (McAleenan Tr. at 62:5-69:22), Exhibit 9 (DHS 30(b)(6) Tr.
at 145:8-148:23).

### C. Plaintiffs' Requested Sanctions are Unjust

If this Court concludes that sanctions are appropriate, it nevertheless should reject the extraordinary sanctions requested by Plaintiffs because they are not "just." *See* Fed. R. Civ. P. Rule 37(b)(2). As this Court has recognized, the United States has worked diligently to comply with its discovery obligations in this litigation. *See* Hr'g Tr. at 13:15-14:1. As soon as the documents that are the subject of Plaintiffs' motion were discovered, the United States promptly notified Plaintiffs and made productions. *See McGhee*, 2021 WL 5764708 at *2 (declining to impose sanctions where defendant "promptly produced" documents after its late discovery). These demonstrable good-faith efforts by the United States should be taken into account. *See Hyde & Drath*, 24 F.3d at 1172.

Plaintiffs request that this Court order all handwritten notes, hardcopy documents, and Annotated Documents identified by bates number in Plaintiffs' Proposed Order be "deemed admitted at trial if offered by Plaintiffs." Mot. for Sanctions at 16. Such a far-reaching sanction would allow Plaintiffs to overcome all evidentiary hurdles imposed by the Federal Rules of Evidence, such as relevancy and hearsay. This Court already expressed skepticism with Plaintiffs' requested sanction, stating, "It just doesn't seem to me that . . . admit[ng] these [documents] and use[ing] them for any purpose is necessarily the sanction that should be imposed." Hr'g Tr. at 13:1-3. The Court's statement recognizes that deeming the requested documents admissible would not be a "narrowly-tailored" remedy "specifically related" to any alleged harm Plaintiffs suffered on account of the late production. *RG Abrams Ins. V. Law Offices of C.R. Abrams*, 2022 WL 16641829, at *41 (C.D. Cal. Nov. 2, 2022). While questioning a deponent about a document may lay the foundation for authentication, it does not mean a court will determine that document is admissible at trial. *See* Hr'g Tr at 12:22-23 ("[T]o have the foundation for admission is not

the same as admitting [the documents].").  The remedy Plaintiffs seek outweighs any harm they may have suffered and would serve to give Plaintiffs an unfair litigation advantage.[10]

This is especially true with respect to the Annotated Documents.  Plaintiffs request that the Annotated Documents be admitted in their entirety.  *See* Mot. for Sanctions at 16. However, only the track-changes and comments in the margins of the Annotated Documents were produced to Plaintiffs after the fact discovery deadline.  Plaintiffs' requested sanction would have this Court order as admissible thousands of pages in the Annotated Documents even though the vast majority of the contents of those documents was available to Plaintiffs well before the close of fact discovery.

Plaintiffs' requested sanction regarding the handwritten notes and hardcopy documents is even more far-reaching and unjust.  Plaintiffs request that the United States be "precluded from contesting or otherwise using the late-produced handwritten notes and hard-copy documents at trial."  Mot. for Sanctions at 16.  Plaintiffs have explained this requested sanction as "prohibit[ing] witnesses from disputing or explaining away the contents of notes that Plaintiffs did not have the benefit of during deposition."  *Id*. at 15.

This proposed sanction is not "just" for several reasons.  *See* Fed. R. Civ. P. 37(b)(2). First, it is not targeted at narrowly addressing the alleged prejudice Plaintiffs claim to have experienced by the late production.  *See RG Abrams*, 2022 WL 16641829 at *41.  Plaintiffs have claimed prejudice as a result of their inability to question certain deponents about the belatedly produced hardcopy documents and handwritten notes.  Their proposed remedy, however, does not aid Plaintiffs in ascertaining facts in this litigation.  Rather, Plaintiffs' requested sanction would preclude witness explanation, contrary to the goal of deposition discovery.  *See Blair v. CBE Group, Inc.*, 2015 WL 3397629, at *10 (S.D. Cal. May 26, 2015) ("The purpose of depositions is to determine the facts of the case while the witness is under the scrutiny of examination.").

---

[10] Given the United States' demonstrable good-faith in its extensive document collection and production efforts, and the minimal, if any, prejudice Plaintiffs have suffered from the production of these documents after the close of fact discovery, if this Court determines that a sanction is appropriate, the United States respectfully submits that it should conclude that Plaintiffs need not establish the *foundation* to admit certain documents produced after the close of fact discovery.

Second, Plaintiffs' requested sanction is disproportionate to any claimed harm. Statements in the handwritten notes and hardcopy documents at issue could have multiple interpretations. Contrary to Plaintiffs' assertions, the notes at issue do not ████████ ████ deposition testimony. Mot. for Sanctions at 8-12. Rather, the notes are consistent with that testimony, or likely would be explained to be consistent if the notetaker was afforded an opportunity to comment on them. Precluding witnesses from commenting on or offering explanation of the notes and documents would deprive the trier of fact of potentially key evidence.

Finally, the United States proposed allowing Plaintiffs to re-open some depositions to question the witnesses about these documents. *See* Hr'g Tr. at 8:2-5. This was, in fact, the very remedy Plaintiffs originally requested at Mr. McAleenan's deposition, stating that they moved to keep the deposition "open, depending on what the production of those notes reveals, and subject to our right to recall Mr. McAleenan to ask questions about those documents". *See* McAleenan Tr. at 19:15-19. The United States understands that the Court has determined that it will not order Plaintiffs to re-open depositions. *See* Hr'g Tr. at 11:16-24. But Plaintiffs' demand that witnesses be unable to explain the notes and documents is unreasonable, in light of the United States' offer to mitigate any prejudice experienced by Plaintiffs.[11]

Plaintiffs' requested sanctions go far beyond remedying any alleged harm they may have suffered by not being able to question witnesses about certain documents, or portions thereof, during depositions.[12] This Court should not allow Plaintiffs to use a request for

---

[11] Although Plaintiffs do not make this request, they argue that it would be "entirely fair to deem established Defendant's admissions – *e.g*., that ICE was not ready and that family separation was about deterrence – made in the late produced notes." Mot. for Sanctions at 15. Not so. Those contentions are refuted by deposition testimony and documentary evidence in this litigation. *See, e.g.,* Exhibit 3 (McAleenan Dep at 95:15-98:6, 344:24-368:18); Exhibit 4 (Homan Dep. at 43:13-45:22; 149:5-150:8). Accordingly, deeming admissible such notations would be an extreme and unjust remedy.

[12] Plaintiffs request in the alternative that they "be permitted to depose any government trial witnesses who authored late produced notes or annotations about those documents, prior to their testimony at trial." *See* Mot. for Sanctions at 16. The notes at issue in this motion were collected from former DHS Secretaries Kelly and Nielsen, and former DHS Acting Secretary Duke. This Court has already denied Plaintiffs' request to depose Secretary Nielsen. *See C.M.* ECF 325; *A.P.F.* ECF 319 ("Order"). The *Morgan*

sanctions as a tool for gaining a tactical advantage at trial when the United States' late production of a small number of documents did not violate the MIDP Order or was substantially justified or harmless. *See Excel Fortress Ltd. v. Wilhelm*, 2019 WL 2503684, at *4 (D. Ariz. June 17, 2019) (declining to impose sanctions where the moving party intended to seek sanctions "to gain a tactical litigation advantage").

## III.   CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court deny Plaintiffs' motion for sanctions.

Submitted this 11th day of January, 2023.

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JAMES G. TOUHEY, JR.
Director, Torts Branch

*s/ Irina M. Majumdar*
IRINA M. MAJUMDAR
Trial Attorney
D.C Bar No. 252757
PHILIP D. MACWILLIAMS
Trial Attorney
D.C. Bar No. 482883
E-mail: Irina.m.majumdar@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 598-5403

Attorneys for the United States of America

---

doctrine should apply with equal force should Plaintiffs seek to depose former Secretaries Duke or Kelly. *See United States v. Morgan,* 313 U.S. 999 (1941); Order at 4.

**CERTIFICATE OF SERVICE**

I hereby certify that on January 11, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.


*s/ Irina M. Majumdar*
IRINA M. MAJUMDAR
Attorney for United States of America