BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division
JAMES G. TOUHEY, JR.
Director, Torts Branch
PHILIP D. MACWILLIAMS
Trial Attorney
D.C. Bar No. 482883
E-mail: phil.macwilliams@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4285
Attorneys for the United States of America

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| C.M., on her own behalf and on behalf of her minor child, B.M.; L.G., on her own behalf and on behalf of her minor child, B.G.; M.R., on her own behalf and on behalf of her minor child, J.R.; O.A., on her own behalf and on behalf of her minor child, L.A.; and V.C., on her own behalf and on behalf of her minor child, G.A., | Case No. 2:19-cv-05217-SRB **DEFENDANT UNITED STATES' CONTROVERTING AND SUPPLEMENTAL STATEMENT OF FACTS AND OBJECTIONS** |
| Plaintiffs, | |
| v. | |
| United States of America, | |
| Defendant. | |

Pursuant to Fed. R. Civ. P. 56(a) and LRCiv 56.1, Defendant United States submits the following Controverting and Supplemental Statement of Facts in response to Plaintiffs' Statement of Undisputed Material Facts in Support of Plaintiffs' Motion for Partial Summary Judgment (ECF 379).  The United States' Statement of Undisputed Material Facts in support of its Motion for Summary Judgment (ECF 372) also is incorporated herein.  To the extent a statement of fact is responded to as undisputed in whole or in part, that is solely for purposes of summary judgment.  Pursuant to LRCiv 7.2(m)(2), Defendant United States lodges the following objections to the admissibility of evidence offered in support of Plaintiffs' Statement of Undisputed Material Facts In Support of Plaintiffs' Motion for Partial Summary Judgment and Plaintiffs' Motion for Partial Summary Judgment.

## CONTROVERTING STATEMENT OF FACTS

1.     Undisputed that discussions regarding various immigration enforcement policy options, including options that would apply to family units, occurred.  Disputed insofar as this statement of fact is intended to assert that the DHS Referral Policy that was ultimately adopted was intended by the decisionmaker, Secretary Nielsen, to use the separation of parents and children as a deterrent to migration.  *See* U.S. MSJ SOF 11-14, 18-19 (and exhibits thereto), U.S. MSJ Ex. B Att. 1 at 46-47, U.S. Ex. B. Att. 2 at 18-19; *see also* U.S. Opp. Ex. D (McAleenan 331-344).

2.     Undisputed that the quoted language appears in the media article used as Plaintiffs' exhibit.  Disputed insofar as this statement of fact is intended to assert that the DHS Referral Policy that was ultimately adopted was intended by the decisionmaker, Secretary Nielsen, to use the separation of parents and children as a deterrent to migration.  *See* U.S. MSJ SOF 11-14, 18-19 (and exhibits thereto), U.S. MSJ Ex. B Att. 1 at 46-47, U.S. Ex. B. Att. 2 at 18-19.  Objection to cited media article for failure to authenticate the article and the quoted statements therein.  Objection to quoted statements in cited media article as hearsay.

3.    Undisputed that the quoted language appears in the referenced letter.  Disputed in that Plaintiffs submit no evidence that the referenced letter was presented to former Secretary Kelly.  Objection to quoted statements in letter for lack of foundation of personal knowledge of matters stated therein. Objection to quoted statements from letter as hearsay, and on ground that the declarants were not disclosed as an expert on the subject matter of the statements therein or established as qualified to testify to the subject matter of the statements therein.

4.    Undisputed that the quoted language appears in the referenced letter.  Disputed in that Plaintiffs submit no evidence that the referenced letter was presented to former Secretary Kelly.  Disputed insofar as this statement of fact is intended to assert that processes and mechanisms did not exist to coordinate communications between separated family members.  *See* U.S. SOF MSJ 31, 32, 33 (and exhibits thereto); U.S. MSJ Ex. F (DeLaCruz Decl. ¶ 32); U.S. MSJ Ex. E (Helland Decl. ¶¶ 2-8).  Objection to quoted statements in letter for lack of foundation of personal knowledge of matters stated therein. Objection to quoted statements from letter as hearsay, and on ground that the declarant was not disclosed as an expert on the subject matter of the statements therein or established as qualified to testify to the subject matter of the statements therein.

5.    Undisputed that the quoted language appears in the referenced letter.  Disputed in that Plaintiffs submit no evidence that the referenced letter was presented to former Secretary Kelly.  Objection to quoted statements in letter for lack of foundation of personal knowledge of matters stated therein.  Objection to quoted statements from letter as hearsay.

6.    Undisputed that in July 2017 the U.S. Border Patrol's ("USBP") El Paso Sector and the United States Attorney's Offices for the Western District of Texas and the District of New Mexico developed and implemented a prosecution initiative that did not exclude from prosecution adults illegally entering the United States in family units for violations of 8 U.S.C. § 1325(a).  Disputed insofar as this statement of fact is intended to assert that this prosecution initiative was a "pilot program" developed or directed at the headquarters level of the Department of Homeland Security ("DHS"), Customs and

2

Border Protection ("CBP"), or U.S. Border Patrol.  *See* Pls. Ex. 9, 12; *see also* U.S. Supp. SOF 1 and 2 (and exhibits thereto), *supra*.

7.     Undisputed that under the El Paso Prosecution Initiative the minor children of adults who were referred to the U.S. Attorney's Office for prosecution were designated as unaccompanied alien children ("UACs") and transferred to the custody of the Office of Refugee Resettlement ("ORR").  Disputed insofar as the statement of fact is intended to set forth the precise sequence of events in all instances.  *See* U.S. MSJ SOF 26-28 (and exhibits thereto).

8.     Undisputed that the quoted language appears in the cited report.  Objection to quoted language from the cited report as hearsay and hearsay within hearsay.

9.     Undisputed.

10.    Undisputed that the quoted language appears in the cited report.  Disputed insofar as this statement of fact is intended to assert that enhancements to U.S. Border Patrol's e3 system to document separations of family units were not made prior to the DHS Referral Policy.  *See* Pls. Ex 15 (describing enhancements to U.S. Border Patrol's e3 system in April 2018); U.S. Opp. Ex. A Att. 1 (McAleenan 210-213, 374-378).  Objection to quoted language from the cited report as hearsay and hearsay within hearsay.

11.    Undisputed that the quoted language appears in the cited report.  Disputed insofar as this statement of fact is intended to assert that enhancements to U.S. Border Patrol's e3 system to document separations of family units were not made prior to the DHS Referral Policy.  *See* Pls. Ex 15 (describing enhancements to U.S. Border Patrol's e3 system in April 2018); U.S. Opp. Ex. A Att. 1 (McAleenan 210-213, 374-378).  Objection to quoted language from the cited report as hearsay and hearsay within hearsay.

12.    Disputed that the cited memorandum was from the U.S. Border Patrol El Paso Sector and that the putative "recommendation" is an accurate quote from the document, which states: ██████████████████████████████

████████████████████████████████████████

███████████████

13.    Undisputed that the cited document was addressed to the DHS Office of Civil Rights and Civil Liberties ("CRCL") and the DHS Acting Inspector General and that the quoted language appears in the cited document.  Objection to quoted statements in the cited document for lack of foundation of personal knowledge of matters stated therein. Objection to the quoted statements from the cited document as hearsay.

14.    Undisputed that the quoted language appears in the cited letter.  Disputed insofar as this statement of fact is intended to assert that the cited letter was received by Secretary Nielsen.  *See* U.S. Opp. Ex. A Att. 3 (DHS 30(b)(6) 275-277).  Objection to quoted language from letter as hearsay, and on ground that the declarant was not disclosed as an expert on the subject matter of the statements therein or established as qualified to testify to the subject matter of the statements therein.

15.    Disputed in that Plaintiffs submit no evidence as to whether the letter was actually received by Secretary Nielsen or anyone at CBP and ICE.  Objection to quoted statements from the cited letter as hearsay, and on ground that the declarants were not disclosed as an expert on the subject matter of the statements therein or established as qualified to testify to the subject matter of the statements therein.

16.    Undisputed that the quoted language is from the deposition of this individual. Disputed insofar as this statement of fact is intended to assert that the "concerns" raised by organizations also were held by those at the meeting.  *See* U.S. Opp. Ex. A Att. 4 (Wolf 323-324); U.S. Opp. Ex. A Att. 2 (Homan 91-95); U.S. Opp. Ex. B.

17.    Undisputed.

18.    Undisputed, with the exception that the DHS Referral Memorandum was transmitted to Secretary Nielsen through the Office of the Executive Secretary, not sent directly to Secretary Nielsen from Commissioner McAleenan, Director Homan, and USCIS Director Cissna.  *See* U.S. MSJ SOF 7 (and exhibits thereto).

19.    Disputed that this is an accurate and complete quotation of Options 1 and 2 as set forth in the DHS Referral Memorandum.  *See* U.S. MSJ Ex. C Att. 3.

20.    Disputed that this is an accurate and complete quotation of Option 3 as set forth in the DHS Referral Memorandum.  *See* U.S. MSJ Ex. C Att. 3.

21.   Undisputed.

22.   Disputed.  The cited testimony refers to the U.S. Attorney Offices' resources as of the date of the Zero Tolerance Memorandum (rather than the date of implementation of the DHS Referral Policy), relates to the prosecution of all unlawful entrants (rather than cases of unlawfully entry referred for prosecution), and does not state that the U.S. Attorney's Office failed to devote sufficient resources.  *See* Pls. Ex. 1.

23.   Undisputed insofar as the statement of fact is intended to assert that the effects of criminal prosecution, with the El Paso Prosecution Initiative being an example, was a factor in recommending Option 3 in the DHS Referral Memorandum. *See* U.S. MSJ SOF 11 (and exhibits thereto).

24.   Undisputed.  Objection to quoted language from report as hearsay.

25.   Undisputed that the quoted language appears in the cited email.  Disputed insofar as this statement of fact is intended to assert that the DHS Referral Policy would or did result in separations of all family units apprehended for unlawful entry while the policy was in effect.  *See* U.S. MSJ SOF 41 (and exhibits thereto); *see also* U.S. Supp. SOF 11, *supra*; U.S. Opp. Ex. A Att. 5 (Jordan 93-95, 103-104).

26.   Undisputed that the DHS Referral Memorandum itself did not set forth a plan relating to communications and reunification of separated families.  Disputed insofar as this statement of fact is intended to assert that there were no existing processes relating to communications and reunification of separated families to be utilized during implementation of the DHS Referral Policy.  *See* U.S. MSJ SOF 30-31 (and exhibits thereto).

27.   Undisputed that the quoted language from Pls. Ex. 21 does not appear in the DHS Referral Memorandum.  Disputed insofar as the statement of fact is intended to assert that planning and coordination with HHS relating to the DHS Referral Policy did not occur. *See* U.S. MSF SOF 22 (and exhibits thereto).

28.   Undisputed that Option 3 in the DHS Referral Memorandum was approved by Secretary Nielsen on May 4, 2018.  Undisputed that following the approval of Option 3, and in implementation of the DHS Referral Policy, in the Yuma Sector when an adult

5

was identified as amenable to prosecution and to be processed for a referral for prosecution a placement request with ORR was made for the child as soon as practicable. *See* U.S. MSJ SOF 32, 35 (and exhibits thereto); U.S. MSJ Ex. D (Jordan Decl. ¶ 11); Pls. Ex. 22, 23.

29.   Undisputed insofar as the DHS Referral Policy resulted in a change in the enforcement of immigration laws.  Disputed that the DHS Referral Policy represented significant change in all respects. *See* U.S. MSJ SOF 27, 30, 31, 42 (and exhibits thereto).

30.   Undisputed.

31.   Disputed insofar as this statement of fact is intended to assert that Border Patrol agents received no training relating to the handling of situations where family units would be separated.  *See* U.S. Opp. Ex. A Att. 1 (McAleenan 308-310, 321-322).

32.   Disputed.  *See* U.S. MSJ SOF 22 (and exhibits thereto).

33.   Undisputed that this particular individual did not recall any such planning discussions.  Disputed insofar as this statement of fact is intended to assert that there was no notice to HHS personnel of the DHS Referral Policy or planning that involved HHS relating to the DHS Referral Policy.  *See* U.S. MSF SOF 22 (and exhibits thereto).

34.   Undisputed that this particular individual did not recall notice of the DHS Referral Policy until it was implemented.  Disputed insofar as this statement of fact is intended to assert that there was no notice to ICE personnel of the DHS Referral Policy or planning that involved ICE relating to the DHS Referral Policy.  *See* U.S. MSF SOF 22 (and exhibits thereto); *see also* U.S. MSJ Ex. C. Att. 7 (email discussing coordination between U.S. Border Patrol Yuma Sector and ICE Phoenix Field Office).

35.   Undisputed that this particular individual learned of the DHS Referral Policy through a DOJ press release or slightly before the Policy was announced.  Disputed insofar as this statement of fact is intended to assert that there was no notice to ICE personnel of the DHS Referral Policy or planning that involved ICE relating to the DHS Referral Policy.  *See* U.S. MSF SOF 22 (and exhibits thereto); *see also* U.S. MSJ Ex. C. Att. 7 (email discussing coordination between U.S. Border Patrol Yuma Sector and ICE Phoenix Field Office).

36.    Undisputed that the quoted language appears in the cited report.  Objection to quoted language from report as hearsay and hearsay within hearsay.

37.    Undisputed that the quoted language is from the cited email.  Disputed insofar as the involvement of CRCL in DHS's policy-making and planning is at the discretion of the Secretary of Homeland Security.  *See* U.S. Opp. Ex. A Att. 3 (DHS 30(b)(6) 60-61, 182-183).  Objection to the quoted language from the cited email as hearsay.

38.    Undisputed that the quoted language is from the cited report.  Objection to the quoted language from report as hearsay and hearsay within hearsay.

39.    Undisputed that the quoted language is from the cited documents.

40.    Undisputed that a separation of a parent and child could occur even though the prosecution referral of the parent was not accepted by the U.S. Attorney's Office.  Objection to cited portions of report at Pls. Ex. 13 as hearsay and hearsay within hearsay.

41.    Undisputed as to Yuma Sector.

42.    Undisputed insofar as this statement of fact is intended to assert that in May 2018 the Yuma Sector Prosecutions Unit would note issues with a case referred to the U.S. Attorney's Office for prosecution.  Disputed insofar as this statement of fact is intended to assert that Border Patrol agents in the Yuma Sector Prosecutions Unit who prepared the referrals knew the referral would be declined by the U.S. Attorney's Office. *See* Pls. Ex. 24 (testimony of Agent R. that it was expected that the U.S. Attorney's Office would perform their review); *see* U.S. Supp. SOF 9, 10, *supra*.  Objection to quoted statement from report (Pls. Ex. 13) as hearsay.

43.    Undisputed that the quoted language is from the cited document.

44.    Undisputed that the quoted language is from the cited document.

45.    Undisputed that the quoted language appears in the deposition testimony of the referenced individual.  Disputed insofar as the statement of fact is intended to assert that, during the time period the DHS Referral Policy was in effect, there were no processes in place relating to communications or reunifications of separated family members. *See* US MSJ SOF 31 (and exhibits thereto); *see also* U.S. Opp. Ex. A Att. 8 (Harper 44-45, 79, 122, 125-127, 141-142).  Disputed insofar as the statement of fact is intended to assert

7

that a parent and child could not be associated without their respective alien numbers. *See* U.S. Opp. Ex. A Att. 7 (Zanello 196) (testifying to other information and identifiers used to track family members). Objection to quoted statements from report (Pls. Ex. 13) as hearsay.

46.   Undisputed that a separation of a parent and child could occur even though the prosecution referral of the parent was not accepted by the U.S. Attorney's Office.

47.   Undisputed that the quoted language is from the cited email. Objection to citations to report (Pls. Ex. 13) as hearsay.

48.   Undisputed that the quoted language is from the cited email. Disputed insofar as the statement of fact is intended to assert that the views expressed therein by the ICE official were adopted as policy by U.S. Border Patrol—a different agency from ICE— when such situations occurred.  *See* Pls. Ex. 41. *See also* U.S. MSJ SOF 26 (and exhibits thereto); U.S. MSJ 16 n.13 (citing Ex. A Att. 1 (McAleenan 94-95, 222, 223, 293) (testifying that decisions relating to revisiting UAC designations and potential reunifications following prosecution were left to the discretion of Border Patrol); U.S. Opp. Ex. A Att. 6 (Comella 200-201); Pls. Ex. 45.

49.   Undisputed that the quoted language is from the cited email.

50.   Undisputed that the quoted language is from the cited email.

51.   Undisputed that the quoted language is from the cited draft document.  Objection to quoted statements for lack of foundation of personal knowledge of matters stated therein.  Objection to quoted statements from draft document as hearsay.

52.   Undisputed that the quoted language is from the cited draft document.  Objection to quoted language as hearsay and hearsay within hearsay.

53.   Undisputed that the quoted language is from the cited email.  Disputed insofar as the statement of fact is intended to assert that there was no mechanism or processes in place for children in ORR shelters to communicate with parents in ICE detention.  *See* SOF 31 (and exhibits thereto); *see also* U.S. MSJ Ex. F (DeLaCruz Decl. ¶ 32); U.S. MSJ Ex. E (Helland Decl. ¶¶ 2-8).  Objection to the quoted statement for lack of foundation of

personal knowledge of matters stated therein.  Objection to the quoted statement as hearsay.

54.    Undisputed that quoted language appears in the cited email.  Objection to quoted statements for lack of foundation of personal knowledge of matters stated therein. Objection to quoted statements as hearsay and hearsay within hearsay.

55.    Disputed that V.C. and G.A. sought asylum at the time of apprehension by U.S. Border Patrol.  *See* U.S. MSJ Ex. D Att. 5 (0150, 0155-157).  The remaining is undisputed**.**

56.    Undisputed that V.C. and G.A. were transported to the Yuma Station.  Disputed that explanation of separation was provided in this manner.  *See* U.S. Opp. Ex. A Att. 6 (Comella 29-30, 43, 203-208, 213-214, 220-221, 229-233, 401-402).  Objection to use of declaration as improper supplementation and amendment to deposition testimony.

57.    Undisputed that V.C. and G.A. were temporarily separated while in Border Patrol custody.  Objection to use of declaration as improper supplementation and amendment to deposition testimony.

58.    Undisputed that children were provided opportunity to bathe while in Border Patrol custody and that detainee movements within a Border Patrol Station involve forming lines.  Disputed that explanation of separation was provided in this manner.  *See* U.S. Opp. Ex. A Att. 6 (Comella 203-208, 213-214, 220-221).  Objection to use of declaration as improper supplementation and amendment to deposition testimony

59.    Disputed. *See* U.S. Opp. Ex. A Att. 6 (Comella 29-30, 43, 203-208, 229-233, 401-402).  Objection to use of declaration as improper supplementation and amendment to deposition testimony.

60.    Undisputed that detainee movements within a Border Patrol station involve forming lines.

61.    Undisputed that V.C. avers as much. Objection to use of declaration as improper supplementation and amendment to deposition testimony.

62.    Undisputed that V.C. was informed of the destination of G.A. Disputed that explanation of separation was provided in this manner.  *See* U.S. Opp. Ex. A Att. 6

(Comella 203-208, 213-214, 220-221).  Objection to use of declaration as improper supplementation and amendment to deposition testimony.

63.     Undisputed.

64.     Undisputed that V.C. avers as much. Objection to use of declaration as improper supplementation and amendment to deposition testimony.

65.     Undisputed insofar as the first documented phone call between V.C. and G.A. was on July 26, 2018.  Disputed insofar as this statement of fact is intended to assert that detainees were not provided with ways to communicate with family members.  *See* Pls. Ex. 84 (stating policy of access to phones in detention facilities); U.S. Opp. Ex. A Att. 8 (Harper 79, 125-127) (testifying to detainee access to phones); U.S. MSJ Ex. F (DeLaCruz Decl. ¶ 32); U.S. MSJ SOF 131 (and exhibits thereto).  Objection to use of declaration as improper supplementation and amendment to deposition testimony.

66.     Undisputed that V.C. avers as much.  Objection to use of declaration as improper supplementation and amendment to deposition testimony.

67.     Undisputed.

68.     Undisputed that the Yuma Sector Prosecutions Unit did not refer V.C. to the U.S. Attorney's Office for prosecution, but V.C. was processed for a criminal referral.  *See* U.S. MSJ SOF 116, 122 (and exhibits thereto).

69.     Disputed insofar as V.C. was apprehended for violation of 8 U.S.C.§ 1325 and detained during the pendency of the criminal referral process.  *See* U.S. MSJ SOF 80, 86 (and exhibits thereto).

70.     Disputed that M.R. and J.R. sought asylum at the time of apprehension by U.S. Border Patrol.  *See* U.S. MSJ Ex. D Att. 3 (0104, 0110).  The remaining is undisputed.

71.     Disputed that explanation of separation was provided in this manner. *See* U.S. Opp. Ex. A Att. 6 (Comella 203-208, 213-214, 220-221).

72.     Undisputed that M.R. and J.R. were transported the Yuma Station.  Disputed that explanation of separation was provided in this manner.  *See* U.S. Opp. Ex. A Att. 6 (Comella 29-30, 43, 203-208, 213-214, 220-221, 229-233, 401-402).  Objection to use of declaration as improper supplementation and amendment to deposition testimony.

73.    Undisputed that M.R. and J.R. were detained together in the Yuma Station. Undisputed that M.R. testified as much as to the remaining.

74.    Undisputed that children were provided opportunity to bathe while in Border Patrol custody and provided with new clothing. Undisputed that M.R. testified as much as to the remaining.

75.    Undisputed that detainees at times were moved in groups. Undisputed that M.R. testified as much as to the remaining.

76.    Disputed that explanation of separation was provided in this manner.  *See* U.S. Opp. Ex. A Att. 6 (Comella 203-208, 213-214, 220-221). Objection to use of declaration as improper supplementation and amendment to deposition testimony.

77.    Undisputed that M.R. was transported from Border Patrol custody to ICE custody. Undisputed that M.R. testified as much as to the remaining.

78.    Disputed that M.R. was unable to make contact with J.R.  *See* U.S. MSJ SOF 95 (and exhibits thereto).

79.    Disputed.  *See* U.S. MSJ Ex. F (De LaCruz Decl. ¶ 32); U.S. MSJ SOF 95 (and exhibits thereto).

80.    Undisputed that M.R. testified as much regarding first part of this statement of fact.  As to remaining, objection to use of declaration as improper supplementation and amendment to deposition testimony.

81.    Disputed that M.R. and J.R. spoke only one additional time.  *See* U.S. MSJ SOF 95 (and exhibits thereto).

82.    Undisputed that M.R. testified as much.

83.    Undisputed the prosecution of M.R. was declined by the U.S. Attorney's Office the day after J.R. was transferred to ORR custody.

84.    Disputed that C.M. and B.M. sought asylum at the time of apprehension by U.S. Border Patrol.  *See* U.S. MSJ Ex. D Att. 5 (0031, 0037-0039).  The remaining is undisputed.

85.    Undisputed that C.M. and B.M. were transported to the Yuma Station.  Disputed that explanation of separation was provided in this manner.  *See* U.S. Opp. Ex. A Att. 6

(Comella 203-208, 213-214, 220-221).  Disputed that C.M. was told "Happy Mother's Day." *See* U.S. Opp. Ex. A Att. 6 (Comella 29-30, 43, 203-208, 213-214, 220-221, 229-233, 401-402). Objection to use of declaration as improper supplementation and amendment to deposition testimony.

86.    Undisputed that children were provided opportunity to bathe while in Border Patrol custody.  Disputed that explanation of separation was provided in this manner. *See* U.S. Opp. Ex. A Att. 6 (Comella 203-208, 213-214, 220-221).  Objection to use of declaration as improper supplementation and amendment to deposition testimony.

87.    Disputed as to portion stating that officer laughed and made fun of accent. *See* U.S. Opp. Ex. A Att. 6 (Comella 29-30, 43, 203-208, 229-233, 401-402).  As to remainder, undisputed that C.M. avers as much. Objection to use of declaration as improper supplementation and amendment to deposition testimony.

88.    Undisputed that C.M. avers as much.  Objection to use of declaration as improper supplementation and amendment to deposition testimony.

89.    Undisputed that C.M. avers as much. Objection to use of declaration as improper supplementation and amendment to deposition testimony.

90.    Undisputed that C.M. avers as much.  Objection to use of declaration as improper supplementation and amendment to deposition testimony.

91.    Undisputed C.M. avers as much. Objection to use of declaration as improper supplementation and amendment to deposition testimony.

92.    Undisputed C.M. avers as much. Objection to use of declaration as improper supplementation and amendment to deposition testimony.

93.    Disputed as to length of time between calls and insofar as this statement of fact is intended to assert that detainees were not provided with ways to communicate with family members.  *See* U.S. MSJ SOF 60 (and exhibits thereto); *see* Pls. Ex. 84 (stating policy of access to phones in detention facilities); U.S. Opp. Ex. A Att. 8 (Harper 79, 125-127) (testifying to detainee access to phones); U.S. MSJ Ex. F (DeLaCruz Decl. ¶ 32); U.S. MSJ SOF 131 (and exhibits thereto).  Objection to use of declaration as improper supplementation and amendment to deposition testimony.

94.   Undisputed as to what was stated to B.M.  Disputed insofar as this statement of fact is intended to assert that C.M. was not located and additional calls did not take place. *See* U.S. MSJ SOF 51, 60 (and exhibits thereto).

95.   Undisputed that C.M. avers as much. Objection to use of declaration as improper supplementation and amendment to deposition testimony.

96.   Undisputed.

97.   Undisputed that the prosecution of C.M. was declined three days after B.M. was transferred to ORR custody.

98.   Disputed insofar as C.M. was apprehended for violation of 8 U.S.C. § 1325 and detained during the pendency of the criminal referral process.  *See* U.S. MSJ SOF 116, 122 (and exhibits thereto).

99.   Disputed that O.A. and L.A. sought asylum at the time of apprehension by U.S. Border Patrol.  *See* U.S. MSJ Ex. D Att. 3 (0127, 0134).  Undisputed as to remaining**.**

100.  Undisputed that O.A. and L.A. were transported to the Yuma Station.  Undisputed that O.A. avers as much as to the remaining. Objection to use of declaration as improper supplementation and amendment to deposition testimony.

101.  Undisputed that O.A. avers as much. Objection to use of declaration as improper supplementation and amendment to deposition testimony.

102.  Undisputed that children were provided opportunity to bathe while in Border Patrol custody. Undisputed that O.A. testified as much as to the remaining.

103.  Undisputed that children were provided opportunity to bathe while in Border Patrol custody.  Undisputed that L.A. was removed from O.A. to be transferred to ORR custody.  Objection to use of declaration as improper supplementation and amendment to deposition testimony.

104.  Disputed that explanation of separation was provided in this manner.  *See* U.S. Opp. Ex. A Att. 6 (Comella 203-208, 213-214, 220-221).  Objection to use of declaration as improper supplementation and amendment to deposition testimony.

105.  Undisputed that O.A. avers as much.  Objection to use of declaration as improper supplementation and amendment to deposition testimony.

106.  Undisputed that O.A. was transferred to at least two detention facilities while in ICE custody.  Disputed insofar as this statement of fact is intended to assert that detainees were not provided with ways to communicate with family members.  *See* Pls. Ex. 84 (stating policy of access to phones in detention facilities); U.S. Opp. Ex. A Att. 8 (Harper 79, 125-127) (testifying to detainee access to phones); U.S. MSJ Ex. F (DeLaCruz Decl. ¶ 32).  Objection to use of declaration as improper supplementation and amendment to deposition testimony.

107.  Undisputed that O.A. avers as much.  Objection to use of declaration as improper supplementation and amendment to deposition testimony.

108.  Disputed as to amount of time before first communication.  *See* U.S. MSJ SOF 113 (and exhibits thereto). Objection to use of declaration as improper supplementation and amendment to deposition testimony. Undisputed that O.A. testified as much as to remaining.

109.  Undisputed that O.A. testified as much.

110.  Undisputed that the prosecution of O.A. was declined by the U.S. Attorney's Office for the District of Arizona the day after L.A. was transferred to ORR custody.

111.  Disputed insofar as O.A. was apprehended for violation of 8 U.S.C. § 1325 and detained during the pendency of the criminal referral process. *See* U.S. MSJ SOF 98, 103 (and exhibits thereto).

112.  Undisputed.

113.  Undisputed that L.G. and B.G. were transported to the Yuma Station.  Disputed that explanation of separation was provided in this manner.  *See* U.S. Opp. Ex. A Att. 6 (Comella 203-208, 213-214, 220-221).

114.  Undisputed that L.G. and B.G. were detained together until B.G. was to be transferred to ORR custody.  As to remaining, undisputed that L.G. testified as much. Objection to statement attributed to B.G. as hearsay.

115.  Disputed that explanation of separation was provided in this manner.  *See* U.S. Opp. Ex. A Att. 6 (Comella 203-208, 213-214, 220-221).

116.  Undisputed as to timing of first communication.  Disputed that duration of call was six minutes.  *See* U.S. MSJ Ex. F. Att. 2 (0432) (documenting call lasted for 25 minutes).  Undisputed that L.G. testified as much as to remaining.

117.  Disputed that only spoke one additional time.  *See* U.S. MSJ SOF 77 (and exhibits thereto). Disputed insofar as this statement of fact is intended to assert that detainees were not provided with ways to communicate with family members.  *See* Pls. Ex. 84 (stating policy of access to phones in detention facilities); U.S. Opp. Ex. A Att. 8 (Harper 79, 125-127) (testifying to detainee access to phones); U.S. MSJ Ex. F (DeLaCruz Decl. ¶ 32).

118.  Undisputed that the prosecution of L.G. was declined by the U.S. Attorney's Office the day after B.G. was transferred to ORR custody.

119.  Disputed insofar as L.G. was apprehended for violation of 8 U.S.C. § 1325 and detained during the pendency of the criminal referral process.  *See* U.S. MSJ SOF 63, 65 (and exhibits thereto).

120.  Undisputed as to lack of documentation of which Border Patrol agents separated Plaintiffs and their children prior to final book outs at the Yuma Border Station.

121.  Undisputed that on June 20, 2018 then-President Trump signed Executive Order 13841.  Disputed that Executive Order 13851 explicitly revoked the DHS Referral Policy. *See* U.S. MSJ SOF 39 (and exhibits thereto).

122.  Disputed that such a directive was issued following Executive Order 13841, as none of the exhibits proffered in support of this statement of fact contain such a directive and are noted as pre-decisional. Disputed insofar as the statement of fact is intended to assert that reunifications would not also occur following a release of a parent from ICE custody.  *See* U.S. MSJ SOF 30 (and exhibits thereto).

123.  Undisputed that the reunification of families meeting the class membership definition was ordered in accordance with the terms of the court order issued in *Ms. L. v. ICE*, Case No. 18-cv-428 (S.D. Cal. June 26, 2018).

124.  Undisputed that a team was assembled to assist with reunifications of class members within the time periods ordered by the court in *Ms. L. v. ICE*, Case No. 18-cv-

428 (S.D. Cal. June 26, 2018).  Disputed that the team was created "because there was no plan for reunifying families."  *See* U.S. MSJ SOF 30-31 (and exhibits thereto).

125.  Undisputed, but noted that L.A. had been released from ORR custody on July 2, 2018 to live with her uncle.  *See* U.S. MSJ SOF 111 (and exhibits thereto).

126.  Undisputed that the quoted language appears in the cited media article used as Plaintiffs' exhibit. Disputed insofar as this statement of fact is intended to assert that the DHS Referral Policy was intended by the decisionmaker, Secretary Nielsen, to use the separation of parents and children as a deterrent to migration.  *See* U.S. MSJ SOF 11-14, 18-19 (and exhibits thereto), U.S. MSJ Ex. B Att. 1 at 46-47, U.S. Ex. B. Att. 2 at 18-19. Objection to cited media article for failure to authenticate the article and the quoted statements therein and as hearsay.

127.  Undisputed that the quoted language appears in the cited document.  Disputed insofar as this statement of fact is intended to assert that the DHS Referral Policy was intended by the decisionmaker, Secretary Nielsen, to use the separation of parents and children as a deterrent to migration.  *See* U.S. MSJ SOF 11-14, 18-19 (and exhibits thereto), U.S. MSJ Ex. B Att. 1 at 46-47, U.S. Ex. B. Att. 2 at 18-19.

128.  Undisputed that the quoted language appears in the cited document.  Disputed insofar as this statement of fact is intended to assert that the DHS Referral Policy was intended by the decisionmaker, Secretary Nielsen, to use the separation of parents and children as a deterrent to migration.  *See* U.S. MSJ SOF 11-14, 18-19 (and exhibits thereto), U.S. MSJ Ex. B Att. 1 at 46-47, U.S. Ex. B. Att. 2 at 18-19.

129.  Undisputed that the quoted language appears in the cited Executive Order. Disputed insofar as this statement of fact is intended to assert that the DHS Referral Policy was intended by the decisionmaker, Secretary Nielsen, to use the separation of parents and children as a deterrent to migration.  *See* U.S. MSJ SOF 11-14, 18-19 (and exhibits thereto), U.S. MSJ Ex. B Att. 1 at 46-47, U.S. Ex. B. Att. 2 at 18-19.  Objection to cited media article (Pls. Ex. 81) for failure to authenticate the article and the quoted statements therein and as hearsay.

1

## **SUPPLEMENTAL STATEMENT OF FACTS**

2

1.      The so-called El Paso Initiative was not created at the headquarters level of the

3

Department of Homeland Security ("DHS"), Customs and Border Protection ("CBP"), or

4

U.S. Border Patrol.  It was a local practice initiated at a particular Border Patrol Sector.

5

*See* U.S. Opp. Ex. A Att. 1 (McAleenan 165); U.S. Opp. Ex. A Att. 9 (Vitiello 80-81,

6

114-116); U.S. Opp. Ex. A Att. 10 (Bash 19-21).

7

2.      Then-CBP Commissioner Kevin McAleenan, then-Deputy CBP Commissioner

8

Ronald Vitiello, and then-U.S Border Patrol Chief Carla Provost were unaware of the El

9

Paso Initiative until November 2017, or after, and the initiative was discontinued in

10

November 2017.  *See* U.S. Opp. Ex. A Att. 1 (McAleenan 165); U.S. Opp. Ex. A Att. 9

11

(Vitiello 80-81,114-116); U.S. Opp. Ex. A Att. 10 (Bash 19-21).

12

3.       In instances where Border Patrol agents in the Yuma Border Patrol Station

13

determined that an adult in a family unit was to be processed for a referral for

14

prosecution, and consequently that his or her child would be transferred to ORR custody,

15

a parent would be informed that his or her child would be transferred to separate custody.

16

*See* U.S. Opp. Ex. A Att. 6 (Comella 203-208, 213-214, 220-221); U.S. Opp. Ex. A Att. 1

17

(McAleenan 149).

18

4.      U.S. Border Patrol stations are intended and designed for short-term detention and

19

not intended for detention of children.  *See* U.S. Opp. Ex. A Att. 5 (Jordan 187-188).

20

5.      The statements alleged by Plaintiffs at Pls. SOF 56, 59, 72, 76, 85 were not

21

witnessed by or reported to Supervisory Border Patrol Agent Comella in the Yuma

22

Station, a supervising agent in the Yuma Station PST Unit during the time period such

23

alleged statements occurred.  *See* U.S. Opp. Ex. A Att. 6 (Comella 29-30, 43, 203-208,

24

229-233, 401-402).

25

6.      In instances where a child was transferred to ORR custody and his or her parent to

26

ICE custody, Border Patrol agents would not know how long the separate custody would

27

last.  *See* U.S. Opp. Ex. A Att. 5 (Jordan 134-135).

28

7.      In May and June 2018, when the DHS Referral Policy was in effect and applicable

to adults traveling in family units, the processing of an adult non-citizen for a prosecution

referral by the Yuma Station PST Unit was performed with the understanding that the US Attorney's Office was to accept all cases for illegal entry pursuant to the Attorney General's zero tolerance policy. *See* U.S. Opp. Ex. A Att. 5 (Jordan 59, 114, 130, 137-138); U.S. Opp. Ex. A Att. 12 (USAO 30(b)(6) 87, 140); U.S. Opp. Ex. A Att. 6 (Comella 29, 390-391).

8.     In May and June 2018, when the DHS Referral Policy was in effect and applicable to adults traveling in family units, in all cases where an adult non-citizen was identified to be processed for a prosecution referral by the Yuma Station PST Unit, it was performed with the intention that the non-citizen be referred for prosecution. *See* U.S. Opp. Ex. A Att. 5 (Jordan 59, 114, 130, 137-138).

9.     The process in May 2018 by which the Yuma Sector Prosecutions Unit would indicate for the U.S. Attorney's Office those cases for which the Prosecutions Unit believed there were potential grounds for declination was to assist in expediting the U.S. Attorney's review process, but in all cases the U.S. Attorney's Office was responsible for the ultimate decision as to whether a case was legally sufficient or prosecutable. *See* U.S. Opp. Ex. A Att. 11 (Ramirez 93, 140-141, 182-183, 207, 296, 331-334).

10.     In May and June 2018, when the DHS Referral Policy was in effect and applicable to adults traveling in family units, the Yuma Sector Prosecutions Unit's referred cases for prosecution in good faith. *See* U.S. Opp. Ex. A Att. 12 (USAO 30(b)(6) 222).

11.     In the Yuma Sector in May and June 2018, when the DHS Referral Policy was in effect and applicable to adults traveling in family units, over forty (40) percent of the family units that unlawfully crossed the U.S.-Mexico border and were apprehended in the Yuma Sector were not separated. *See* U.S. Opp. Ex. A Att. 5 (Jordan 93-95, 103-104).

12.     In the Yuma Sector prior to the DHS Referral Policy, when an adult member of a family unit was identified to be processed for a prosecution referral, an ORR placement request was made as soon as practicable following the decision to process that adult for a referral for prosecution. *See* U.S. Opp. Ex. A Att. 5 (Jordan 52-53, 55-56, 110-111); U.S. Opp. Ex. A Att. 6 (Comella 374-380); U.S. Opp. Ex. A Att. 12 (Hastings 146-147).

13.     Both before and during the time the DHS Referral Policy was in effect, in the Yuma Sector, the process in place whereby ORR placement requests were made as soon as practicable by the Yuma Station PST Unit following a decision upon intake that the adult member of the family unit would be processed for a prosecution referral took into account (1) considerations of time constraints imposed by the TVPRA, the Flores Settlement Agreement, TEDS, and agency direction to try to transfer minors out of Border Patrol custody within twenty-four (24) hours; (2) the geographic remoteness of the Yuma Sector; (3) the uncertainties relating to when the criminal process could be completed; (4) the impact that delaying transfer to ORR custody could have on child welfare; and (5) the impact that delaying transfer to ORR custody would have on the processing, care, and detention of all detainees and on border security.  *See* U.S. Opp. Ex. A Att. 5 (Jordan 122-123, 126-129,184-194, 200-204); U.S. Opp. Ex. A Att. 12 (USAO 30(b)(6) 80-82); *see also* U.S. MSJ Ex. A Att. 1 (McAleenan 67-68, 92-93).

14.     In May and June 2018, when the DHS Referral Policy was in effect and applicable to adults traveling in family units, the Yuma Sector was experiencing a high volume of apprehensions and detainees at an irregular and fluctuating rate, with a daily average of 392 detainees in the Yuma Sector.  *See* U.S. Opp. Ex. A Att. 5 (Jordan 40, 181, 194-200), U.S. Opp. Ex. C; U.S. Opp. Ex. A Att. 6 (Comella 394, 413-414); U.S. Opp. Ex. A Att. 13 (Hastings 101-102,134).

15.     Performing the various tasks in a Border Patrol station relating to the processing, care, custody, and movement of detainees involves multiple agents performing different aspects of those various tasks, with an objective of transferring detainees out of Border Patrol custody as quickly as possible.  *See* U.S. Opp. Ex. A Att. 5 (Jordan 80, 84-85, 145).

16.     On rare occasions, a child was still present in the Border Patrol station at the time the child's parent's prosecution was declined or otherwise completed.  On these occasions, whether to reunify and reprocess a parent and child as a family unit was left to the discretion of the Border Patrol agents taking into account considerations that included (1) the Border Patrol resources necessary to identify these rare situations and reprocess

19

the individuals; (2) the additional time in Border Patrol custody that would result from such reunification and reprocessing; and (3) the impacts on other detainees relating to processing and time in Border Patrol custody.  *See* U.S. Opp. Ex. A Att. 5 (Jordan 174-175, 206-210); *see also* U.S. MSJ Ex. A Att. 1 (McAleenan 94-95, 222, 293).

Dated: April 24, 2023                         Respectfully Submitted,


                                              BRIAN M. BOYNTON
                                              Principal Deputy Assistant Attorney General

                                              JAMES G. TOUHEY, JR.
                                              Director, Torts Branch

                                              *s/ Phil MacWilliams*
                                              PHILIP D. MACWILLIAMS
                                              Trial Attorney
                                              D.C. Bar No. 482883
                                              E-mail: phil.macwilliams@usdoj.gov
                                              U.S. Department of Justice
                                              Civil Division, Torts Branch
                                              Benjamin Franklin Station, P.O. Box 888
                                              Washington, DC 20044
                                              Telephone: (202) 616-4285
                                              Attorneys for the United States of America

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on April 24, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

*s/ Phil MacWilliams*
PHILIP D. MACWILLIAMS
Attorney for United States of America