David B. Rosenbaum (009819)
Travis C. Hunt (035491)
BriAnne N. Illich Meeds (036094)
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
Telephone: (602) 640-9000
drosenbaum@omlaw.com
thunt@omlaw.com
billichmeeds@omlaw.com
*Counsel for C.M. Plaintiffs*

*(Additional Counsel for Plaintiffs Listed on the Signature Page)*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| C.M., on her own behalf and on behalf of her minor child, B.M.; et al. | No. 2:19-cv-05217-SRB |
| Plaintiffs, | **PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| United States of America, | |
| Defendant. | Oral Argument: |
| | June 13, 2023; 10:00AM |

# <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT .................................................................................................................... 2

I.      PLAINTIFFS HAVE NOT BROUGHT INSTITUTIONAL TORT CLAIMS ...................... 2

II.     THE DFE DOES NOT APPLY HERE ...................................................................... 4

III.    DEFENDANT'S CONDUCT WAS EXTREME AND OUTRAGEOUS AND DONE WITH RECKLESS DISREGARD OF THE NEAR CERTAINTY OF CAUSING SEVERE EMOTIONAL DISTRESS TO PLAINTIFFS ..................................... 8

      A.     The Conduct At Issue Was Not Privileged ................................................ 8

      B.     The Government Recklessly Disregarded The Near Certainty That Plaintiffs Would Suffer Severe Emotional Harm ...................................... 11

IV.    DEFENDANT DID NOT PROVIDE PLAINTIFFS WITH REASONABLE, OR EVEN MINIMAL CARE ............................................................................. 14

CONCLUSION ................................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.E.S.E. v. United States*,
No. 21-CV-0569, 2022 WL 4289930 (D.N.M. Sept. 16, 2022) ...................................... 15

*A.F.P. v. United States*,
No. 1:21-CV-00780, 2022 WL 2704570 (E.D. Cal. July 12, 2022) .............................. 2, 3

*A.I.I.L. v. Sessions*,
No. 19-CV-00481, 2022 WL 992543 (D. Ariz. Mar. 31, 2022) ........................................ 7

*A.P.F. v. United States*,
492 F. Supp. 3d 989 (D. Ariz. 2020) ............................................................................... 7

*Alfrey v. United States*,
276 F.3d 557 (9th Cir. 2002) ........................................................................................... 6

*Andrich v. Kostas*,
No. 19-CV-02212, 2022 WL 2905043 (D. Ariz. July 22, 2022) .................................... 12

*Anthony v. United States*,
No. 20-CV-08002, 2022 WL 4781938 (D. Ariz. Sept. 30, 2022)................................... 14

*ARA Leisure Servs. v. United States*,
831 F.2d 193 (9th Cir. 1987) ........................................................................................... 6

*Bear Medicine v. United States*,
241 F.3d 1208 (9th Cir. 2001) ......................................................................................... 6

*Bell v. Wolfish*,
441 U.S. 520 (1979) ......................................................................................................... 6

*Berkovitz v. United States*,
486 U.S. 531 (1988) ......................................................................................................... 5

*Bilyeu v. Morgan Stanley Long-Term Disability Plan*,
No. 08-CV-02071, 2014 WL 12837695 (D. Ariz. Dec. 10, 2014) .................................. 12

*Bodett v. CoxCom, Inc.*,
366 F.3d 736 (9th Cir. 2004)............................................................................................ 9

*C.M. v. United States*,
  No. 5:21-CV-0234, 2023 WL 3261612 (W.D. Tex. May 4, 2023) ................................... 9

*Caban v. United States*,
  728 F.2d 68 (2d Cir. 1984) ....................................................................................... 9

*Calderon v. United States*,
  123 F.3d 947 (7th Cir. 1997) .................................................................................... 6

*Campos v. United States*,
  888 F.3d 724 (5th Cir. 2018) .................................................................................... 6

*Carranza v. United States*,
  No. 3:12-CV-2255, 2013 WL 3333104 (D. Or. Jul. 1, 2013) .................................... 9

*Cobler v. United States*,
  No. 19-CV-00348, 2022 WL 625710 (D. Ariz. Jan. 12, 2022) ................................ 16

*Cruz v. United States*,
  684 F. Supp. 2d 217 (D.P.R. 2010) ......................................................................... 6

*D.J.C.V. v. United States*,
  605 F.Supp.3d 571 (S.D.N.Y. 2022) ........................................................................ 8

*Demetrulias v. Wal-Mart Stores Inc.*,
  917 F.Supp.2d 993 (D. Ariz. 2013) .......................................................................... 9

*Doe v. Oesterblad*,
  No. 13-CV-01300, 2015 WL 12940181 (D. Ariz. June 9, 2015) ............................ 10

*E.L.A. v. United States*,
  No. 20-CV-1524, 2023 WL 3456889 (W.D. Wash. May 15, 2023) ..................... 5, 14

*E.S.M. v. United States*,
  No. 21-CV-00029, 2022 WL 11729644 (D. Ariz. Oct. 20, 2022) ............................. 3

*F.R. v. United States*,
  No. 21-CV-00339, 2022 WL 2905040 (D. Ariz. July 22, 2022) ............................... 8

*Flores v. Johnson*,
  212 F.Supp.3d 907 (C.D. Cal. 2015), *aff'd in part, rev'd in part Flores v.
  Lynch*, 828 F.3d 898 (9th Cir. 2016) ........................................................................ 5

*Gilbert v. La Paz County*,
  No. 18-CV-01792, 2020 WL 2064099 (D. Ariz. Apr. 29, 2020) ............................ 14

*Harris v. United States*,
   No. 19-CV-00248, 2021 WL 2334385 (D. Ariz. June 8, 2021)........................ 16

*Jacinto-Castanon de Nolasco v. U.S. Immigr. & Customs Enf't*,
   319 F. Supp. 3d 491 (D.D.C. 2018) ................................................................. 7

*Jessen v. Cnty. of Fresno*,
   808 F. App'x 432 (9th Cir. 2020)................................................................... 14

*Learner v. John Hancock Ins.*,
   No. 09-CV-01933, 2011 WL 13185713 (D. Ariz. Mar. 21, 2011) ..................... 9

*Markowitz v. Arizona Parks Bd.*,
   706 P.2d 364 (Ariz. 1985) ....................................................................... 14, 15

*Matson v. Safeway, Inc.*,
   No. 12-CV-8206, 2013 WL 6628257 (D. Ariz. Dec. 17,2013) ......................... 13

*Melvin v. United States*,
   No. 08-CV-1666, 2010 WL 11628796 (D. Ariz. Jun. 18, 2010) ....................... 10

*Miller v. United States*,
   163 F.3d 591 (9th Cir. 1998)........................................................................... 4

*Mintz v. Bell Atl. Sys. Leasing Inter., Inc.*,
   905 P.2d 559 (Ariz. Ct. App. 1995) ............................................................ 9, 11

*Mitchell v. United States*,
   149 F. Supp. 2d 1111 (D. Ariz. 1999)............................................................. 6

*Ms. L. v. U.S. Immigr. & Customs Enf't*,
   310 F. Supp. 3d 1133 (S.D. Cal. 2018) ...................................................... 7, 15

*Nurse v. United States*,
   226 F.3d 996 (9th Cir. 2000)........................................................................... 5

*Pereyra v. United States*,
   No. 03-CV-267, 2008 WL 11394371 (D. Ariz. Sept. 26, 2008)........................ 5

*Petty v. Arizona*,
   No. 15-CV-01338, 2018 WL 2220665 (D. Ariz. May 15, 2018)...................... 16

*Prescott v. United States*,
   973 F.2d 696 (9th Cir. 1992)........................................................................... 7

*R.I.L-R v. Johnson*,
   80 F. Supp. 3d 164 (D.D.C. 2015) ................................................................. 8

*Ramirez v. Glendale Union High School District No. 205*,
   No. 03-CV-0060, 2006 WL 8439630 (D. Ariz. 2006) ................................ 15, 16

*Rudolph v. Arizona B.A.S.S. Fed'n*,
   898 P.2d 1000 (Ariz. Ct. App. 1995) ............................................................. 16

*Ruiz v. United States*,
   No. 13-CV-1241, 2014 WL 4662241 (E.D.N.Y. Sept. 18, 2014)...................... 6

*S.E.B.M. v. United States*,
   No. 1:21-CV-00095, 2023 WL 2383784 (D.N.M. Mar. 6, 2023)...................... 15

*Savage v. Boise*,
   272 P.2d 349 (Ariz. 1954) .............................................................................. 8

*State v. Knowlton*,
   No. 1:18-CR-0772, 2019 WL 4513476 (Ariz. Ct. App. Sept. 19, 2019) ......... 16

*Troxel v. Granville*,
   530 U.S. 57 (2000) ........................................................................................ 7

*Tsolmon v. United States*,
   841 F.3d 378 (5th Cir. 2016) ......................................................................... 6

*Wilbur P.G. v. United States*,
   No. 4:21-CV-04457, 2022 WL 3024319 (N.D. Cal. May 10, 2022) ............. 2, 3

*Xi v. Haugen*,
   No. 21-2798, slip op. (3d Cir. 2023) .............................................................. 4

**Statutes**

6 U.S.C. § 279(g)(2) ............................................................................................ 5

8 U.S.C. § 1232(b)(3) ........................................................................................... 5

28 U.S.C. § 1346(b)(1) ................................................................................. *passim*

1

## PRELIMINARY STATEMENT

2      In its opposition papers, the government does not dispute the following facts: Plaintiff

3  children were accompanied at the time they crossed the border; Plaintiff children were

4  separated from Plaintiff mothers *before* it was determined whether Plaintiff mothers would be

5  prosecuted; Plaintiff mothers were never prosecuted; Plaintiff children were separated from

6  their mothers, sometimes by force, and Plaintiff mothers watched while their children were

7  led out of the Border Patrol stations; Plaintiff children were taken to ORR shelters hundreds,

8  and in some cases, thousands of miles away from Plaintiff mothers; Border Patrol agents did

9  not tell Plaintiffs when, or if, they would be reunited and did not tell Plaintiff mothers where

10  their children would be taken;[1] Plaintiffs had only limited communications while separated,

11  and at least four Plaintiff families did not speak for nearly a month or more during their

12  separations; Plaintiffs were kept apart for approximately two and a half months or longer and

13  were not reunited until a court ordered their reunifications. While the government disputes that

14  Plaintiffs were mocked, taunted, and threatened with permanent separation, the government's

15  only citation to the contrary is the testimony of one agent who testified that he did not separate

16  families, did not remember or recognize the Plaintiffs, and had no basis to dispute their

17  accounts.

18      Rather than dispute Plaintiffs' facts, or argue that its conduct was not outrageous, the

19  government spends most of its opposition rehashing the same jurisdictional arguments it made,

20  and this Court rejected, at the motion to dismiss stage. *See* Defendant's Opposition ("Def.

21  Opp."), ECF 397 at 5-16. The Court should reject these arguments again here. With respect to

22  Plaintiffs' intentional infliction of emotional distress ("IIED") claim, the government argues

23  that the conduct at issue was privileged, and cannot be challenged, because the conduct arose

24

---

25  [1] It is undisputed that Plaintiff mothers were not told *where* their children would be taken. The
government claims only that typically, "a parent would be informed that his or her child would
26  be transferred to separate custody," citing the testimony of an agent who had no basis to dispute
Plaintiff mothers' accounts of their separations. Defendant's Controverting Statement of Facts
27  ("Def. Opp. SOF"), ECF 398 at ¶ 3.

28

out of a lawful arrest. But, as prior briefing makes clear, Plaintiffs do not challenge a lawful arrest or detention; they challenge their separations where Plaintiff mothers were never prosecuted, Plaintiff children were not "unaccompanied," and government officials, including Kirstjen Nielsen, Thomas Homan, Kevin McAleenan, Matthew Albence, and the Border Patrol agents who separated Plaintiffs, failed to ensure that Plaintiff families could adequately communicate and be reunited. As to Plaintiffs' negligence claims, the government argues not that it provided Plaintiffs with reasonable, or even minimal, care but rather that Plaintiffs have not proved that government officials owed Plaintiffs a duty of care *at all*. But courts applying Arizona law routinely find that those in certain special relationships, such as guardian-ward and jailer-prisoner, owe a duty to provide "reasonable care under the circumstances," and this Court already found that "Federal immigration officials . . . are tasked with the care and custody of those they detain, and owe detainees at least a minimal level of care." ECF 31 at 4.

Because the undisputed facts support the liability elements of Plaintiffs' IIED and negligence claims, and the government's jurisdictional and privilege arguments do not shield it from liability, the Court should grant Plaintiffs' Motion.

## <u>ARGUMENT</u>

## I.   PLAINTIFFS HAVE NOT BROUGHT INSTITUTIONAL TORT CLAIMS

The government's attempt to mischaracterize Plaintiffs' claims as "institutional" tort claims not cognizable under the FTCA is based principally on Plaintiffs' references to "the government" throughout the Complaint and motion for summary judgment. Def. Opp. at 6. But Plaintiffs' use of "the government" to refer to individual federal employees acting within the scope of their employment does not convert their claims into institutional tort claims. An action under the FTCA "may only be brought against 'the United States itself,'" and thus "[r]eferences to the 'United States Government' as a whole" are expected. *A.F.P. v. United States*, No. 1:21-CV-00780, 2022 WL 2704570, at *18 (E.D. Cal. July 12, 2022) (citation omitted); *see also Wilbur P.G. v. United States*, No. 4:21-CV-04457, 2022 WL 3024319, at

*6 (N.D. Cal. May 10, 2022) ("[T]he proposition that a complaint containing FTCA claims should be dismissed because some of the allegations in the complaint reference the Government . . . would make little sense given that the FTCA requires a 'plaintiff to sue the United States itself.'") (citation omitted). Indeed, in all of the instances the government cites where Plaintiffs used the term "the government," *see* Def. Opp. at 6, Plaintiffs described conduct that they have attributed to specific federal employees acting within the scope of their employment. As detailed in Plaintiffs' opposition to the government's motion for summary judgment, Plaintiffs allege—and the record supports—that Nielsen, Homan, McAleenan, and Albence engaged in tortious conduct while acting within the scope of their employment by implementing the DHS Referral Policy (the "Policy") without ensuring that separated families would be provided information about each other's whereabouts, would be able to communicate during their separations, or could be reunited, despite warnings that the policy would cause trauma to separated families. *See* Plaintiffs' Opposition ("Pl. Opp."), ECF 403 at 14-15; Plaintiffs' Motion ("Pl. Mot."), ECF 378 at 5, 6, 9, 15, 17-18, 21, 22. And the government does not argue—nor could it—that the claims based on Border Patrol agents' conduct during the separations, are institutional tort claims. *See* Def. Opp. at 5-6.

Courts in this Circuit have consistently rejected the government's institutional tort argument and refused to dismiss FTCA actions brought by separated families, where, as here, the plaintiffs properly allege employee-level misconduct. *See, e.g.*, *A.F.P.*, 2022 WL 2704570, at *18; *Wilbur P.G.*, 2022 WL 3024319, at *6; *E.S.M. v. United States*, No. 21-CV-00029, 2022 WL 11729644, at *2 (D. Ariz. Oct. 20, 2022); *Fuentes-Ortega*, 2022 WL 16924223, at *5 (D. Ariz. Nov. 14, 2022).[2] The government's argument should be rejected again here. *See* Pl. Opp. at 13-16.

_____

[2] As explained in Plaintiffs' opposition to Defendant's motion for summary judgment, the cases cited in footnote 5 of Defendant's opposition are inapposite. *See* Pl. Opp. at 15 n.3-4, 16.

## II.    THE DFE DOES NOT APPLY HERE

The government bears the burden of establishing that the challenged conduct is both discretionary and "involves the type of judgment that the [DFE] is designed to shield." *Miller v. United States*, 163 F.3d 591, 593, 594 (9th Cir. 1998). In its opposition, the government largely repeats the arguments it made in its summary judgment motion, *see* Defendant's Motion ("Def. Mot."), ECF 371 at 10-26, which Plaintiffs addressed in their opposition to that motion. *See* Plaintiffs' Opposition ("Pl. Opp."), ECF 403 at 16-26. Plaintiffs briefly respond further below.

Contrary to the government's contention, Plaintiffs do not challenge "decisions whether and when to pursue referral for prosecution of an amenable adult," "final referral decisions," or decisions "relating to whether to refer a case to the U.S. Attorney's Office," and the government cannot meet its burden under the DFE by mischaracterizing Plaintiffs' claims. Def. Opp. at 7-8; *see also* ECF 31 at 6-7. As to the conduct that Plaintiffs *do* challenge—the separation of Plaintiffs where Plaintiff mothers were not prosecuted and the children were not unaccompanied, the manner of separation, and the failure to provide information, facilitate adequate communication, or ensure reunification (until required by court order)—the DFE does not apply because that conduct (1) was unconstitutional and unlawful, and was therefore not discretionary, and (2) is not the kind of conduct the DFE was designed to shield.[3] *See* Pl. Opp. at 16-26.

The government does not dispute that the challenged conduct violated Plaintiffs' constitutional right to family integrity and thus was not discretionary. *See* Def. Opp. at 12-14; Pl. Opp. at 17-22. Nor does the government contest that the designation of Plaintiff

_____

[3] The government's argument that Plaintiffs must show that "the government violated a constitutional right that was clearly established," Def. Opp. at 22-23, is incorrect. *See* Pl. Opp. at 21-22; *see also Xi v. Haugen*, No. 21-2798, ECF 59, slip op. at 5 (3d Cir. 2023) ("We clarify today, however, that the 'clearly established' threshold is inapplicable to the discretionary function analysis, and because the Government has no discretion to violate the Constitution, FTCA claims premised on conduct that is plausibly alleged to violate the Constitution may not be dismissed on the basis of the discretionary function exception.").

children as UACs violated a legal mandate in the TVPRA and thus was not discretionary. *See id*; Pl. Opp. at 22-24. Indeed, the government *still* has not offered any explanation as to why Plaintiff children—whose mothers were not prosecuted—were "unaccompanied" and thus met the statutory definition of UACs. *See* Def. Opp. at 10-11 (focusing only on the *timing* of ORR placement requests and transfers).[4] The government cannot invoke DFE immunity by ignoring the unlawful conduct that precludes the DFE's application. *See Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000); *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

Instead of explaining why the conduct of the Border Patrol agents who separated Plaintiffs did not violate the Constitution or the TVPRA, the government details at length the challenges faced by *Border Patrol* agents, as well as the government's desire to move children out of Border Patrol stations quickly. *See* Def. Opp. at 13-14.[5] But this "context" did not allow Border Patrol agents to violate the Constitution or the TVPRA, and the case the government cites did not involve conduct that violated a legal mandate. *See Pereyra v. United States*, No. 03-CV-267, 2008 WL 11394371, at *6 (D. Ariz. Sept. 26, 2008) (finding

---

[4] Plaintiffs do not challenge the *timing* of "when to seek an ORR placement for a child when a parent was to be processed for a prosecution referral" Def. Opp. at 7, but rather the *ability* of BP agents to designate accompanied children as UACs in violation of the TVPRA.

[5] Because Plaintiff children were not "unaccompanied," the government's argument that the TVPRA and *Flores* required Border Patrol agents to send the children to ORR shelters quickly, or as soon as possible, is irrelevant. Def. Opp. at 8-12. Under the TVPRA, the 72-hour time frame to transfer a minor to ORR does not start until the minor meets the statutory definition of an "unaccompanied alien child." 8 U.S.C. § 1232(b)(3); 6 U.S.C. § 279(g)(2). Since Plaintiff children were not unaccompanied, the TVPRA's 72-hour time limit never started. *See E.L.A. v. United States*, No. 20-CV-1524, 2023 WL 3456889, at *4 n.3 (W.D. Wash. May 15, 2023) ([The TVPRA] does *not* require the transfer of children who are apprehended with a parent who is then detained for illegal-entry prosecution.") (citation omitted) (emphasis added). Similarly, while the government states that *Flores* requires it to transfer minors out of BP custody as "expeditiously as possible," Def. Opp. at 9 (quoting the *Flores* Agreement, ¶ 12A), the *Flores* court interpreted as "expeditiously as possible" to mean within 20 days for accompanied minors apprehended with a parent. *Flores v. Johnson*, 212 F.Supp.3d 907, 913-14 (C.D. Cal. 2015), *aff'd in part, rev'd in part Flores v. Lynch*, 828 F.3d 898, 904 (9th Cir. 2016). Here, the government would have known within 48 hours of apprehension whether Plaintiff mothers were going to be prosecuted, such that the *Flores* time limits did not constrain or dictate the government's decision to separate Plaintiff families. *See* ECF 403 at 7; *see also* ECF 404 at ¶ 9."

claim based on Border Patrol agents' failure to warn others that detainee was suicidal subject to dismissal under the DFE because the policy at issue did not "specifically prescribe[ ] a course of action for [Border Patrol agents] to follow") (alterations in original).[6]

Similarly, the policy-level officials' lack of planning cannot be shielded as a "policy choice" protected by the DFE as their conduct not only violated Plaintiffs' constitutional right to family integrity, but it also evidences a clear "failure to adhere to accepted professional standards." *Bear Medicine v. United States*, 241 F.3d 1208, 1217 (9th Cir. 2001). Such a failure "is not 'susceptible to a policy analysis'" and is not protected by the DFE. *Id.* (citation omitted); *see also* Pl. Opp. at 24-26; *Ruiz v. United States*, No. 13-CV-1241, 2014 WL 4662241, at *8 (E.D.N.Y. Sept. 18, 2014) (rejecting DFE defense where CBP officers detained a four-year-old child and waited fourteen hours before contacting her parents because the officers' actions appeared "to be the result of negligence or laziness"); *ARA Leisure Servs. v. United States*, 831 F.2d 193, 195 (9th Cir. 1987).[7] Reframing

---

[6] The government's citation to cases concerning cell assignments and prison security in federal prisons, *see* Def. Opp. at 12 n.17, fares no better. The first case did not involve the FTCA, *see Bell v. Wolfish*, 441 U.S. 520 (1979), and the remaining three cases did not involve constitutional violations. *See Alfrey v. United States*, 276 F.3d 557, 565 (9th Cir. 2002); *Mitchell v. United States*, 149 F. Supp. 2d 1111, 1114-15 (D. Ariz. 1999); *Calderon v. United States*, 123 F.3d 947, 951 (7th Cir. 1997). Moreover, the *Alfrey* court held the district court erred in granting summary judgment to the government on plaintiff's negligence claim where there was evidence that the government violated a legal mandate. 276 F. 3d at 563 (if regulation imposes an obligation to "perform an evaluation when making a cell assignment, then the regulation imposed a nondiscretionary duty 'automatically' to perform such an evaluation" and the district court erred in finding the conduct discretionary). Here, the facts show as a matter of law that Border Patrol agents violated the TVPRA in designating Plaintiff children as UACs.

[7] The government attempts to recast its failure to track families and facilitate communication as a policy decision regarding "processes and systems for tracking individuals in federal custody" shielded by the DFE. Def. Opp. at 15. Neither of the cases the government cites, Def. Opp. at 15-16, supports this argument. Contrary to the government's assertion, *Campos v. United States*, 888 F.3d 724, 733 (5th Cir. 2018), did not involve "deficiencies in [a] computer database system," Def. Opp. at 14. While *Campos* cited another case involving computer database searches, it is entirely distinguishable. There, the court applied the DFE to plaintiff's claim because it turned on CBP agents' allegedly inadequate investigation into the plaintiff's immigration status. *See Campos*, 888 F.3d at 733; *Tsolmon v. United States*, 841 F.3d 378, 383 (5th Cir. 2016). *Cruz v. United States*, 684 F. Supp. 2d 217, 219 (D.P.R. 2010), did not involve challenged conduct that violated the plaintiff's constitutional rights.

- 6 -

constitutional violations as planning deficiencies does not transform the challenged conduct into discretionary action warranting DFE protection.[8]

Finally, the government argues that, even if the Court concludes the DFE does not apply to Plaintiffs' IIED claim because the challenged conduct was unconstitutional, the DFE necessarily precludes Plaintiffs' negligence claim "because a substantive Due Process Clause violation cannot be premised on negligent conduct." Def. Opp. at 23 (citing one case, *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1989), which did not involve the DFE). Contrary to the government's contention, if this Court finds the DFE inapplicable because the conduct violated the Constitution or a legal mandate or was not the type of conduct the DFE shields, that holding will determine only that the Court has jurisdiction to hear Plaintiffs' claims. *See Prescott v. United States*, 973 F.2d 696, 701-02 (9th Cir. 1992) (explaining that, if the government does not meet its burden to establish that the DFE applies, the court has jurisdiction). Such a holding would not *preclude* any of Plaintiffs' claims, and the government cites no authority to support its suggestion that the Court should conduct a claim-by-claim jurisdictional analysis. Def. Opp. at 23. To the contrary, the numerous courts that have rejected the government's DFE arguments, including this Court, have allowed both IIED and negligence claims to proceed where the government has failed to establish that the DFE shields the challenged government conduct. *See, e.g.*, *A.P.F. v. United States*, 492 F. Supp. 3d 989, 997 (D. Ariz. 2020) (IIED and negligence claims permitted to proceed where government did not meet DFE burden); *A.I.I.L. v. Sessions*, No. 19-CV-00481, 2022 WL 992543, at *2-4 (D. Ariz. Mar. 31, 2022) (same); *Fuentes-Ortega*, 2022 WL 16924223, at

---

[8] The government's contention that its failure to allow Plaintiffs to communicate adequately is "inextricably linked" to conduct protected by the DFE (the separations) and thus is also shielded by the DFE fails for two reasons: (1) the separations violated the Constitution and the TVPRA, *see* Pl. Opp. at 18-24, and are not protected by the DFE; and (2) the government's misconduct in failing to facilitate communication or provide information to Plaintiff families about one another's whereabouts itself violated Plaintiffs' constitutional right to family integrity. *See Jacinto-Castanon de Nolasco v. U.S. Immigr. & Customs Enf't*,, 319 F. Supp. 3d 491, 501 (D.D.C. 2018); *Ms. L. v. U.S. Immigr. & Customs Enf't*, 310 F. Supp. 3d 1133, 1145-46 (S.D. Cal. 2018); *see generally Troxel v. Granville*, 530 U.S. 57, 65-66 (2000).

*3 (same); *F.R. v. United States*, No. 21-CV-00339, 2022 WL 2905040, at *5 (D. Ariz. July 22, 2022) (same); *D.J.C.V. v. United States*, 605 F.Supp.3d 571, 597 (S.D.N.Y. 2022) (same).

### III. DEFENDANT'S CONDUCT WAS EXTREME AND OUTRAGEOUS AND DONE WITH RECKLESS DISREGARD OF THE NEAR CERTAINTY OF CAUSING SEVERE EMOTIONAL DISTRESS TO PLAINTIFFS

Relying only on undisputed facts, Plaintiffs meet the extreme and outrageous element of their IIED claim. The government does not seriously contend otherwise. *See* Def. Opp. at 17-18. Instead, the government repeats its argument that the challenged conduct is "privileged" under Arizona law, and argues there is a dispute of material fact as to the intent element of Plaintiffs' IIED claims. *See id.* at 17. Neither argument has any merit.

#### A. The Conduct At Issue Was Not Privileged

The challenged conduct was not privileged because it was not, as the government contends, "based on the lawful exercise of the federal government's law enforcement authority," nor did it arise out of a "lawful arrest and detention." *See* Pl. Opp. at 26-28. Indeed, this Court previously found that Plaintiffs' claims are *not* based on "the government's exercise of its law enforcement authority." *See* ECF 31 at 6. Plaintiffs challenge their *separations*, not their arrests or detentions, and the government has argued throughout this litigation that Plaintiffs were separated because they were "amenable to prosecution," not because they were apprehended by Border Patrol and held in immigration detention.[9]

The case the government cites to support its argument, *Savage v. Boise,* 272 P.2d 349 (Ariz. 1954), shows that the conduct at issue—the separations—is *not* privileged. Def. Opp. at 18. In *Savage*, police officers were ordered by a judge to apprehend the plaintiff, who

---

[9] Detaining non-citizens in civil detention to deter future migration is also not a proper exercise of law enforcement authority. *See R.I.L-R v. Johnson,* 80 F. Supp. 3d 164, 188-89 (D.D.C. 2015) (The government cannot use civil immigration detention "for the sake of sending a message of deterrence to other Central American individuals who may be considering immigration.").

appeared to be mentally ill. In order to convince the plaintiff to accompany them to the hospital (where the plaintiff was ultimately committed) the police officers falsely informed her that her young child had been injured and was at the hospital, only to advise her, upon arrival at the hospital, that the statement was false. *Id*. at 351. The court found that, although the officers could not be liable for IIED for the lawful arrest, plaintiff *could* bring an IIED claim for the emotional distress she suffered as a result of the officers' statements about the whereabouts and wellbeing of her child. *Id*.[10] Nor can the government distinguish Plaintiffs' cases on the basis that they do "not involve behavior that is comparable to a lawful enforcement action taken pursuant to statutory authority," because the separations and the other challenged conduct here were not law enforcement actions or taken pursuant to statutory authority. Plaintiffs' cited cases are highly analogous to the facts here. *See* Pl. Mot. at 22. Moreover, the government's argument that one of Plaintiffs' cited cases, *Carranza v. United States*, No. 3:12-CV-2255, 2013 WL 3333104, at *8 (D. Or. Jul. 1, 2013), turns on "accepting as true the allegation that the plaintiff was placed under arrest for improper purposes," Def. Opp. at 18 n.21, is incorrect. To the contrary, the court rested its conclusion on the fact that the ICE agents' threats to send the Plaintiff to Mexico and place her daughter in a foster home where she would not be seen again, were improper, *not* that her arrest was improper. *Carranza*, 2013 WL 3333104, at *8.

---

[10] The cases the government cites to support its IIED argument, *see* Def. Opp. at 17-18, have nothing to do with law enforcement privilege. *See Mintz v. Bell Atl. Sys. Leasing Inter., Inc.*, 905 P.2d 559, 663 (Ariz. Ct. App. 1995) (upholding dismissal of an IIED claim arising out of the employment context); *Learner v. John Hancock Ins.*, No. 09-CV-01933, 2011 WL 13185713, at *3 (D. Ariz. Mar. 21, 2011) (permitting Plaintiff to amend the complaint to include an IIED claim based on allegations of improper conduct arising out of the employment context); *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 747 (9th Cir. 2004) (upholding summary judgment in favor of defendant in claim involving allegations of termination without notice or severance); *Demetrulias v. Wal-Mart Stores Inc.*, 917 F. Supp. 2d 993, 1012 (D. Ariz. 2013) (denying defendant's summary judgment motion on Plaintiff's IIED claim arising out of allegations of misconduct in the "special relationship" that exists between an insurer and the insured); *accord C.M. v. United States*, No. 5:21-CV-0234, 2023 WL 3261612, at *45 (W.D. Tex. May 4, 2023) (finding cases cited by the government, including *Caban v. United States*, 728 F.2d 68, 71-72 (2d Cir. 1984), irrelevant to separated family's IIED and negligence claims because the separated family was not asserting a claim of false imprisonment).

The government's half-hearted attempt to argue that Plaintiffs have not met the outrageous element of their IIED claim, *see* Def. Opp. at 17-22, is unavailing. The government implies that the conduct was not outrageous because Plaintiffs were allowed to remain together in the Border Patrol stations for a few days *before* they were separated, Plaintiffs were permitted *some* communication while they were separated, and Border Patrol agents purportedly explained that "the children would be placed in separate custody" (even though there is no suggestion that Border Patrol agents informed Plaintiffs *where* their children were going). *See* Def. Opp. at 19-20.[11] But, even taking the government's contentions as true, Nielsen, Homan, McAleenan, and Albence's conduct in implementing the DHS Referral Policy, and the Border Patrol officers' conduct in separating Plaintiffs, easily satisfies Arizona's standard for extreme and outrageous conduct. As set forth in Plaintiffs' Opposition Brief, "member[s] of the community" regard this conduct as outrageous and intolerable. *See Doe v. Oesterblad*, No. 13-CV-01300, 2015 WL 12940181, at *5 (D. Ariz. June 9, 2015) (Bolton, J.); Pl. 56.1 ¶¶ 126-129 (family separations "a human tragedy" (President Biden), "unconscionable" (Secretary Mayorkas), and "shameful" (Attorney General Garland)); *id.* ¶ 128 (Garland "can't imagine anything worse than tearing parents from their children"); Reiter Ex. 11, Agent C. Dep. at 229:14-230:12; 232:11-19 (agreeing "completely inappropriate" to physically remove children who were holding on to their parents, say "Happy Mother's Day" to crying mothers, and mock indigenous accents); *see also id.* Ex. 13, Bash Dep. at 102:17-104:1 (██████████████████

---

[11] While the government contends there is a genuine issue of material fact as to whether Border Patrol agents mocked and taunted Plaintiffs during the separations, it does not, as it must, identify any "significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact" that would defeat Plaintiffs' partial summary judgment motion on the liability elements of their IIED claims. *Melvin v. United States*, No.08-CV-1666, 2010 WL 11628796, at *2 (D. Ariz. Jun. 18, 2010) (Bolton, J.) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986)). Instead, the government cites the testimony of one Border Patrol official—Agent C—who did not separate families and did not recall Plaintiffs. *See* Def. Opp. at 19 n.23; *but see* Fidler Reply Declaration, Supplement to Fidler Ex. 24 & Reiter Ex. 11, Agent C. Dep. at 30:17-31:6, 213:18-215:14, 275:18-22, 276:19-22, 288:13-15, 354:25-355:7.

1
2  ██████████████████████████████████████████

3  ██████████); *id.* Ex. 3, Hamilton Dep. at 347:16-348:14 (officials taking steps to

4  prevent reunification would be ████████████████████).[12] The conduct

5  here was extreme and outrageous as a matter of law. *See Mintz*, 905 P.2d at 563 ("Only when

6  reasonable minds could differ in determining whether conduct is sufficiently extreme or

7  outrageous does the conduct go to the jury.").

8  **B.     The Government Recklessly Disregarded The Near Certainty That Plaintiffs Would Suffer Severe Emotional Harm**

9   In an attempt to dispute that Nielsen, Homan, McAleenan, Albence, and the Border

10  Patrol officers who separated Plaintiffs recklessly disregarded the near certainty that their

11  conduct would cause Plaintiffs to suffer severe emotional harm, the government offers three

12  arguments: (1) the government can only be liable for the acts of its policymaking officials if

13  Nielsen, "the actual decision-maker," acted with reckless disregard; (2) Plaintiffs have not

14  established that Nielsen acted with reckless disregard; and (3) Plaintiffs cannot attribute

15  reckless disregard to "Yuma Border Patrol agents collectively." Def. Opp. at 20-21. Each of

16  these arguments fails.

17   The government cites no authority supporting its position that *only* Nielsen's intent

18  or reckless disregard is relevant. *See* Def. Opp. at 20-22. Under the FTCA, the government

19  is liable for the acts of its employees acting within the scope of their employment, 28 U.S.C.

20  § 1346(b)(1), and Plaintiffs have detailed the tortious activities of individual policy-level

21  officials and employees other than Nielsen—namely, Homan, McAleenan, and Albence—

22  who also recklessly disregarded the near certainty that separating parents and children would

23  cause severe emotional harm. *See* Pl. Mot. at 21-23. In fact, in opposing Plaintiffs' request

24  to depose Nielsen, the government argued that "[a] deposition of Secretary Nielsen is

25  unjustified because it is not essential to Plaintiffs' claims." ECF 315 at 14.

---

26  [12] The government argues that these statements are not admissions, but it does not dispute
27  that the statements demonstrate how members of the community view the conduct. Def.
     Opp. at 18.

28

The undisputed facts further show that Nielsen *did* act with reckless disregard when she signed the DHS Referral Policy without ensuring that the government could appropriately track, facilitate communications between, and reunite families, knowing, or recklessly disregarding, that the separations would cause families to suffer severe emotional distress. *See* Pl. Mot. at 5-6. While the government now disputes that Nielsen received letters from medical professionals, NGOs, immigration advocates, and members of Congress warning of the severe and lasting trauma caused by separating parents from children, Def. Opp. at 21, it has not identified any "significant probative evidence" to the contrary. *Id*. at 21-22. Indeed, Nielsen's Chief of Staff testified that Nielsen *did* receive the warnings. *See* Declaration of Harry K. Fidler in Further Support of Plaintiffs' Motion for Partial Summary Judgment ("Fidler Reply Declaration"),[13] Supplement to Fidler Ex. 16 & Reiter Ex. 102, Wolf Dep. at 194:13-25; 331:1-333:22; Fidler Ex. 16, Wolf Dep. at 195:8-198:10, 323:12-324:18; Reiter Ex. 102, Wolf Dep. at 329:7-330:25 (testimony from Nielsen's Chief of Staff that he was involved in discussions with Nielsen, CBP, and ICE about NGO concerns, including concerns raised by the American Academy of Pediatrics regarding the possibility that separation of families would be detrimental to the health, safety and, well-being of children and parents). And Nielsen's Congressional testimony confirms this fact. Fidler Ex. 35 at 43-44 (Nielsen testimony that she was aware of the warnings contained in the American Academy of Pediatrics' public statements and six letters to DHS that family separation hurts children). "Conclusory allegations, unsupported by factual material are

---

[13] The Fidler Reply Declaration supplements two already filed exhibits that excerpt the depositions of Chad Wolf and Agent C, respectively. The supplements include a total of nine additional pages from their deposition transcripts, and rebut arguments raised by the government in its opposition brief. As such, "[t]here is nothing procedurally improper" about filing the supplements with Plaintiffs' reply brief, and the Court can consider these supplements. *See Bilyeu v. Morgan Stanley Long-Term Disability Plan*, No. 08-CV-02071, 2014 WL 12837695, at *1 n.1 (D. Ariz. Dec. 10, 2014) (Bolton, J.); *Andrich v. Kostas*, No. 19-CV-02212, 2022 WL 2905043, at *2 (D. Ariz. July 22, 2022) ("Because Exhibits 12 and 13 address arguments raised in Plaintiff's response brief, it was permissible for Defendants to attach them as exhibits to their reply.").

insufficient to defeat a motion for summary judgment." *Matson v. Safeway, Inc.*, No. 12-CV-8206, 2013 WL 6628257, at *2 (D. Ariz. Dec. 17, 2013).[14]

Finally, there is no merit to the government's contention that Plaintiffs cannot allege reckless disregard on the part of the Border Patrol agents who conducted the separations because (i) multiple agents were involved in the processing and movement of "detainee[s]," (ii) the agents were operating under "challenging circumstances," (iii) there was a "lack of information knowable to each agent regarding the duration of ORR custody," and (iv) "Yuma Border Patrol agents documented Plaintiffs' family relationships and separations." Def. Opp. at 22. The government has been unable to identify the Border Patrol agents who carried out Plaintiffs' separations; accordingly, Plaintiffs' deposition testimony and declarations concerning the manner of separation are uncontroverted. Fidler Ex. 71 at 6 (May 27, 2022) ("No record was made at the time or was otherwise kept or maintained in the relevant systems of records in the normal course of business that identifies the Border Patrol Agents who separated children and parents prior to final book outs at the Yuma Border Patrol Station . . . ."). Regardless of the "challenging circumstances" in which the Border Patrol agents found themselves, their conduct in separating Plaintiffs shows as a matter of law that the agents acted with reckless disregard of the severe emotional distress their actions would cause.[15]

---

[14] Defendant also argues that Nielsen may have considered a variety of factors in enacting the Policy, including, among other things, "the impact on families, ORR's established system of care of minors, the systems and processes already in place to facilitate communications, and countervailing law enforcement, national security interests, resource considerations, and humanitarian concerns." Def. Opp. at 21 (citations omitted). This assertion only underscores that Nielsen recklessly disregarded the severe emotional harm Plaintiffs would suffer as the "systems and processes" in place were not ready for the implementation of the Policy and resulted in Plaintiffs being separated for months even though the adults were not prosecuted and remaining separated until a court ordered their reunifications. Plaintiffs' Statement of Facts ("Pl. SOF"), ECF 379 at ¶¶ 24, 36; *see also* Def. Opp. SOF at ¶¶ 24, 36. Moreover, there was no law enforcement or national security interest in separating accompanied children from their parents pursuant to a prosecution policy where the parents were not prosecuted.

[15] Defendant objects to Plaintiffs' sworn declarations submitted as exhibits to Plaintiffs' motion for partial summary judgment "as improper supplementation and amendment to

1

2

### IV.   DEFENDANT DID NOT PROVIDE PLAINTIFFS WITH REASONABLE, OR EVEN MINIMAL CARE

3

4

5

6

7

8

Plaintiffs have established that government officials owed Plaintiffs a duty of care and that Nielsen, McAleenan, Homan, Albence, and the Border Patrol agents who separated Plaintiffs breached that duty. *See* Pl. Mot. at 20-21, 23-25. Outside of providing limited communications between the separated Plaintiff families, the government does not argue that it provided Plaintiffs reasonable, or even minimal care. *See* Def. Opp. at 24-25. Instead, the government improperly conflates duty and breach to argue that Plaintiffs have not met their burden of showing negligence. *See id*.

9

10

11

12

13

14

15

16

17

The Arizona Supreme Court has "repeatedly emphasized" that duty and breach require separate analyses, and "[l]ower courts have been corrected for erroneously confusing the 'issue of the existence of any duty with the specific details of the required standard of conduct.'" *Anthony v. United States*, 2022 WL 4781938, at *3 (D. Ariz. Sept. 30, 2022) (quoting *Robertson v. Sixpence Inns of Am., Inc.*, 789 P.2d 1040, 1044 (Ariz. 1990)). This Court has already found that "Federal immigration officials . . . are tasked with the care and custody of those they detain, and owe detainees at least a minimal level of care." ECF 31 at 4.[16]

18

19

20

21

deposition testimony." *See, e.g.*, Def. Opp. SOF at ¶ 56. Defendant cites no authority supporting its objection, nor could it as the declarations are proper. *See Jessen v. Cnty. of Fresno*, 808 F. App'x 432, 434 (9th Cir. 2020) (affirming district court's admission of movant's declarations submitted in support of summary judgment because they were sworn statements that reflected the declarants' personal knowledge, and the evidence could have been presented in an admissible form at trial). Moreover, the declarations contain relevant information that the government could have inquired about during Plaintiffs' depositions but chose not to do so.

22

23

24

25

26

27

[16] Under Arizona law the relevant inquiry is whether "the relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff," *Markowitz v. Arizona Parks Bd.*, 706 P.2d 364, 368 (Ariz. 1985), and this Court's finding is consistent with the findings of other courts, *see* Pl. Mot. at 23-24; *see also Gilbert v. La Paz County*, 2020 WL 2064099, at *13 (D. Ariz. Apr. 29, 2020) ("Arizona has recognized that a duty to protect exists in certain special relationships such as guardian-ward and jailer-prisoner.") (collecting cases); *Hernandez v. Fritz Enterprises, Inc.*, No. CIV05-364-TUC-CKJ, 2007 WL 2903030, at *3 (D. Ariz. Sept. 28, 2007) ("[T]he government is under a duty to avoid creating situations that pose an unreasonable risk of harm to others under Arizona law."). The government's reliance on *E.L.A. v. United States*, 2022 WL

28

Plaintiffs also demonstrate that the government breached that duty, and, other than with respect to communications, the government does not argue to the contrary.[17] *See* Pl. Mot. at 24-25; Def. Opp. at 23-25. Instead, the government argues that Plaintiffs have not established the appropriate standard of care. *Id.* at 24. But Plaintiffs made clear that the standard is "reasonable care under the circumstances," *see* Pl. Mot. at 24 (quoting *Markowitz*, 702 P.2d at 368), and the government's cases support this standard, *see, e.g.*, *Ramirez v. Glendale Union High School District No. 205*, No. 03-CV-0060, 2006 WL 8439630, at *3-4 (D. Ariz. 2006) ("Ordinarily, the standard of care required in Arizona is that a person must act with reasonable care under the circumstances.").[18]

---

2046135, *see* Def. Opp. at 23, is misplaced. There, the court granted the government's motion to dismiss plaintiffs' negligence claims where the plaintiffs "failed to identify any *Texas* case law to support the existence" of a duty. *E.L.A.*, 2022 WL 2046135, at *6 (emphasis added). Because Plaintiffs have established that a duty exists under Arizona law, the government's argument that Plaintiffs only assert an "actionable duty" arising from the Constitution, *see* Def. Opp. at 23, is likewise unavailing.

[17] The government cites a District of New Mexico case applying New Mexico law to support its position, *see S.E.B.M. v. United States*, 2023 WL 2383784 (D.N.M. Mar. 6, 2023), but that case is irrelevant. There, the court considered whether allegations of limited contact overcame the due care exception where the government provided calls between Plaintiff family members "in furtherance of [the *Flores* Agreement] requirement." *Id.* at *16. Here, the question is whether—under Arizona law—the government exercised reasonable care. It did not. Moreover, other courts have found that the minimal contact Plaintiffs were provided was not reasonable. *See, e.g.*, *A.E.S.E. v. United States*, No. 21-CV-0569, 2022 WL 4289930, at *12-14 (D.N.M. Sept. 16, 2022) (emphasizing that "the Court is hard-pressed to find how a policy grounded in the management of facilities justifies the refusal to allow Plaintiffs to communicate for a month"); *Ms. L.*, 310 F. Supp. 3d at 1144 ("[T]he practice of separating these families was implemented without any effective system or procedure for (1) tracking the children after they were separated from their parents, (2) enabling communication between the parents and their children after separation, and (3) reuniting the parents and children after the parents are returned to immigration custody following completion of their criminal sentence. This is a startling reality. The government readily keeps track of personal property of detainees in criminal and immigration proceedings . . . . Yet, the government has no system in place to keep track of, provide effective communication with, and promptly produce alien children.").

[18] The government repeatedly mischaracterizes Plaintiffs' use of government manuals and standards as supplying the requisite standard of care. *See, e.g.*, Def. Opp. at 24 ("Plaintiffs fail to establish that the duration of their separation violated the TEDS manual because it applies only to '*CBP's* interaction with detained individuals,'" and "the adult Plaintiffs were detained [instead] by *ICE*.") (emphasis in original). Where the standard of care is "reasonable care under the circumstances," manuals may be considered in determining whether the defendant's conduct was unreasonable—i.e., whether the conduct breached the

The government also cannot avoid liability by implying that Plaintiffs cannot establish the appropriate standard of care without an expert. Whether Nielsen, McAleenan, Homan, Albence, and the Border Patrol officers who separated Plaintiffs provided Plaintiffs reasonable care, or even *minimal* care, when they separated Plaintiffs for months and failed to reunify them until a court ordered the reunifications, is easily within the common knowledge of a layperson. *See Cobler*, 2022 WL 625710, at *6 (expert not needed to establish standard of care in negligence claim brought under the FTCA because "the standard of care for [providing treatment to inmate who is] vomiting blood . . . is not complex"); *see also Rudolph v. Arizona B.A.S.S. Fed'n*, 898 P.2d 1000, 1004 (Ariz. Ct. App. 1995) (expert testimony not needed where "persons unskilled in the relevant area are capable of understanding and are therefore able to decide relevant fact questions").[19]

The government's remaining argument, that Plaintiffs cannot maintain both their negligence and IIED claims, also fails. *See* Def. Opp. at 23. The government cites only *Lewis v. Dirt Sports LLC*, where, unlike here, the defendants admittedly acted intentionally and thus the plaintiff could not proceed with a negligence theory. 259 F. Supp. 3d 1039, 1046 (D. Ariz. 2017); *see also id.* at 1046 n.5 ("Where a defendant's intent is genuinely disputed, intentional tort and negligence theories both may be considered by a jury."). Further, the Court may determine that some of the government's acts were intentional while other acts were negligent. *See, e.g.*, *State v. Knowlton*, No. 1:18-CR-0772, 2019 WL 4513476, at *2

---

duty of care. *See Cobler v. United States*, No. 19-CV-00348, 2022 WL 625710, at *9 (D. Ariz. Jan. 12, 2022) (reviewing Bureau of Prisons manuals and procedures to consider whether defendant's conduct "created an unreasonable risk of harm to Plaintiff and constituted a breach of a duty of care").

[19] The government's cases requiring expert testimony where defendant's actions are outside of the common knowledge of lay people are inapposite. *See Ramirez*, 2006 WL 8439630, at *3-4 (requisite level of supervision of mentally disabled students, and requisite training for teachers and staff, is not within the common knowledge of the general community); *Petty v. Arizona*, No. 15-CV-01338, 2018 WL 2220665, at *3 (D. Ariz. May 15, 2018) (parties agreed the standard of care with respect to appropriate prison staffing levels and inmate risk assessment required an expert because it was outside the common knowledge of ordinary persons); *Harris v. United States*, No. 19-CV-00248, 2021 WL 2334385, at *6 (D. Ariz. June 8, 2021) (expert testimony was required to establish the standard of care for a surgeon replacing a pacemaker because this was outside of the ordinary knowledge of a layperson).

(Ariz. Ct. App. Sept. 19, 2019) (convictions for aggravated assault and negligent homicide did "not necessarily conflict" where "[t]he jury could have found that [defendant's] state of mind was reckless as to [one victim's] aggravated assault and negligent as to [another victim's] homicide"). Because Plaintiffs established that the government did not provide Plaintiffs with reasonable, or even minimal, care, Plaintiffs have established the liability elements of their negligence claim.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should grant Plaintiffs' motion for summary judgment in its entirety.

Respectfully submitted this 24th day of May, 2023.

/s/ *David B. Rosenbaum*
David B. Rosenbaum
Travis C. Hunt
BriAnne N. Illich Meeds
OSBORN MALEDON, P.A.
2929 North Central Avenue,
21st Floor
Phoenix, Arizona 85012-2793

Diana Reiter*
Erik Walsh*
Lucy McMillan*
Harry Fidler*
Kaitlyn Schaeffer*
Brian Auricchio*
Julia Kindlon*
Anna Kaul*
Arnold & Porter Kaye Scholer LLP
250 West 55th Street | New York, New York 10019-9710
212-836-8000
diana.reiter@arnoldporter.com
erik.walsh@arnoldporter.com
lucy.mcmillan@arnoldporter.com
harry.fidler@arnoldporter.com
kaitlyn.schaeffer@arnoldporter.com
brian.auricchio@arnoldporter.com
julia.kindlon@arnoldporter.com
anna.kaul@arnoldporter.com

R. Stanton Jones*
David Hibey*
Emily Reeder-Ricchetti*
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
202-942-5000
stanton.jones@arnoldporter.com
david.hibey@arnoldporter.com
emily.reeder-ricchetti@arnoldporter.com

Sean Morris*
Arnold & Porter Kaye Scholer LLP
777 S. Figueroa St., 44th Fl.
Los Angeles, CA 90017
sean.morris@arnoldporter.com
*Counsel for C.M. Plaintiffs*
*Admitted *pro hac vice*

Jonathan H. Feinberg*
Kairys, Rudovsky, Messing, Feinberg
 & Lin LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
215-925-4400
jfeinberg@krlawphila.com

Mark Fleming*
Mark Feldman*
National Immigrant Justice Center
224 S. Michigan Ave., Suite 600
Chicago, IL 60604
312-660-1370
mfleming@heartlandalliance.org
mfeldman@heardlandalliance.org

Trina Realmuto*
Mary Kenney*
National Immigration Litigation Alliance
10 Griggs Terrace
Brookline, MA 02446
857-305-3600
trina@immigrationlitigation.org
mary@immigrationlitigation.org

Katherine Melloy Goettel*
Emma Winger*
Gianna Borroto
American Immigration Council
1331 G Street NW, Suite 200
Washington, DC 20005
202-507-7512
202-742-5619
kgoettel@immcouncil.org
ewinger@immcouncil.org
gborroto@immcouncil.org

- 18 -

1

2

## **CERTIFICATE OF SERVICE**

3

4

I hereby certify that on May 24, 2023, I electronically file the foregoing with the Clerk

5

of the Court via the Court's Electronic Filing System, which will provide electronic

6

notification to all filing users.

7

8

/s/ *David B. Rosenbaum*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28