BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division
JAMES G. TOUHEY, JR.
Director, Torts Branch
PHILIP D. MACWILLIAMS
Trial Attorney
D.C. Bar No. 482883
E-mail: phil.macwilliams@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4285
Attorneys for the United States of America

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| C.M., on her own behalf and on behalf of her minor child, B.M.; L.G., on her own behalf and on behalf of her minor child, B.G.; M.R., on her own behalf and on behalf of her minor child, J.R.; O.A. on her own behalf and on behalf of her minor child, L.A.; and V.C., on her own behalf and on behalf of her minor child, G.A.,<br><br><br><br>Plaintiffs,<br><br>v.<br><br>United States of America,<br><br>Defendant. | Case no. 2:19-CV-05217-SRB<br><br>**UNITED STATES' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.  SOVEREIGN IMMUNITY HAS NOT BEEN WAIVED FOR PLAINTIFFS' CLAIMS ..................... 2

   A.  Plaintiffs' Claims Are Impermissible Institutional or Systemic Tort Claims .............. 2

   B.  Plaintiffs' Claims Are Barred by the Discretionary Function Exception ..................... 4

      1.  Plaintiffs Cannot Overcome the Discretionary Function Exception By Alleging a
      Constitutional Violation. .................................................................................... 4

      2.  Border Patrol's decision to designate the minor Plaintiffs as UACs was policy-
      based discretionary conduct. .............................................................................. 10

      3.  The detention of the adult Plaintiffs in ICE custody pending removal proceedings
      was policy-based discretionary conduct. ................................................................ 12

      4.  The tracking of separated family members and the frequency of communications
      involve policy-based discretionary conduct. ............................................................ 12

II.  PLAINTIFFS CANNOT ESTABLISH CLAIMS FOR IIED UNDER APPLICABLE STATE LAW ...... 14

CONCLUSION ............................................................................................................. 16

# TABLE OF AUTHORITIES

**Statutes:**

6 U.S.C. § 202 ............................................................................................................... 15

8 U.S.C. § 1103(a)(1) ...................................................................................................... 15

8 U.S.C. § 1232 ........................................................................................................... 11, 15

8 U.S.C. § 1225(b) ........................................................................................................... 16

8 U.S.C. § 1226 ............................................................................................................... 16

8 U.S.C. § 1231(a) ........................................................................................................... 16

8 U.S.C. § 1231(g)(1) ...................................................................................................... 16

8 U.S.C. § 1357 ............................................................................................................... 16

28 U.S.C. § 2680 ............................................................................................................ 1, 2

**Cases:**

*B.A.D.J. v. United States,*
    2022 WL 11631016 (D. Ariz. Sept. 30, 2022) ..................................................... 2-3

*Baie v. Sec'y of Def.,*
    784 F.2d 1375 (9th Cir. 1986) ............................................................................ 10

*Breeser v. Menta Grp., Inc., NFP,*
    934 F. Supp. 2d 1150 (D. Ariz. 2013) ................................................................. 8

*Chadd v. United States,*
    794 F.3d 1104 (9th Cir. 2015) ............................................................................ 13

*Chandler v. Guttierrez,*
    773 Fed. App'x. 921 (9th Cir. 2019) .................................................................. 10

*County of Sacramento v. Lewis,*
    523 U.S. 833 (1998) .......................................................................................... 8, 9

*Domino v. Texas Dept. of Criminal Justice,*
    239 F.3d 752 (5th Cir. 2001) ............................................................................. 10

*Dull v. W. Manchester Twp. Police Dep't,*
    604 F. Supp. 2d 739 (M.D. Pa. 2009) ................................................................ 15

*E.R. v. United States,*
    2014 WL 4662241 (E.D.N.Y. Sept. 18, 2014) .................................................. 13

*E.S.M. v. United States,*
    2022 WL 11729644 (D. Ariz. Oct. 20, 2022) .................................................... 3

*F.R. v. United States,*
    2022 WL 2905040 (D. Ariz. July 22, 2022) ...................................................... 3

iii

*Fisher Bros. Sales, Inc. v. United States,*
  46 F.3d 279 (3d Cir. 1995) ........................................................................... 8, 11

*Fuentes-Ortega v. United States,*
  2022 WL 16924223 (D. Ariz. Nov. 14, 2022) ...................................................... 3

*General Dynamics v. United States,*
  139 F.3d 1280 (9th Cir. 1998) ....................................................................... 8

*Gonzalez v. United States,*
  814 F.3d 1022 (9th Cir. 2016) ..................................................................... 11

*J.F.G. v. Hott,*
  921 F.3d 204 (4th Cir. 2019) ................................................................. 5, 6, 7

*Marlys Bear Med. v. U.S. ex rel. Sec'y of Dep't of Interior,*
  241 F.3d 1208 (9th Cir. 2001) ..................................................................... 13

*Nelson v. Pima Cmty. College,*
  83 F.3d 1075 (9th Cir. 1996) ........................................................................ 8

*Pereyra v. United States, No. CV 03-267,*
  2008 WL 11394371 (D. Ariz. Sept. 26, 2008) .................................................. 11

*S.E.B.M. v. United States,*
  ---F. Supp. 3d --- 2023, (D.N.M. Mar. 6, 2023) ......................................... 9, 11, 14

*United States v. Gaubert,*
  499 U.S. 315 (1991) ............................................................................... 4, 12

*Villanueva v. United States,*
  708 F. Supp. 2d 960 (D. Ariz. 2009) ........................................................ 10-11

*Whisnant v. United States,*
  400 F.3d 1177 (9th Cir. 2005) ..................................................................... 13

# INTRODUCTION

The United States is entitled to summary judgment on Plaintiffs' claims because the Court lacks jurisdiction under the Federal Tort Claims Act ("FTCA") and because Plaintiffs cannot establish their intentional infliction of emotional distress ("IIED") claim as a matter of law.

First, Plaintiffs' claims for institutional or systematic torts are not cognizable under the FTCA.  Plaintiffs argue that they do not challenge the creation or adoption of the DHS Referral Policy, but the conduct of specific "high level officials."  However, these named officials were only involved in the creation or approval of the DHS Referral Policy, and they had no involvement with these specific Plaintiffs.  Accordingly, insofar as Plaintiffs' claims are based upon the conduct of these individuals, the claims necessarily constitute a challenge to the adoption of an agency policy, which is not actionable under the FTCA.

Second, Plaintiffs' claims are barred by the FTCA's discretionary function exception ("DFE"), 28 U.S.C. § 2680(a).  Plaintiffs seek to avoid the DFE by arguing that the conduct at issue violated the Substantive Due Process Clause of the Constitution.  But Plaintiffs fail to establish that the DFE could be defeated by such a violation and have not shown that the government's conduct violated any clearly established constitutional right.  Moreover, Plaintiffs also fail to submit evidence creating a genuine dispute that the relevant government official (Secretary Nielsen) acted with the intent required to establish a violation of substantive due process.  Indeed, Plaintiffs try to establish the requisite intent based on the putative intent of "the government" and "government officials" behind the DHS Referral Policy, which cannot be reconciled with their argument that their claims are not based on a challenge to that agency-wide policy.  Moreover, as the United States has demonstrated, the challenged conduct involved the exercise of judgment and is susceptible to various policy considerations.

Finally, Plaintiffs cannot establish a claim for IIED because the conduct at issue is privileged under state law.  Plaintiffs seek to circumvent this privilege by contending that

1

1    their claims are based upon their separations, not law enforcement actions.  But the
2    separations were a direct result of the government's law enforcement decisions and
3    actions, made pursuant to federal statutory authorities.  Plaintiffs cannot avoid the
4    privilege merely by characterizing their claims as unrelated to law enforcement conduct,
5    especially considering that by their own admission they are not challenging the DHS
6    Referral Policy itself.

7    Accordingly, for the reasons set forth in the United States' motion for summary
8    judgment and this reply, summary judgment should be granted for the United States.[1]

## ARGUMENT

I. **Sovereign Immunity Has Not Been Waived For Plaintiffs' Claims**

A. **Plaintiffs' Claims Are Impermissible Institutional or Systemic Tort Claims**

Plaintiffs' challenge to the DHS Referral Policy is a quintessential attack on
policymaking or agency-wide conduct that is not cognizable under the FTCA.  *See* U.S.
MSJ 5-8.  Put simply, Plaintiffs cannot hold the United States liable under the FTCA based
on the creation and adoption of the DHS Referral Policy as such conduct is not the
allegedly negligent or wrongful act of an *individual* employee or employees – as is
required under the FTCA – but of the *agency* itself.  *Id.* at 6-8.  Plaintiffs cite no cases
holding otherwise.  Indeed, in other family separations cases in this district, courts have
dismissed the plaintiffs' claims based on policymaking or agency-wide conduct, permitting
the suits to proceed past the motion to dismiss stage only on those claims that properly
could be understood as arising from the alleged misconduct of individual employees.  *See,
e.g.*, *B.A.D.J. v. United States*, 2022 WL 11631016, *5 (D. Ariz. Sept. 30, 2022) ("To the

---

[1] In this Reply, the following short form references are used: Plaintiffs' Motion for
Partial Summary Judgment ("Pls. MSJ"), ECF No. 378; Plaintiffs' Statement of Facts in
Support of Plaintiffs' Motion for Partial Summary Judgment ("Pls. MSJ SOF"), ECF No.
379; the United States' Motion for Summary Judgment ("U.S. MSJ"), ECF No. 371; the
United States' Statement of Facts in Support ("US MSJ SOF"), ECF No. 372; the United
States' Opposition to Plaintiffs' Motion for Partial Summary Judgment ("U.S. Opp."),
ECF No. 397; United States' Controverting and Supplemental Statement of Facts and
Objections ("U.S. Contr. SOF" and "U.S. Supp. SOF"), ECF No. 398; Plaintiffs'
Opposition to Defendant's Motion for Summary Judgment ("Pls. Opp."), ECF No. 403;
and Plaintiffs' Amended Controverting and Supplemental Statement of Facts ("Pls.
Contr. SOF" and "Pls. Supp. SOF"), ECF No. 404.

2

extent Plaintiffs allege harms resulting from policymaking or agency-wide misconduct, the Court lacks subject matter jurisdiction over those claims.").[2]

Plaintiffs have cited no case where a court has ever held the United States liable under the FTCA for the adoption of an agency-wide policy.  Plaintiffs contend their claims are based upon the "tortious misconduct of individual federal employees", specifically "the [Border Patrol] agents who separated Plaintiffs," and "Kirstjen Nielsen, Thomas Homan, Kevin McAleenan, and Matthew Albence."  Pls. Opp. 14.  However, after extensive policy-level discovery, the only high-ranking federal officials Plaintiffs name are Secretary Nielsen and Messrs. McAleenan, Homan, and Albence, none of whom were present in the Yuma Border Patrol Station in May 2018 or made decisions with respect to the individual Plaintiffs.  Of these three, only Secretary Nielsen took an action with legal significance. Following a series of meetings and discussions, Secretary Nielsen selected the policy option now referred to as the DHS Referral Policy.  *See* U.S. MSJ SOF 6-8, 10, 15, 21.[3] Thus, the only conduct of Secretary Nielsen that Plaintiffs base their claims on is the adoption of the DHS Referral Policy itself.  Plaintiffs cannot avoid this fact simply by labeling the conduct of these officials as "implementing" the DHS Referral Policy. And the fact that the DHS Referral Policy – like all government policies – was adopted by an

---

[2] *See also Fuentes-Ortega v. United States*, 2022 WL 16924223, *5 (D. Ariz. Nov. 14, 2022) ("It is true, nonetheless, that the amended complaint in this case may be read to allege misconduct of government agencies. . . . To the extent it does, the Court will grant Defendant's motion."); *E.S.M. v. United States*, 2022 WL 11729644, *2 (D. Ariz. Oct. 20, 2022) ("[O]ne can read Plaintiff's claims to be based upon acts of the Government as a whole, and to that extent Defendant's motion to dismiss is granted."); *F.R. v. United States*, 2022 WL 2905040, *4 (D. Ariz. July 22, 2022) (D. Ariz. Oct. 20, 2022) ("To the extent Plaintiffs intend to sue the United States for the alleged tortious misconduct of the relevant agencies writ large, the Court lacks subject-matter jurisdiction.").

[3] Commissioner McAleenan and Director Homan, as the heads of CBP and ICE, respectively, merely proposed prosecution policy options to Secretary Nielsen in the DHS Referral Memorandum.  The mere proposal of policy options, however, had no impact on Plaintiffs.  It was only Secretary Nielsen's adoption of a policy that affected Plaintiffs. Moreover, Plaintiffs do not explain what role, if any, they contend Mr. Albence had in the creation of the DHS Referral Policy.  When the DHS Referral Policy was adopted in May 2018, Mr. Albence was the Associate Director of ICE, Enforcement and Removal Operations.  He was not one of the agency heads who proposed the prosecution policy options to Secretary Nielsen in the DHS Referral Memorandum.  Nor do Plaintiffs identify what specific conduct by Mr. Albence they allege caused their harms.

individual person does not transform an agency-wide policy into individual conduct attributable to that official.  Therefore, Plaintiffs' claims arising from the DHS Referral Policy itself are not cognizable under the FTCA.

### B.  Plaintiffs' Claims Are Barred by the Discretionary Function Exception

The DFE also bars Plaintiffs' claims because they challenge policy-based discretionary decisions that resulted in the placement of the adult and minor Plaintiffs in separate custody and the continued detention of the adult Plaintiffs in ICE custody pending their immigration removal proceedings.  *See* U.S. MSJ 8-26.  In response, Plaintiffs argue that the DFE does not apply because (1) the conduct upon which they base their claims was unconstitutional, Pls. Opp. 17-22; (2) the designation of the minor Plaintiffs as UACs was not "discretionary in nature," *United States v. Gaubert*, 499 U.S. 315, 322 (1991), because it was based on an interpretation of the TVPRA, Pls. Opp. 22-24; and (3) the manner of the separations, and the failure to provide information and to reunify families, is not conduct of the kind the DFE was designed to shield.  Pls. Opp. 24-26.  The court should reject each of Plaintiffs' arguments and hold that the DFE bars Plaintiffs' claims.

#### 1.  Plaintiffs Cannot Overcome the Discretionary Function Exception By Alleging a Constitutional Violation.

To overcome the DFE, Plaintiffs must prove that the government violated a constitutional right that was clearly established and prescribed a specific course of conduct at the time of the alleged violation.  *See* U.S. MSJ 23-25.  They have not made such a showing.  Instead, Plaintiffs cite non-binding district court decisions and fail to address Ninth Circuit precedent regarding the narrow circumstances in which a constitutional violation can defeat the DFE.  *See* Pls. Opp. 18-19.

Plaintiffs have pointed to no case law that clearly established a right to family integrity in the context of immigration detention at the time of Plaintiffs' separations.  Nor does any such case law exist.  Plaintiffs' attempt to distinguish the cases cited by the United States, *see* Pls. Opp. 18, fails because the holdings in those cases did not turn on why the adult was in ICE custody.  What is material is that in each instance the parents and children were no longer physically together due to the parent's placement in immigration

4

detention or removal and the courts concluded that a constitutional right to be held together either did not exist or was not clearly established.  *See* U.S. MSJ 23; *Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 210–11 (4th Cir. 2019) ("[W]e, like the district court, have been unable to find a substantive due process right to family unity in the context of immigration detention pending removal. . . . there are decisions that recognize [parental rights to make education and rearing decisions], but those decisions hardly support the asserted right to be detained in the same state as one's children, the right to be visited by children while in detention, or a general right to 'family unity' in the context of detention.").  Indeed, the factual distinctions that can arise in immigration detention are the very reason that the Fourth Circuit in *Reyna* refused to recognize a constitutional right in this context.  *See id.* at 211 ("Plaintiffs would have us recognize a right where there are virtually no objective criteria for assessing how strong the familial ties must be, how short the distance between family and detention must be, or how weak the countervailing governmental interests must be.").

Plaintiffs also claim that the "actions of government officials" resulting in their separations in May 2018 were "intended to injure" and "were unjustifiable by any government interest," which allegedly violated Plaintiffs' constitutional rights.  *See* Pls. Opp. 19.  Alternatively, Plaintiffs argue that the "challenged conduct was . . . the clear result of 'deliberate indifference.'"  *See* Pls. Opp. 20.  Based on the undisputed facts, Plaintiffs cannot prevail on those theories either.  As for an alleged "intent to injure", Plaintiffs cannot maintain that their claims are not based on the development and adoption of the DHS Referral Policy and, at the same time, base their alleged Due Process Clause violation on the supposed malicious intent of the officials who developed and adopted that policy (nor, as discussed *infra*, can they establish the intent element of Plaintiffs' IIED claims based on such allegations).[4]

---

[4] In fact, in the section of their Opposition addressing the DFE, Plaintiffs focus on the decision to designate the minors as UACs, the manner of the separations, and the lack of communications, Pls. Opp. 22-26, but not the DHS Referral Policy itself.  Plaintiffs cannot avoid the DFE on the grounds that one aspect of the conduct at issue is allegedly unconstitutional, but then base their tort claims upon other conduct.

1    Plaintiffs do not allege, or even argue, that the decisions by Border Patrol agents in

2  the Yuma Sector to initiate the prosecution referral process of the adult Plaintiffs, and the

3  corresponding decisions to designate their children as UACs and seek placements with

4  ORR as soon as possible, were done with an intent to harm Plaintiffs.  Rather, Yuma

5  Sector Border Patrol agents performed those functions in accordance with pre-existing

6  practices relating to the timing of UAC designations and ORR placement requests and with

7  the intention that the adult Plaintiffs be prosecuted.[5]  Plaintiffs likewise do not argue, and

8  present no evidence, that ICE officials' continued detention of the adult Plaintiffs pending

9  their removal proceedings was motivated by an intent to injure Plaintiffs.

10    In any event, even if the intent behind the adoption of the DHS Referral Policy were

11  relevant to the DFE, which it is not, the United States submitted uncontroverted evidence

12  that it was not Secretary Nielsen's purpose to use separations of parents and children to

13  inflict harm.  *See* U.S. MSJ SOF 18 and exhibits thereto.  Rather, the DHS Referral Policy

14  was adopted in furtherance of policy objectives relating to immigration enforcement at the

15  U.S.-Mexico border, including border security, allocation of personnel and resources, and

16  perceived humanitarian considerations.  *See* U.S. MSJ SOF 19 and exhibits thereto; *see*

17  *also* U.S. MSJ 10-12, 19-22, 17-20.  Plaintiffs have failed to submit evidence that creates a

18    [5] *See* U.S. MSJ  13-17, U.S. MSJ SOF 26-27, 35, U.S. MSJ Ex. D (Jordan Decl. ¶
19  11); *see also* U.S. Opp. 9-13 7-12 (explaining processes in the Yuma Sector relating to
20  processing, criminal referrals, and transfers of custody, as well as the policy considerations
   underlying those processes), U.S. Supp. SOF 7-10, 12-13; *see also* U.S. Opp. Ex. A Att. 6
21  (Comella 29) (testifying that Border Patrol agents in the Yuma Sector were "following
   their chain of command with the intent to prosecute to enforce our immigration laws"); *id.*
22  at 377-380, 390-391 (testifying that the timing of the ORR placement request was pursuant
23  to existing practices and not an effort to ensure a separation occurred).  Further, following
   the adoption of the DHS Referral Policy, U.S. Border Patrol Headquarters issued to the
24  Southwest Border Sectors a Concept of Operations regarding the implementation of the
   DHS Referral Policy, which states: "In order to break the cycle of those who seek to enter
25  unlawfully, all amenable adults will be referred for prosecution.  We will not exempt adults
26  who engage in this criminal activity, including those [who] choose to put their children in
   harm's way by crossing the border between the ports of entry."  U.S. MSJ Ex. C Att. 5
27  (50439); U.S. MSJ SOF 23.  Nothing about this implementation guidance from Border
   Patrol Headquarters indicates an intent to harm.

28

6

genuine dispute as to Secretary Nielsen's intent in adopting the DHS Referral Policy or as to the policy objectives the DHS Referral Policy sought to achieve. Plaintiffs' "intent to injure" argument relies primarily on testimony from employees of HHS regarding their subjective impressions of potential policy options discussed during a single meeting in February 2017. *See* Pls. Opp. 2-7, 19-20. However, Secretary Nielsen did not participate in the February 2017 meeting, which took place approximately 11 months before she became Secretary and 15 months before the adoption of the DHS Referral Policy. Statements made by persons other than Secretary Nielsen that were remote in time and context do not create a genuine dispute over the intent of the decision-maker, Secretary Nielsen, in adopting the DHS Referral Policy in May 2018. *See* U.S. MSJ 24-25.[6] Plaintiffs also reference other statements by and meetings with persons other than Secretary Nielsen in 2017. But Plaintiffs do not state how such evidence could raise a genuine dispute as to *Secretary Nielsen's* intent in adopting the DHS Referral Policy in May 2018.[7]

---

[6] It is undisputed that Mr. Homan did not attend the February 2017 meeting. Although Mr. McAleenan attended the meeting, he did not propose any policy options relating to family units, and Plaintiffs do not attribute any such statements to him. *See* U.S. Opp. Ex. D (McAleenan 331-344). In any event, the intent of others cannot be imputed to Secretary Nielsen. *See* U.S. MSJ 27.

[7] In particular, Plaintiffs cite statements purportedly made by former Secretary of Homeland Security John Kelly in early 2017, Pls. Opp. 3, which was approximately 10 months before Secretary Nielsen was appointed Secretary and 14 months before she adopted the DHS Referral Policy in May 2018. Plaintiffs also cite an email from August 2017, in which Director Homan references a "proposal for separation," and a meeting in August 2017 with Acting Secretary Duke, which occurred months prior to the appointment of Secretary Nielsen and did not include Secretary Nielsen. Pls. Opp. 4 Plaintiffs also cite draft memoranda from August and October 2017, which pre-dated the appointment of Secretary Nielsen by several months. Pls. Opp. 4-5. Moreover, Plaintiffs do not identify the authors of those draft memoranda or provide evidence that such drafts were even presented for a decision to any of the prior Secretaries. *Id.* Plaintiffs also refer to an excerpt from a slide presentation prepared for briefing Secretary Nielsen on an array of border security issues upon her appointment as Secretary of Homeland Security in December 2017, but that excerpt does not reflect her views as to any of the issues addressed in that document. Pls. Opp. 5. Plaintiffs also refer to unauthenticated putative statements from a DHS Office of General Counsel memorandum as set forth in a media article (which is hearsay and cannot be presented in admissible form). Pls. Opp. 6. Finally, Plaintiffs refer to notes taken by unidentified individuals from the Department of Justice following the issuance of the Zero Tolerance Memorandum, none of which purport to pertain at all to the DHS Referral Policy or any discussions with Secretary

1      Plaintiffs also claim in the Opposition's Background section that prosecutions

2   pursuant to the DHS Referral Policy were a "pretext to separate". Pls. Opp. 1.  Plaintiffs

3   supply no evidence to support their assertion that prosecutions were pretextual and

4   reflected an intent to cause harm. *See Nelson v. Pima Cmty. College*, 83 F.3d 1075, 1081-

5   82 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute for

6   purposes of summary judgment").

7          To prevail on their substantive due process argument, Plaintiffs must prove that the

8   challenged exercise of power was "without any reasonable justification in the service of a

9   legitimate governmental objective." *County of Sacramento v. Lewis*, 523 U.S. 833, 846

10  (1998). The evidence establishes that prosecutions pursuant to the DHS Referral Policy

11  and the detention of adult non-citizens pending their removal proceeding were viewed as

12  serving important immigration enforcement objectives, including border security,

13  allocation of personnel and resources, and humanitarian considerations. *See* U.S. MSJ 10-

14  12, 17-20; U.S. MSJ SOF 11-14, 19 and exhibits thereto. Plaintiffs have provided no

15  evidence sufficient to create a genuine dispute over whether the DHS Referral Policy

16  furthered such objectives, notwithstanding the wisdom of the policy itself. *See* U.S. MSJ

17  SOF 11-14, 19 (and exhibits thereto).[8] A district court recently recognized such objectives

18  when granting the United States' motion to dismiss in another family separations case:

19  Nielsen. Pls. Opp. 6-7. Notably, none of the materials cited by Plaintiffs make reference
    to separating families with an intent to harm.

20       [8] Plaintiffs did not supply evidence in contravention to these statements of fact.

21  Rather, Plaintiffs responded with improper arguments that do not address those statements
    of facts or provide contrary evidence as to the effectiveness of enforcement measures such

22  as prosecutions and removals, the impact of *Flores* on ICE's ability to detain family units
    together, and the severity of the situation on the Southern border in Spring 2018. *See*

23  *Breeser v. Menta Grp., Inc., NFP*, 934 F. Supp. 2d 1150, 1154–55 (D. Ariz. 2013) (parties
    may not include explanations, inferences, or arguments in the response to the statement of

24  facts, because "[o]pinion, suggested inferences, legal arguments and conclusions are not
    the proper subject matter of a Local Rule 56.1 statement"). Furthermore, Plaintiffs cannot

25  avoid the DFE by challenging the accuracy or reliability of the information that may have
    formed the basis for the policy choice by the ultimate decision-maker. *See General*

26  *Dynamics v. United States*, 139 F.3d 1280, 1284-85 (9th Cir. 1998); *Fisher Bros. Sales,*

27  *Inc. v. United States*, 46 F.3d 279, 285-286 (3d Cir. 1995).

28          .

1

2

3

4

"Although [the child's] right to associate with her father is constitutionally protected, it does not outweigh the government's interest in enforcing its immigration policy." *S.E.B.M. v. United States*, ---F. Supp. 3d --- 2023 WL 2383784, *15 (D.N.M. Mar. 6, 2023).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Plaintiffs argue in the alternative that the "shock the conscience" element of a substantive due process violation can be satisfied by a showing of "deliberate indifference."  Pls. Opp. 20.  However, Plaintiffs again present no evidence that the particular Border Patrol agents who initially separated them, or the ICE officials who detained the adult Plaintiffs pending removal proceedings, acted with deliberate indifference.  Moreover, Plaintiffs fail to provide any authority for application of a "deliberate indifference" standard in the complex, challenging, and fast-paced context of a Border Patrol station during a period of extremely high volume of apprehensions and non-citizens in detention.  *See* U.S. Opp. 12-14, U.S. Supp. SOF 14, 15.  Further, Plaintiffs conflate deliberate indifference – which has been described as "a protracted failure even to care," *see Lewis*, 523 U.S. at 853 – with the lower "reckless disregard" element of an IIED claim.  *See* Pls. Opp. 20.  Because the facts do not support a finding of reckless disregard with respect to the decision to adopt the DHS Referral Policy, Plaintiffs also cannot establish deliberate indifference.  *See* U.S. Opp. 21 (discussing the evidence that "when the relevant decisionmaker (Secretary Nielsen) adopted the DHS Referral Policy, she considered a variety of factors, including the impact on families, ORR's established system of care of minors, the systems and processes already in place to facilitate communications . . . and countervailing law enforcement, national security interests, resource considerations, and humanitarian concerns").  That Plaintiffs disagree with Secretary Nielsen's ultimate policy decision does not mean that it was adopted with deliberate indifference.

24

25

26

27

To the extent Plaintiffs argue that there was deliberate indifference with respect to the tracking of the adult and minor Plaintiffs and facilitating their communications while in separate custody, that argument also fails on the undisputed facts and evidence presented. There is no genuine dispute that enhancements to Border Patrol's e3 system were made

28

9

prior to implementation of the DHS Referral Policy to better capture information about the separation of family units (*see* U.S. MSJ Ex. A Att. 1 (McAleenan 374-376); U.S. Contr. SOF 10), or that Border Patrol documented the family relationships and separations of Plaintiffs.[9]  These efforts, in turn, enabled ICE and ORR and its contractors to identify Plaintiffs.[10]  While Plaintiffs may dispute the technical sufficiency of the methods used to document separations, such after-the-fact second-guessing does not satisfy the "extremely high standard" necessary to establish unconstitutional "deliberate indifference."  *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *see also Chandler v. Guttierez*, 773 Fed. App'x. 921, 923 (9th Cir. 2019) ("Deliberate indifference is a high standard.").

### 2.  Border Patrol's decision to designate the minor Plaintiffs as UACs was policy-based discretionary conduct.

Plaintiffs claim that Border Patrol's designation of the minor Plaintiffs as UACs is not protected by the DFE because in so doing Border Patrol misinterpreted the TVPRA's statutory definition of a UAC.  *See* Pls. Opp. 22-24.  But it is well-established in this Circuit that how an agency interprets a statute is a discretionary determination that is protected by the DFE.  *See Baie v. Sec'y of Def.*, 784 F.2d 1375, 1376-77 (9th Cir. 1986) (the agency's "interpretation of the statute is a plainly discretionary administrative act the 'nature and quality' of which Congress intended to shield from liability under the FTCA."); *Villanueva v. United States*, 708 F. Supp. 2d 960, 975 (D. Ariz. 2009) ("An agency's

_____

[9] *See* U.S. MSJ SOF 46-48, 51, 60; 66-68, 71, 77; 81-83, 89, 95; 99-101, 108, 113; 117-119, 124, 131.  Plaintiffs do not (and cannot) dispute this evidence.  Rather, they respond with argument that does not contravene the documentation for each Plaintiff or its availability to ICE and ORR and its contractors.

[10] *See* U.S. MSJ SOF 33 (explaining process by which Border Patrol made information regarding family relationship and separation available to ORR); U.S. MSJ Ex. E (Helland Decl. ¶¶ 2-7) (explaining how information regarding family relationship and separation provided by Border Patrol in I-213 is available to ICE officers through ICE EARM database); U.S. MSJ Ex. F (De La Cruz Decl.¶¶ 10-14 ) (describing information regarding family relationship and separation provided by Border Patrol to ORR and its grantees through the ORR placement request); U.S. Opp. Ex. A Att. 8 (Harper 79, 122, 142) (testifying to ability to locate ICE detainees through ICE's detainee locator system and to obtain information about separated family members through narratives of I-213 placed in ICE's EARM system).

10

interpretation of its statutes and regulations is protected by the discretionary function exception."). Therefore, Plaintiffs cannot avoid the DFE by arguing that Border Patrol's interpretation and application of the TVPRA was incorrect. And once that determination is made, the TVPRA requires the UAC to be transferred to ORR custody. *See* 8 U.S.C. § 1232(b)(3); *see also S.E.B.M.*, 2023 WL 2383784, *15-16.

Plaintiffs also challenge the timing of Border Patrol's determinations that the minor Plaintiffs were UACs. Pls. Opp. 23. But the timing of an agency's discretionary decision is the exact sort of judgment that is shielded from suit. *See* U.S. MSJ 16-17 (citing *Fisher Bros. Sales*, 46 F.3d at 287) (decision protected by the DFE when it "necessarily reflects the decisionmaker's judgment that it is more desirable to make a decision based on the currently available information than to wait for more complete [information] or more confirmation of the existing [information]")).

Plaintiffs next argue that Border Patrol's decision to designate the minor Plaintiffs as UACs "was not grounded in policy" because it was based on "pragmatic considerations." *See* Pls. Opp. 23 n.12. This is a distinction without a difference: the balancing of considerations relating to law enforcement operational efficiencies and allocation of limited personnel and resources are classic policy questions of the kind protected by the DFE. *See Gonzalez v. United States*, 814 F.3d 1022, 1036 (9th Cir. 2016) (citing considerations of agency resources as grounds for applying DFE); *Pereyra v. United States*, No. CV 03-267, 2008 WL 11394371, *7 (D. Ariz. Sept. 26, 2008) (lawsuit arising out of care and monitoring of detainee while in Border Patrol custody barred by DFE because it was susceptible to various considerations including "manpower considerations" and "logistics"). Moreover, Plaintiffs conflate the discretionary decision regarding whether a child is a UAC with the discretionary decision regarding how quickly to seek placement of the child with ORR once the UAC designation has occurred. The various policy considerations underlying Border Patrol's decision to seek placement with ORR and transfer a child out of Border Patrol custody as soon as possible were addressed in detail in the United States' opposition to Plaintiffs' motion for partial summary

11

judgment.  *See* U.S. Opp. 7-12; U.S. Supp. SOF 12, 13.  Further, as explained, the actual transfer of the children from Border Patrol custody was susceptible to policy analysis.  *See* U.S. Opp. 12-14. [11]

### 3. The detention of the adult Plaintiffs in ICE custody pending removal proceedings was policy-based discretionary conduct.

Plaintiffs incorrectly assert that ICE's statutory detention authorities are irrelevant because they were not the basis for their separation.  *See* Pls. Opp. 23 n.13.  But, after being initially separated at Border Patrol's Yuma Station, the adult and minor Plaintiffs remained separated while the adult Plaintiffs were held in ICE custody pending their removal proceedings.  *See* U.S. MSJ SOF 56,75, 96, 113.  Plaintiffs plainly challenge that *continued* separation, *see* Pls. Opp. 15, 24, which was pursuant to ICE's statutory authority to detain individuals pending immigration proceedings.  The exercise of that authority is grounded in policy considerations relating to, among other things, border security and ICE's ability to remove noncitizens when so ordered.  *See* U.S. MSJ 17-20; U.S. MSJ SOF 12, 13.  Plaintiffs provide no argument to the contrary.  Moreover, to the extent the adult Plaintiffs argue that their continued detention in ICE custody separately from their children was based on an improper motive, *see* Pls. Opp. 19, the government actor's subjective intent is immaterial to the question of whether official actions are susceptible to policy analysis under the DFE analysis.  *See* U.S. MSJ 9.

### 4. The tracking of separated family members and the frequency of communications involve policy-based discretionary conduct.

Finally, Plaintiffs argue that "the government's failures to provide information [and] to allow communication" were not susceptible to policy analysis.  *See* Pls. Opp. 24-

---

[11] Plaintiffs also argue incorrectly, in a footnote, that Border Patrol agents were not exercising discretion because referrals for prosecution were mandatory.  Pls. Opp. 23 n.12. However, even if this were the case, the decision that adults must be referred for prosecution in certain circumstances is itself an exercise of discretion.  In any event, even if a federal statute, regulation, or agency policy mandates a specific course of conduct, and a federal employee complies with such mandatory directive, the DFE still applies.  *See Gaubert*, 499 U.S. at 323 ("[I]f a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation.").

25.[12]  As an initial matter, this contention is irrelevant to the case before the Court: undisputed record evidence establishes that *these Plaintiffs* were tracked and allowed to communicate with family members.  *See supra* at n.9.  Plaintiffs cannot use this case to challenge conduct relating to other families not before this Court.  In any event, decisions regarding the agency processes and systems to be used in carrying out government operations are protected by the DFE.  *See* U.S. MSJ  12-13.  Plaintiffs provide no authority to the contrary.  Whether the systems and processes utilized while the DHS Referral Policy was in effect were lacking, as a general matter, is not relevant to whether the use of those systems and processes reflected discretionary decisions.  *See* U.S. MSJ  9 (citing cases holding that negligence is irrelevant to the DFE analysis).[13]  Plaintiffs cannot avoid the DFE by characterizing the conduct at issue as implementation of government action, *see* Pls. Opp. 25 (citing *Whisnant v. United States*, 400 F.3d 1177 (9th Cir. 2005), as the Ninth Circuit has made clear that the DFE applies when, as demonstrated here, the implementation itself implicates policy concerns.  *See Chadd v. United States*, 794 F.3d 1104, 1112 (9th Cir. 2015).[14]

Additionally, the DFE bars Plaintiffs' challenge to the frequency of communications between the adult and minor Plaintiffs while in separate custody.  *See* U.S. Opp. 15-16.  In response, Plaintiffs cite *E.R. v. United States*, 2014 WL 4662241 (E.D.N.Y. Sept. 18, 2014), *see* Pls. Opp. 25, which is inapposite.  In *E.R.,* the minor, who was alone in CBP custody upon her initial arrival to the United States, was allegedly not permitted to contact her parents (who were not in custody) for several hours.  Here, by contrast, Plaintiffs

---

[12] Plaintiffs also refer to the failure to "reunify families."  Pls. Opp. 28.  But the point at which reunification would occur is intertwined with the decision to continue secure detention of the adult Plaintiffs pending their removal proceedings.  The policy-based considerations underlying the exercise of these statutory detention authorities is addressed *supra* at 12.

[13] Plaintiffs cite cases involving premises liability claims based upon inadequate safety measures, which are wholly inapposite. *See* Pls. Opp. 25 (citing *Marlys Bear Med. v. U.S. ex rel. Sec'y of Dep't of Interior*, 241 F.3d 1208, 1214 (9th Cir. 2001)).

[14] Plaintiffs' reliance on this language from *Whisnant* is especially misplaced, as that case involved a premises liability claim based upon the failure to follow safety-related policies regarding the inspection and cleaning of mold from a commissary freezer, not the implementation of a multi-agency immigration enforcement initiative.

challenge the *frequency* of communication following transfer of parent and child to separate custody.  The record evidence demonstrates that Border Patrol documented the family relationship and separation so that communications could be established; ICE and HHS (and the private grantees with which the children were placed) had policies and procedures in place to facilitate communications between separated family members; and the adult and minor Plaintiffs communicated while in separate custody.  The district court in *S.E.B.M.* observed that the frequency of communications between the separated parent and child may have been "less than ideal", 2023 WL 2383784, *16, but was the result of the logistical challenges inherent to family members being held in the custody of different federal agencies in separate locations.  *Id.* ("[I]t is not clear what the government could have done better. . . . because immigration detention involves unique security concerns that makes it difficult for detainees to be available for regular calls and thus flexibility is necessary.").[15]

## II.        Plaintiffs Cannot Establish Claims for IIED under Applicable State Law

Plaintiffs cannot establish claims for IIED because the conduct at issue is privileged under state law.  *See* U.S. MSJ  26-28.  Plaintiffs seek to circumvent this privilege by contending that their claims are based upon their separations, not law enforcement actions. *See* Pls. Opp. 27-28.  But Plaintiffs' separations were a direct result of privileged law enforcement decisions and actions, which Plaintiffs do not refute were pursuant to federal statutory law enforcement authorities.

Plaintiffs' purported evidence of "intent" for their IIED claims is based on the policymaking process and adoption of the DHS Referral Policy.  Pls. Opp. 28.  But again, Plaintiffs cannot have it both ways – they cannot disclaim that the creation and adoption of the DHS Referral Policy is the basis for their claims, Pls. Opp. 14-15, 19, while at the same

---

[15] *See* U.S. MSJ Ex. F (De La Cruz Decl. ¶ 32) (discussing existence of policies and procedures of ORR grantees relating to phone calls to and from UACs in their care); U.S. Opp. Ex. A Att. 8 (Harper 126) (testifying regarding access to phones provided to detainees while in ICE detention); Pls. MSJ Ex. 84 (ICE detention standards describing detainee access to phones).

14

time citing the supposed intent behind the creating and adoption of that policy to establish "intent" for their IIED claims.

In any event, by focusing on the alleged intent behind the DHS Referral Policy, Plaintiffs fail to address the argument actually raised in the United States' motion, which is that Plaintiffs cannot establish an IIED claim because the separations were the result of conduct that is privileged under state law.  Secretary Nielsen's decision to adopt a policy regarding the enforcement of criminal immigration law – regardless of the wisdom of that policy – was pursuant to her express statutory authority, *see* U.S. MSJ 10 n.6 (citing 6 U.S.C. § 202 and 8 U.S.C. § 1103(a)(1)), and is the sort of law enforcement-related decision recognized as privileged under state law, *see* U.S. MSJ 26-28.

Furthermore, Plaintiffs do not argue that their apprehensions or the decisions to pursue prosecution of the adult Plaintiffs exceeded the authority of Yuma Sector Border Patrol agents.  And, as noted above, Plaintiffs present no evidence (or even argument) that the Yuma Sector Border Patrol agents who apprehended them or initiated the prosecution referral process were motivated by an unlawful purpose.  *See supra* at 6.  Accordingly, those law enforcement actions are privileged and cannot be the basis for Plaintiffs' IIED claims.  Further, the children's designation as UACs under the TVPRA necessarily followed the Border Patrol agents' lawful decisions to initiate the prosecution referral process of the adult Plaintiffs.  Once these discretionary determinations were made, Border Patrol agents were required to transfer the minor Plaintiffs to the custody of ORR, and to do so as expeditiously as possible.  *See* 8 U.S.C. § 1232(b)(3).  Whether Border Patrol agents erred in their interpretation of the TVPRA in designating the minor Plaintiffs as UACs cannot supply the basis of an IIED claim, as such conduct not only is privileged, *see* U.S. MSJ 30, but also is not, as a matter of law, "extreme and outrageous."  *See Dull v. W. Manchester Twp. Police Dep't*, 604 F. Supp. 2d 739, 756 (M.D. Pa. 2009) (finding improper arrests not sufficiently "extreme or outrageous" to prevail on an IIED claim because "[a]t most, defendants miscalculated the propriety of their law enforcement activities").

1    Finally, following transfers from Border Patrol custody, the adult Plaintiffs were held

2  in ICE custody pending removal proceedings pursuant to statutory authorities.  *See* U.S.

3  MSJ 3-4 (citing 8 U.S.C. §§ 1225(b), 1226, 1231(a), 1231(g)(1), 1357.  Accordingly, the

4  continued detention of the adult Plaintiffs – which prolonged their separations from their

5  children – similarly was privileged and cannot form the basis of Plaintiffs' IIED claims.

6                                    **CONCLUSION**

7    For the reasons set forth in the United States' motion for summary judgment and

8  those stated herein, summary judgment for the United States should be granted.

9
        Dated: May 24, 2023                    Respectfully Submitted,
10

11
                                               BRIAN M. BOYNTON
12                                             Principal Deputy Assistant Attorney General

13                                             JAMES G. TOUHEY, JR.
14                                             Director, Torts Branch

15                                             *s/ Phil MacWilliams*
                                               PHILIP D. MACWILLIAMS
16                                             Trial Attorney
                                               D.C. Bar No. 482883
17                                             E-mail: phil.macwilliams@usdoj.gov
18                                             U.S. Department of Justice
                                               Civil Division, Torts Branch
19                                             Benjamin Franklin Station, P.O. Box 888
20                                             Washington, DC 20044
                                               Telephone: (202) 616-4285
21                                             Attorneys for the United States of America

22

23

24

25

26

27

28
                                          16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on May 24, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

*s/ Phil MacWilliams*
PHILIP D. MACWILLIAMS
Attorney for United States of America