BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division
JAMES G. TOUHEY, JR.
Director, Torts Branch
PHILIP D. MACWILLIAMS
Trial Attorney
D.C. Bar No. 482883
IRINA M. MAJUMDAR
Trial Attorney
D.C. Bar No. 252757
E-mail: Irina.M.Majumdar@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
175 N Street, NE
Washington, DC 20530
Telephone: (202) 598-5403
Facsimile: (202) 616-5200
Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| C.M., on her own behalf and on behalf of her minor child, B.M.; L.G., on her own behalf and on behalf of her minor child, B.G.; M.R., on her own behalf and on behalf of her minor child, J.R.; O.A., on her own behalf and on behalf of her minor child, L.A.; and V.C., on her own behalf and on behalf of her minor child, G.A., <br><br>Plaintiffs,<br>v.<br><br>United States of America,<br>Defendant. | No. CV-19-05217-PHX-SRB <br><br>**OPPOSITION TO PLAINTIFF'S MOTION TO REOPEN DISCOVERY** |
| A.P.F. on his own behalf and on behalf of his minor child, O.B.; J.V.S., on his own behalf and on behalf of his minor child H.Y.; J.D.G. on his own behalf and on behalf of his minor child, M.G.; H.P.M. on his own behalf and on behalf of his minor child, A.D.; M.C.L. on his own behalf and on behalf of his minor child, A.J.; and R.Z.G. on his own behalf and on behalf of his minor child, B.P.,<br><br>Plaintiffs,<br>v.<br><br>United States of America,<br>Defendant. | No. CV-20-00065-PHX-SRB |

Over a year and a half after fact discovery in this litigation closed and only approximately two months before trial, Plaintiffs seek to reopen discovery to obtain transcripts and exhibits from five depositions taken in another case arising out of the separation of families and pending in the Northern District of California, *Wilbur P.G., et al. v. United States*, Case No. 4:21-cv-04457-KAW (N.D. Cal.) ("*P.G.*"). The United States has consistently informed Plaintiffs that it does not believe they are entitled to those transcripts and exhibits because discovery in this litigation is closed. Plaintiffs have represented to the Court at a status conference on December 14, 2023, and in their current motion, that this dispute centers upon confidentiality. Not so. This Court should deny Plaintiffs' motion, as it is an improper attempt to circumvent this Court's discovery orders and because Plaintiffs have failed to show good cause to reopen discovery.

## I.  BACKGROUND

Discovery in these cases was governed by this Court's Amended Case Management Order ("Amended CMO"). *See C.M.* ECF 144; *A.P.F.* ECF 144. The Amended CMO provided "discovery limitations" with respect to the total number of depositions Plaintiffs were permitted, allowing *C.M.* and *A.P.F.* Plaintiffs to jointly take a total of 12 "policy-related depositions," and permitting *A.P.F.* Plaintiffs to take an additional two policy-related depositions of the U.S. Immigrations and Customs Enforcement ("ICE") ERO Field Operations and the U.S. Customs and Border Protection ("CBP") Office of Field Operations. *Id*. at 3.[1] The Amended CMO further permitted Plaintiffs to take additional apex depositions, but only by agreement of the parties or by leave of the Court. *Id*. at 4. In an effort to avoid court involvement, the United States agreed to allow Plaintiffs to take an additional three policy-related depositions.

Fact discovery closed in these actions in July 2022. Amended CMO at 3. However, at the time, fact discovery in other Federal Tort Claims Act ("FTCA") lawsuits arising from family separations at the United States-Mexico border in 2017 and 2018 was ongoing, or had not even yet commenced. Currently, discovery in other cases arising from such

---

[1] Regarding their individual claims, *C.M.* was permitted to take an additional 15 "Plaintiff-Specific Depositions" and *A.P.F.* was permitted to take an additional 18 Plaintiff-Specific Depositions. Amended CMO at 3.

separations pending in district courts across the country is ongoing, and there may potentially be other policy-related discovery to be had in those cases.

On November 27, 2023, well more than a year after the close of fact discovery in these actions, Plaintiffs requested during a meet and confer that the United States provide them with discovery produced in other cases arising from family separations. The United States informed Plaintiffs that they should make such a request in writing, and on December 5, 2023, Plaintiffs requested via email that the United States provide them with "policy level discovery" produced in other family separations cases, including certain deposition transcripts from *P.G.* and "[n]on-plaintiff specific discovery" from five separate cases arising from family separations, including *P.G.* Email from E. Walsh to P. MacWilliams, et al., dated Dec. 5, 2023. In response, the United States continually informed Plaintiffs that it did not see a basis to produce discovery from other cases, reminding Plaintiffs that fact discovery in *C.M.* and *A.P.F.* was closed. On December 12, 2023, the United States informed Plaintiffs that its position on this issue was unlikely to change.

On December 13, 2023, Plaintiffs "renewed" their request for transcripts of the following depositions which were taken in *P.G.* between August 2023 and early November 2023: Shawn Jordan (the United States' liability expert and Executive Officer in the Yuma Border Patrol Sector of CBP); Matthew Albence (former ICE Executive Associate Director of Enforcement and Removal Operations); and Rule 30(b)(6) depositions of the Department of Homeland Security ("DHS") (James McCament), CBP (Benjamin Huffman), and the U.S. Attorneys' Office for the District of Arizona ("Arizona USAO") (Sean Lokey).[2] Notably, in Plaintiffs' initial email, they did not request two of the depositions transcripts they now seek in their motion – that is, the deposition transcripts of the Arizona USAO Rule 30(b)(6) deposition or of Agent Jordan.

The following day, on December 14, 2023, Plaintiffs raised their request for deposition transcripts to this Court at a status conference. Despite the United States' consistent contention that Plaintiffs were not entitled to transcripts and documents produced

---

[2] Plaintiffs incorrectly characterize Sean Lokey as a percipient witness when his deposition was noticed in both *C.M./A.P.F* and in *P.G.* as a Rule 30(b)(6) deposition.

3

in other cases following the close of discovery in *C.M.* and *A.P.F.*, Plaintiffs misstated to the Court that the United States' opposition was related to material being marked confidential. *See* Dec. 14, 2023 Hr'g Tr. at 18-19. At the hearing, the Court authorized Plaintiffs to file a motion on this matter. *See id*.

Two months after the hearing, on February 13, 2024, Plaintiffs filed their Motion to Reopen Discovery For the Limited Purpose of Compelling the Production of Deposition Transcripts and Exhibits ("Motion") seeking unredacted copies of the five deposition transcripts taken in P.G. and identified above, as well as their corresponding exhibits. *See C.M.* ECF 447; *A.P.F.* ECF 451.

## II. ARGUMENT

"A motion to reopen discovery in a case where a scheduling order has been issued is treated as a motion to modify the court's scheduling order under Fed. R. Civ. P. 16(b)(4)." *Hill v. County of Maricopa*, 2020 WL 1275749, at *3 (D. Ariz. Mar. 17, 2020). Pursuant to Rule 16(b), a scheduling order may be modified "only upon a showing of good cause by the party seeking amendment." *Lexington Ins. v. Scott Homes Multifamily, Inc.*, 2015 WL 751204, at *4 (D. Ariz. Feb. 23, 2015).

To determine whether good cause exists, the Ninth Circuit has instructed district courts to weigh the following six factors:
> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017). This list of factors is "non-exhaustive," *Galvan v. Duffie*, 2018 WL 10436581, at *2 (C.D. Cal. Aug. 27, 2018), and "not every factor . . . is given the same weight," *Hill*, 2020 WL 1275749, at *4. On balance, Plaintiffs have failed to show good cause to set aside the well-established discovery deadlines and limitations on discovery imposed by this Court's Amended CMO.

### a. Plaintiffs' Request Attempts to Circumvent this Court's Discovery Orders.

As explained above, this Court set limitations on the number of depositions Plaintiffs were permitted to take and the length of the discovery period. Limitations on discovery are important and imposed for good reason. Plaintiffs' current request to reopen discovery defies these Court-ordered limitations. First, Plaintiffs' position that they are entitled to deposition transcripts in other suits, over a year and a half after the close of fact discovery, has no limiting principle. It thus could foreseeably lead to requests that the United States produce additional discovery from the other approximately 35 pending similar FTCA suits up to trial in *C.M.* and *A.P.F.* Second, the request would allow Plaintiffs more discovery, via deposition testimony and documents, than the voluminous amount they already obtained in these actions pursuant to the Amended CMO.

Beginning with the first point, although Plaintiffs describe their request to reopen discovery as "limited," their position, in fact, has no limiting principle. In their motion, Plaintiffs deem any transcript of any individual who *may* testify at trial in this action or may have "made statements on behalf of the government about the DHS Referral Policy and its implementation," Motion at 4, as "highly relevant," Motion at 7. While Plaintiffs' motion concerns deposition transcripts and exhibits from *P.G.*, there are approximately 35 similar cases pending in this and other districts. Taking Plaintiffs' position to its logical conclusion, Plaintiffs could seek production of other deposition transcripts or documents from *P.G.* or other pending cases arising from family separations up to trial if they believe that such discovery contained information "highly relevant" to their cases.

Regarding the second point, for good reason this Court set limitations on the number of depositions Plaintiffs were permitted. Plaintiffs took all the policy-related depositions that they were authorized. In fact, in an effort to avoid court intervention regarding apex depositions, the government agreed to Plaintiffs' conducting three additional policy-related depositions. In these suits, Plaintiffs deposed many senior-ranking government officials, including former CBP Commissioner Kevin McAleenan and former ICE Director Thomas Homan. Additionally, Plaintiffs took two Rule 30(b)(6) depositions: one of DHS and one

5

of the Arizona USAO.  Many of the policy-related depositions taken by Plaintiffs either reached or exceeded the seven-hour deposition period set by Federal Rule of Civil Procedure 30(d)(1).  Yet Plaintiffs now seek from the United States, and have stated they intend to use at trial, *see* Motion at 7-8, additional deposition testimony and exhibits from another suit in excess of the deposition limitations imposed by the Amended CMO.

If this Court reopens discovery, Plaintiffs would have the benefit of more depositions than the number they were permitted in these suits.  They would receive three additional Rule 30(b)(6) transcripts.  Plaintiffs, however, already asked questions of two of the 30(b)(6) witnesses (McCament and Lokey) and made a strategic decision not to take a CBP Rule 30(b)(6) deposition.  Additionally, Plaintiffs already questioned Mr. Albence and Agent Jordan at length at depositions in these cases.  They should not be permitted to receive deposition transcripts from another suit which may contain responses to questions Plaintiffs could have asked these witnesses, but strategically opted not to.  *See Integra Lifesciences I, Ltd. v. Merck KGaA*, 190 F.R.D 556, 559-60 (S.D. Cal. 1999) (declining to modify a scheduling order where a party sought relief for additional discovery which it chose not to take in the first instance due to its trial strategy at the time).  Plaintiffs' motion is a clear attempt to circumvent the limits on discovery in these suits imposed by this Court and thus should be rejected.

### b. The Six Factors Weigh Against Reopening Discovery.

The six factors enumerated above weigh against reopening discovery.  Accordingly, Plaintiffs have failed to show good cause for their request.

<u>Trial is Imminent</u>.  Trial in these cases is set to begin on April 23, 2024.  Briefing on this motion will not be complete until March 5, 2024 — only seven weeks before trial.  District courts within this Circuit have found that this factor weighs against reopening discovery in instances in which trial was scheduled to begin three or four months from the *date of the court's ruling on the motion*.  *See Agosto v. County of Los Angeles*, 2023 WL 3402153, at *3 (C.D. Cal. Apr. 12, 2023) ("[B]ecause trial is only four months away, the court finds this factor weighs against reopening discovery."); *Kevorkian v. Sports Mall*, LLC, 2022 WL 17357767, at *3 (C.D. Cal. Sept. 22, 2022) (finding factor weighs against

6

reopening discovery when trial was three months away). Plaintiffs have not cited to a single case suggesting a different result. This factor weighs against reopening discovery.

The request is opposed. Because the United States strongly opposes reopening discovery, this factor weighs against reopening discovery.

The United States would be prejudiced. Plaintiffs argue that the United States would not be prejudiced if discovery were reopened, asserting that all the United States need do is produce the *P.G.* transcripts and exhibits or permit Plaintiffs to obtain the transcripts directly from plaintiffs' counsel in *P.G.* "at no cost or burden to the government." *See* Motion at 8. Plaintiffs' argument mischaracterizes the situation.

Plaintiffs contend that counsel for the United States has an unfair "benefit" of knowing what was "said under oath during the[] depositions in the *PG* Action." *Id*. at 8. That is not accurate. The United States affirms that government counsel of record in these actions has not reviewed the *P.G.* deposition transcripts or exhibits Plaintiffs seek in this motion and thus does not know what questions were asked in those depositions or what were the deponents' responses.[3] If this Court were to grant Plaintiffs' request to obtain the transcripts and exhibits, the United States would need to expend time analyzing these transcripts and assessing how they may be utilized at trial in these cases.[4]

The United States has already spent considerable time "preparing for trial based on the existing evidence in the case." *Agosto*, 2023 WL 3402153, at *4 (concluding that the non-moving party would be prejudiced by reopening discovery and denying that relief). Because the content of the requested *P.G.* deposition transcripts is currently unknown to government counsel of record, it is foreseeable that the United States may need to alter its trial strategy based on this discovery evidence that was created in another lawsuit. *See*

---

[3] Plaintiffs continue to conflate counsel for the United States in *P.G.* with counsel of record in the instant cases. There is no overlap between the two.

[4] The parties have agreed that deposition designations must be shared on March 8, 2023, and that any counter-designations must be shared on March 22, 2023. This Court may not have the opportunity to rule on this Motion until after either of those dates. Accordingly, should this Court grant Plaintiffs' motion, the United States respectfully requests it be permitted to submit deposition designations and counter-designations after the agreed upon dates.

*Morris v. Sutton*, 2019 WL 2994291, at *5 (E.D. Cal. July 9, 2019) (considering the non-moving party to be prejudiced if reopening discovery would cause "major alterations in trial tactics and strategy"). Accordingly, there is little doubt that this factor weighs against reopening discovery.[5]

Further, Plaintiffs' argument that it is "illogical and fundamentally unfair for the government to allow plaintiffs in other family separation cases to have the benefit of the deposition transcripts from the *CM* and *APF* cases while barring *CM* and *APF* Plaintiffs' access" to the *P.G.* deposition transcripts misses the mark. Motion at 8. The policy-related deposition transcripts from *C.M.* and *A.P.F.* produced by agreement to plaintiffs in other cases occurred at the outset of discovery in those suits – not a year and a half after the close of fact discovery. Additionally, courts presiding over those other cases were able to take into consideration the number of *C.M.* and *A.P.F.* deposition transcripts that were produced to the plaintiffs before determining the limitations on the number of policy-related depositions (and who could be deposed) in those suits. *See, e.g., A.I.I.L. v. Sessions, et al.*, Case No. 4:19-cv-00481-JCH (D. Ariz) ECF 115 at 2 (case management order limited the total number of policy-related depositions that could be taken and restricted the plaintiffs from re-deposing individuals who had already been deposed in *C.M.* and *A.P.F.*).

<u>Plaintiffs were not diligent</u>. Although at the December 14, 2023 hearing this Court permitted Plaintiffs to file a motion seeking the deposition transcripts and exhibits, *see* Dec. 14, 2023 Hr'g Tr. at 19, Plaintiffs waited nearly two months to file their motion. Indeed, this delay resulted in Plaintiffs bringing this issue to the Court just two months before trial. Although the United States informed Plaintiffs before the December 14, 2023 conference that its position on this dispute was unlikely to change, Plaintiffs inexplicably waited nearly two months to file the instant motion. *See Yeoman v. Ikea U.S.A. West, Inc.*, 2013 WL 3467410, at * 7 (S.D. Cal. July 10, 2013) (finding that it was "not excusable to delay filing a motion to reopen discovery for two more months" especially where plaintiffs were "represented by two law firms").

---

[5] In assessing this factor, Plaintiffs mischaracterize the instant dispute as a confidentiality issue, stating that the United States would not be prejudiced because the discovery requested by Plaintiffs would be governed by the Protective Orders in these cases. *See* Motion at 8.

<u>The additional discovery was foreseeable</u>.  There is no question that Plaintiffs understood at the time fact discovery closed in these cases in July 2022 that discovery in other similar FTCA actions, including in *P.G.*, was ongoing or had not even yet commenced. *See, e.g.*, Jan. 27, 2022 Hr'g Tr. at 47-48 (discussing that "as far as discovery goes," these actions "are still pretty far ahead" of other similar suits).  It therefore was entirely foreseeable to Plaintiffs that there could be depositions in other cases that Plaintiffs may deem to be "highly relevant" to their suits.  Motion at 2.  *See Garcia v. City of Scottsdale*, 2023 WL 2354562, at *3 (D. Ariz. Mar. 3, 2023) (denying motion to reopen discovery where party "knew of the need for the discovery sought before the expiration of the discovery deadline").  Well-aware that policy-related depositions in other cases arising out of family separations could occur after the close of discovery in *C.M.* and *A.P.F.*, including in *P.G.*, Plaintiffs did not propound a request for production ("RFP") for future policy-related deposition transcripts from those other cases, before the close of discovery.  Instead, Plaintiffs opted to use all of their allotted RFPs in these suits to request other information.  Accordingly, this factor must weigh against Plaintiffs. *See Hill*, 2020 WL 1275749, at *4 (weighing the foreseeability factor against reopening discovery where party "chose not to follow procedural requirements" and the need for additional discovery time was "abundantly foreseeable").

<u>Discovery of relevant evidence has not been established</u>.  As this Court is well-aware, discovery in *C.M.* and *A.P.F.* has been extensive.  "The sheer volume of discovery already exchanged reduces the likelihood that additional discovery will lead to new, relevant evidence," and this factor should therefore weigh against reopening discovery. *See id.* at *5 (declining to reopen discovery).

Plaintiffs bear the burden of establishing "what *new* information will be obtained by reopening discovery" and they must do so with a "degree of particularity." *Id.* (emphasis added).  Plaintiffs have made no attempt to identify what, if any, new information is contained in the requested *P.G.* transcripts and exhibits.  Rather, they only assert that the "transcripts contain statements made under oath by potential trial witnesses, or by 30(b)(6) witnesses, about the development and implementation of the same policies that are central

9

to this litigation." Motion at 7. Plaintiffs of course already have obtained voluminous document discovery and deposition testimony within the limitations of this Court's Amended CMO about the development and implementation of such policies.

Plaintiffs assert that the requested *P.G.* transcripts of "potential trial witnesses" in these suits *may* be used for impeachment or other purposes. *See* Motion at 7. Notably, the parties have not yet exchanged trial witness lists and will not do so until after briefing on Plaintiffs' motion is complete. It is therefore not certain whether these "potential trial witnesses" would be called to testify. *See* Motion at 7. And Plaintiffs do not claim that any of the statements made in the transcripts do in fact contradict the witnesses' prior testimony in these suits and therefore could be used properly for impeachment purposes if the witnesses were called to testify at trial in these cases. While of course the United States recognizes that Plaintiffs do not know the entirety of the testimony in the requested *P.G.* deposition transcripts, neither does counsel of record for the United States in *C.M.* and *A.P.F.*. Plaintiffs must "be able to articulate what previously uncovered evidence" the requested transcripts "might reasonably be expected to provide, as well as how that evidence is material to the central dispute in this case." *Hill*, 2020 WL 1275749, at *5. Merely claiming, as Plaintiffs do, that the sought material contains statements "on behalf of the government about the DHS Referral Policy and its implementation" when Plaintiffs already have several thousand pages of documents and deposition transcripts on these topics, is insufficient. This factor therefore weighs against reopening discovery.

### III. CONCLUSION

Plaintiffs have not established good cause to reopen discovery. Plaintiffs' attempt to circumvent the limitations on the number of policy-related depositions authorized in the Amended CMO for these suits, nearly a year and a half after the close of discovery and only two months before the start of trial, should be rejected. The United States respectfully requests that this Court deny Plaintiffs' Motion to Reopen Discovery.

Submitted this 27th day of February, 2024.

        BRIAN M. BOYNTON
        Principal Deputy Assistant Attorney General

        JAMES G. TOUHEY, JR.
        Director, Torts Branch

        *s/ Irina M. Majumdar*
        IRINA M. MAJUMDAR
        Trial Attorney
        D.C Bar No. 252757
        E-mail: Irina.m.majumdar@usdoj.gov
        U.S. Department of Justice
        Civil Division, Torts Branch
        Benjamin Franklin Station, P.O. Box 888
        Washington, DC 20044
        Telephone: (202) 598-5403

        Attorneys for the United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants:

*s/ Irina M. Majumdar*
IRINA M. MAJUMDAR
Attorney for United States of America